David Williamson
SBI #00183022, W-1, L-12
1181 Paddock Rd.
Smyrna, DE 19977
October 20, 2006

Clerk of U.S. District Court for the District of Delaware
RE: Williamson v. CMS, et. Al (CA 06-379-SLR)

Clerk of Court:

Enclosed is a true and correct copy of Plaintiff's Settlement Demand letter and Settlement Agreement and Mutual Release proposal (Settlement package); however, Plaintiff did not attached for the court the exhibit of the Amended Complaint, because the Court already has a copy of this document and wishes to reduce unnecessary or redundant paperwork. If the Court also requires the Amended Complaint, which was provided to defendant as attached to the Settlement package, Plaintiff will readily provide it post haste.

Plaintiff wishes to record on the Court's docket his good faith effort to settle the matter and or open good faith settlement negotiations in lieu of protracted litigation. Plaintiff offered said Settlement package to First Correctional Medical, Inc. to settle the matter on behalf of itself and Sita Alie (defendants) on or about 7/19/06. Plaintiff provided FCM with thirty-days to accept or make a good faith counter offer; however, FCM flatly rejected it and refused to enter into any settlement negotiations with Plaintiff by returning the package unopened and stamped "Return to Sender" FCM does not accept correspondence from inmates. Plaintiff is consequently forced to withdraw his settle offer.

Plaintiff requests that his settlement offer package be processed and filed on the Court's docket and that FCM's rejection also be noted. Sworn and entered under penalty of perjury on the below date by Plaintiff.

Thank you for your item and consideration in this matter.

Respectfully,

_____          _10-20-06_____
David Williamson                              Date

                                                            OCT 27 2006

                                                            BD scanned

1

David Williamson
SBI #183022, W-1, L-12
1181 Paddock Rd.
Smyrna, DE 19977
July _19_, 2006

First Correctional Medical, Inc.
6861 North Oracle Rd.
Tucson, AZ 85704

Re: Proposed Settlement and Release in Lieu of Litigation

To Whom It May Concern:

Greetings, this correspondence is directed to First Correctional Medical, Inc. (FCM). It is a good faith offer to avoid the costs and risks associated with protracted litigation of which FCM enjoys no tenable defense. Mr. Williamson believes that a mutual settlement release agreement (Agreement) is in all the herein listed parties' best interest. The following is offered in support:

i. Enclosed is a civil complaint (Action) that names FCM and Doctor Sita Alie (Alie) as defendants, inter alia, in a federal civil rights action. It raises claims of deliberate indifference to Williamson's known serious medical condition. Remedies include injunctive relief, declaratory judgment, compensatory and punitive damages. (See attached exhibit A-Action). However, in the event that the parties are unable to reach an agreement, Mr. Williamson will also seek court costs, reasonable attorney's fees, expert witness fees and any additional fines or damages that may apply.

ii. FCM has no tenable defense: In short, Williamson is claiming deliberate indifference to his known/ and or should have been known serious medical condition. (E.g. acute knee hyperextension that was ultimately diagnosed as a <u>completely severed ACL</u> –See attached exhibit B-Affidavit). There is no disputing the seriousness of the medical condition. Williamson claims that FCM employed a custom/policy based on non-medical factors to create an inordinate delay and or deny necessary medical treatment; that in pursuit of this custom/policy, FCM intentionally disregarded the classic and elemental symptoms of a torn ACL and intentionally failed to perform the necessary diagnostic tests that these classic symptoms called for. In addition, the deliberate deception of FCM grievance representatives and various statements from X-ray technician and Dr. Alie are damning; and as such, constitute enough support for Williamson's claims to survive any motion to dismiss/summary judgment. Moreover, Correctional Medical Services, Inc. (CMS) has every incentive to cooperate with Williamson in

1

an effort to avoid and shift liability to FCM regarding this specific claim. CMS may even have standing to cross-sue FCM to recover damages; however, an early settlement between FCM and Williamson will cut FCM's litigation costs and settlement terms are protected in strict confidence with no admission of guilt or liability under court rules. A settlement is in FCM's best interest.

iii. Enclosed is a proposed settlement agreement and mutual release, of which if agreed to, will result in both FCM and Alie being removed as defendants to the action. As such, Williamson will strike and waive all claims –whether known or unknown- against FCM and Alie in their entirety. (See attached exhibit C-Settlement Agreement and Mutual Release).

iv. Mr. Williamson is offering FCM an opportunity to settle fully and on defendant Alie's behalf. Failure to resolve this dispute now will impudently cause FCM and Alie to face liability and may create a conflict of interest relative to defendants FCM and Alie's representation and personal and individual interests. In turn, defendant Alie may be entitled to alternate representation at FCM's expense. Moreover, any defendant employee who is ultimately found liable may have standing to recover from FCM for its failure to resolve this dispute on their behalf. Again early settlement is in both FCM and Alie's best interest.

v. Consequently, in the event an agreement is not realized with FCM, Mr. Williamson has prepared an alternate settlement offer to defendant Alie. In general, Mr. Williamson will offer a full release/settlement to Alie only, in exchange for her cooperation in providing truthful testimony that supports the elements of Mr. Williamson's claims (e.g. FCM's personal involvement and deliberate indifference... via the employment of a custom/policy that intentionally denies necessary treatment). Alternate attorneys are inevitable and failure to disclose Mr. Williamson's good faith offer to Alie (FCM's past employee), will result in a conflict of interest between FCM and Alie, and may create a breach of an employers full faith and fair dealings.

vi. In addition to potentially substantial compensatory damages, Mr. Williamson is prepared and capable to press for punitive (treble damages) under several theories. For example, FCM's malfeasance is evinced by its deliberate and malicious employment of a "Cost-avoidance" custom/policy that mandates substantial damage awards to offset and deter FCM's incentive to employ this gruesome policy, of which is based on illegitimate non-medical factors. Indeed, needed to save the suffering. Mr. Williamson will secure full and comprehensive discovery, relative to the damages stage for this purpose, including but not limited to a Bill of Particulars, etc. In short, Mr. Williamson will establish that FCM maliciously employs an unconstitutional, morally and ethically repugnant custom/policy of cost-avoidance (i.e. deliberate and malicious

denial of needed treatment rather than provide the necessary and contracted medical care to its suffering charges). That FCM's unearned and unreasonable profits both illegally misallocates and captures tax payer revenue that was allotted to care for the ill and not line the pockets of the health-care elite. Moreover, it compounds the tax burden because those that should have received medical treatment ultimately reenter the community worse off and stress an already overburdened system. Consequently, it will be established that relative to FCM's blood-money profits, the threat of litigation and or standard pittance damage award is analogous to a slap on the wrist. (I.e. more cost effective for FCM to deny needed treatment and pay the occasional fine than provide the necessary treatment to the multitude of ill charges).

vii. Lastly, Mr. Williamson is motivate and has relative experience with litigating these very claims, because it is not the first time that he has been subjected to this shocking behavior. In fact, Mr. Williamson successfully litigated a federal suit against the State and Prison Health Services due to their deliberate indifference that also cause d him permanent injury. Williamson pursued the action pro se for over two-and-a-half years after which the Court appointed attorneys essentially to negotiate a settlement due to PHS's untenable position. The settlement was eventually reached out of court for dismissal one month shy of the four year mark; however, the terms are kept in strict confidence. Four years of protracted litigation could have been avoided if PHS had availed itself early on instead of wasting valuable judicial resources to defend the indefensible.

viii. Mr. Williamson wishes to avoid another unnecessary court battle and in consideration of an agreement with FCM, he offers the following terms listed in the "Settlement and Mutual Release" for your consideration. Mr. Williamson remains reasonable despite having to needlessly suffer severe injury at the hands of FCM and its employees. However, the depths of Mr. Williamson's judiciousness are not limitless and he encourages FCM to accept his reasonable offer.

In closing, Mr. Williamson looks forward to FCM's acceptance or a good faith counter proposal within thirty days of receipt of this offer. In the sad event that no agreement is realized, however, Williamson will consider it Rejected by FCM and will consequently proceed to propose the alternative settlement offer to Alie in accordance with item (V) above. Mr. Williamson believes an amicable resolution is attainable and awaits FCM's reply.

_David W_____          7-19-06_____
David Williamson                  Date

# EXHIBIT A

# EXHIBIT B

## AFFIDAVIT OF DAVID WILLIAMSON

1. I David Williamson am the Affiant listed above and do depose and state the following:

2. On 6/12/06 Affiant was seen by an orthopedic specialist, Dr. DuShuttle, (240 Beiser Bldv., Suite 101, Dover, DE 19904 –PO Box 662, Dover, DE 19903-0662), in regard to Affiant's completely severed ACL (right knee ligament).

3. After DR. DuShuttle reviewed the MRI results and performed a physical exam, he stated that the severed ACL required orthopedic surgery, a complete ACL replacement/reconstruction, a special knee brace that prohibits hyper-extension of the knee joint and the necessity for the post-op rehab/physical therapy….

4. Dr. DuShuttle further explained that the surgery was required, otherwise Affiant would have to wear the special brace continuously and Affiant would nevertheless experience subsequent degradation and injury to the non-repaired knee.

5. Also, Dr. DuShuttle stressed the importance of post-op rehab/physical therapy and stated that because the replacement ACL was harvested from a cadaver that post-op rehab was crucial to success and that if the necessary rehab etc. was not conducted competently, the replacement would likely "fail." In fact, Dr. DuShuttle opined that the prison health care provider (CMS hereafter) would not provide the needed rehab treatment -that the brace alone costs upwards of a "thousand dollars" and that "they" probably would not provide it. His attempt to dissuade Affiant form pursuing the needed ACL replacement surgery, ACL surgery that was recommended by both himself and Dr. Durst as necessary, is not based on any legitimate medical factors; however, in contrast is rooted in Dr. DuShuttle's belief that CMS would refuse/fail in its duty to provide the needed post-op rehab thus causing the "ACL replacement" to consequently "fail!"

6. Dr. DuShuttle's effort to discourage Affiant is however based on "non-medical factors" of which was the assumption that CMS would be deliberately indifferent to Affiant's medical needs and or grossly negligent.

7. Affiant retorted: "…If the standard treatment for this type of injury is orthopedic surgery and an ACL replacement et cetera, then recommend it and you let me worry about my part and about CMS's duties after the operation. I certainly don't want to continue to experience the pain and suffering of a permanent injury or disability and forego a needed procedure because you assume that CMS will fail in its duty."

8. Officers T. Carr, Hastings, and a third unknown officer were direct witnesses to this conversation.

9. Dr. DuSuttle replied: "Absolutely! I'll recommend it, besides if you didn't have the replacement you would still require the brace and that wouldn't stop you knee from further deterioration and injury, but you are going to have to fight for this!"

10. Affiant believes the above is true and correct to the best of his knowledge.

Signed and subscribed before me this day of ___Ce___ ~~June~~ July 2006.

_David W_____                                          _Elend John_____
David Williamson                                                            Notary Public

# EXHIBIT C

SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This is a Settlement Agreement and Mutual Release (Agreement), entered into and effective this _____ day of _____ 2006, by, between, and among David Williamson (Williamson) [1] and First Correctional Medical, Inc. (FCM) in its official and individual capacities.

WHEREAS, on or about _____, _____ 2006, Williamson presented a "Proposed Settlement and Release in Lieu of Litigation" letter/offer to FCM that included as exhibits (a) Williamson's Civil Action 06-379-SLR (Action) and (b) the instant Agreement.

WHEREAS, the Parties have negotiated in good faith and are desirous of resolving the claims against FCM and named defendant Sita C. Alie (Alie), under the terms and conditions set forth herein, without any admissions of guilt or liability.

NOW THEREFORE, in consideration of the mutual promises and covenants contained herein the Parties agree as follows:

1. <u>Consideration</u>. FCM agrees to provide Williamson with certain consideration (consideration)[2] of which will remain in strict confidence –known only to the Parties of this Agreement; and thirty-days after receipt of consideration and Williamson's signature to the Agreement, Williamson will, in return, voluntarily dismiss FCM and Alie as defendants in the action and all claims against them respectively. The Agreement will then take full effect.

2. <u>Mutual Release</u>. The Parties agree that this Agreement settles in full any claims, or causes of action, or disputes that either Party has against the other relating to the Action. Each Party on behalf of himself, herself, and itself, and his, her, or its commissioner, employees, administrators, predecessor and successor department or agency, attorneys, agents, and assigns, as the case may be hereby fully and forever releases, acquits, and discharges the other Party, his her, or its commissioner, employees, administrators, predecessor and successor department or agency, attorneys, agents, and assigns, as the case may be, of and from any claim, or cause of action relating to matters of any kind, whether presently known or unknown, suspected or unsuspected, that the Releasing Party may have resulting from, or connected in any way with the

---

[1] Williamson, FCM, and Alie may at times be referred to collectively as "Parties."

[2] Consideration will be in the amount of ten-thousand dollars made payable to David Williamson and Dorothy Williamson (by Certified Check draft). (Actual logistics to be discussed between Williamson and FCM representatives). Consequently, within seven-days of Williamson receiving receipt of said consideration, he will sign and date the Agreement, and within thirty-days of that, Williamson will cause defendants FCM and Alie to be dismissed from the Action in accord with the Agreement. If FCM wishes, the instant foot-note need not appear on the final Agreement draft.

---

1

matters and things set forth and alleged, or which might have been set forth and alleged by either party in the Action; except that to the extent that this Mutual Release could be read to preclude Williamson from pursuing future claims unrelated to the instant Action.

3. Representations by Parties. Each Party represents and warrants that it has read each and every provision of this Agreement and has consulted with attorneys about its terms and obligations. Williamson understands that in exchange for the Parties fulfilling the items, terms, conditions, covenants, and performance of this Agreement, he is forever dismissing any claim or cause of action that he may have against FCM Alie relating to the Action, and nonetheless believes that this is a fair exchange for the dismissal of his claims against these defendants.

4. Severability. In the event that any provision herein becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable or void, this Agreement shall continue in full force and effect without said provision.

5. Entire Understanding. This Agreement represents the entire agreement and understanding between the Parties and supersedes and replaces any and all prior agreements and understanding relating to these matters.

6. Amendments. This Agreement may only be amended by a written agreement signed by the Parties.

7. Governing Law and Jurisdiction. This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware.

8. Counterparts. This Agreement may be executed in counterparts, whereby each Party may execute a duplicate original thereof, and each counterpart shall have the same force and effect as an original and shall constitute an effective, binding agreement on the part of each of the undersigned.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be duly effective and delivered as of the date and year above written by their signatures or signatures of their duly authorized representatives.

_____                    _____
David Williamson, SBI 183022                        FCM Representatives