ORIGINAL

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

DAVID W. WILLIAMSON, )
    Plaintiff, )
    v. ) C.A. 06-379-SLR
CORRECTIONAL MEDICAL SERVICES, Inc, et al, )
    Defendants. )

FILED
JAN 12 2007
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

PLAINTIFF'S MOTION FOR APPIONTMENT OF AN EXPERT WITNESS

COMES NOW, Plaintiff, pursuant to Fed. R. Evid. 702, 706 (a); and 28 U.S.C. section 1915, and all other applicable authority, and does request the Court to appoint a medical expert to assist both the Court and trier of fact to understand evidence and or to determine the medical facts in issue. Plaintiff offers the following in support:

1. Plaintiff is pro se and he sees pleading leniency pursuant to Haines v. Kerner, 404 U.S... 519 (1972).

2. The Court granted Plaintiff in forma pauperis status on 6/23/06 and Plaintiff's complaint is non-frivolous.

3. Plaintiff's complaint primarily concerns –but are not limited to- the deliberate indifference to his serious medical needs in violation of his constitutional rights.

4. Plaintiff's complaint raises four primary serious medical diseases/conditions[1] of which he seeks immediate medical care. They are as follows:

    I.    Thyroid disease (See I. items 3-16 of Declaration (Decl), of which requires uninterrupted Chronic-care medications (CC Meds);
    II.    Ruptured Anterior Cruciate Ligament (ACL) (See II items 17-40 of Decl), of which will not heal on its own and requires reconstructive surgery, etc;
    III.    Periodontal disease (See III. Items 41-56 of Decl), of which requires immediate teeth scrapings for active perio-infections; requires continuing/consistent anti-perio dental care (E.g. semi-annual scrapings); and requires replacement teeth for the four permanently lost teeth (i.e. dentures).
    IV.    Substandard temporary composite repair to broken tooth (See IV. Items 57-67 of Decl), of which requires a crown and root canal.
    (See Memorandum in Support of TRO/PI –incorporated herein- at Statement of Facts).

5. Plaintiff avers appointment of a medical expert is necessary because the issues of fact of which the Court and or jury must decide will likely center on whether each of the above diseases/conditions are objectively serious medical conditions, which would require medical care.

ARGUMENT

6. Rule 702 of the Federal Rules of Evidence provides, in pertinent part, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert... may testify thereto...." Fed. R. Evidence 702. Moreover, F.R.E. 706 provides for appointment of an independent expert.

---

[1] Plaintiff does not limit/waive any additional claims that may also arise from the facts thus stated or that may discovered in the future.

/

7.    Although it appears that the Third Circuit has yet to address the issue, other federal courts have addressed the issue of whether, and when, an expert witness should be appointed in a pro se deliberate indifference case. See Helling v. McKinney, 509 U.S. 25, 113 S.Ct. 2475 (1993). (Suggesting the appointment of expert witness on the health risks of environmental tobacco smoke).

8.    Plaintiff's complaint and TRO/PI raises complicated primary (e.g. physical) and secondary (e.g. emotional and psychological) health risks, which are associated with his several medical diseases/conditions. For example, his thyroid disease (i.e. a chronic condition) has causes the following primary health risks:

> Thyroid disease: Diagnosed as a chronic disease —will never heal- Plaintiff's hypothyroidism progressively worsens over time and requires periodic lab work to determine when the CC Meds dosage must be increased in order to manage Plaintiff's chronic symptoms. Moreover, these CC Meds are of the type that must be taken uninterrupted (i.e. daily and about the same hour) for them to be effective in managing the disease's common chronic symptoms. Plaintiff experiences the following chronic symptoms as a direct result of the ongoing and pervasive CC Meds interruptions (CCMNI):
> A.    Chronic fatigue (physical and mental);
> B.    Dangerous cholesterol production;
> C.    Dangerous and painful inflammation (e.g. in blood stream, face, extremities, etc.);
> D.    Disfigurement from Alopecia (i.e. unnatural hair loss about head, face, and body);
> E.    Impairment of normal daily functions (See D.I. 15).
> (See Memorandum of TRO/PI at Statement of Facts)

Indeed, a direct and primary result of the ongoing and pervasive Chronic-care medication interruptions (CCMI) is a resurgence of these chronic symptoms of which cause the above health risks and endanger Plaintiff's health and well being.

Granted, Plaintiff was diagnosed by a doctor as having a chronic disease —that by definition, it is considered a serious medical condition- and therefore, the Court is warranted in taking judicial notice of the fact. However, absent the Court exercising its discretion and taking judicial notice of this fact, and or absent defendant CMS conceding the serious health risks said chronic symptoms pose for Plaintiff, expert testimony is necessary. Our sister circuit advised that complex medical diagnosis makes expert witnesses necessary. Ledford v. Sullivan, 105 F.3d 354, 358-59 (7th Cir 1997).

Also, regarding complex psychological conditions/effects, the courts have sought expert opinion. Jordan v. Gardner, 986 F.2d 1521, 1525-26 (9th Cir 1993) (en banc); Davis v. Locke, 936 F.2d 1208, 1213 (11th Cir 1991); Davenport v. DeRobertis, 844 F.2d 1310, 1315 (7th Cir 1988), cert. denied, 488 U.S. 908 (1989); Fisher v. Koehler, 692 F. Supp. 1519, 1543-46 (S.D NY 1988) aff'd, 902 F.2d 2 (2d Cir 1990).

Plaintiff, for example, also claimed as a secondary consequence -though no less severe- that repeated exposure of said chronic symptoms have caused him to experience acute anxiety associated with the anticipation of being exposed to a likely CCMI (e.g. historical likelihood greater than 80%), and due to the acute adverse effects on Plaintiff's mind/body of said chronic symptoms, Plaintiff also suffers the following:

  A. Anxiety,
  B. Depression,
  C. Mental and Emotional Distress,
  D. Humiliation, and
  E. Damaged reputation or professional and social standing.

  For example, Plaintiff's anxiety is causing dangerous spikes in his blood pressure and all its associated suffering that comes with hypertension. (E.g. frequent debilitating headaches). This physical effect was absolutely foreign to Plaintiff prior to CMS exposing him to said pervasive/ongoing CCMI(s). Also, Plaintiff's anxiety and depression precludes him form realizing any meaningful sleep (e.g. average three hours a night), and it aggravates his chronic fatigue. Moreover, the depression and humiliation has had a profound adverse effect on Plaintiff's personality and habits. Indeed, Plaintiff has mutated from his once full of life and energy demeanor, and his once responsible and caring extrovert personality to a withdrawn, lifeless introvert. Plaintiff, for example, has been forced to limit or even discontinue his long held and important social and civic activates, and or healthy relationships:

  A. 50 % reduction in his regularly held attendance at Catholic Mass Services;
  B. 50 % reduction in his volunteer work with Saint Vincent DePaul Society (active member 2001-present);
  C. 80 % reduction in assisting his peers in need with law work, etc;
  D. 50 % reduction in maintaining healthy relationships via letter writing, etc;
  E. Withdrew as Lead Trainer with Alternatives to Violence Project (AVP) (Trainer for nearly ten years);
  F. Withdrew name from the limited consideration of coveted HVAC vo-tech class;
  G. Unable to attend all of his family's scheduled visits, though, he considers this most important; and
  H. Generally become withdrawn and unable to nurture healthy social relationships.

Indeed, the severe physical and psychological adverse effects of Plaintiff's untreated/under treated thyroid disease poses likely and substantial health risks for Plaintiff, and if he is unable to persuade the Court of these facts for lack of an expert medical opinion, then Plaintiff will suffer likely and irreparable prejudice. Moreover, expert medical testimony will aid the Court in gaining a full and informed understanding of the serious nature of Plaintiff's various diseases/conditions for the imperative purpose of deciding the factual issues raised in the TRO/PI.

9. Because the ruptured ACL, periodontal disease, and broken tooth have resulted in permanent injuries already, the Court should have no difficulty in finding them sufficiently serious for the purpose of ordering the injunctive relief prayed for; however, for a jury, expert opinion will provide the specialized knowledge to assist the trier of fact to understand the evidence or in deciding an fact issue in accord with the purpose of F.R.E. 702. Especially with the area of the classic and or obvious symptoms of the ACL injury, the specialized knee exams, and when and why they would be warranted in any legitimate exam. This is specialized knowledge that is critical to whether First Correctional Medical knew or should have known to perform specialized knee exams and a MRI, and whether FCM shunned the acceptable professional norms absent a legitimate medical factor. Without expert opinion on this fact issue, the trier of fact will be deprived of essential specialized information necessary for them to make an informed decision.

10. Indeed, prison medical expert Dr. Janet Kramer of Wilmington, DE recently aided the Federal and State governments conclude their pursuit to uncover substantial practices, etc. that were likely to pose serious health risks or

violate the civil rights of prisoners here in Delaware. Dr. Kramer's familiarity and expertise would also aid this Court and the jury with these specialized fact issues, of which Plaintiff's health and well being hang in the balance. Appointment would likely serve judicial economy in this respect.

11. Moreover, concerning defendant CMS (i.e. professional contracted health care provider and as such is a state official), is likely to present expert testimony. The courts have stated that when defendants utilize experts to prove there case, the denial to a plaintiff is manifest injustice. Parham v. Johnson, 126 F.3d 454, 460 (3d Cir 1997). Experts are required t give opinion on matters in response to or independent of state official opinions. Cabrales v. County of Los Angeles, 864 F.2d 1454, 1460 (9th Cir 1988), vacated, 490 U.S. 1087 (1989), reinstated, 886 F.2d 235 (9th Cir 1989), cert. denied, 494 U.S. 1091 (1990); Lisco v. Warren, 901 F.2d 274, 275-76 (2d Cir 1990).Indeed, examination and cross examination of expert witnesses is one of the more complicated aspects of trial practice and is beyond the scope of a pro se prisoner to defend against. (Helling v. McKinney, supra, at _____).

## CONCLUSION

WHEREFORE, Plaintiff prays that this Honorable Court appoints a medical expert for any of the following compelling reasons:

- To aid the Court in gaining a full and informed understanding of Plaintiff's serious medical diseases/conditions for its decision regarding TRO/PI or motion to dismiss fact issues;
- To serve as an independent opinion to state officials experts;
- To assist the trier of fact with specialized knowledge necessary to understand the facts/evidence; and
- To serve judicial economy and ensure manifest justice.

_____  
David Williamson, SBI # 183022  
1181 Paddock Rd.  
Smyrna, DE 19977

1-9-07  
Date

CERTIFICATE OF SERVICE

I, David Williamson, the pro se plaintiff in C.a. No. 06-379-SLR, do hereby declare under penalty of perjury that I have caused to be delivered a true and correct copy of the following:

1. Motion for Appointment of an Expert Witness

2. N/A

By placing same in a U.S. postal receptacle on this ___9th___ day of ___January___ 200_7_.

addressed to the following parties:

Correctional Medical Services, et al
C/O Amy A. Quinlan, Esq.
Morris James LLP
500 Delaware Ave., Suite 1500
Wilmington, DE 19801-1494

First Correctional Medical, Inc.
C/O _____          N/A
205 W. Giaconda Way
Suite 115
Tucson, AZ 85704-4350

David W
David Williamson
D.C.C.
1181 Paddock Rd
Smyrna, DE 19977