# Exhibits

II- A 1-17  Deputy Warden Pierce Re-opens  MG # 21201

II- B 1-11  Final Appeal Package for MG # 21201

II-C 1-8  Final Appeal Package Form for # 59170

II-D 1-8  Final Appeal Package Form for # 72883

II- E 1-2  Aff.t  10/25/06

II– Exhibit-A



STATE OF DELAWARE
DEPARTMENT OF CORRECTION
**OFFICE OF THE DEPUTY WARDEN**
DELAWARE CORRECTIONAL CENTER
1181 Paddock Road
SMYRNA, DELAWARE 19977
Telephone: (302) 653-9261
Fax: (302) 659-6668

### MEMORANDUM

TO:     IM David Williamson SBI# 183022 W1 L12

FROM:   Deputy Warden Pierce

DATE:   October 16, 2006

RE:     Grievance
_____

I received your letter dated September 12, 2006, regarding a grievance. Grievance #21201 is being accepted.

DP/dc
Attachment
cc:     File

A-1

David Williamson
183022, W-1-L-12
September 12, 2006

RECEIVED

SEP 1 3 2006

DEPUTY WARDEN I

Deputy Warden Pierce
RE: Reprisal Grievance Agreement

Deputy Warden Pierce:

    Greetings. As per our discussion/agreement, I am providing three medical grievances (MGs) (copies of originals) that were improperly rejected/obstructed by the IGC without ever processing them. You had already identified MG # 23193 & # 43863 (broken tooth & medical records respectively) so I did not include them herein. I am encouraged that these MGs will finally be re-opened and heard. They are as follows:

    1. MG # 21201 (11-14-05) grieved the intentional denial of a needed chronic-care clinic. It is four pages and it also includes an addendum dated 11-30-05 that identified "Retaliation" (i.e. reprisal) by a subsequent but separate incident of the same nature by the same CMS personnel. The IGP 4.4 specifically allows separate grievances for "individual incidents," but because the IGC on a prior occasion summarily rejected MG# 17197 as a "duplicate" of MG# 15453 — despite the fact that # 17197 grieved a subsequent and separate incident, it was necessary for me to file said addendum to avoid another IGC rejection. Moreover, the 11-30-05 incident is continuous and related to the 11-14-05 incident, and it is appropriate to incorporate the addendum so that CMS receive full notice and a fair opportunity to reply to the claims. I am not opposed to either incorporation or alternatively processing the 11-30-05 incident as a separate MG, I just wished to avoid IGC rejection/obstruction. If however, a separate case number is preferred assign me a case number and I will reproduce the 11-30-05 incident on another MG form and also complete a separate "Action Requested" since the addendum had originally relied on the 11-14-05 MG # 21201.

    Subsequently, MG # 21201 was improperly rejected due to my

-/-    A.2

damages requested, but also requested 2) CMS personnel training and 3) correction of the medication interruptions. The addendum was also rejected in sympathy with MG # 21201's rejection. (See attachment A). I filed a timely appeal to the Bureau Chief (12-19-05), but no decision was ever rendered.

2. MG(s) 11-29-05 (one for an acute knee injury, etc.) and the other 11-29-05 (for the lose of two teeth and CMS's policy/custom of refusing to provide timely and adequate dental treatment) were both rejected for phantom deficiencies as a package; however, improperly because the IGC stated that the "Action Requested" sections were incomplete. This was erroneous. Both sections were completed at the second page - identicle to my prior filed and rejected MG # 21201, and the IGC even stamped "Received...." under both completed sections! Clearly they were improperly rejected/obstructed.

Additionally, because my prior MG # 21201 had been improperly rejected due to the "damages" request, I purposely omitted from both 11-29-05 MG(s) the offensive damages requests in the hope to avoid more improper rejections, but even this strategy failed. Nevertheless, a grievant need not waive a claim of right just to have his MG processed and besides this particular matter has been resolved. Thus, to preserve my legal claims, I have added a request for damages to the other requests for specific treatment for CMS to consider. (See att. B).

Consequently, I filed a "Reprisal Grievance" against the IGC's adverse actions directly to the W/WD pursuant to IGP 4.4, but it too was rejected. I then filed a timely final appeal to the Bureau Chief (1-13-06) and it too has never received a final decision. Over nine months have elapsed since filing these three MG(s), and well over 180 days have elapsed since I filed their final appeals, and I have never received any decision or corrective action. This is why I filed the latest, albeit reluctantly, Reprisal Grievance against DOC Officials - an act of final desperation.

I am encouraged now, however, that there improperly rejected MG(s) will finally be processed and exhausted, etc. I do respectfully request your consideration however concerning the hearings: specifically because of the already excessive delay, perhaps it would be warranted to hold joint hearings to expidite the matter?

Lastly, I greatly appreciate that this matter has received your personal attention Mr. Pierce; nor do I take for granted the valuable time you have invested to resolve this matter.

Thank you

Dave W

(Internal Attachment)

# EXHIBIT A

FORM #585

## MEDICAL GRIEVANCE

FACILITY: $\underline{D.C.C.}$

INMATE'S NAME: $\underline{David\ Williamson}$

HOUSING UNIT: $\underline{W \cdot 1\ (L-12)}$

DATE SUBMITTED: $\underline{11-14-05}$

SBI#: $\underline{00183022}$

CASE #: $\underline{2120/}$

////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////

## SECTION #1

DATE & TIME OF MEDICAL INCIDENT: $\underline{11-11-05}$

TYPE OF MEDICAL PROBLEM:

Nov. 11, 05 (10:45 Am) grievant - a chronic-care patient - was arbitrarily denied a "Chronic-care Clinic" by Ms. Ioma. The "clinic" was scheduled in response to a letter of complaint/notice that grievant filed 11-9-05 (A-1). Grievant inquired why he was being denied the clinic and Tol Ioma stated: "I'm not seeing you because you didn't come when you were supposed to." Grievant stated that he was not responsible for being tardy because the list posted in the housing unit did not include his name, but Ioma replied "I don't care, you will have to be rescheduled." (continued on page 2).

GRIEVANT'S SIGNATURE: $\underline{David\ W}$         DATE: $\underline{11-14-05}$

ACTION REQUESTED BY GRIEVANT: $\underline{(See\ page\ 2)}$

DATE RECEIVED BY MEDICAL UNIT: _____

**RECEIVED**

NOV 2 1 2005

Inmate Grievance Office

NOTE: EMERGENCY MEDICAL CONDITIONS WILL TAKE PRIORITY. OTHERWISE, MEDICAL GRIEVANCES WILL BE ADDRESSED AT THE WEEKLY MEDICAL COMMITTEE MEETING.

$\left(\ P_{age}\ 1\ \right)\left(\ EX-A-1\ \right)\left(\ pg\ 1\ \right)$

$A-4$

FORM #585

MEDICAL GRIEVANCE

$2120l$

FACILITY: D.C.C.

INMATE'S NAME: David Williamson

HOUSING UNIT: W·1 L-12

DATE SUBMITTED: 11-14-05

SBI#: 00183022

CASE #:_____

//////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////

SECTION #1

DATE & TIME OF MEDICAL INCIDENT: 11-11-05 (page 2)

TYPE OF MEDICAL PROBLEM:

(See attached A-2 "Offender Activity Schedule" page 1 of 1) Grievant then inquired: "So, I'm going to be denied my chronic-care clinic and be punished because someone else omitted my name from the sick call list, which is not my fault or responsibility?" Ioma nodded in the affimative and restated that I would be rescheduled. Grievant is concerned with avoiding yet another med interruption and filed the Nov. 9, 05 notice because CMS had already failed to schedule him in within the 90 days cycle. Clearly denying treatment, wrongfully punishing patients, and constructing malicious obstacles is more important to CMS and its personnel ✓than correcting on-going problems and providing adequate treatme.

GRIEVANT'S SIGNATURE: David L~            DATE: 11-11-05

ACTION REQUESTED BY GRIEVANT: Because this behavior is blatent evidence of CMS's deliberate indifference to Mr. Williamson's serious medical needs, and because the grievance process has failed to correct this in-difference grievant requests: monetary damages, cms personnel training, & a timely correction to the repeat med interruptions. (Damages will be negot-iated at hearing or via cms counsel. ✓)

DATE RECEIVED BY MEDICAL UNIT: _____

NOTE: EMERGENCY MEDICAL CONDITIONS WILL TAKE PRIORITY. OTHERWISE, MEDICAL GRIEVANCES WILL BE ADDRESSED AT THE WEEKLY MEDICAL COMMITTEE MEETING.

RECEIVED
NOV 2 1 2005
Inmate Grievance Office

(Page 2) (EX. A-1) (pg 2)

David Williamson
SBI # 183022
W-1, L12
November  ?  , 2005

Mrs. Plante

Re: Chronic-care Medication Lapses/Refill Order

Dear Mrs. Plante:

Greetings, I am writing because my current 120 day allotment of chronic-care medications are due to end on 11/15/05; however, I have not been scheduled in for a Chronic-care "Refill" visit as is normal. I am concerned with avoiding another interruption in receiving my thyroid meds. In fact, since my last "Refill" order in July 05, I have experienced **four consecutive** med interruptions. This is in the wake of me recently exhausting the Medical Grievance procedure and receiving assurances that this problem would be corrected. It appears that my timely Appeal was indeed appropriate to challenge these hollow promises.

These repeat lapses cause an unnecessary resurgence in common symptoms (e.g. inflammation & hive-like reactions, chronic-fatigue, high cholesterol). For example, I suffer painful inflammation of my extremities (hands & feet, and face) as a result. This has left me in such pain I can barely walk, and I was bed-ridden just recently over the weekend. Moreover, it is now recognized that high levels of inflammation causes damage to the coronary system and is a major contributor to heart disease, yet I suffer this painful and dangerous inflammation on a regular basis due to repeat med interruptions. Also, I suffer chronic fatigue –as is common with this disease- that adversely affects my normal daily functions (e.g. inability to focus on work & college studies) and an inability to pursue and promote a healthy life style (e.g. engage in meaningful & necessary exercise etc). Then there is the incidence of high cholesterol, also common with my ailment. This concerns me greatly, because alone, they are difficult enough to live with; however, the combined effects of the inflammation, inability to consistently promote health, and build-up of cholesterol conspire to degrade and permanently damage my health unnecessarily. As you are aware, this type of medication is required to be taken consistently without lapses or its effectiveness is hindered, and every time I experience a lapse I suffer the pain of the inflammation and complications of the other common symptoms. I simply wish to avoid needless suffering.

Moreover, I find it troubling that the 120 day dosage allotment was instituted to avoid lapses by providing an additional 30 day med card as a cushion greater than the 90 day intervals between the Chronic-care "Refill" visits, yet the last refill interval and this one have both exceeded the 90 day cycles. This defeats the purpose entirely and has aggravated the problem of interruptions.

Still more troubling is that, of the most recent four consecutive med lapses I gave notice prior to the interruptions (e.g. Mrs. Plante, Dr. Alie, and CMS Pharmacy), however, I still experienced the med lapses. This is disturbing because on two of those occasions the pharmacy actually signed in and possessed these meds several days before dispensing them to me, and on the others the pharmacy carried Stock Supplies yet failed again to dispense them. Despite my notices, no one cared to follow up and see to it that when these meds were checked in at the pharmacy, that I am provided them; this behavior unnecessarily prolonged the interruptions. This is unacceptable.

In closing, I request that assistance from CMS personnel with avoiding yet another interruption. Also, since the Medical Grievance hearing was abused by CMS personnel and has clearly failed to rectify this on-going problem, I would request some follow up from the parties listed below.

David Williamson
c.c. Nikita Robins, DCJ
c.c. Thomas Carroll, Warden of DCC
c.c. Dr. Alie

$A\text{-}1$  $(Ex\cdot A\text{-}1)(pg\,3)\text{----}$

$A\text{-}6$

2/2/01

### Instructions for Submitting a Regular Grievance

Inmates are required, per DOC Procedure 4.4 [Inmate Grievance Procedure] to attempt to resolve complaints prior to filing a regular grievance. Grievances are to be submitted within seven (7) days from the date of the occurrence or incident or within seven days after the inmate became aware of the incident. The grievance is to be placed in the grievance box located in each housing unit.

Only one issue per grievance form will be addressed. If the grievance is submitted on a weekend or a holiday, it will be received during the next working day.

Return of Unprocessed Grievance

Intake Action: This Grievance Form is being returned to the inmate under the provisions outlined in DOV Procedure 4.4 "Inmate Grievance Procedure" for the following reason(s) :

_____ Vulgar/Abusive or Threatening Language. The Language that is unacceptable has been highlighted. The grievance may be resubmitted omitting this language.

_____ Non-Grievable. This issue has been defined as non-grievable in accordance with DOC Policy 4.4. These procedures have their own appeal process that must be followed.

___ Disciplinary Action    ___ Parole Decision    ___ Classificatbn Action

√ Request. Requests are not processed through the grievance procedure. Please correspond with the appropriate Office to secure the information that is requested.

_____ Duplicate Grievance(s). This issue has been addressed previously in Grievance # _____.

_____ Original Grievances must be submitted to the Inmate Grievance Chairperson. Photocopies are not accepted.

_____ Inquiry on behalf of other inmates. Inmates cannot submit grievances for other inmates.

_____ Expired Filing period. Grievance exceeds seven (7) days from date of occurrence.

IGC IS NOT A COURT AND CANNOT
AUTHORIZE MONETARY DAMAGES

Inmate Grievance Chairperson

12-14-05
Date

Received 05
12.16

$\left( EX-A-1 \right)$ $\left( pg.5 \right)$

A-7

TO: Ms. L. Merson, IGC

From: David Williamson, 00183022, W-1, L-12

Re: Pending Medical Grievance    (Addendum to MG 21201)

Date: 11-30-05


Ms. Merson, IGC:

Grievant filed a Medical Grievance (dated 11-14-05) due to the arbitrary and capricious denial of a Chronic-care clinic, which evidences their deliberate indifference to grievants known serious medical needs/condition. This grievance is still pending and no response or informal hearing has occurred as yet.

Subsequent acts, however, that are directly related to the 11-11-05 incident (depicted in said pending 11-14-05 MG) evidence and establish a pattern of continued and "on-going" deliberate indifference to grievant's serious medical needs, as well as actual malice and retaliation towards grievant for his exercising a protected right to seek redress.

Because the facts below are continuing acts directly related to the above incident/grievance, filing another grievance would be considered a "duplicate" and dismissed like grievant's 8-30-05 Emergency Medical Grievance was. Therefore, grievant would request that this information be incorporated as an addendum to the pending MG. No prejudice will ensue because it has not been heard yet, moreover, respondents health care provider must be made aware and given an opportunity to correct this behavior.

The following facts are in support:

1. Grievant - a Chronic-care patient - has experienced no less than four consecutive chronic-care medication lapses between July and November 05, and the health care provider and specifically Dr. Alie and Mrs. Plante have been placed on Notice that these repeat and on-going lapses impair grievant's normal daily functions, cause him harm, suffering, and an inability to promote good health unnecessarily.

2. Health care provider has failed to address and or acknowledge the on-going problem, failed to correct the problem, and does intentionally exacerbate the problem with full knowledge of the resulting harm.

3. Also, when grievant is erroneously scheduled for a medical visit and or scheduled and denied being actually seen, he suffers a day's wages and a loss of good-time credits unnecessarily. This has occurred three times during the July to Nov. 05 period.

4. Moreover, CMS has failed to adhere to pledges made a grievance hearings "... follow medication administration system to avoid repeat of lapse in medication" (July 05 hearing); failed to schedule grievant for his Chronic-care Clinic within 90 days and arbitrarily and capriciously denied him this clinic, which is needed to "Refill" the med prescription.

5. Grievant filed the 11-14-05 Medical Grievance against Ms. Ioma (sp?) for the 11-11-05 denial of clinic and she has subsequently denied another and retaliated against grievant for same.          A.9

6. Grievant's name appeared on the medical schedule for Chronic-care Clinic again on 11-29-05 and while waiting grievant witnessed both Mrs Plante and Ioma present.

7. Grievant inquired with the officer present about his clinic and the officer returned stating: "They're not going to see you today - you can go." Grievant replied that this clinic was already a reschedule and well past the normal 90 days interval at over 120 days, and that grievant was about to run out of meds.

8. The officer conversed with a nurse in the presence of grievant and she stated: "She's not here - he will just have to come back." "What about tommorow?" inquired the officer. "She's out tommorow too, maybe later in the week," the nurse finished.

9. As stated, Ioma was present and it was she who grievant was schedule with for his denied 11-11-05 clinic of which he grieved her actions specifically. Yet Ioma was present again on 11-29-05 and grievant was again denied his scheduled Chronic-care clinic.

10. Moreover, Mrs Plante is on Notice for the deliberate indifference claims regarding meds. lapses and was also present.

11. These acts will result in yet another intentional med lapse and evidence a continuing pattern and culture of deliberate indifference ... do illustrate intentional acts of malice and retaliation.

David W——        12-1-05        c.c. Tom Carroll, Warden

# EXHIBIT B

**FORM #585**

**MEDICAL GRIEVANCE**

FACILITY: DCC

DATE SUBMITTED: 11-29-05

INMATE'S NAME: David Williamson

SBI#: 183022

HOUSING UNIT: W·1

CASE #:

///////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////

SECTION #1

DATE & TIME OF MEDICAL INCIDENT: On-going

TYPE OF MEDICAL PROBLEM:

Grievant incurred an acute knee injury (right leg) 7-26-04 and was forced to file a grievance due to nontreatment (e.g. #7463) Eventually an order for an MRI was placed, however, countermanded by Dr. VAlie. Grievant was told he would be rescheduled in six months for a follow up examination to determine whether the injury was temporary or more permanent - which would require undisclosed "other" treatment. Grievant complained of a grinding & shifting knee, and which will buckle out without warning following a sharp pain, however, after a one-to-two minute prodding examination, (Cont. 2)

GRIEVANT'S SIGNATURE: See p.2                    DATE:

ACTION REQUESTED BY GRIEVANT:

DATE RECEIVED BY MEDICAL UNIT:

(B-1)

RECEIVED
DEC 1 3 2005

Inmate Grievance Off. n

**NOTE: EMERGENCY MEDICAL CONDITIONS WILL TAKE PRIORITY, OTHERWISE, MEDICAL GRIEVANCES WILL BE ADDRESSED AT THE WEEKLY MEDICAL COMMITTEE MEETING.**

**FORM  #585**

**MEDICAL GRIEVANCE**

FACILITY: ___DCC___

INMATE'S NAME: David Williamson

HOUSING UNIT: ___W-1___

DATE SUBMITTED: _11-29-05_

SBI#: ___183022___

CASE #: _____

( Cont. p. 2 )

///////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////

SECTION #1

DATE & TIME OF MEDICAL INCIDENT: _On-going_

TYPE OF MEDICAL PROBLEM:

_was told by Dr. Alie that I would be rescheduled. Grievant also stated that his normal daily functions were being adversely effected due to the pain and instability of the injured knee. To date the promised follow up has never occurred, however, grievant's knee has never healed. In fact, his knee routinely buckles out without warning upon standing or while standing - following a sharp pain, and when grievant bends down, the knee dislocates and must be gingerly popped back in. Grievant should not have to incur pain & permanent injury before he can receive even appropriate exploratory examination and/or treatment. A custom of nontreatment has been employed._

GRIEVANT'S SIGNATURE: _David W_ ———    DATE: _11-29-05_

ACTION REQUESTED BY GRIEVANT: _Because grievant has incurred a permanent knee injury and has received assurances via Dr. Alie that follow up would be realized, but never did (merely a stalling technique), grievant requests a thorough examination by an outside specialist and MRI. Also provide monetary damages for the deliberate indifference._

DATE RECEIVED BY MEDICAL UNIT: _____

RECEIVED
DEC 1 3 2005
Inmate Grievance Ctr...

**NOTE: EMERGENCY MEDICAL CONDITIONS WILL TAKE PRIORITY. OTHERWISE, MEDICAL GRIEVANCES WILL BE ADDRESSED AT THE WEEKLY MEDICAL COMMITTEE MEETING.**

1 ○

## FORM #585

## MEDICAL GRIEVANCE

FACILITY: D.C.C.

INMATE'S NAME: David Williamson

HOUSING UNIT: W-1, L-12

DATE SUBMITTED: 11·29·05

SBI#: 183022

CASE #:

///////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////

SECTION #1

DATE & TIME OF MEDICAL INCIDENT: On-going

TYPE OF MEDICAL PROBLEM:

On or about March 2005, grievant incurred a permanent injury via the extraction of two teeth (#28 & #29). This permanent injury was the final and culminating result of multiple and re-occurring periodontal gum infections of which knowingly went untreated and grossly undertreated by dental staff. Specifically, for example, an infection would occur, however, grievant was routinely denied the standard teeth cleaning, which is one of the first responses to such gum infections and told that I would have to lose those teeth in the infected area. (Cont. p. 2)

GRIEVANT'S SIGNATURE: see p. 2                DATE:

ACTION REQUESTED BY GRIEVANT:

DATE RECEIVED BY MEDICAL UNIT:

(C-1)

RECEIVED
DEC 13 2005

NOTE: EMERGENCY MEDICAL CONDITIONS WILL TAKE PRIORITY. OTHERWISE, MEDICAL
GRIEVANCES WILL BE ADDRESSED AT THE WEEKLY MEDICAL COMMITTEE MEETING.

**FORM #585**

**MEDICAL GRIEVANCE**

FACILITY: ___O.C.C.___                    DATE SUBMITTED: _11-29-05_

INMATE'S NAME: _David Williamson_         SBI#: _183022_

HOUSING UNIT: _W-1, L-12_                  CASE #:_____

*(Cont. p. 2)*

**SECTION #1**

DATE & TIME OF MEDICAL INCIDENT: _On-going_

TYPE OF MEDICAL PROBLEM:

Grievant was also told that the dental facilities could not do cosmetic teeth scrapings for the large O.C.C. population, however, grievant pointed out that treatment for active and recurring periodontal gum infections is not cosmetic but necessary and standard treatment for my known serious medical condition. Finally, after grievant threatened litigation, I was told that I would be placed on a "waiting list," and that I should not expect a cleaning very soon due to the lengthy line. Nearly 18 months has passed since grievant was allegedly placed on said list. Instead of timely & adequate treatment a custom is employed to result in extractions.

GRIEVANT'S SIGNATURE: _David W._          DATE: _11-29-05_

ACTION REQUESTED BY GRIEVANT: _Immediate teeth cleaning, and grievant needs to be placed on a semi-annual teeth cleaning schedule to treat and combat the on-going and recurring periodontal gum infections. Also provide monetary damages for the deliberate indifference._

DATE RECEIVED BY MEDICAL UNIT: _____

RECEIVED
DEC 1 3 2005
Inmate Grievance Office

**NOTE: EMERGENCY MEDICAL CONDITIONS WILL TAKE PRIORITY. OTHERWISE, MEDICAL GRIEVANCES WILL BE ADDRESSED AT THE WEEKLY MEDICAL COMMITTEE MEETING.**

## Instructions for Submitting a Regular Grievance

Inmates are required, per DOC Procedure 4.4 [Inmate Grievance Procedure] to attempt to resolve complaints prior to filing a regular grievance. Grievances are to be submitted within seven (7) days from the date of the occurrence or incident or within seven days after the inmate became aware of the incident. The grievance is to be placed in the grievance box located in each housing unit.

Only one issue per grievance form will be addressed. If the grievance is submitted on a weekend or a holiday, it will be received during the next working day.

Return of Unprocessed Grievance

Intake Action: This Grievance Form is being returned to the inmate under the provisions outlined in DOV Procedure 4.4 "Inmate Grievance Procedure" for the following reason(s) :

_____ **Vulgar/Abusive or Threatening Language.** The Language that is unacceptable has been highlighted. The grievance may be resubmitted omitting this language.

_____ **Non-Grievable.** This issue has been defined as non-grievable in accordance with DOC Policy 4.4. These procedures have their own appeal process that must be followed.

_____ Disciplinary Action        _____ Parole Decision        _____ Classification Action

_____ **Request.** Requests are not processed through the grievance procedure. Please correspond with the appropriate Office to secure the information that is requested.

_____ **Duplicate Grievance(s).** This issue has been addressed previously in Grievance # _____.

_____ **Original Grievances must be submitted to the Inmate Grievance Chairperson.** Photocopies are not accepted.

_____ **Inquiry on behalf of other inmates.** Inmates cannot submit grievances for other inmates.

_____ **Expired Filing period.** Grievance exceeds seven (7) days from date of occurrence.

*You NEED To COMPLETE ACTION REQUESTED SECTION OF GRIEVANCE FORM.*

Inmate Grievance Chairperson

12·22-05
Date

GRIEVANT REC'D
12-27-05 VIA
IN House Mail

A-16

Ⅱ — Exhibit-B

## Grievance Appeal Form

This must be completed and returned to the IGC within 3 days of receipt of the
Warden/Designee/MGC Decision. This form is to be returned via the Grievance Box.
This form is to be used Only in the event of a decision appeal. Please specify the reason for the appeal in the space below.

Grievant: David Williamson         SBI#: 183022

Housing Unit: W-1 L-12              Case#: 21201

Date: 12-20-06                      Due Date: 12-27-06

Grievant appeals the grossly mismanaged handling of his Reprisal
Grievance (RG) for: (1) cms / DOC repeatedly violated IGP 4.4 (4.4);
(2) DOC failed to monitor grievance compliance in related or nearly
identicle med grievances (MG) or RGs; and DOC's repeated failures
/refusals to meaningful corrective action to CMS's well documented
deliberate indifference and acts of prohibited reprisal has and
continues to expose grievant to repeat / identicle violations
of his Constitutional Rights. (Grievant incorporates herein his
properly / timely filed 11-21-06 Appeal #21201 at Exh. A 1-6 and
his 11-29-06 letter regarding the continued abuse of the 4.4
procedure and Grievant's rights at Exh. B). Moreover, the
reprisal and abuse of 4.4 continues unabated, because the RGC
re-hearing of 12-20-06 was still conducted before cms rep.
G. Eller and IGC McCreanor dispite prior claims that it would be
inappropriate and unnecessarily rejecting Grievant's 11-21-06 Appeal.
Indeed, Grievant's properly filed 11-21-06 Appeal was rejected in
order to force him through more of the same redundant and
abusive hoops; however, to still deny Grievant the relief
requested. (Continued at page 2).

Dave W
INMATE SIGNATURE

12-21-06

II B-1

If you need additional space, attach 8.5" X 11" size sheets of paper.

## Grievance Appeal   # 21201   p. 2

More importantly is that CMS is permitted to continue (a) to refuse to correct the repeat Chronic-care medications interruptions (CCMI) — which cause Grievant to needlessly suffer a resurgence of chronic symptoms that impairs his normal daily functions and poses a substantial threat to his future health; and (b) to intentionally subject Grievant to prohibitted acts of reprisal (e.g. See 72883 where CMS falsified medical records of providing a Clinic when it had not in direct response to EMG # 59170 — which of course grieved the on going CCMI(s)).

Thus, CMS has demonstrated a clear history of deliberate indifference to Grievant's serious medical needs and of its repeat acts of reprisal against Grievant in direct response to his medical grievance activity.

These facts are well documented over an extensive time period, and they are so obviously likely to violate Grievant's Constitutional Rights, that DOC Officials —involved with the grievance procedure / positioned to make corrections — (i.e. S. Taylor, P. Howard, T. Carroll, & McCreanor) are required to take timely corrective action.

12-21-06
DATE

II·B·2

David W———
David Williamson

21201

β

# Grievance Appeal Form

This must be completed and returned to the IGC within 3 days of receipt of the
Warden/Designee/MGC Decision. This form is to be returned via the Grievance Box.
This form is to be used Only in the event of a decision appeal. Please specify the reason for the appeal in the space below.

Grievant: David Williamson                SBI#: 183022

Housing Unit: W-1, L-12                    Case#: 21201

Date: 11-14-06                             Due Date: 11-21-06

Grievant appeals the grossly mismanaged handling of this Reprisal
Grievance (RG) for the following reasons: (1) DOC repeatedly violated IGP
4.4 (4.4); (2) DOC failed to monitor grievance compliance in related or
nearly identicle medical grievances (MG) / Reprisal Grievances (RG); (3) DOC's
repeated failures and refusals to effect meaningful corrective action
exposed Grievant to repeat / identicle violations of his Constitutional
Rights (CR) (eg. deliberate indifference to Grievant's serious medical
needs by denying Grievant his needed Chronic-care Clinics (Clinic),
which subsequently cause unnecessary / avoidable Chronic-care Medication
Interruptions (ccmI); and for exceeding the 180 day Grievance Resolution
time period of 4.4 exposing grievant to above without a valid peno-
logical objective. The management of 21201 was grossly mismanaged:
For example, Grievant began grieving CMS's ongoing / pervasive
ccmI(s) on 7-15-05 (MG 15453) and subsequently filed MG 21201 due
to a malicious denial of Grievant's Clinic by ThuomA, which was
required to avoid additional ccmI(s). Consequently, Grievant was malicious-
ly denied a second Clinic by Thuoma, but under false pretenses and
Grievant filed an Addendum to 21201 due to Thuoma's clear Reprisal
on 11-30-05. (See A.1 Addendum pp 2-3 items 5-10). Continued at p 2.

**RECEIVED**

**NOV 20 2006**

**Inmate Grievance Office** — 1—

David W

INMATE SIGNATURE

11-17-06

If you need additional space, attach 8.5" X 11" size sheets of paper.

Thereafter, IGC McCreanor improperly and summarily rejected 21201 in violation of 4.4, and Grievant subsequently experienced his fifth consecutive CCMI (28 days, 12-07-05 to 1-04-06) as a direct result. (See B-1, Affid items 2-11). Some eleven months later, however, 21201 was re-opened by DW Pierce 10-16-06 (circa) due to the blatent violations of 4.4 - agreement of RG 64863. Consequently, 21201 was mishandled - it should've never been rejected; Grievant should've never experienced that 28-day CCMI; should've never taken ten months to re-open (exceeding the 180 days mandated for resolution in 4.4; and Grievant should've never experienced CMS's subsequent acts of identicle behavior (e.g. Repeat CCMI and Repeat Reprisal), but Grievant did as a result of this gross mismanagement.

Indeed, Grievant has filed two sets (four total) of nearly identicle grievances covering over a year: MG 15453 (7/05) for CCMI and related MG 21201 for CCMI and Reprisal (1/05); then MG 59170 7/06 for CCMI and related RG 72883 (10/06) for yet subsequent reprisal of 59170. Still CMS continues both the CCMI(s) - eleven to date between 7/05 & 10/06 - and its Reprisal - as noted recently in 72883 where CMS falsified medical records in response to 59170 regarding another CCMI and denied Clinic.

Indeed, this latest CCMI/clinic denial resulted in a 19-day CCMI (10-05-06 to 10-24-06). However, if DOC had not willingly mismanaged MG 21201 & Addendum and then ignored Grievant's pleas/Notices/Direct Appeals, etc. for nearly a year - in violation of 4.4 - then perhaps Grievant would not have been exposed to CMS's repeat deliberate indifference/Reprisals when Grievant employed the grievance process. DOC Officials (S. Taylor, P. Howard, T. Carroll, D.W. Pierce, & IGC McCreanor) have all been placed on Notice, but fail/refuse to correct the matter.

Thus, this behavior has already and still is so obvious/likely to violate Grievant's Const. rights that DOC must take immediate corrective action: Grievant incorperates 72883 herein, and also requests he be supplied all 120 doses of both care Meds at the begining of the cycle to limit potential CCMI(s) to three per year.

Dave W _____

RECEIVED
NOV 20 2006

11-17-06

II B-4

β

TO: Ms. L. Merson, IGC

From: David Williamson, 00183022, W.1, L-12

Re: Pending Medical Grievance    (Addendum to MG 21201)

Date: 11-30-05


Ms. Merson, IGC:

     Grievant filed a Medical Grievance (dated 11-14-05) due to the arbitrary and capricious denial of a Chronic-care clinic, which evidences their deliberate indifference to grievants known serious medical needs/condition. This grievance is still pending and no response or informal hearing has occurred as yet.

     Subsequent acts, however, that are directly related to the 11-11-05 incident (depicted in said pending 11-14-05 MG) evidence and establish a pattern of continued and "on-going" deliberate indifference to grievants serious medical needs; as well as actual malice and retaliation towards grievant for his exercising a protected right to seek redress.

     Because the facts below are continuing acts directly related to the above incident/grievance, filing another grievance would be considered a "duplicate" and dismissed like grievant's 8-30-05 Emergency Medical Grievance was. Therefore, grievant would request that this information be incorporated as an addendum to the pending MG. No prejudice will ensue because it has not been heard yet, moreover, respondents health care provider must be made aware and given an opportunity to correct this behavior.

RECEIVED
NOV 20 2006

B

The following facts are in support:

1. Grievant - a Chronic-care patient - has experienced no less than four consecutive chronic-care medication lapses between July and November 05, and the health care provider and specifically Dr. Alie and Mrs. Plante have been placed on Notice that these repeat and on-going lapses impair grievant's normal daily functions, cause him harm, suffering, and an inability to promote good health unnecessarily.

2. Health care provider has failed to address and or acknowledge the on-going problem, failed to correct the problem, and does intentionally exacerbate the problem with full knowledge of the resulting harm.

3. Also, when grievant is erroneously scheduled for a medical visit and or scheduled and denied being actually seen, he suffers a day's wages and a loss of good-time credits unnecessarily. This has occurred three times during the July to Nov. 05 period.

4. Moreover, CMS has failed to adhere to pledges made a grievance hearings "... follow medication administration system to avoid repeat of lapse in medication" (July 05 hearing); failed to schedule grievant for his Chronic-care Clinic within 90 days and arbitrarily and capriciously denied him this clinic, which is needed to "Refill" the med prescription.

5. Grievant filed the 11-14-05 Medical Grievance against Ms. Ioma (sp?) for the 11-11-05 denial RECEIVED clinic and she has subsequently denied another NOV 20 2006 retaliated

B

6. Grievant's name appeared on the medical schedule for Chronic-care Clinic again on 11:29:05 and while waiting grievant witnessed both Mrs. Plante and Ioma present.

7. Grievant inquired with the officer present about his clinic and the officer returned stating: "They're not going to see you today - you can go." Grievant replied that this clinic was already a reschedule and well past the normal 90 days interval at over 120 days, and that grievant was about to run out of meds.

8. The officer conversed with a nurse in the presence of grievant and she stated: "She's not here - he will just have to come back." "What about tommorrow?" inquired the officer. "She's out tommorow too, maybe later in the week," the nurse finished.

9. As stated, Ioma was present and it was she who grievant was schedule with for his denied 11·11·05 clinic of which he grieved her actions specifically. Yet Ioma was present again on 11·29·05 and grievant was again denied his scheduled Chronic-care clinic.

10. Moreover, Mrs. Plante is on Notice for the deliberate indifference claims regarding meds. lapses and was also present.

11. These acts will result in yet another intentional med lapse and evidence a continuing pattern and culture of deliberate indifference ..., do illustrate intentional act of malice and retaliation.

RECEIVED

NOV 20 2006

Inmate Grievance Office

(A-1)

David W _____        12·1·05        c.c. Tom Carroll, Warden

AFFIDAVIT OF DAVID WILLIAMSON                                      *B*

1. I am the Affiant listed above and do depose and state the following:
2. Affiant is a Chronic-care patient who unnecessarily suffers a resurgence of symptoms related to his chronic disease, which does substantially limit Affiant's "Major Life Activities" (e.g. ability to work, learn, concentrate, and realize meaningful exercise and does pose a likely substantial threat to his future health) due to CMS intentionally causing Chronic-care Medication Lapses (CCML) and or intentionally failing to correct the CCML.
3. Affiant has experienced five consecutive CCML from July 05 to January 06 with the fifth one lasting 28 days (12/07/05 to 1/04/06), however all were unnecessary lapses and otherwise avoidable.
4. In fact, CMS's behavior evinces a deliberate and intent to inflict harm upon Affiant with this recent CCML.
5. CMS stated on 7/28/05 (Medical Grievance (MG)) "CMS will follow the medication administration system (Med System) to avoid a repeat of a lapse in medicine;" and further stated on the subsequent MG of 10/6/05 "Inmate will be placed on the pill call to prevent missed medication." CMS failed to do as stated.
6. According to the Med System, Affiant should have been scheduled in for a Chronic-care Clinic (Clinic) on or about 10/15/05 to renew his Chronic-care Meds (CC Meds), but CMS failed to follow the Med System.
7. Affiant filed Notice to Mrs. Plante: that his Clinic was needed to avoid yet another CCML.
8. Affiant was arbitrarily and capriciously rejected for a Clinic on 11/11/05 by Ioma, and Affiant filed a MG against Ioma (MG # 21201)The Clinic was allegedly scheduled but was not actually listed on the "Activity Schedule" in Affiant's housing unit and Affiant had no way to know.
9. Affiant was maliciously rejected for a subsequent Clinic on 11/29/05 and CMS personnel lied as to the reason for the rejection. Affiant filed an Addendum to the MG #21201 that added "Retaliation" as a claim against Ioma and Mrs. Plante. Copies were mailed directly to the CMS Office, IGC, and to the Warden of DCC.
10. CMS failed to renew Affiant's CC Meds; failed to provide alternate "Stock Supplies" despite having them in the on-site pharmacy; and failed to investigate and correct the continuing problem of CCML and the shocking behavior of its personnel despite having been notified on several occasions and receiving the grievances.
11. Affiant experienced his fifth consecutive CCML that ran from 12/07/05 to 1/04/06, and even here CMS had to be forced to provide his CC Meds by a third party.
12. Specifically, Affiant's mother called the Warden's Office with a complaint on 12/29/05 and received from Dep. Warden Pierce that the current CCML would be corrected.
13. Affiant also filed a Complaint Letter (outlining the outrageous and shocking behavior of CMS/personnel) with Comm. Taylor (c.c. CMS, Dr. James Weich, Admin. DCC etc.) on 12/30/05.
14. On 1/04/06 Affiant was *not scheduled* for either Med Pick-up or Clinic, however was contacted at his work-site about 10:00AM and instructed to go to the hospital. The fact that Affiant was not scheduled demonstrates that CMS did not initiate or intend to see Affiant, but was seen due to third party intervention.
15. Affiant *met* Dr. Burns (who he has never had contact with before) and she was unaware of Affiant's current CCML or grievance activity until Affiant informed her on 1/04/06 at what turned out to be a impromptu Clinic. Dr. Burns renewed Affiant's CC Meds and provided 27 doses from "Stock Supplies," which were there –on site- during Affiant's entire 28 day CCML.
16. Thus Affiant needlessly experienced yet another CCML (fifth consecutive at 28-days) despite providing Notice prior to and during the lapse (Mrs. Plante) and filing an MG and Addendum (CMS Offices); despite CMS's empty/token promises (lip service) made at grievance hearings; and despite CMS actually having these very CC Meds on-site in Stock Supplies.
17. This behavior evinces deliberate indifference to Affiant's known serious medical condition and it *shocks the conscious* because CMS didn't willingly respond to Affiant's many pleas for help, but was forced by Dep. Warden Pierce to call Affiant in on an otherwise unplanned and unscheduled Clinic. In fact, CMS clearly intended to inflict harm upon Affiant by delaying for as long as possible Affiant's CC Meds.
18. The above is True and Correct to Affiant's best knowledge.

SWORN and SUBSCRIBED before me this ~~RECEIVED~~ January 2006.

~~Dave~~ 
David Williamson, 00183022

NOV 20 2006

Inmate Grievance Office

Notary Public

David Williamson
SBI #183022
1181 Paddock Rd.
Smyrna, DE 19977
November 29, 2006

Bureau Chief Paul Howard

Re: Formal Final Appeals for Reprisal Grievances # 21201 & # 72883

Dear Sir:

On 11/14/06 I attended a RGC (second grievance hearing) for the above two grievances, and IGC McCreanor determined at this late date that it would be inappropriate for either himself or CMS representative Gail Eller to hear the grievances.

Nevertheless, McCreanor provided grievant with the Formal Appeal Forms for both grievances, and stated that they had to be completed and returned to the IGC by 11/21/06. Grievant did as directed and sent copies to Your Office and Deputy Warden Pierce. The IGC, Mrs. Mercer, however, returned the appeals dated received 11/20/06 and stated

> "There were no hearings held and no decisions made on 21201 & 72883. Therefore, there is nothing to appeal yet. Hearings will be held in the near future. Cpl. Merson"

This is no surprise to Grievant, because both of his Reprisal grievances have already been grossly mishandled in violation of IGP 4.4, and Grievant has and continues to be subjected to both the underlying grieved behavior and the subsequent reprisals without any meaningful corrective action taken. Indeed, the grievance procedure has and continues to abused and mishandled to Grievant's detriment by CMS and the Department. There is no legitimate penological objective in continuing to abuse the IGP.

In any event, a decision was made (a) Not to investigate the reprisal grievances, (b) Not to correct the behavior, (c) Not to comply with IGP 4.4 by prohibiting those named in the reprisal grievance from participating in the grievance process, and (d) At the last minute, to stall and not discuss or attempt to resolve the matter but all of a sudden claim concern over the IGP 4.4 regulations that have freely been abused up to this date. Indeed, Grievant's timely filed appeals largely note this mishandling as grounds.

In any event, grievant has in good faith followed the IGP 4.4, followed the directions of the IGC McCreanor when Grievant filed his final appeals and to stall corrective with further illegitimate mechanisms is evidence of sill more mishandling. Indeed, # 21201 has been mishandled for over a year, and this is despite the 180 day time limit for resolution for a grievance according to IGP 4.4. Moreover, # 72883 should have never been brought before CMS reps and Grievant requested and outside board do to the nature of the reprisal claims, etc.

In conclusion, Grievant requests that his timely filed appeals be decided and that no further mishandling occurs.

Respectfully,

_Dave N_____

c.c. ~~Jail Islander Force~~  Commissioner S. Taylor        II B-9

**DCC  Delaware Correctional Center**
Date: 12/20/2006
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

## GRIEVANCE INFORMATION - MGC

### OFFENDER GRIEVANCE INFORMATION

| | | |
|---|---|---|
| **Offender Name :** WILLIAMSON, DAVID W | **SBI#**        : 00183022 | **Institution**    : DCC |
| **Grievance #**    : 21201 | **Grievance Date :** 11/14/2005 | **Category**     : Individual |
| **Status**        : Unresolved | **Resolution Status:** | **Inmate Status :** |
| **Grievance Type:** Health Issue (Medical) | **Incident Date**    : 11/11/2005 | **Incident Time :** 10:45 |
| **IGC**          : Merson, Lise M | **Housing Location :** Bldg W1, Tier L, Cell 12, Single | |

### MGC

**Date Received  :** 10/30/2006          **Date of Recommendation:** 12/20/2006

### GRIEVANCE COMMITTEE MEMBERS

| Person Type | SBI# | Name | Vote |
|---|---|---|---|
| Staff | | Eller, Gail | Deny |
| Staff | | McLaren, Jan | Deny |
| Staff | | Gordon, Oshenka | Deny |
| Staff | | McCreanor, Michael | Abstain |

### VOTE COUNT

| | | |
|---|---|---|
| **Uphold : 0** | **Deny : 3** | **Abstain : 1** |

### TIE BREAKER

| Person Type | SBI# | Name | Vote |
|---|---|---|---|
| | | | |

### RECOMMENDATION

Hearing held 20 December 2006.
Deny: Cannot offer monetary damages or any compensation for possible medical issue stated within.

Inmate provided with an appeal form. Appeal due 27 December 2006.

Ⅱ B - 10

DCC **Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

Date: 12/20/2006

## GRIEVANCE INFORMATION - MGC

### OFFENDER GRIEVANCE INFORMATION

| | | |
|---|---|---|
| **Offender Name :** WILLIAMSON, DAVID W | **SBI#** : 00183022 | **Institution** : DCC |
| **Grievance #** : 78623 | **Grievance Date** : 10/23/2006 | **Category** : Individual |
| **Status** : Unresolved | **Resolution Status:** | **Inmate Status :** |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 10/23/2006 | **Incident Time :** |
| **IGC** : Merson, Lise M | **Housing Location :** Bldg W1, Tier L, Cell 12, Single | |

### MGC

**Date Received** : 11/13/2006      **Date of Recommendation:** 12/20/2006

### GRIEVANCE COMMITTEE MEMBERS

| Person Type | SBI # | Name | Vote |
|---|---|---|---|
| Staff | | Eller, Gail | Uphold |
| Staff | | McLaren, Jan | Uphold |
| Staff | | Gordon, Oshenka | Uphold |
| Staff | | McCreanor, Michael | Abstain |

### VOTE COUNT

| | | |
|---|---|---|
| **Uphold :** 3 | **Deny :** 0 | **Abstain :** 1 |

### TIE BREAKER

| Person Type | SBI # | Name | Vote |
|---|---|---|---|
| | | | |

### RECOMMENDATION

Hearing held 20 December 2006.
Uphold: 11/27/06 Waiting for approval of brace by DuShuttle/Warden.

Inmate provided with an appeal form. Appeal due 27 December 2006.

Ⅱ B·11

II – Exhibit-C

## Grievance Appeal Form

This must be completed and returned to the IGC within 3 days of receipt of the
Warden/Designee/MGC Decision. This form is to be returned via the Grievance Box.
This form is to be used Only in the event of a decision appeal. Please specify the reason for the appeal in the space below.

Grievant: _Williamson, David_   SBI#: _183022_

Housing Unit: _W·1_   Case#: _59170_

Date: **SEPTEMBER 27, 2006**   Due Date: **OCTOBER 4, 2006**

Grievant filed Emergency Medical Grievance #59170 because the newest
incident – an eight-day Chronic-care medication interruption (ccmI)-was the
tenth consecutive ccmI between July 05 and July 06, and despite
repeated assurances by CMS to correct the continuous yet unnecessary
problem (which is documented in a prior completed MG# 15453) CMS
has intentionally refused to correct the ccmI(s). In fact, CMS
flatly refused to implement any reasonable corrected measure –
flatly refused to provide Grievant with his doctor's prescribed meds in
a timely and appropriate manner. (See attached Affidavit at #2 – #8).
Moreover, CMS has intentionally falsified medical records in
Grievant's medical file in a bad faith attempt to fabricate
a semblance of corrective action and or to manufacture a
defense to CMS's deliberate indifference to Grievant's known
serious medical condition. (See attached Affidavit at #9 – #18).
The D.O.C. is knowledgable of these on-going and pervasive ccmI(s)
by virtue of MG# 15453 and the instant MG# 59170, and it is clear
cms refuses to correct the problem – and now CMS is engaged in
falsifying Grievant's medical records. These acts demand immediate
corrective action to preclude further suffering and further constitutional
violations.

_Dave W_
INMATE SIGNATURE
9·27·06

If you need additional space, attach 8.5" X 11" size sheets of paper.

## AFFIDAVIT OF DAVID WILLIAMSON                    VI-A

1. I, David Williamson, am the Affiant listed above and do depose the following:

2. Affiant attended a Formal Grievance Hearing on 9-27-06 that was headed by CMS representative Gail Eller and Lt. McCreanor, etc.

3. This hearing regarded Emergency Medical Grievance # 59170, of which claimed that CMS was acting with deliberate indifference by creating and or failing to correct the ongoing incidence of repeat chronic-care medication interruptions (CCMI).

4. Affiant experienced ten consecutive CCMI(s) from July 05 to July 06.

5. Eller began the hearing by declaring: "I am denying your grievance. You (affiant) requested all 120 doses to limit interruptions; we are not going to do that. You had asked that stock supplies be provided within twenty-four hours of notice of an interruption, but you have to realize that though we keep some stock supplies we are not a pharmacy and you will just have to wait. And you had requested damages be awarded — that's not going to happen!"

6. Affiant stated that once the Chronic-care Clinic (Clinic) is provided and the doctor consequently signs-off on the "Refill" for the next 120-day (i.e. doses) cycle, there is no legitimate reason not to provide the patient with the four thirty-day med cards; and that this simple and reasonable corrective measure would limit CCMI(s) to no more than three per year as opposed to a potential twelve.

7. Affiant continued to point out CMS's history over the past year where CMS caused Affiant ten consecutive and unnecessary CCMI(s) despite knowledge prior to each and every lapse, and that in view of these repeat failures it is both reasonable and warranted to provide all the order doses at one time to realize meaningful correction.

8. Eller matter-of-factly replied: "Your grievance is denied."

9. Affiant then asked Eller: "Well, how do you propose to correct this continuous problem?" "Heck, its been over 120-

VI·A

days since my last Clinic and I wrote for the necessary Clinic on 9·11·06 and on 9·22·06, but to date no Clinic has been provided. This will result in another unnecessary med interruption!"

10. Eller flipped open Affiant's medical file and stated: "You were here for your Clinic on 8·31·06. You saw Bailey and she gave you one pill and it says here Bailey told you not to wait so long next time."

11. Affiant responded: "I have not been to a Clinic since May 06 — I'm past due for one now — and I certainly wasn't here on 8·31·06."

12. Eller confirmed Affiant's name and SBI number and stated "I'm looking at you vitals listed here and it says you were out of meds, given one pill, and told not to wait so long next time - on 8·31·06."

13. "That is false — that is a false entry in my medical filed!" Affiant replied. No one denied this or even acted surprised.

14. Affiant proved his accusation without even having to secure his work record or other verifying documentation that would diffinitively place Affiant at another location on 8·31·06 by simply asking: "Well, if I was here on 8·31·06 for a Clinic as you claim, then I suppose my meds were Refilled?"

15. "No, I don't see a Refill order," Eller admitted.

16. Affiant pointed out the obvious: "You say I was here for a Clinic — you say you have my vitals — and we all know that Clinics are scheduled to reorder chronic-care meds, but there is no accompanying Refill order ... that is a false record!"

17. Eller merely dropped her head and said she would get my meds.

18. The above is true and correct as Affiant experienced it.

Signed and Sworn on this 27 day of September 2006.

Dave W———
David Williamson, 183022

Brian D Engrem
Notary Public
Brian D. Engrem
Notary Public, State of Delaware

)-2-

**DCC  Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

Date: 08/08/2006   Vi·A

# GRIEVANCE REPORT

## OFFENDER GRIEVANCE INFORMATION

| | | | |
|---|---|---|---|
| **Offender Name :** WILLIAMSON, DAVID W | **SBI#** : 00183022 | **Institution** : DCC | |
| **Grievance #** : 59170 | **Grievance Date** : 07/30/2006 | **Category** : Individual | |
| **Status** : Unresolved | **Resolution Status :** | **Resol. Date** : | |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 07/30/2006 | **Incident Time :** | |
| **IGC** : Merson, Lise M | **Housing Location :** Bldg W1, Tier L, Cell 12, Single | | |

## OFFENDER GRIEVANCE DETAILS

**Description of Complaint:** Inmate claims: Deliberate indifference to my known serious medical needs by CMS by employing / permitting a custom / policy of repeatedly  denying / delaying the distribution of chronic care meds for non medical reasons. Tenth consecutive interruption on 7/30/06.

**Remedy Requested** : 1. Provide all prescribed  120 doses, 4 cards, at beginning of cycle to limit interruptions. 2. provide emergency stock supply of chronic care meds within 24 hors of notice of any interruption; and provide damages.

## INDIVIDUALS INVOLVED

| Type | SBI # | Name |
|---|---|---|
| | | |

## ADDITIONAL GRIEVANCE INFORMATION

| | |
|---|---|
| **Medical Grievance :** YES | **Date Received by Medical Unit :** 08/08/2006 |
| **Investigation Sent :** 08/08/2006 | **Investigation Sent To** : Rodweller, Deborah |
| **Grievance Amount :** | |

Ⅱ  C·H

DCC  Delaware Correctional Center
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

Date: 08/08/2006   V 1 - A

# INFORMAL RESOLUTION

| OFFENDER GRIEVANCE INFORMATION | | | |
|---|---|---|---|
| **Offender Name** : WILLIAMSON, DAVID W | **SBI#** : 00183022 | **Institution** : DCC | |
| **Grievance #** : 59170 | **Grievance Date** : 07/30/2006 | **Category** : Individual | |
| **Status** : Unresolved | **Resolution Status:** | **Inmate Status :** | |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 07/30/2006 | **Incident Time :** | |
| **IGC** : Merson, Lise M | **Housing Location** :Bldg W1, Tier L, Cell 12, Single | | |

| INFORMAL RESOLUTION | |
|---|---|
| **Investigator Name** : Rodweller, Deborah | **Date of Report** 08/08/2006 |

**Investigation Report :**

**Reason for Referring:**

Offender's Signature:_____

Date                    :_____

Witness (Officer)    :_____

**Page 2 of 2**

$\Pi$ C . 5

DCC Delaware Correctional Center
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

Date:09/29/2006  Vi·A

## GRIEVANCE INFORMATION - MGC

### OFFENDER GRIEVANCE INFORMATION

| | | |
|---|---|---|
| Offender Name : WILLIAMSON, DAVID W | SBI# : 00183022 | Institution : DCC |
| Grievance # : 59170 | Grievance Date : 07/30/2006 | Category : Individual |
| Status : Unresolved | Resolution Status: | Inmate Status : |
| Grievance Type: Health Issue (Medical) | Incident Date : 07/30/2006 | Incident Time : |
| IGC : Merson, Lise M | Housing Location : Bldg W1, Tier L, Cell 12, Single | |

### MGC

Date Received : 08/11/2006          Date of Recommendation: 09/29/2006

### GRIEVANCE COMMITTEE MEMBERS

| Person Type | SBI# | Name | Vote |
|---|---|---|---|
| Staff | | Eller, Gail | Uphold |
| Staff | | Heddinger, Brenda | Uphold |
| Staff | | Gordon, Oshenka | Uphold |
| Staff | | McCreanor, Michael | Abstain |

### VOTE COUNT

| Uphold : 3 | Deny : 0 | Abstain : 1 |
|---|---|---|

### TIE BREAKER

| Person Type | SBI # | Name | Vote |
|---|---|---|---|

### RECOMMENDATION

Hearing Held 9/28/2006.
Uphold: Check with pharmacy about medications if need order get MD to write order & schedule to see MD.

Inmate verbally informed of MGC Decision and appeal form was supplied.
Appeal due 10/5/2006.

II C·6

**DCC Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

**Date:** 10/10/2006  VI·A

## GRIEVANCE INFORMATION - Appeal

| OFFENDER GRIEVANCE INFORMATION | | |
|---|---|---|
| Offender Name : WILLIAMSON, DAVID W | SBI# : 00183022 | Institution : DCC |
| Grievance # : 59170 | Grievance Date : 07/30/2006 | Category : Individual |
| Status : Unresolved | Resolution Status : | Inmate Status : |
| Grievance Type: Health Issue (Medical) | Incident Date : 07/30/2006 | Incident Time : |
| IGC : Merson, Lise M | Housing Location : Bldg W1, Tier L, Cell 12, Single | |

### APPEAL REQUEST

Appeal arrived 10/9/2006. Appeal accepted, Cpl Merson did not collect grievances/appeals due to being out on leave. Appeal states: Grievant filed emergency medical grievance #59170 because the newest incident - an 8 day chronic care medication interruption was the 10th consecutive chronic care medication interruption between July 05 and July 06, and despite repeated assurances by CMS to correct the continuous yet unnecessary problem (which is documented in a prior completed medical grievance #15453) CMS has intentionally refused to correct the chronic care medication interruptions. In fact, CMS has flatly refused to implement any reasonable corrected measure - flatly refused to provide grievant with his doctors prescribed meds in a timely and appropriate. Moreover, CMS has intentionally falsified medical records in Grievant¿s medical file in a bad faith attempt to fabricate a semblance of corrective action and or to manufacture a defense to CMS's deliberate indifference to Grievant¿s known serious medical condition. The DOC is knowledgeable of these on-going and pervasive chronic care medication interruptions by virtue of medical grievance #15433 and the instant medical grievance 59170, and it is clear CMS refuses to correct the problem - and now CMS is engaged in falsifying Grievant¿s medical records. These acts demand immediate corrective action to preclude further suffering and further constitutional violations.

### REMEDY REQUEST

Vi-A

David Williamson
SBI #183022, W-1, L-12
1181 Paddock Rd.
Smyrna, DE 19977
September 2? , 2006

Mr. S. Altman, CMS Ombudsman

RE: CMS's Outright Refusal to Correct the Known and Ongoing Chronic-care
Medication Interruptions and CMS's Intentional Falsification of Medical Records

Dear Mr. Altman:

Enclosed is a copy of the Final Appeal and attached Affidavit for MG# 59170. The
affidavit outlines CMS's outright refusal to take the bare minimal and most reasonable
measures to correct the repeated chronic-care medication interruptions (CCMI), and it
contains an outline of the deliberate falsification of my medical records. (See exhibits A-
1 – A-3).

This behavior is shocking and should have been investigated and corrected by CMS when
I rose nearly identical accusations in my complaint letter dated 8/15/06: That CMS
personnel made falsified claims regarding the distribution of chronic care meds. (See Ex.
B). This prior complaint letter went unanswered, went uncorrected, and now this
outrageous behavior has escalated into the entry of falsified medical records. Falsifying
medical records to (a) make it appear that I received treatment when I did not and to (b)
manufacture a fictitious defense or a bad faith attempt to shift the blame to me is clearly a
likely violation of my constitutional rights and likely to cause me harm.  CMS was bound
to investigate and correct the first (8/15/06) allegation, but evidently did not. I trust this
failure will not be repeated.

In closing, I request that both the 8/15/06 and this instant incident is investigated and
corrected. I also expect a report of your findings and action. Thank you for your time and
consideration with this matter.

Dave N——

II C-8

Ⅱ – Exhibit-D

V1-B

**FORM #584**

**GRIEVANCE FORM**

FACILITY: D.C.C.                                 DATE: 10·3-06

GRIEVANT'S NAME: David Williamson        SBI#: 00183022

CASE#: 72883                                     TIME OF INCIDENT: Ongoing

HOUSING UNIT: W-1, L-12

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES. _CMS intentionally committed "Adverse Acts"_
_against me (grievant) by entering false records in my medical file in_
_direct response to my grievance activity. Adverse actions are prohibited_
_as "Reprisal" by the IGP 4.4 and my Constitutional rights._
_Specifically, I attended a Formal Grievance hearing with CMS_
_representative Gail Eller and IGC McCreanor et al on 9-27-06. It was_
_regarding an Emergency Medical Grievance (EMG 59170), of which claimed_
_that CMS was intentionally creating chronic-care medication interruptions_
_(CCMI). Consequently, in response to this EMG, CMS intentionally_
_fabricated medical records to (a) create the appearance that CMS had_
_provided treatment/corrective action when it had not; and (b) create_
_a bad faith defense by shifting the blame to me for the CCMI_
_(See attached Affidavit A-1 ε A-2)    (Continued at page 2 of 584 form)_

ACTION REQUESTED BY GRIEVANT:

_1. Immediately seize all my medical records - including medical griev-_
_ances - and copy same and provide copy to me as I am litigating my_
_civil case (06-379-SLR) pro se -and or forward to the U.S. District Court._
_2. Correct the matter and repremand the personnel involved. 3. Provide Damages._

GRIEVANT'S SIGNATURE: David W                DATE: 10·3·06

WAS AN INFORMAL RESOLUTION ACCEPTED?        _____(YES)  _____(NO)

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE:_____        DATE:_____

**IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.**

cc: INSTITUTION FILE
    GRIEVANT

April '97 REV

-1-    π D·1

V1-B

## FORM #584

### GRIEVANCE FORM

FACILITY: DCC                                  DATE: 10-3-06

GRIEVANT'S NAME: David Williamson         SBI#: 00/83022

CASE#:_____                      TIME OF INCIDENT: Ongoing

HOUSING UNIT: W-1, L-12

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.

Unfortunately for CMS, it created a false record of
me attending a Chronic-care Clinic for the purpose of placing a "Refill" order for
my chronic-care meds; however, CMS forgot to also manufacture the requisite
"Refill" order. I flatly charged that the record was "false," and when I pointed
out the irreconcilable fact that No Clinic could have taken place because
there was No "Refill" order for the same date, their conspiracy unravelled.
Also attached are copies of my work attendance that clearly demonstrate the
falseness of these records and alleged conversation. (See B-1 & 2) Lastly, this is
not the first time I challenged fictitious claims made by CMS employees, and
therefore CMS knowingly failed to correct this shocking behavior and it
continues to esculate and does evince Reprisal and deliberate indifference
to my serious medical needs. (See attached Letter dated 8-15-06 at C-1 & 2).

ACTION REQUESTED BY GRIEVANT:
See page one attached.

GRIEVANT'S SIGNATURE: David N       DATE: 10-3-06

WAS AN INFORMAL RESOLUTION ACCEPTED?        _____(YES)    _____(NO)

### (COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE:_____        DATE:_____

**IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.**

cc: INSTITUTION FILE
    GRIEVANT

April '97 REV

II. D. 2

## AFFIDAVIT OF DAVID WILLIAMSON                    VI·B

1. I, David Williamson, am the Affiant listed above and do depose the following:

2. Affiant attended a Formal Grievance Hearing on 9·27·06 that was headed by CMS representative Gail Eller and Lt. McCreanor, etc.

3. This hearing regarded Emergency Medical Grievance # 59170, of which claimed that CMS was acting with deliberate indifference by creating and or failing to correct the ongoing incidence of repeat chronic-care medication interruptions (ccmI).

4. Affiant experienced ten consecutive CCMI(s) from July 05 to July 06.

5. Eller began the hearing by declaring: "I am denying your grievance. You (affiant) requested all 120 doses to limit interruptions; we are not going to do that. You had asked that stock supplies be provided within twenty-four hours of notice of an interruption, but you have to realize that though we keep some stock supplies we are not a pharmacy and you will just have to wait. And you had requested damages be awarded — that's not going to happen!"

6. Affiant stated that once the Chronic-care Clinic (Clinic) is provided and the doctor consequently signs-off on the "Refill" for the next 120-day (i.e. doses) cycle, there is no legitimate reason not to provide the patient with the four thirty-day med cards. and that this simple and reasonable corrective measure would limit CCMI(s) to no more than three per year as opposed to a potential twelve.

7. Affiant continued to point out CMS's history over the past year where CMS caused Affiant ten consecutive and unnecessary CCMI(s) despite knowledge prior to each and every lapse, and that in view of these repeat failures it is both reasonable and warranted to provide all the order doses at one time to realize meaningful correction.

8. Eller matter-of-factly replied: "Your grievance is denied."

9. Affiant then asked Eller: "Well, how do you propose to correct this continuous problem?" "Heck, its been over 120-

-/-        II D·3

VI-B

days since my last Clinic and I wrote for the necessary Clinic on 9-11-06 and on 9-22-06, but to date no Clinic has been provided. This will result in another unnecessary med interruption!"

10. Eller flipped open Affiant's medical file and stated:
"You were here for your Clinic on 8-31-06. You saw Bailey and she gave you one pill and it says here Bailey told you not to wait so long next time."

11. Affiant responded: "I have not been to a Clinic since May 06 — I'm past due for one now — and I certainly wasn't here on 8-31-06."

12. Eller confirmed Affiant's name and SBI number and stated "I'm looking at your vitals listed here and it says you were out of meds, given one pill, and told not to wait so long next time - on 8-31-06."

13. "That is false - that is a false entry in my medical filed!" Affiant replied. No one denied this or even acted surprised.

14. Affiant proved his accusation without even having to secure his work record or other verifying documentation that would diffinitively place Affiant at another location on 8-31-06 by simply asking: "Well, if I was here on 8-31-06 for a Clinic as you claim, then I suppose my meds were Refilled?"

15. "No, I don't see a Refill order," Eller admitted.

16. Affiant pointed out the obvious: "You say I was here for a Clinic — you say you have my vitals — and we all know that Clinics are scheduled to reorder chronic-care meds, but there is no accompanying Refill order ... that is a false record!"

17. Eller merely dropped her head and said she would get my meds.

18. The above is true and correct as Affiant experienced it.

Signed and Sworn on this 27 day of September 2006.

Dave W.

David Williamson, 183022

Brian D Engrem

Notary Public

Brian D. Engrem
Notary Public, State of Delaware
My Commission Expires June 14, 2008

Expires
10-14-08

MG # 59170 (Appeal Attachement) -2-
9-17-06
II A.4

V1-B

David Williamson
SBI #183022, W-1, L-12
1181 Paddock Rd.
Smyrna, DE 19977
August  _15_ , 2006

Mr. S. Altman, Ombudsman
Re: CMS Reply Letter 8/8/06

Dear Sir:

Greetings, I received a CMS reply letter (Reply) from you dated 8/08/06 (See A-1 Reply). It was a reply to my letter dated 7/30/06, in which I complained of a ninth consecutive Chronic-care medication interruption (CCMI), and I challenged the so called "new" corrective med distribution system as a known failure. (See A-2 Complaint). I am extremely disturbed about several distortions that are contained in the CMS reply: It contains several claims that are either preposterous or wholly fictitious.

For example, the Reply states that the pharmacy received my Chronic-care meds (CCM) on "7/17/06" and that I was placed on the medication pick-up list (MPUL) on "7/19 & 7/20." Furthermore, it alleges that I –for the first time-was too busy to pick these meds up on either date.

First, this is preposterous. I diligently check both the hospital schedule and the MPUL daily (Mon. thru Friday), and either my name did not appear on these dates as stated or the MPUL was not posted in our housing unit on these dates. If it had, I would have seen it and been all too happy to receive my CCM(s) early rather than late. Moreover, to date I have never missed a scheduled CCM pick up, not does my work or personal schedule interfere with the 1:30 PM pick up time. It is very important to me to have these CCML(s) corrected, and I deeply resent this allegation.

In addition, this statement is suspect for several reasons:

1. Suspect because 7/17/06 was four days before I even submitted my request for my CCM refill (See A-3 Refill dated 7/21/06). If they were –incredibly- in prior to my request on 7/21/06, then why were they not provided to me until 8/8/06? And assuming arguendo, why was my name removed from the MPUL after only two days? Or why was my name not placed back on the list after my 7/21/06 refill request? The information you were provided does not agree with these concurrent facts or any likely and reasonable inferences drawn from them.

2. Suspect because normal on-site pharmacy behavior has been to post one's name on the MPUL for five consecutive days before removing the name and returning the meds or canceling them. In contrast, you cite only two dates posting –not five. Does this mean that names will no longer be posted for five days or is this yet another anomaly? Also, the meds were not returned or cancelled despite my alleged failure to collect them. Does this mean that they will no longer be returned etc. or is this yet another anomaly? The information you were provided again does not agree with standard operating procedures.

TT N C

$\forall 1 \cdot \beta$

3. Suspect because (a) I submitted a request for a refill on 7/21/06, and it went unanswered; (b) I filed an Emergency Medical Grievance (EMG) citing this most recent incident on 7/31/06 (C.c. Altman), and it went unanswered; and (c) I filed another notice of the ongoing CCMI(s) to you on 8/7/06, and it went unanswered. (See A-4 Notice 8/7/06). If the pharmacy had these CCM(s) since 7/17/06 –and more importantly- if the pharmacy was inclined to provide these lapsed CCM(s) to me, then how do you reconcile the fact that I was not provided these very CCM(s) until 8/8/06? The information you were provided does not agree with these concurrent facts or any likely and reasonable inferences drawn from them. Moreover, the Reply contains an outright fabrication.

Specifically, it states that I received my-now lapsed_ CCM(s) on "8/04/06" and that the "pharmacy staff" had "immediately contacted" me for them. This is utterly erroneous. The pharmacy never contacted me, and I would be very interested to hear who alledgedly contacted me, how and when they were supposed to have accomplished it, and where it ostensibly took place? Work? My boss did not take any phone call. At the housing unit? No officer took any phone call. The fact is –is that my name appeared on the MPUL on 8/8/06 and that was how I became aware that my meds were available. That is the date I received and signed for them, not 8/04/06 as stated in the Reply. Also, I received them –not immediately- but at the standard time (e.g. 1:30 PM). This is very strange and troubling.

For instance, it is strange that when I attended the first Informal grievance hearing regarding the EMG on 8/10/06 (for this very CCML), before CMS representative Debbie Rodweller; and I informed her that I had just received the CCM(s) on 8/08/06 after an eight-day lapse, that she did not challenge my statement? If I had picked them up on 8/04/06, surely Debbie would know this. She was the investigating CMS rep for this EMG, for this incident, but no she did not! And the reason that she did not have the same erroneous information that you were provided is likely because it is difficult to keep fictitious stories consistent to all investigating parties.

Consequently, the facts speak for themselves. To date CMS has caused me to experience ten consecutive CCMI(s); had not once over the past year (7/07 to 7/06) provided my CCM(s) in a timely fashion –not even when the pharmacy was both aware and did actually possess my lapsed CCM(s). In fact, CMS is aware of several CCMI(s) such instances, in which the on-site pharmacy actually possessed my lapsed CCM(s) but failed to provide them and did exacerbate the interruptions. Moreover, despite CMS's dismall performance regarding this matter, and despite CMS's oft repeated emptly token assurances (four to date) to correct the matter but failing directly after each and assurance, we are now to believe this incredible tail: That it is not CMS who is causing the CCMI(s), but the it is alternatively the patient who is to blame! Utterly preposterous and utterly insulting. It is impossible to remedy this continuous and pervasive problem when those involved busy themselves manufacturing incredible and or false claims. I suggest that you investigate the common denominator in this matter: the pharmacy.

In conclusion, I expect that CMS will correct this shocking behavior. Also, when the facts reveal that I picked up my meds on 8/8/06 and not "immediately contacted" on 8/4/06 to pick them up, I expect a full apology. Thank you for your time in this matter.

Dave W ___

c c  n    Chief (nn...i.ing  MG 16453)    ACLU J. Graff

Employee Name: **Williamson, David**  SSN: **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**  Class Title: **Clerk L3**

Employment Date: **02/27/64**  Adjusted Service Date: **W**

#37

Accrual Rate:
Sick: _____
Vacation: _____

Balance Carried Forward

Sick Accrual (hrs per month) - 37.5 hrs: 9.5 / 40.0 hrs: 10

Vacation (hrs per month) - 37.5 hrs: 9.5, at 10 yrs: 11.25, at 15 yrs: 13.25 / 40 hrs: 10, at 10 yrs: 12, at 15 yrs: 14

ACCRUALS ARE NOT APPLIED UNTIL THE END OF THE MONTH (Max. annual vac. accrual: 318 @ 37.5, 336 @ 40)

| | HOLIDAY | SICK | VACATION |
|---|---|---|---|
| Used in 2006 | | | |

Check here if perfect attendance 2006

Leave balances at end of 2006

π 0.7

| | HOLIDAY | SICK | VACATION |
|---|---|---|---|
| Used in 2006 | | | |

Remarks:

**NOTE TO TIMEKEEPER:** Provide each employee a copy of their timecard at the end of 2006. Forward the original to Human Resources.

**NOTE TO EMPLOYEES:** Your leave balances for 2006 are displayed here>> Review and note accruals at top of card. Resolve discrepancies with your timekeeper.

VI-B

# Employee Attendance Report for P.I. Bldg. #15

| Card # | Worker Name | Date | Reason | Comments |
|---|---|---|---|---|
| 19 | Bolden, LaWarren | 8/29/200 | Medical | |
| 20 | Robinson, Harold | 8/2/2006 | Unexcused | to hot |
| | | 8/3/2006 | Unexcused | to hot |
| | | 8/30/200 | Medical | Dr. Appt. |
| 21 | Barnett, Lawarence | 8/3/2006 | Medical | Dr. Appt. |
| | | 8/7/2006 | Scheduled/Volu | |
| | | 8/11/200 | Medical | Dr. Appt. |
| | | 8/29/200 | Medical | Dr. Appt. |
| 23 | Ortiz, Miguel | 8/28/200 | Unexcused | suspended pending |
| | | 8/29/200 | Unexcused | suspended pending |
| | | 8/30/200 | Unexcused | suspended pending |
| 24 | Caudill, William | 8/1/2006 | Medical | grievance |
| | | 8/9/2006 | Medical | X-Ray |
| 25 | Bowen, David | 8/31/200 | Medical | Dr. Appt |
| 26 | Murphy, Robert | 8/9/2006 | Medical | X-Ray |
| | | 8/22/200 | Medical | Dr. Appt |
| 30 | Boatswain, Roger | 8/3/2006 | Visit | |
| | | 8/7/2006 | Scheduled/Volu | |
| | | 8/17/200 | Medical | Dr. Appt. & Group |
| | | 8/30/200 | Medical | Dr. Appt. |
| 31 | Harris, Darnell | 8/9/2006 | Medical | Dr. Appt |
| 32 | Johnson, Jeffrey | 8/7/2006 | Scheduled/Volu | |
| 36 | Martinez, Roberto | 8/7/2006 | Scheduled/Volu | |
| 37 | Williamson, David | 8/1/2006 | Medical | grievance hearing |
| | | 8/10/200 | Medical | grievance hearing |
| | | 8/24/200 | Other | education testing |
| 38 | Marshall, Bobby | 8/28/200 | Unexcused | suspended pending |
| | | 8/29/200 | Unexcused | suspended pending |
| | | 8/30/200 | Unexcused | suspended pending |
| 39 | Cubbage, Phillip | 8/2/2006 | Medical | Dr. Appt. |
| | | 8/3/2006 | Medical | Dr. Appt. |
| | | 8/10/200 | Visit | |
| | | 8/11/200 | Medical | Dr. Appt. |

II-D-8

$\cup I - C$

### AFFIDAVIT OF DAVID WILLIAMSON

1. I, David Williamson, am the Affiant listed above and do depose and state the following:

2. On 10/18/06 at about 12:15 pm, Affiant was directed by his building officer to report to the hospital: "You won your grievance; you're being called in for an unscheduled medical visit."

3. Affiant had been scheduled in earlier (7:00am) for an unrelated "Reprisal" medical grievance hearing; however, Affiant was not otherwise scheduled for any other medical activity.

4. Affiant checked in and received the standard procedure for a Chronic-care Clinic (Clinic): the purpose of which is to normally place a Refill/Order for one's chronic-care medication (CC Meds); however, a doctor may Reorder one's CC Meds at any time absent a Clinic if circumstances warrant it.

5. Affiant was brought to Doctor Van Dusen upon which Van Dusen began to question Affiant about his chronic-care condition (hypo-thyroidism), and Affiant then realized that the unscheduled call-in was to replace the Clinic that CMS had "faked" on 8/31/06 (disclosed on 9/27/06 at MG # _59170_ hearing).

6. Affiant had not had a Clinic since May 8, 2006 and was due for one in August 06 (circa) (i.e. 90-days) or no later than Sept. 06 (circa) (i.e. 120-days) - before Affiant's CC Meds ran out (i.e. interrupted).

7. Affiant had written CMS about the past due Clinic —and the inevitable but preventable chronic-care medication interruption (CCMI) - on 9/11/06, again on 9/22/06, and 10/4/06; and on 9/27/06 Affiant received a personal assurance from Gail Eller (CMS employee at the on-site hospital) at the MG hearing that she would take care of Affiant's CC Meds. CMS failed to conduct the Clinic, CMS failed to Reorder Affiant's CC Meds, Eller failed to do either, and on 10/05/06 Affiant experienced an unnecessary CCMI. Affiant wrote again on 10/14/06. CMS caused this, to date, thirteen-day CCMI despite notice.

8. Van Dusen inquired of Affiant: "How is your energy level?" "Doc, I'm suffering chronic fatigue: I can't promote good health through meaningful exercise. I can't do anything that I once enjoyed doing because of this chronic fatigue and my body's turned to fat and is wasting away. Also, I find it difficult to concentrate. In fact, it's not just physical problems, it has adversely affected my work performance and studies," Affiant replied.

9. "I'm not surprised with a TSH [i.e. thyroid stimulating hormone] level of over six," Van Dusen replied.

10. Consequently, CMS had both subjective and objective knowledge of Affiant suffering the impairment of his normal daily functions and of the common symptoms of hypothyroidism.

11. "Yeah, I'm not surprised either with CMS's intentional refusal to provide me my thyroid meds. In fact, it is rational behavior when you consider the economics," Affiant continued.

12. Van Dusen replied: "Unfortunately, *I must agree with you*. I have seen a pattern the past two months that I've worked here —CMS talks a good talk but fails to follow up. They pay us doctors pretty well, but they *short-change you guys*."

1

13. Affiant was astounded that a CMS employee finally admitted to Affiant CMS's custom/policy of cost-avoidance.

14. Van Dusen indicated he would place the Refill/Order for the CC Meds, and he placed an order for Lab work, and wanted blood pressure reading weekly due to Affiant's elevated blood pressure. Van Dusen stated: "Your blood pressure is probably up due to your frustration, but I want a few more data points before I increase your dosage."

15. Affiant then realized that the already lapsed CC Meds had not been Reordered at all despite all the notices Affiant gave to CMS and Eller's assurance that she would take care of it on 9/27/06.

16. Affiant checked for clarification by relating all his efforts to avoid another unnecessary CCMI (listed above at paragraph 7), and the post 10/15/06 correspondence; and then asking: "With all this notice and Eller's promise, are you telling me that no Refill order was ever placed! I've been out since 10/05/06 –thirteen days!"

17. "No order was entered. I'm doing it now," was Van Dusen's reply.

18. Affiant subsequently asked about the status of his needed ACL reconstructive surgery –that Dr. Durst had filed the appropriate referral and that Dr. DuShuttle had also recommended it?" Van Dusen found Durst's order for the reconstructive surgery and stated: "Looks like regional had not authorized it."

19. "Do you mean not authorized or denied?" Affiant inquired.

20. "Well, it appears as though the request by Doctor Durst was ignored –see the box here is blank – and if Regional had responded, any response would have been recorded in the box," Van Dusen replied.

21. Van Dusen continued, "I will refile the paper work today, but I have to be frank with you, they [CMS] will probably say you need physical therapy."

22. Affiant stated: "Both doctors stated unequivocally that reconstructive surgery was needed; that my ACL was 'ruptured' and that surgery was the only viable option."

23. Van Dusen replied: "I would also recommend the same –any doctor in his right mind would- and I don't mean to laugh, but that is what Regional will probably authorize. See CMS is like an insurance company. They will continue to deny your requests until all your "T"s and all your "I"s are dotted. You will have to force them."

24. Again Affiant was astonished at Van Dusen's frankness and admission to Affiant what Affiant had been charging in his repeated Medical Grievances: that CMS was intentionally denying or delaying needed treatment as a custom/policy of cost-avoidance, and of which was not based on any legitimate medical or penological factors.

25. The above is true and correct according to Affiant's personal experience and belief.

Sworn and Subscribed before me this 23ʳᵈ day of October 2006.

David Williamson

**Brian D. Engram**
**Notary Public, State of Delaware**
**My Commission Expires June 14, 2008**

Notary Public

Brian D. Engram
Notary Public, State of Delaware
My Commission Expires June 14, 2008

2

Ⅱ ε .2

# Exhibits

III-A-1  Counselor's Report   7/25/05

III-A-2  Worker's Evaluation   12/6/05

III-A-3  Notice "...beyond ... alloted time....  7/11/06

III-A-4  Williamson's Request for an Extension of Time  8/03/06

III-B-1  Insufficient Law Library Access Complaint  10/18/06

III-C-1  Motion for Expert Witness

III-E-1-7  Representation Requests / Rejections

III-D-1  CMS Medical Records Denial  5/10/06

III ᵗ D-2  Subsequent Written Request for Records as per MG# 72883

III – A

FORM #: 123

**COUNSELING REPORT**

| Number | Name | Institution | Date of Report |
|--------|------|-------------|----------------|
| 183022 | David Williamson | DCC | 7/25/05 |

1.  Specific Rule Violated (Offense) This is to serve as documentation of a verbal conseling for I/M

    worker's recent increase in clerical errors in order that he be made aware and correct them.

2.  Facts:

| Date of Offense | Time of Offense | Location |
|-----------------|-----------------|----------|
| 7/12 thru 7/25/05 | 11:00AM | Bldg. #15 |

I/M Williamson is a clerk with CDGM since 2-27-04 and was promoted to Skilled E-grade worker due to his

merits, however, the weeks of 7-14 & 7-25-05 he has made several clerical errors. Though this is

uncharacteristic of him, it has become a concern and may affect his next evaluation.

3.  Advice to Inmate: I/M Williamson states that he is suffering from "chronic fatigue" and that his focus and

    energy level is suffering because he has not received his thyroid medications. We would suggest that he get

    this problem corrected and perhaps get more sleep if necessary.

4.  This report shall be placed in the above inmate's file and a copy shall be given to
    him/her.

5.  The above inmate may prepare a response to this counseling report, which shall be
    placed with this report in his/her file.

*CLERK L3*
_____
Employee's Name & Title

*Dave W*
_____
Signature

Ⅲ A-1

PRISON INDUSTRIES
INMATE WORKER PERFORMANCE EVALUATION

NAME: WILLIAMSON, DAVID

DATE OF REVIEW:  12/6/05

SBI NO. 183022

WORK LOCATION: BLDG. 15

HIRE DATE:  2/27/04

SHOP ASSIGNMENT: CDGM

JOB TITLE:  CLERK L3

CATEGORY: E _____ STEP: 2

YEARS TO RELEASE:  UNDER 5 _____

UNDER 10 XXX _____ OVER 10 _____

1.   Attendance
___  0 Absent more than 3 days
___  2 Absent 2-3 days
___  4 Absent 1 day
XX   6 No absence

5.   Care of Working Area
___  1 Needs reminding
___  2 Fair
___  3 Avg. Keeps acceptable level
XX   5 Maintains area neat & clean

2.   Observes Safety Rules
___  1 Lax on rules
XX   2 Observes most of time
___  4 Observes rules all the time
___  5 Helps promote safety

6.   Care of All Property
___  1 Marginal
___  2 Fair
___  3 Careful, minimal losses
XX   5 No losses, handles with care

3.   Initiative & Skill Development
___  1 Marginal
___  3 Fair
XX   5 Good, upper 50%
___  7 Seeks respect – self starter

7.   Quantity of Work
___  2 Marginal
___  4 Fair
XX   6 Good, upper 50%
___  8 Exceptional, top 20%

4.   Quality of Work
___  1 Marginal
___  3 Fair
XX   5 Good, upper 50%
___  8 Very low errors – top 20%

8.   Attitude Toward Peers & Supervisor
___  1 Marginal cooperation
___  3 Generally cooperative
___  4 Usually cooperative
XX   6 Full coop. promotes harmony

Total Points: _____ 46

Form #: 199
      F&B



**College for**
**Professional Studies**

July 11, 2006

David Williamson-SBI
C/O- ED Program- M. Alvidrez
Delaware Corr Ctr. 1181 Paddoc
Smyrna, DE 19977

Dear David Williamson-SBI,

This letter shall be official notification that College for Professional Studies
will cease teaching the PB2 - Paralegal Bachelors Degree on or about
September 29, 2006. Our records reflect that you are currently beyond the
allotted time frame for the completion of the PB2 - Paralegal Bachelors
Degree as indicated in the Enrollment Agreement and your record will be
closed.

If you have any questions, please do not hesitate to communicate with
Finance Department at 1-800-817-8272 or email finance@kaplan.edu.

It has been our pleasure to serve you. Best wishes for all your future
endeavors.

Sincerely,

Finance Department
College for Professional Studies

David Williamson
SBI # 183022, W-1, L-12
Student ID 0146709
1181 Paddock Rd.
August 03, 2006

Dean/President of College of Professional Studies
Re: Request for Two Week Extension to Complete the Final Course

To Whom It May Concern:

Greetings, I am writing in the hope that I may secure a fourteen day extension to complete my final course of the Paralegal Bachelor's Degree program. I am in receipt of a July 11, 2006 Notification letter that states the program will discontinue on or about September, 29, 2006. I must admit that this comes as a surprise. I have diligently pursued this endeavor while incarcerated and suffering from hypothyroidism, which causes chronic fatigue among other aggravating symptoms. In fact, I believe my efforts are commendable, considering the obstacles, as demonstrated by my ninety-plus point grade average.

For example, my chronic fatigue and related impairment of concentration that I experience are aggravated by a continuous interruption in my medication distribution regiment. The prison contract health care provider has caused some ten consecutive thyroid med interruptions over this past year and it has caused me great difficulty. I spend some three to four hours six days a week in study; however, I often have to reread a chapter several times. It is not uncommon for me to actually review a text three or more times because of my aggravated symptoms. This is outside my control and I making every attempt to overcome these obstacles. I just require a little more time is all.

Consequently, "On or about" appears to suggest the date may not be so firm as to preclude such a request. I had a family member contact the college to determine the cause of this abrupt announcement and the significance of the September date. It was relayed to me that in December 06, the college was discontinuing operations and that your professors would be taking vacations throughout November/December. Evidently, September was chosen as a cushion prior to the staff limitations of Nov/Dec. This still leaves October 06, and all I ask is for two weeks to complete my final course (Advanced Legal Writing). I requested a thirty day extension via my agent, but the college representative stated it could not be done. I would like to believe that we can come to a mutually agreeable resolution that is reasonable. Specifically, I request a small extension from 9/29/06 until 10/16/06. I believe this will provide me with enough time to adequately complete this involved course, and it will not extend into your scheduled events. I am within sight of my goal. I only request a little consideration and assistance.

In closing, I look forward to your reply, and I thank you in advance for your time and consideration in this matter.

Sincerely,

David W

David Williamson

III - A - 4

III – B-1

David Williamson
SBI #183022, W-1, L-12
1181 Paddock Rd.
Smyrna, DE 19977
October _18_, 2006

Mike Little
RE: Failure to Provide Meaningful Access to the Law Library

Mr. Little:

     Greetings, I am writing to notify officials of a troubling development regarding the failure to provide meaningful access to the Law Library/courts. I seek cooperation from the administration in resolving this acute problem prior to experiencing any of the inevitable prejudice to my pro se litigation.

     Specifically, I was scheduled for two evening Law Library sessions on 10/02/06 and 10/04/06, of which would normally run from 5:30 pm to 7:30 pm (approximately two hours a piece at a total of four hours). Unfortunately, I was prevented access to the Law Library on 10/02/06 until 7:05 pm and on 10/04/06 until 7:25 pm, and I only received some forty-five minutes of wholly inadequate Law Library time/access. Needed Law Library time was reduced by about a three quarters. I was prevented from attending the Law Library at the scheduled 5:30 pm (circa) time due to having to arbitrarily wait for the Housing Unit to complete its dinner meal run; a head count, though it was not code red; and then every other function scheduled (e.g. PRP, Ramadan, Chapel, et cetera).

     Prior to DCC ever running early meal runs for pm scheduled programs et cetera, the custom for those of us who were scheduled for the Law Library was to acquire our Passes at or around 5:30 pm and proceed to the Law Library; if the meal had not been served then we merely chose which was more important. In fact, I chose to forego the meals on both listed dates; however, was still prevented from going to the Law Library in a timely fashion. Forty-five minutes a week is wholly inadequate.

     Indeed, this has prevented me, and others I imagine, from working on my properly filed pro se litigation (06-379-SLR). Certainly, not even a member of the Delaware Bar could hope to properly prosecute even a single complaint with such limited resources and circumstances, let alone a pro se litigant. Consequently, this acute limitation of access to the Law Library is so likely to result in prejudice to my litigation (litigation that seeks redress for my serious medical needs) that it is dangerously close to denying me meaningful access to the courts that it warrants corrective action. This administration has -in the past- recognized that meaningful access to the courts is a right and not merely a privilege, and as such, met its obligations and normally provided adequate access to the Law Library. I am sure that this development is only a temporary one now that the administration is aware of the problem.

     In conclusion, I am hopeful that DCC will realize a viable corrective action. I thank you in advance for your assistance with this matter and I look forward to your response.

Dave W——

c.c. Warden Tom Carroll
     Deputy Warden Pierce

III B1

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

DAVID W. WILLIAMSON,                                )
    Plaintiff,                                         )
    v.                                              )          C.A. 06-379-SLR
CORRECTIONAL MEDICAL SERVICES, Inc, et al,          )
    Defendants.

### PLAINTIFF'S MOTION FOR APPIONTMENT OF AN EXPERT WITNESS

COMES NOW, Plaintiff, pursuant to Fed. R. Evid. 702, 706 (a); and 28 U.S.C. section 1915, and all other applicable

authority, and does request the Court to appoint a medical expert to assist both the Court and trier of fact to understand

evidence and or to determine the medical facts in issue. Plaintiff offers the following in support:

1.    Plaintiff is pro se and he sees pleading leniency pursuant to Haines v. Kerner, 404 U.S... 519 (1972).

2.    The Court granted Plaintiff in forma pauperis status on 6/23/06 and Plaintiff's complaint is non-frivolous.

3.    Plaintiff's complaint primarily concerns --but are not limited to- the deliberate indifference to his serious

medical needs in violation of his constitutional rights.

4.    Plaintiff's complaint raises four primary serious medical diseases/conditions[1] of which he seeks immediate

medical care. They are as follows:

    I.    Thyroid disease (See I. items 3-16 of Declaration (Decl), of which requires uninterrupted Chronic-
          care medications (CC Meds);
    II.    Ruptured Anterior Cruciate Ligament (ACL) (See II items 17-40 of Decl), of which will not heal on
          its own and requires reconstructive surgery, etc;
    III.    Periodontal disease (See III. Items 41-56 of Decl), of which requires immediate teeth scrapings for
          active perio-infections; requires continuing/consistent anti-perio dental care (E.g. semi-annual
          scrapings); and requires replacement teeth for the four permanently lost teeth (i.e. dentures).
    IV.    Substandard temporary composite repair to broken tooth (See IV. Items 57-67 of Decl), of which
          requires a crown and root canal.
          (See Memorandum in Support of TRO/PI –incorporated herein- at Statement of Facts).

5.    Plaintiff avers appointment of a medical expert is necessary because the issues of fact of which the Court and

or jury must decide will likely center on whether each of the above diseases/conditions are objectively serious medical

conditions, which would require medical care.

### ARGUMENT

6.    Rule 702 of the Federal Rules of Evidence provides, in pertinent part, "[i]f scientific, technical, or other

specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness

qualified as an expert... may testify thereto...." Fed. R. Evidence 702. Moreover, F.R.E. 706 provides for appointment

of an independent expert.

---

[1] Plaintiff does not limit/waive any additional claims that may also arise from the facts thus stated or that may

discovered in the future.

$$\mathit{III} \; C - 1$$

7.      Although it appears that the Third Circuit has yet to address the issue, other federal courts have addressed the

issue of whether, and when, an expert witness should be appointed in a pro se deliberate indifference case.    See

Helling v. McKinney, 509 U.S. 25, 113 S.Ct. 2475 (1993). (Suggesting the appointment of expert witness on the health

risks of environmental tobacco smoke).

8.      Plaintiff's complaint and TRO/PI raises complicated primary (e.g. physical) and secondary (e.g. emotional

and psychological) health risks, which are associated with his several medical diseases/conditions. For example, his

thyroid disease (i.e. a chronic condition) has causes the following primary health risks:

> Thyroid disease: Diagnosed as a chronic disease –will never heal- Plaintiff's hypothyroidism
> progressively worsens over time and requires periodic lab work to determine when the CC Meds
> dosage must be increased in order to manage Plaintiff's chronic symptoms. Moreover, these CC
> Meds are of the type that must be taken uninterrupted (i.e. daily and about the same hour) for them
> to be effective in managing the disease's common chronic symptoms. Plaintiff experiences the
> following chronic symptoms as a direct result of the ongoing and pervasive CC Meds interruptions
> (CCMNI):
> A.      Chronic fatigue (physical and mental);
> B.      Dangerous cholesterol production;
> C.      Dangerous and painful inflammation (e.g. in blood stream, face, extremities, etc.);
> D.      Disfigurement from Alopecia (i.e. unnatural hair loss about head, face, and body);
> E.      Impairment of normal daily functions (See D.I. 15).
> (See Memorandum of TRO/PI at Statement of Facts)

Indeed, a direct and primary result of the ongoing and pervasive Chronic-care medication interruptions (CCMI)

is a resurgence of these chronic symptoms of which cause the above health risks and endanger Plaintiff's health and

well being.

Granted, Plaintiff was diagnosed by a doctor as having a chronic disease –that by definition, it is

considered a serious medical condition- and therefore, the Court is warranted in taking judicial notice of the fact.

However, absent the Court exercising its discretion and taking judicial notice of this fact, and or absent defendant CMS

conceding the serious health risks said chronic symptoms pose for Plaintiff, expert testimony is necessary. Our sister

circuit advised that complex medical diagnosis makes expert witnesses necessary. Ledford v. Sullivan, 105 F.3d 354,

358-59 (7th Cir 1997).

Also, regarding complex psychological conditions/effects, the courts have sought expert opinion. Jordan v.

Gardner, 986 F.2d 1521, 1525-26 (9th Cir 1993) (en banc); Davis v. Locke, 936 F.2d 1208, 1213 (11th Cir 1991);

Davenport v. DeRobertis, 844 F.2d 1310, 1315 (7th Cir 1988), cert. denied, 488 U.S. 908 (1989); Fisher v. Koehler, 692

F. Supp. 1519, 1543-46 (S.D NY 1988) aff'd, 902 F.2d 2 (2d Cir 1990).

Plaintiff, for example, also claimed as a secondary consequence -though no less severe- that repeated exposure

of said chronic symptoms have caused him to experience acute anxiety associated with the anticipation of being

exposed to a likely CCMI (e.g. historical likelihood greater than 80%), and due to the acute adverse effects on

Plaintiff's mind/body of said chronic symptoms, Plaintiff also suffers the following:

violate the civil rights of prisoners here in Delaware. Dr. Kramer's familiarity and expertise would also aid this Court and the jury with these specialized fact issues, of which Plaintiff's health and well being hang in the balance. Appointment would likely serve judicial economy in this respect.

11.     Moreover, concerning defendant CMS (i.e. professional contracted health care provider and as such is a state official), is likely to present expert testimony. The courts have stated that when defendants utilize experts to prove there case, the denial to a plaintiff is manifest injustice. Parham v. Johnson, 126 F.3d 454, 460 (3d Cir 1997). Experts are required t give opinion on matters in response to or independent of state official opinions. Cabrales v. County of Los Angeles, 864 F.2d 1454, 1460 (9th Cir 1988), vacated, 490 U.S. 1087 (1989), reinstated, 886 F.2d 235 (9th Cir 1989), cert. denied, 494 U.S. 1091 (1990); Lisco v. Warren, 901 F.2d 274, 275-76 (2d Cir 1990).Indeed, examination and cross examination of expert witnesses is one of the more complicated aspects of trial practice and is beyond the scope of a pro se prisoner to defend against. (Helling v. McKinney, supra, at _____).

## CONCLUSION

WHEREFORE, Plaintiff prays that this Honorable Court appoints a medical expert for any of the following compelling reasons:

> ➤  To aid the Court in gaining a full and informed understanding of Plaintiff's serious medical diseases/conditions for its decision regarding TRO/PI or motion to dismiss fact issues;

> ➤  To serve as an independent opinion to state officials experts;

> ➤  To assist the trier of fact with specialized knowledge necessary to understand the facts/evidence; and

> ➤  To serve judicial economy and ensure manifest justice.

David Williamson, SBI # 183022
1181 Paddock Rd.
Smyrna, DE 19977

_1·7·07_
Date

# EXHIBIT D

ェV‐A



**CMS**
DEDICATED PEOPLE
MAKING A DIFFERENCE
Correctional Medical Services

David Williamson
SBI # 183022, W-1, L-12
1181 Paddock Road
Smyrna, DE 19977

10 May 2006

Dear Mr. Williamson,

Your medical records are the property of the Department of Corrections and the State of Delaware. Copies of your records will be available after your release. You would address your request to the Department of Corrections Health Services Unit, 245 McKee Road, Dover Delaware 19904. Please include your name, SBI number and dates that you are requesting information about. The cost for these copies would be determined by the Department of Corrections.

Your Partner in Healthcare,

Scott S. Altman
Quality Assurance Monitor
Correctional Medical Services

CC: Warden Thomas Carroll
    Medical Record

    Dorothy Williamson
    19 Cornwall Road
    New Castle DE 19720

III 0·1

-A

David Williamson
SBI #00183022, DOB 5/12/66
W-1, L-12
October 20, 2006

Mrs. Lee Ann Dunn, Medical Records
RE: Appointment to Inspect My Medical Records

Dear Mrs. Dunn:

Greetings. As per authorization of the Department of Corrections –in regard to Reprisal Grievance (# 72883 )- I have been authorized to inspect my medical records by personal appointment. Mrs. Rodweller informed me that the Department will allow me an "hour per appointment" to inspect my medical records, and that the only stated condition was that I could not make copies absent a lawyer, but that I could bring pen and paper for notes. Rodweller directed me to contact you for the purpose of making this appointment, etc.

Consequently, I request an appointment for this purpose at your earliest convenience. I work until 1:30pm Mon-Friday; perhaps any time after that would be convenient for your office as well –especially since there is less traffic during the 3:00 to 4:00 pm time frames. I hope to be able to complete my inspection in a single appointment, and if I receive adequate cooperation, I believe one –nor more than two-appointments- will suffice. Thus we can avoid subsequent appointments if you ensure that the following is collected for the inspection:

1. Complete and current medical/dental file (records) including but not limited to chronic care clinic schedulings, results, orders; and any medical/dental orders, recommendations, referrals (e.g. ACL/knee referrals and MRI results and or doctor's notes); and any responses or failures to respond from CMS regional or Administrative body;

2. All Chronic-care medication distribution (med-pick up) cards for the period 7/01/05 to the present; and

3. Any blood work or labs for the same period.

Thank you for your time and assistance with this matter. I shall expect a positive response notifying me of the appointment for inspection within the next two weeks.

Dave W

David Williamson

1   III  0 -2

# Ⅲ – **EXHIBIT E**

Copy: Returned to sender
Undelivered
12-19-06

David Williamson
SBI #183022
1181 Paddock Rd.
Smyrna, DE 19977
December  /  , 2006

The Law Offices of Brandt & Dalton
919 N. Market St.
Wilmington, De 19801

RE: Request for Representation for C.A. 06-379-SLR

To Whom It May Concern:

I am a pro se inmate plaintiff who has filed the above action for the deliberate indifference to my serious medical needs in violation of my constitutional rights. I am seeking professional representation in this matter, and I offer the following in support of my request:

Attached please find a courtesy copy on my complaint (Ex. A), and the District Court's October 6, 2006 Order (Ex. B) for your review. I believe my claims are viable, well documented, and the administrative remedies have been exhausted. I am confident that I will be the prevailing party – as I was in C.A. 97-710-SLR, which pales in comparison to the current and more egregious action- and attorney's fees are likely to be awarded under court rules. Nevertheless, I welcome any reasonable financial arrangement for representing my interests in this matter, and I encourage your office to review the complaint and Order so that you may draw your own conclusions. Also, I have complied with the Court's October 6, 2006 Order and the service of process has been made.

In conclusion, I thank you in advance for your time and consideration in this matter. I patiently look forward to your decision regarding my humble request.

Respectfully,

David W/

David Williamson

III - £ 1

Copy
No Reply

David Williamson
SBI #183022
1181 Paddock Rd.
Smyrna, DE 19977
December _1_ , 2006

The Law Offices of Hudson, Bruce L. Esq.
300 Delaware Ave.
Wilmington, De 19801

RE: Request for Representation for C.A. 06-379-SLR

To Whom It May Concern:

I am a pro se inmate plaintiff who has filed the above action for the deliberate indifference to my serious medical needs in violation of my constitutional rights. I am seeking professional representation in this matter, and I offer the following in support of my request:

Attached please find a courtesy copy on my complaint (Ex. A), and the District Court's October 6, 2006 Order (Ex. B) for your review. I believe my claims are viable, well documented, and the administrative remedies have been exhausted. I am confident that I will be the prevailing party — as I was in C.A. 97-710-SLR, which pales in comparison to the current and more egregious action- and attorney's fees are likely to be awarded under court rules. Nevertheless, I welcome any reasonable financial arrangement for representing my interests in this matter, and I encourage your office to review the complaint and Order so that you may draw your own conclusions. Also, I have complied with the Court's October 6, 2006 Order and the service of process has been made.

In conclusion, I thank you in advance for your time and consideration in this matter. I patiently look forward to your decision regarding my humble request.

Respectfully,

David W——

David Williamson

III  E·2

LAW OFFICES
# JOSEPH W. BENSON, P.A.

JOSEPH W. BENSON*
ANDREW G. AHERN III
CARL W. HECKERT **

1701 N. MARKET STREET
P. O. BOX 248
WILMINGTON, DELAWARE 19899
(302) 656-8811
FAX (302) 656-4230

*ADM. DE. DC
** ADM. DE. & PA

December 11, 2006

David Williamson – SBI 183022
1181 Paddock Road
Smyrna, Delaware 19977

RE:    C.A. No. 06C-379-SLR

Dear Mr. Williamson:

In response to your request for legal representation arising out of the above-captioned case, please be advised that my office does not handle civil rights violation type claims. Therefore, I must respectfully decline entering an appearance on your behalf.

I am returning your documents regarding this matter.

Very truly yours,

JOSEPH W. BENSON, P.A.

Joseph W. Benson, Esquire
Enclosure

$\text{III}$ ε · 3

Copy: No Reply

David Williamson
SBI #183022
1181 Paddock Rd.
Smyrna, DE 19977
December _1_, 2006

The Law Offices of Bifferato, Bifferato, & Gentilotti
1308 Delaware Ave.
Wilmington, De 19801

RE: Request for Representation for C.A. 06-379-SLR

To Whom It May Concern:

I am a pro se inmate plaintiff who has filed the above action for the deliberate indifference to my serious medical needs in violation of my constitutional rights. I am seeking professional representation in this matter, and I offer the following in support of my request:

Attached please find a courtesy copy on my complaint (Ex. A), and the District Court's October 6, 2006 Order (Ex. B) for your review. I believe my claims are viable, well documented, and the administrative remedies have been exhausted. I am confident that I will be the prevailing party – as I was in C.A. 97-710-SLR, which pales in comparison to the current and more egregious action- and attorney's fees are likely to be awarded under court rules. Nevertheless, I welcome any reasonable financial arrangement for representing my interests in this matter, and I encourage your office to review the complaint and Order so that you may draw your own conclusions. Also, I have complied with the Court's October 6, 2006 Order and the service of process has been made.

In conclusion, I thank you in advance for your time and consideration in this matter. I patiently look forward to your decision regarding my humble request.

Respectfully,

David W———
David Williamson

**RAMUNNO, RAMUNNO & SCERBA, P.A.**
ATTORNEYS-AT-LAW
903 N. FRENCH STREET
WILMINGTON, DELAWARE 19801-3371

(302) 656-9400
FAX (302) 656-9344

L. VINCENT RAMUNNO
LAWRENCE A. RAMUNNO
DAVID R. SCERBA
VINCENT RAMUNNO, JR
LOUIS JOSEPH RAMUNNO

MIDDLETOWN OFFICE
702 ASH BOULEVARD
MIDDLETOWN VILLAGE SHOPPING CENTER
MIDDLETOWN, DE 19709
(302) 376-9100

December 4, 2006

David Williamson
SBI# 183022
1181 Paddock Rd.
Smyrna, DE 19977

Dear Mr Williamson:

I received your recent letter that you sent to me. However, I am unable to

represent you, Therefore I am returning your documents..

Very truly yours

L. VINCENT RAMUNNO

LVR/np
Enclosures



David Williamson
SBI #183022
1181 Paddock Rd.
Smyrna, DE 19977
December ⊥ , 2006

The Law Offices of Ramunno, Lee
903 French St.
Wilmington, De 19801

RE: Request for Representation for C.A. 06-379-SLR

To Whom It May Concern:

I am a pro se inmate plaintiff who has filed the above action for the deliberate indifference to my serious medical needs in violation of my constitutional rights. I am seeking professional representation in this matter, and I offer the following in support of my request:

Attached please find a courtesy copy on my complaint (Ex. A), and the District Court's October 6, 2006 Order (Ex. B) for your review. I believe my claims are viable, well documented, and the administrative remedies have been exhausted. I am confident that I will be the prevailing party – as I was in C.A. 97-710-SLR, which pales in comparison to the current and more egregious action- and attorney's fees are likely to be awarded under court rules. Nevertheless, I welcome any reasonable financial arrangement for representing my interests in this matter, and I encourage your office to review the complaint and Order so that you may draw your own conclusions. Also, I have complied with the Court's October 6, 2006 Order and the service of process has been made.

In conclusion, I thank you in advance for your time and consideration in this matter. I patiently look forward to your decision regarding my humble request.

Respectfully,

_David W ———_

David Williamson                    III ε·6

**GRADY & HAMPTON, LLC**
6 NORTH BRADFORD STREET
DOVER, DELAWARE 19904

JOHN S. GRADY
STEPHEN A. HAMPTON
LAURA F. BROWNING

DOVER    (302) 678-1265
SUSSEX    (302) 855-1313
FAX    (302) 678-3544

June 30, 2006

David Williamson
SBI # 183022, W-1, L-12
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

Dear Mr. Williamson:

My caseload is too heavy to take your case. If you would like your paperwork
returned, please let me know.

Sincerely yours,

Stephen A. Hampton

SAH:slh