IN UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| **DAVID W. WILLIAMSON,** ) | |
| ) | C.A. No. 06-379 (SLR) |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | **JURY OF 12 DEMANDED** |
| **CORRECTIONAL MEDICAL SERVICES,** ) | |
| **INC., C. MALANEY, DONNA PLANTE,** ) | |
| **MAGGIE BAILEY, CHUKS IHUOMA,** ) | |
| **DR. S. ALIE, DR. ZIMBULL, MICHELLE** ) | |
| **ROBINSON, JUANITA CLARK, DENTIST** ) | |
| **JANE DOE and FIRST CORRECTIONAL** ) | |
| **MEDICAL,** ) | |
| ) | |
| **Defendants,** ) | |

**RESPONSE TO PLAINTIFF'S REQUEST FOR ENTRY OF DEFAULT AND
DEFENDANT FIRST CORRECTIONAL MEDICAL INC.'S MOTION TO DISMISS**

Defendant First Correctional Medical, Inc. (hereinafter FCMI) requests that this Court deny plaintiff's *Request for Default Judgment,* D.I. 42, as the Third Circuit disfavors default judgments and prefers that cases are decided upon their merits. *Chase Manhattan Bank v. Iridium Africa Corp.*, 2004 WL 323173 at *2. (D.Del. 2004)(attached as Exhibit 1). Defendant FCMI is willing to file an answer to the plaintiff's complaint should this Court direct such a response. However, defendant believes that this matter should be best adjudicated with a Motion to Dismiss.

Pursuant to 18 *Del.C.* §6853(a)(1) and F.R.C.P. 12(b)(6), FCMI moves the Court for an order dismissing all claims against it on the grounds that (1) it did not provide, nor did it contract to provide, health care to inmates in the State of Delaware and (2) that plaintiff failed to comply with the statutory requirements for filing a medical negligence suit and a 42 U.S.C. § 1983 action. In support of its motion, FCMI offers the following:

1. Plaintiff is an inmate in the Delaware correctional system.

2. First Correctional Medical - Delaware, LLC, not FCMI, provided health care for the Delaware correctional system from July 1, 2002 to June 30, 2005. See Relevant Portion of Contract between First Correctional Medical - Delaware, LLC and Department of Correction, attached as Exhibit 2.

3. Plaintiff's Form 285 identifies FCMI as the defendant plaintiff intended to, and in fact did, serve. D.I. 23.

## Legal Standards

4. Where the Clerk of Court or Prothonotary mistakenly accepts a medical negligence complaint without an affidavit of merit, the defendant's remedy is a dismissal. *Jackson v. First Correctional Medical Services*, 380 F. Supp. 2d 387, 392 (D. Del.2005).

5. There is no vicarious liability for civil rights claims. *Hyson v. Correctional Medical Services*, C.A. No. 02-318 (SLR), mem. order at 2-3, Robinson, C.J. (D.Del. Feb. 6, 2003) (attached as Exhibit 3). Personal involvement by a defendant is required. *Id.*, mem. op. at 3.

## Plaintiff has Failed to File an Affidavit of Merit

6. Plaintiff's complaint was not accompanied by either an affidavit of merit or a motion to extend the time for filing such affidavit. As such, plaintiff's state law claims must be dismissed as a matter of law. *Jackson*, 380 F. Supp. 2d at 392.

## Plaintiff has Failed to State a 42 U.S.C. § 1983 Claim Against FCMI

7. Defendant FCMI never contracted with the Delaware Department of Correction and did not provide healthcare for the Delaware prison system at any time. FCMI cannot be held liable for any injuries or illnesses the plaintiff may have sustained.

8.    It appears that the claims against FCMI, to the extent that the Court could find any, are derivative of the claims against other defendants or other unnamed First Correctional Medical - Delaware, LLC employees. There is no vicarious liability for civil rights actions, so the plaintiff fails to state a claim against FCMI. *Hyson*, mem. order at 3.

## Conclusion

9.  For the above reasons, the FCMI respectfully requests that all claims against them be dismissed with prejudice.

**McCULLOUGH & McKENTY, P.A.**

/s/ Dana Spring Monzo
Daniel L. McKenty, Del. Bar No. 2689
Dana Spring Monzo, Del. Bar No. 4605
1225 N. King Street, Suite 1100
P.O. Box 397
Wilmington, DE 19899-0397
(302) 655-6749
Attorneys for First Correctional Medical Inc.

January 31, 2007

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| DAVID W. WILLIAMSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CORRECTIONAL MEDICAL SERVICES, )<br>INC., C. MALANEY, DONNA PLANTE, )<br>MAGGIE BAILEY, CHUKS IHUOMA, )<br>DR. S. ALIE, DR. ZIMBULL, MICHELLE )<br>ROBINSON, JUANITA CLARK, DENTIST )<br>JANE DOE and FIRST CORRECTIONAL )<br>MEDICAL, )<br>)<br>Defendants, ) | C.A. No. 06-379 (SLR)<br><br>JURY OF 12 DEMANDED |

## CERTIFICATE OF SERVICE

I, **DANA SPRING MONZO**, hereby certify that on this date, a copy of the attached *Response to Plaintiff's Request for Entry of Default and First Correctional Medical Inc.'s Motion to Dismiss* was served to the following:

**Via First Class Mail**
David Williamson
SBI#183022
Delaware Correctional Center
1811 Paddock Road
Smyrna, DE 19977

**Via Electroning Filing**
Amy A. Quinlan, Esquire
Morris James, LLP
500 Delaware Ave., Suite 1500
P.O. Box 2306
Wilmington, DE 19899

                    **McCULLOUGH & McKENTY, P.A.**

/s/ Dana Spring Monzo
Dana Spring Monzo
1225 N. King Street, Suite 1100
P.O. Box 397
Wilmington, DE 19899-0397
(302) 655-6749
Attorney for Defendant First Correctional Medical Inc.

Dated: January 31, 2007

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| **DAVID W. WILLIAMSON,** ) | |
| ) | C.A. No. 06-379 (SLR) |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | **JURY OF 12 DEMANDED** |
| **CORRECTIONAL MEDICAL SERVICES,** ) | |
| **INC., C. MALANEY, DONNA PLANTE,** ) | |
| **MAGGIE BAILEY, CHUKS IHUOMA,** ) | |
| **DR. S. ALIE, DR. ZIMBULL, MICHELLE** ) | |
| **ROBINSON, JUANITA CLARK, DENTIST** ) | |
| **JANE DOE and FIRST CORRECTIONAL** ) | |
| **MEDICAL,** ) | |
| ) | |
| **Defendants,** ) | |

## ORDER

And now this _____ day of _____, 2007, having considered Response to Plaintiff's Request for Entry of Default and First Correctional Medical Inc.'s Motion to Dismiss and any opposition thereto,

It is HEREBY ORDERED that Plaintiff's Request for Entry of Default is DENIED and First Correctional Medical Inc.'s Motion to Dismiss is GRANTED.

_____
                                    J.

Westlaw.

Not Reported in F.Supp.2d                                                                                                  Page 1

Not Reported in F.Supp.2d, 2004 WL 323173 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents
Chase Manhattan Bank v. Iridium Africa Corp.D.Del.,2004.Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
THE CHASE MANHATTAN BANK, As Collateral Agent, Plaintiff,
v.
IRIDIUM AFRICA CORPORATION; Iridium Canada, Inc.; Iridium China (Hong Kong) Ltd.; Iridium India Telecom Ltd.; Iridium Middle East Corporation; Iridium Sudamerica Corporation; Khrunichev State Research and Production Space Center; Korea Mobile Telecommunications Corporation; Lockheed Martin Corporation; Motorola, Inc.; Nippon Iridium (Bermuda) Ltd.; Pacific Electric Wire & Cable Co., Ltd.; Raytheon Company; Sprint Iridium, Inc.; Stet-Societá Finanziaria Telefonica Per Azioni; Thai Satellite Telecommunications Co., Ltd.; and Vebacom Holdings, Inc., Defendants.
No. Civ.A. 00-564 JJF.

Feb. 13, 2004.

Stephen E. Jenkins, and Regina A. Iorii, of Ashby & Geddes, Wilmington, Delaware, Morgan, Lewis & Backius LLP, New York, New York. Simpson Thacher & Bartlett, New York, New York, for Plaintiff The Chase Manhattan Bank, as Collateral Agent, of counsel.
John S. Spadaro, of Murphy Spadaro & Landon, Wilmington, Delaware, Robert D. Mercurio, and Robert J. Malatak, of Windels Marx Lane & Mittendorf, LLP, New York, New York, for Defendant Pacific Electric Wire & Cable Co., Ltd., of counsel.

*OPINION*
FARNAN, J.
*1 Presently before the Court are the Objections Of Plaintiff Pursuant To 28 U.S.C. § 636(b) To Report And Recommendation Of Magistrate Judge Regarding Motion Of Defendant Pacific Electric Wire and Cable Co., Ltd. ("PEWC") To Set Aside Default Judgment. (D.I.647.) For the reasons set forth below, the Court will adopt the Magistrate Judge's Report and Recommendation to set aside the Default Judgment against PEWC.

BACKGROUND

This dispute arises from an $800 million loan The Chase Manhattan Bank ("Chase") made to Iridium LLC in 1998 ("the Chase Loan"). The Members of Iridium LLC were obligated to pay Reserve Capital Call ("RCC") Obligations pursuant to Iridium's LLC Agreement ("LLC Agreement") in order to secure various loans Iridium LLC acquired. Chase alleges that the RCC Obligations were pledged to secure the Chase Loan.

PEWC, a Taiwanese corporation, contends that it is no longer a Member of Iridium LLC because it transferred all of its interests in Iridium LLC to Pacific Asia Communications, Ltd. ("Pacific Asia"). As a condition of this transfer, PEWC signed an Agreement of Indirect Owner Guaranty ("AIO"), in which PEWC consented to jurisdiction in Delaware and appointed the Corporation Trust Company as its agent for service of process. Further, the AIO provides that PEWC would guarantee Pacific Asia's performance of the RCC Obligations.

Following Iridium LLC's default on the Chase Loan, Chase attempted to call the RCC Obligations. The Members raised various defenses and Chase initiated the instant lawsuit to recover the RCC Obligations. PEWC did not answer Chase's Complaint and Summons and the Clerk of the Court entered a Default Judgment against PEWC on November 14, 2000. (D.I.88.) Subsequently, PEWC moved to set aside the Default Judgment for excusable neglect and the Magistrate Judge, in her Report and Recommendation, granted the motion.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 2
Not Reported in F.Supp.2d, 2004 WL 323173 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Chase's objections to that Report and Recommendation are now before the Court.

### I. Parties' Contentions

Chase makes several objections to the Magistrate Judge's Report and Recommendation, arguing first that her finding of "excusable neglect" has no support. Chase contends that the Magistrate Judge erred because she did not consider the AIO as a basis for jurisdiction over PEWC, that it was prejudiced by PEWC's year-long delay in filing its motion to set aside the Default Judgment, and that PEWC willfully decided not to respond to Chase's Complaint and Summons. Second, Chase contends that PEWC's motion to set aside the default judgment was not timely. Third, Chase contends that if the Court adopts the Magistrate Judge's Report and Recommendation and sets aside the Default Judgment, the Court should make the set aside contingent on PEWC's compliance with four conditions that it proposes. (D.I.647.)

In response, PEWC contends that the Magistrate Judge's finding of "excusable neglect" was correct and should be adopted by the Court. PEWC also contends that its motion to set aside the Default Judgment was timely. Finally, PEWC maintains that Chase's proposed conditions on setting aside the Default Judgment are "punitive" and should be rejected by the Court. (D.I.670.)

### STANDARD OF REVIEW

*2 When reviewing a dispositive matter decided by a magistrate judge, a district court shall conduct a de novo determination of those portions of a report and recommendation to which a party objects. *See* 28 U.S.C. § 636(b)(1)(B). A motion to set aside a default judgment is a dispositive matter. D. Del. L.R. 72.1(a)(3). Under Section 636(b)(1)(B), a district court "may accept, reject, or modify, in whole or in part [the magistrate judge's] findings and recommendations, and may also receive further evidence." *Haines v.. Liggett Group Inc.,* 975 F.2d 81, 91 (3d Cir.1992)(inner quotation omitted).

### DISCUSSION

The Third Circuit has held that when deciding whether to set aside a default judgment, courts should resolve doubts in favor of deciding the matter on the merits. *Zawadski de Bueno v. Bueno Castro,* 822 F.2d 416, 420 (3d Cir.1987)(noting that the Third Circuit generally disfavors default judgments). The Third Circuit has prescribed four factors a court should use when deciding whether to set aside a default judgment, including: 1) whether lifting the default judgment will prejudice the plaintiff; 2) whether the defendant has a meritorious defense; 3) whether the defendant's conduct in defaulting was excusable or culpable; and 4) whether alternative sanctions are effective. *Id.* (citing *Hritz v. Woma Corp.,* 732 F.2d 1178, 1181 (3d Cir.1984).

### I. Whether PEWC Has A Meritorious Defense

The Magistrate Judge incorrectly determined that PEWC has a meritorious jurisdictional defense. In reaching her conclusion, the Magistrate Judge did not consider the AIO. The AIO provides that PEWC waived its objection to personal jurisdiction in Delaware and appointed the Corporation Trust Company as its agent for service of process. (D.I. 50; Ex. D.) Therefore, the Court concludes that even if PEWC completed the transfer of its interests in Iridium LLC to Pacific Asia, PEWC's execution of the AIO precludes it from asserting a jurisdictional defense.

However, the Court concludes that PEWC may have a meritorious defense if in later proceedings the Court determines that the LLC Agreement was not validly amended such that the Chase Loan was secured by the RCC Obligations. A movant's defense is meritorious if its allegations, established at trial, would be a complete defense. *Emcasco Ins. Co. v. Sambrick,* 834 F.2d 71, 74 (3d Cir.1987). If the LLC Agreement was not validly amended, PEWC would not be liable as a surety because the primary obligor, Pacific Asia, would not have defaulted on its obligation to pay its RCC Obligations to Chase. Accordingly, because PEWC's asserted defense if established would be a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:06-cv-00379-SLR    Document 49-2    Filed 01/31/2007    Page 3 of 5

Not Reported in F.Supp.2d                                                                                                      Page 3
Not Reported in F.Supp.2d, 2004 WL 323173 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

complete defense, the Court concludes that PEWC has a meritorious defense for the purposes of a Rule 60(b) Motion. *Id.*

### II. Whether PEWC's Conduct Was Culpable or Excusable

Although PEWC submitted to jurisdiction in Delaware when it executed the AIO, in viewing the instant dispute in favor of deciding the case on the merits, *see Zawadski,* 822 F.2d at 420, the Court cannot conclude that PEWC's oversight as to the effect of the AIO was willful or in bad faith.

*3 In its Complaint, Chase does not identify the AIO as a basis for PEWC's liability, jurisdiction, or proper service. And, while the Court will consider the AIO in its determinations despite Chase's failure to include the AIO in its Complaint, it is reasonable that a foreign corporation would not recognize the effect of its previous jurisdictional waiver in light of Chase's omission.

In the Third Circuit, courts take an "accommodating approach" toward foreign corporations, *see Feliciano v. Reliant Tooling Company, Ltd.,* 691 F.2d 653, 657 (3d Cir.1982), particularly when the foreign corporation's reluctance to act stems from a fear that it may involuntarily submit itself to suit in the United States. *Id.* at 658. Based upon Chase's omissions and taking into account PEWC's status as a foreign corporation, the Court concludes that PEWC's conduct was not willful or in bad faith.

Similarly, the Court views PEWC's failure to move to set aside the Default Judgment until approximately one year had passed as negligent, but not willful. In support of its contention that the Court should not set aside the default judgment, Chase cites *Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation,* 656 F.2d 648, 656 (S.D.N.Y.1979), for the proposition that a party's one-year delay in moving to set aside a default judgment should be considered unreasonable. (D.I. 647 at 15.) However, unlike the facts in this case, the movant in *Amoco* "offer[ed] no explanation to support its substantial delay in attempting to reopen the default judgment." *Id.*

Here, PEWC contends that even though it was aware of the Default Judgment it had a good faith belief that it was not subject to the Court's jurisdiction until Judge McKelvie on September 28, 2001, decided STET-Societá Finanziaria Telefonica Per Azioni's ("STET") motion to dismiss. It was at this point, PEWC contends, that it first became aware that its jurisdictional defense might be invalid. Following this recognition, PEWC contends that it quickly moved to set aside the Default Judgment.

As noted above, although PEWC's belief that it was not subject to the Court's jurisdiction was incorrect and potentially negligent, the Court cannot conclude that it amounts to bad faith or willful conduct. Based on the liberal Rule 60(b) standards, the Court does not view PEWC's failure to respond to Chase's Complaint as a trial strategy gone awry that it must now live with. *See Zawadski De Bueno v. Bueno Castro,* 822 F.2d 416, 421 (3d Cir.1987). Instead, the Court concludes that PEWC's conduct, although careless, was not willful or in bad faith.

### III. Whether Setting Aside the Default Judgment Will Unfairly Prejudice Chase

After reviewing the submissions of the parties and the Magistrate Judge's Report and Recommendation, the Court concludes that the Magistrate Judge did not err in finding that Chase will not be unfairly prejudiced if the Court were to set aside the Default Judgment. As an initial matter, the Court observes that the costs Chase expended in its attempts to enforce the Default Judgment will not be wasted if PEWC is found liable on the merits. And, in the Third Circuit, "[d]elay[s] in realizing satisfaction on a claim rarely serve ... to establish the degree of prejudice sufficient to prevent the opening [of] a default judgment entered at an earlier proceeding." *Emcasco,* 834 F.2d at 74 (inner quotation omitted).

*4 Further, the Court is persuaded that any discovery Chase will be forced to conduct as a result of the set aside of the Default Judgment will be minimal. PEWC's defense, that the LLC Agreement was not validly amended, is similar to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 323173 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 4

the defenses of the other Members, and therefore, Chase will not be forced to prepare for additional defenses at trial. Moreover, PEWC has represented that it will not request Chase to reopen any discovery that Chase already provided to the other Members. (D.I. 670 at 21.) Based on these considerations, the danger of the "irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party" are minimal. *See Scarborough v. Eubanks,* 747 F.2d 871, 876 (3d Cir.1984). Accordingly, the Court concludes that the absence of unfair prejudice weighs in favor of setting aside the Default Judgment.

### IV. Chase's Conditions

Chase contends that if the Court sets aside the Default Judgment, it should do so contingent on four conditions. Chase requests that the Court order PEWC to: 1) post a bond for the full amount of its RCC Obligations; 2) pay all of Chase's attorneys' fees and costs Chase incurred in enforcing the Default Judgment; 3) pay all of Chase's attorneys' fees and costs expended in subsequent discovery with PEWC; and 4) immediately produce all documents Chase requires and order PEWC to make its witnesses available for depositions in New York. (D.I. 647 at 16-17.)

In the Court's view, Chase's proposed conditions are excessive. Beginning with the first condition, Chase does not dispute that PEWC has over two billion dollars in assets. Therefore, in the event Chase obtains a judgment against PEWC it is unlikely that PEWC will be without assets to satisfy Chase's award. Accordingly, the Court will not require PEWC to post a bond for the full amount of its RCC Obligations.

The Court will also not order PEWC to reimburse Chase for the costs it incurred in enforcing the Default Judgment, specifically, expenses incurred in uncovering PEWC's assets in the United States. Chase's expenditures will not be wasted if Chase obtains a judgment against PEWC. Further, the Court will not order PEWC to pay Chase for attorneys' fees it will expend in future discovery with PEWC because PEWC has agreed that it will not force Chase to reopen any discovery already conducted with other Members. It is the role of the Federal Rules of Civil Procedure to allocate the costs civil litigants expend in discovery, and, without good reason, the Court will not depart from the Rules. The Court will deny Chase's request for the Court to order PEWC to make all of its witness available in New York for similar reasons.

However, the Court will order PEWC to reimburse Chase for the attorneys' fees it expended in securing the Default Judgment and in filing and defending the instant motion. In *Int'l Broth. of Elec. Workers, Local Union No. 313 v. Skaggs,* 130 F.R.D. 526, 530 (D.Del.,1990), the court held that awarding attorneys' fees is appropriate when doing so avoids " the harshness of a default [and permits a result] equally effective yet less severe." *Id.* (citing *Emcasco,* 834 F.2d at 73). In this case, PEWC negligently failed to recognize that its execution of the AIO submitted it to personal jurisdiction in Delaware and appointed the Corporation Trust Company as its agent for service of process. If not for this oversight, PEWC would have responded to Chase's Complaint and Summons and not have forced Chase to incur unnecessary legal fees. For these reasons, the Court will award Chase the attorneys' fees and costs it expended in securing the Default Judgment and in filing and defending the instant motion.

*5 An appropriate Order will be entered.

### ORDER

At Wilmington, this 13th day of February, 2004, for the reasons discussed in the Opinion issued this date;

NOW THEREFORE, IT IS HEREBY ORDERED that:
1) The Magistrate Judge's Report and Recommendation (D.I.644) is *ADOPTED;*
1) The Default Judgment entered against Defendant Pacific Electric Wire and Cable Co., Ltd. ("PEWC") (D.I.88) is *SET ASIDE;*
2) The Objections Of Plaintiff Pursuant To 28

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 323173 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

U.S.C. § 636(b) To Report And Recommendation Of Magistrate Judge Regarding Motion Of Defendant PEWC To Set Aside Default Judgment (D.I.647) (the "Motion To Set Aside The Default Judgment") are *DENIED*.
3) PEWC shall reimburse Plaintiff the attorneys' fees and costs Plaintiff incurred in securing the Default Judgment against PEWC and expended in filing and defending the Motion To Set Aside The Default Judgment. (D.I.647.)

D.Del.,2004.
Chase Manhattan Bank v. Iridium Africa Corp.
Not Reported in F.Supp.2d, 2004 WL 323173 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:00CV00564 (Docket) (Jun. 09, 2000)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# HEALTH CARE SERVICES CONTRACT

RECEIVED
2002 JUN 21 PM 2 04
BUSI...

This Agreement is made this 17th day of June 2002, by and between First Correctional Medical-Delaware, L.L.C. ("FCM") and the State of Delaware, Department of Correction ("DOC").

## RECITALS

WHEREAS, the DOC desires to purchase the health care services offered by FCM to serve the needs of the State of Delaware and the State's inmate population; and

WHEREAS, the State has asked prospective vendors to submit proposals for contract No. 2828; and

WHEREAS, FCM's sole member (First Correctional Medical, Inc.) submitted a proposal to provide the aforementioned health care services to the DOC and its proposal was accepted by the DOC; and

WHEREAS, on Wednesday May 29, 2002, the DOC and FCM's sole member entered into final negotiations with the express intent to execute a contract for the provision of health services to Delaware's incarcerated population; and

NOW THEREFORE, in consideration for the mutual promises contained herein, the parties enter into this Agreement and its related documents to govern their relationship and hereby revoke any previous agreement between the parties. All references in said documents to "FCM" or "First Correctional Medical, Inc." or "First Correctional Medical" shall be deemed a reference to FCM as if FCM made the proposal and agreements set forth in or under such documents and was the successful bidder. The Terms and Conditions of this Agreement are contained within this DOC/FCM health care services contract which shall include by this reference the Request for Proposal, FCM's Proposal and the FCM Question and Response Memorandum dated May 21, 2002; and

NOW THEREFORE, the DOC and FCM mutually agree as follows:

Not Reported in F.Supp.2d
(Cite as: 2003 WL 292085 (D.Del.))

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.

Michael T. HYSON, Plaintiff,
v.
CORRECTIONAL MEDICAL SERVICES, INC.,
Robert Hampton, Dr. Canciho and Dr.
Rizwan, Defendants.

No. Civ.A. 02-318.

Feb. 6, 2003.

MEMORANDUM ORDER

ROBINSON, J.

I. INTRODUCTION

*1 On April 30, 2002, plaintiff filed this action under 42 U.S.C. § 1983 against Correctional Medical Services, Inc. ("CMS"), Robert Hampton, Dr. Canciho and Dr. Rizwan. (D.I.2) Plaintiff alleges that he was "denied proper and adequate medical treatment." (*Id.*)

Currently before the court is plaintiff's motion for injunctive relief, motion to compel and motion for summary judgment. (D.I.12, 29, 36) Also before the court is CMS's motion to dismiss for failure to exhaust administrative remedies and for failure to state a claim. (D.I.35) For the following reasons, the court shall deny each motion.

II. BACKGROUND

Plaintiff is currently incarcerated in the Delaware Correctional Center. Plaintiff alleges that sometime in February 2001 he slipped in the stairwell of his unit and injured his leg. (D.I.2) He was treated at that time and was informed that x-rays showed no visible injury. Plaintiff alleges continuing pain and visible injury to his leg. (*Id.*) Plaintiff states he was examined several times and each time told that there was no visible injury on the x- rays.

III. DISCUSSION

A. Plaintiff's Motion for Injunctive Relief

Plaintiff requests injunctive relief for outside treatment of his injury and to be reassigned to a bottom bunk. Plaintiff alleges that the Delaware Correctional Center has retaliated against him for this litigation by assigning him a top bunk. Due to his leg injury, plaintiff experiences pain and suffering from having to climb to the top bunk.

"[T]he grant of injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances." ' *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir.1989) (quoting *Frank's GMC Truck Center, Inc. v. General Motors Corp.*, 847 F.2d 100, 102 (3d Cir.1988)). In ruling on a a preliminary injunction, this court must consider: 1) the likelihood of success on the merits; 2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; 3) the extent to which the defendant will suffer irreparable harm if the requested relief is granted; and 4) the public interest. *See Clear Ocean Action v. York*, 57 F.3d 328, 331 (3d Cir.1995). An injunction should only issue if all four factors favor injunctive relief. *See S & R Corp. v. Jiffy Lube Intern., Inc.*, 968 F.2d 371, 374 (3d Cir.1992).

Plaintiff's claim is that he was denied treatment for a serious medical need.
Failure to give adequate medical treatment to prisoners is a constitutional violation when it results from "deliberate indifference to a prisoner's serious illness or injury." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). This standard "requires (1) deliberate indifference on the part of prison officials and ... (2) the prisoner's medical needs to be serious." *West v. Keve*, 571 F.2d 158, 161 (3d Cir.1978).

* * *

[The Third Circuit] cases describe acts or omissions that fail to display a serious use of medical judgment. An incidence of negligence or malpractice does not violate the Eighth Amendment. *Estelle*, 429 U.S. at 106. Similarly, a difference of medical opinion between the prison's medical staff and the inmate as to the latter's course of treatment does not support a claim of cruel and unusual punishment. *See Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir.1989).
*2 *Miller v. Correctional Medical Services, Inc.*, 802 F.Supp. 1126, 1130-31 (D.Del.1992).

Under the requisites for injunctive relief, plaintiff has failed to demonstrate a likelihood to succeed on the merits. Plaintiff concedes in his complaint that he has

had at least two sets of x-rays and been seen by at least two different doctors for his injury. Both doctors reported no injury based on the x-rays. Plaintiff, on the other hand, believes he is injured. On the face of the complaint, plaintiff has not shown a deliberate indifference on the part of defendants to serious medical needs. [FN1]

> FN1. Plaintiff claims that his bunk placement is in retaliation for this lawsuit. (D.I. 12 at 1) Courts have "recognized that retaliation claims by prisoners are especially 'prone to abuse.' Due to 'the ease with which retaliation claims may be fabricated, [they should be] viewed[ed] with skepticism and particular care." ' *Woods v. Goord*, No. 01 Civ. 3255, 2002 WL 31296325, at *7 (S.D.N .Y. Oct. 10, 2002) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.1983); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995)).

There being no evidence presented regarding either the extent to which defendants will suffer irreparable harm if injunctive relief is granted, or the public interest, the court cannot address those issues. However, it is not necessary to do so, as failure to meet any one of the factors is sufficient to deny relief. Thus, the court denies plaintiff's motion for injunctive relief.

B. Plaintiff's Motion to Compel

Plaintiff has filed a motion to compel CMS to provide the addresses of Robert Hampton, Dr. Canciho and Dr. Rizwan. Although not stated, the court assumes plaintiff desires the addresses to effectuate service of process. [FN2] Plaintiff's motion is granted for the purpose of obtaining addresses to serve process. To the extent CMS is able to provide an address to serve the named defendants, [FN3] it must do so.

> FN2. The court notes that return of service unexecuted has been filed for Drs. Canciho and Rizwan. (D.I.25, 26)

> FN3. The record does not indicate whether the named defendants are currently employed by CMS.

C. Defendant CMS's Motion to Dismiss

In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc .,* 140 F.3d 478, 483 (3d Cir.1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Id.* Claims may be dismissed pursuant to a Rule 12(b)(6) motion only if the plaintiff cannot demonstrate any set of facts that would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Where the plaintiff is a pro se litigant, the court has an obligation to construe the complaint liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972); *Gibbs v. Roman*, 116 F.3d 83, 86 n. 6 (3d Cir.1997); *Urrutia v. Harrisburg County Police Dep't.*, 91 F.3d 451, 456 (3d Cir.1996). The moving party has the burden of persuasion. *See Kehr Packages, Inc. v. Fidelcor, Inc .,* 926 F.2d 1406, 1409 (3d Cir.1991).

1. Exhaustion of Administrative Remedies

Defendant Correction Medical Services argues that plaintiff did not exhaust his administrative remedies prior to filing this action pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). [FN4] Before filing a civil action on a denial of medical services claim, a plaintiff-inmate must exhaust his administrative remedies. *See Booth v. Churner*, 206 F.3d 289, 295 (3d Cir.2000), *cert. granted*, 531 U.S. 956 (2000), *aff'd*, 121 S.Ct. 1819 (2001).

> FN4. The PLRA provides, in pertinent part:
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.
> 42 U.S.C. § 1997e(a).

*3 In the case at bar, the record indicates that plaintiff filed grievance forms on December 12, 2001 and February 24, 2002. (D.I.2) The record does not reflect a resolution of these grievances of the current status. Plaintiff also alleges to have exhausted his administrative remedies. (D.I. 36 at 1) Thus, the court finds that plaintiff has exhausted his administrative remedies. Defendant's motion to dismiss for failure to exhaust administrative remedies is denied.

2. Liability of CMS

As to the liability of CMS, it is an established

Not Reported in F.Supp.2d
(Cite as: 2003 WL 292085, *3 (D.Del.))

principle that, as a basis for liability under 42 U.S.C. § 1983, the doctrine of respondeat superior is not acceptable. *See Monell v. Dep't. of Social Servs.*, 436 U.S. 658 (1978); *see also Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988); *Swan v. Daniels*, 923 F.Supp. 626, 633 (D.Del.1995) (applying principle to liability of private corporations that provide medical services for State). Personal involvement by a defendant is essential in a civil rights action. *See Rode*, 845 F.2d at 1207. "Allegations of personal direction or of actual knowledge and acquiescence" are adequate to demonstrate personal involvement. *Id.* Such allegations are required to be "made with appropriate particularity." *Id.* Plaintiff's complaint states "the defendants knew of and were aware of his foot problem, yet ignored administering the adequate and proper treatment[.]" The court finds that, on a motion to dismiss, the complaint is sufficient to allege actual knowledge with the appropriate particularity. Thus, defendant's motion to dismiss is denied.

D. Plaintiff's Motion for Summary Judgment

Plaintiff's motion, although styled as a motion for summary judgment, is an answer to defendant's motion to dismiss. The court has denied defendant's motion to dismiss. As such, plaintiff's motion for summary judgment is denied as moot.

V. CONCLUSION

Therefore, at Wilmington, this 6th day of February, 2003;

IT IS ORDERED that:

1. Plaintiff's motion for injunctive relief (D.I.12) is denied.

2. Plaintiff's motion to compel (D.I.29) is granted. On or before March 5, 2003, defendant Correction Medical Services shall provide plaintiff with the service address for defendants Hampton, Canciho and Rizwan or aver that it does not have such information.

3. Defendant Correctional Medical Service's motion to dismiss (D.I.35) is denied.

4. Plaintiff's motion for summary judgment (D.I.36) is denied as moot.

2003 WL 292085 (D.Del.)

END OF DOCUMENT