

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

DAVID W. WILLIAMSON,
  Plaintiff,
V.                                                              C.A. 06-379-SLR
CORRECTIONAL MEDICAL SERVICES, Inc, et al,
  Defendants.

PLAINTIFF'S COMBINED FIRST SET OF REQUESTS FOR INTERROGATORIES & PRODUCTION OF DOCUMENTS DIRECTED TO FIRST CORRECTIONAL MEDICAL, INC.

COMES NOW, plaintiff, Williamson pursuant to the appropriate Fed. R. Civ. P., Local Rule, and or case authority. Williamson attests that the instant discovery request is made in good faith, not meant to harass, inconvenience, or be overly burdensome to defendants or to delay these proceedings in any manner. The following requests for interrogatories and production of documents (documents), are to be answered or responded to in writing and, where required under the applicable rules, under oath, within thirty-days of the date of service.

### DEFINITIONS

1. FCM shall mean defendant First Correctional Medical, Inc, and include the entity's owners, principals, officers, and/or partners.

2. DDOC shall mean Delaware Department of Correction.

3. DCC shall mean Delaware Correctional Center.

4. "Document" or "documents" shall have the meaning set forth in Rule 34 (a) of the Fed. R. Civ. Proc., and shall include, without limitation, any writing, recording, photograph, computer data base, data bank, report, memoranda, books summarizing, ledgers or other item containing information of any kind or nature, whether in draft or final form, however produced or reproduced, whatever its origin or location, and regardless of the form in which such information exists or is maintained.

5. "Communication" shall mean any transmission of information, the information transmitted, and any process by which information is transmitted, including both oral and written communications.

6. The phrase "custom/policy" shall refer to any formal or informal procedure, act, or behavior employed by FCM during its contract period with the DDOC, whether written or otherwise.

7. The phrase "refer to," "relate to," "referring to," or "relating to" shall mean directly or indirectly relating, reflecting, containing, pertaining, indicating, showing, concerning, constituting, evidencing, describing, discussing, or mentioning.

8. The terms "and" or "or" shall mean and include both the conjunctive and injunctive.

9. "Identify" when used with respect to a person means to provide the following information:
   (a) The name, telephone number, and last known residential address of the person; and
   (b) The name of the present employer, place of employment, business and job title of the person.

10. "Identify" when used with respect to an entity means to provide the following information:
    (a) The name, telephone number and address of the entity; and
    (b) The name of the entity's owners, principals, officers, and/or partners.

11. "Identify" when used with respect to a document means to provide the following information:

(a) The nature of the document (e.g. letter, contract, memorandum, etc.);
(b) The date of the document;
(c) The preparer and/or source of the document and all recipients of the document;
(d) The substance in detail of the document; and
(e) Each person who has custody, possession or control of the document.

12. "Contract" shall mean the service agreement that gave rise to the relationship for health care services, etc. between FCM and the DDOC.

13. "Active service period" shall mean the actual period that FCM provided services to the DDOC.

14. "Identify" when used with respect to a communication means to provide the following information:

(a) The date of the communication;
(b) Whether the communication was oral or written;
(c) Any person who sent, received, or had knowledge of the communication;
(d) The substance in detail of the communication; and
(e) Any document embodying the communication.

## COMBINED INTERROGATORIES / PRODUCTION OF DOCUMENTS

1. Identify and produce any and all documents relating to the entity First Correctional Medical, Inc.

2. Identify and produce any and all documents relating to the contract/agreement that created and or outlined the contractual relationship between FCM and DDOC (contract) (e.g. obligations, duties, etc).

3. Identify and produce any and all documents relating to the documents/communications relating to the modification, breach, or voiding of FCM's contract with the DDOC. (modification)

4. Identify and produce any and all documents relating to the original duration of the contract (original contract period) and identify the modified actual duration of FCM's active service period with the DDOC.

5. Identify and produce any and all documents relating to the FCM's insurance carrier for the actual service period, as well as, the applicable insurance policy.

6. Identify and produce any and all documents relating to the documents / communications relating to any agreements, settlements, consent decrees, and or assignments that were established in the modification agreement.

7. Identify the person and produce any and all documents/ communications relating to defendant Sita Alie including but not limited to the following:

(a) Alie's professional qualifications known to FCM during its active service period;
(b) Alie's employment contract agreement;
(c) Alie's performance history during FCM's active service period, including but not limited to warnings, reprimands, bonsais or praises whether monetary or other; and
(d) Alie's current status with FCM.

8. Identify and produce any and all documents/ communications relating to whether FCM intends to or has any obligation to provide and or represent Alie in defense against Williamson's action.

9. Identify and produce any and all documents relating to whether FCM's insurance intends to or has any obligation to defend and or indemnify Alie for any damages that may result from Williamson's action.

10. Identify and produce any and all documents/ communications relating to the report relating to DDOC that was compiled by the United States Justice Department in November/December 2006 (circa).

11. Identify and produce any and all documents relating to the inmate grievances filed against FCM by DDOC inmates over FCM's active service period.

12. Identify and produce any and all documents relating to inmate grievances filed against Alie.

13. Identify the persons and produce any and all documents relating to the FCM personnel/agents who attended Williamson's medical grievance hearing on or about 10-14-04 for MG #7463 at DCC.

14. Identify and produce any and all documents/ communications generated and relating to MG #7463.

15. Identify the person and produce any and all documents relating to the relating to the X-ray technician who performed Williamson's X-ray on or about 08/03/04 at DCC during FCM's active service period.

16. Identify and produce any and all documents/ communications/ instructions, etc. relating to the manufacture's suggested use and or warnings against use for the "Elastic Knee Support M" (#79-80195) (Lot # 081104), which was provided to Williamson August 2004 (circa).

17. Identify and produce any and all documents / communications relating to what type of orthopedic knee brace is suggested by general medical standards to be used for a serious ACL/knee injury.

18. Identify and produce any and all documents/communications relating to the generally accepted medical professional standard exam, procedure and or diagnostic tests for a severe injury to the knee joint in which the patient describes the following:

    (a) Acute hyper-extension,
    (b) Acute abnormal swelling,
    (c) Acute abnormal impaired range of motion,
    (d) Acute pain,
    (e) Instability or play in the knee joint, and
    (f) Grinding, popping, and involuntary buckling out of the knee at unnatural angles.

19. Identify, define, and produce any and all documents/ communications relating to the generally accepted professional medical standards for treatment and or definitions relating to what observable symptoms and or what subjective patient supplied complaints constitute the following types of injuries:

    (a) A moderate, severe, and serious knee injury;
    (b) A moderate, severe, and serious Anterior Cruciate ligament (ACL) injury;
    (c) A moderate, severe, and serious knee hyper-extension.

20. Identify and produce any and all documents/communications relating to said defining the generally accepted medical professional standard exam, procedure and or diagnostic tests for the knee injuries listed in # 19.

21. Identify and produce any and all documents/communications relating to and defining the generally accepted medical professional standard exam, procedure, medical device, and or diagnostic tests for a severe injury to the knee joint in which the patient describes the on going and residual knee injuries- which have not healed for over two months- and do include acute hyper-extension, acute abnormal impaired range of motion, acute pain, instability or play in the knee joint, and or grinding, popping, and involuntary buckling out of the knee at unnatural angles causing falling incidents.

22. Identify and produce any and all documents/communications relating to and defining the generally accepted medical professional standard exam, procedure, medical device, and or diagnostic tests for a severe injury to the knee joint in which the patient describes the on going and residual knee injuries (listed at # 21), which have not healed for over four months.

23. Identify the person and produce any and all documents/communications relating to the doctor who had performed a Chronic-care Clinic for Williamson on or about 8-30-04 (believed to be Dr. Hauqui), and who had ordered / recommended Williamson's knee be given an MRI diagnostic test. Also provide the following:

    (a) Said doctor's professional qualifications known to FCM during its active service period;
    (b) said doctor's employment contract agreement;

(c) said doctor's performance history during FCM's active service period, including but not limited to warnings, reprimands, bonsais or praises whether monetary or other; and
(d) Said doctor's current status with FCM.

24. Identify the person and produce any and all documents/communications relating to defendant Chuks Ihuoma (correct spelling if necessary). Also provide the following:
   (a) Ihuoma's professional qualifications known to FCM during its active service period;
   (b) Ihuoma's employment contract agreement;
   (c) Ihuoma's performance history during FCM's active service period, including but not limited to warnings, reprimands, bonsais or praises whether monetary or other; and
   (d) Ihuoma's current status with FCM.

25. Identify and produce any and all documents/communications generated and relating to Alie's 9-28-04 exam of Williamson's knee injury and her override, nullification, and or countermand of the MRI order/recommendation.

26. Identify and produce any and all documents/communications generated and relating to FCM's formal/informal custom/policy relating to referrals for any MRI diagnostic tests, Don Joy ACL Knee brace, or other ACL knee brace.

27. Identify the persons and produce any and all documents/communications generated and relating to any DDOC inmates who were either thought to have or were diagnosed with a torn rotator cuff and or a torn or injured Anterior Cruciate Ligament

28. Identify the persons and produce any and all documents/communications generated and relating to who, how many, and for what reason any DDOC inmates actually received an MRI during FCM's actual service period.

29. Identify the persons or personnel responsible for -and produce any and all documents/communications generated and relating to who and for what reason- any of the ordered/recommended MRIs were overriding, nullified, and or countermanded during FCM's actual service period.

30. Identify and produce any and all documents/communications relating to and defining the FCM's understanding of what a "comprehensive" knee exam for an jury to the knee joint in which the patient describes the on going and residual knee injuries as listed at # 21.

31. Identify and produce any and all documents/communications generated and relating to and or defining FCM's responsibility, duties, and or obligations relating to medical grievances.

32. Identify and produce any and all documents/communications generated and relating to Alie's re-examination of 11-04-04 (circa) Williamson's knee exam.

33. Identify the persons and produce any and all documents/communications generated, defining their duties, and relating to the names, titles, and duties of all FCM staff members who had responsibility for handling and ensuring that inmates requests for medical attention are/were responded to.

34. Identify the persons and produce any and all documents/communications generated, defining their duties, and relating to all FCM staff members who had responsibility for ensuring and handling those inmates' medical grievances.

35. Identify and produce any and all documents/communications, duties, and or definitions relating to FCM's duties, responsibilities, and or obligations for Emergency Medical Grievances during its actual service period.

_David W_____        2-1-07
David Williamson                    Date
SBI #183022
1181 Paddock Rd.
Smyrna, DE 19977

-4-

## AFFIDAVIT OF MAILING

I David Williamson, pro se plaintiff, do swear that I have caused the following documents to be placed in a U.S. Mail Receptacle on ___1___ day of __Feb.__ 200_7_:

1. ___Admissions on FCM  &___

2. ___N/A Combined Set of Interrogatories & Production of Documents on FCM___

3. ___N/A___

4. ___N/A___

These originals/true copies were addressed to the following parties:

1. FCM, Inc.
   205 W. Giaconda Way
   Suite 115
   Tucson, AZ 85704-4350

2. Amy A. Quinlan, Esq.
   500 Del. Ave.
   Suite 1500
   Wilm., DE 19801-1494

3. ___N/A___

4. ___N/A___

The above is signed under penalty of perjury.

_/s/ David W._

David Williamson