IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DAVID W. WILLIAMSON, | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. 06-379-SLR |
| CORRECTIONAL MEDICAL SERVICES, Inc, et al, | ) | |
| Defendants. | ) | |

**FILED**

FEB 21 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

### PLAINTIFF'S REPLY AND OR MOTION TO STRIKE DEFENDANTS CMS, CLARK, CHUKS, ~~BD~~ Scanna ZIMBLE, AND LOVE'S RESPONSE TO PLAINTIFF'S MOTION FOR TRO/PI

Comes Now, Plaintiff, Williamson pursuant to the appropriate Court or Local Rules and case authority, and does hereby reply to and or requests the Court to strike the pertinent parts of Defendants CMS, Clark, Chuks, Zimble, and Love's (AKA M. Bailey) (CMS et al, hereafter) response to [Plaintiff's] motion for Temporary Restraining Order / Preliminary Injunction due to CMS et al presenting immaterial or scandalous matter in an effort to misrepresent facts and misled the Court with a frivolous theory of defense.

Williamson is pro se and seeks pleading leniency pursuant to Haines v. Kerner, 404 U.S. 519 (1972). CMS's response dated 02-01-07 D.I. ____ (CMS's response, hereafter), is without merit and fails for several compelling reasons:

- CMS's response consists largely of unsupported conclusory allegations;
- CMS's response misrepresents scandalous material in an effort to support a frivolous defense;
- CMS's response fails to refute a single material and relevant factual and or legal issue raised by Williamson; and
- CMS's response offers highly dubious allegations that warrant the Court's close scrutiny.

Williamson offers the following in support:

CMS asks this Honorable Court to deny Williamson's reasonable request for medical care for two reasons: Williamson "has failed to state a claim pursuant to 42 U.S.C. section 1983 because he cannot show that the defendants have been deliberately indifferent to a serious medical need," and that "defendants have addressed his concerns." (CMS response D.I. ____ at Argument section I.).

### 1. CMS's Defense Regarding the Denial of Williamson's CC meds is Legally Insufficient and Factual Misleading:

First, note that CMS disputes only two of the four factors that the courts consider for a TRO/PI request. For example, (1) CMS disputes that Williamson enjoys a likelihood of success on the merits, and (2) CMS disputes –in part- and by a vague inference, that denial will not cause Williamson irreparable harm. CMS did not dispute, however, the two other factors (e.g. that granting the injunction will not cause defendants irreparable harm or that granting it is in the public interest). Consequently, these prongs are uncontested and must be found in favor of Williamson. Also, CMS's treatment of the second factor –denial will not cause Williamson irreparable harm is in irreconcilable conflict with the pleadings: It simply does not follow. For example, regarding CMS's denial of Williamson's Chronic-care meds (CC meds), Williamson claimed a serious medical condition that required timely and consistent medications to control the resurgence of chronic symptoms. CMS did not dispute this. Williamson claimed that CC Med interruptions (CCMI)

resulted in a resurgence of acute chronic symptoms. CMS did not dispute this either. Williamson claimed that these symptoms causes him to unduly suffer significant impairment of his normal daily functions; causes him to unduly suffer significant residual and accumulative adverse effects to his health, body, and mind; and is unduly causing him significant emotional and mental distress. (e.g. Indeed, Williamson was recently diagnosed with secondary clinical depression due to his general medical condition (e.g. thyroidism) and now he must undergoing treatment for this serious medical condition as a direct result of f CMS's interference with his CC Meds). CMS did not dispute Williamson's claims of suffering acute emotional and mental distress either. Williamson claimed that every time CMS denies or interferes with his doctor's prescribed CC Meds, he consequently experiences said resurgence of symptoms and that the aggregate effect resulted in a significant and likely risk of current and future health (i.e irreparable harm). Again CMS did not dispute Williamson's assertions. Consequently, Williamson's claims that he will experience irreparable harm absent an injunction –regarding said denial/interference with his CC Meds- is uncontested and CMS's conclusory allegations that Williamson will not suffer irreparable harm simply does not follow the uncontested pleadings! It is frivolous and must fall. Alternatively, CMS et al hangs its hat on the single position that Williamson will not succeed on the merits because he cannot show that defendants have been deliberately indifferent to his serious medical needs. This too fails because CMS offers in support immaterial and scandalous matter in a bad faith effort to mislead the Williamson and the Court.

2. Second, CMS claims that it has made attempts to insure proper medication distribution to Williamson via a "new" corrective medication administration policy, and because of its attempts, CMS et al cannot be shown to have been deliberately indifferent. Consequently, CMS's claims that it is merely negligent in this regard. CMS et al presented to the Court in support of its claim Exhibit "A" (policy), which purportedly represents its efforts; however, the Exhibit CMS offers is both irrelevant and a factual misrepresentation. Alternatively, it regards the Nurse's single dose dispensed medications –not Williamson's self- med blister pack cards- and CMS's exhibit simply does not in any way, shape, or form pertain to Williamson's issue or claims. Thus, CMS et al attempts to dupe the Court with immaterial and scandalous matter. CMS's bad faith response renders its theory of defense frivolous.

Indeed, said policy fails to make any reference to any material issue regarding Williamson's claims, such as:

- What is the procedure for scheduling Doctor's Refill Clinics (i.e. every 90 days?);
- What is the procedure for Self-med Card refills and or the duration (120 days?);
- What is the procedure for notifying the patient of Self-med card refills;
- What is the procedure for failing to schedule needed Clinics;
- What is the procedure for failing to provide subsequent Self-med cards;
- What is the procedure for insuring that the doctor's orders are carried out;
- What is the procedure for providing Stock Supplies;
- What is the procedure for establishing Stock Supplies, etc.?

It is incredible that CMS would attempt to continue its charade and attempt to dupe the Court with an immaterial and scandalous misrepresentation of fact, but this behavior is not surprising because CMS has a history of bad faith misrepresentations.

For example, CMS made other false promises to correct ongoing and pervasive custom of CC Meds denial/interruptions:

2

- On 7-28-05 CMS made empty token promises (Re: Medical Grievance 15453), CMS will follow the medication administration system to avoid repeat of lapse of medicine." (See Ex-A Aff't "Log of Notices to CMS... dated 02-05-07 at Detail: I (a) iv);

- On 10-06-05 (Re: MG 15453), CMS made still more empty token promises "Inmate will be placed on pill call to prevent missed medication" (See Ex-A Log at Detail: I (c) iv;

- On 4-25-06 CMS, via Ombudsman Altman, alerted Williamson to an ostensible "new" corrective medication system, but Williamson correctly identified the system described by Altman as a recycled prior failed policy and challenged CMS with intentionally employing a "ruse" and Williamson correctly predicted that the ruse would undoubtedly cause him still more CCMI. (See Ex-A Log at 4 Detail: iii (a) ii); and of course CMS again asserts a newest new policy, but it is also a ruse.

Indeed, each and every one of CMS's so-called attempts proved to be a false. Contrary, to CMS's assertions of attempting corrective measure, CMS actually spent its energy on entirely different and aggravating acts than what it represents to this Court:

- Conducted a sham investigation and erroneously concluded that Williamson's claims were somehow "without merit" (See Ex-B dated 3-09-06). This was despite the fact that CMS had already conceded the merit of Williamson's claims at two prior grievance hearings;

- CMS maliciously refused to conduct necessary Refill Clinics: once in retaliation to his grievance activity (Re: MG 21201 and its Addendum). On the other occasion CMS aggravated the denial by falsifying medical records to give the appearance that it had provided the denied Clinic. (See Ex-C Aff't 10-25-06 at 2-13). Both denials caused egregious CCMI.

- CMS treated Williamson with contempt, hostility, scorn, and as a nuisance rather than a patient at several of his relative grievance hearings. (id);

- CMS sent several letter to Williamson that were so erroneous and or contrary to the established record that they insulted his intelligence and showed a gross negligent disregard for his admitted serious medical needs. (See Ex _O_ , _Aff·t  package  dated  4·10·06  pp  1-7_ ).

Indeed, the above underscores the true nature of CMS's mock attempts to timely deliver Williamson his doctor's prescribed CC Meds.

Moreover, CMS's assertions are in irreconcilable conflict with the record. CMS, for instance, claims that "Plaintiff is currently receiving his medications in a timely and consistent manner." (CMS's response at B). This is a bald misrepresentation and it is in conflict with the uncontested record. It is factually erroneous and misleading. For example, Williamson submitted an affidavit that outlined eleven CCMI between July 2005 and November 2006 with his TRO/PI (See Memorandum at Ex-I –A-1 at 8 (a)- (c) ). Indeed, CMS characterizes these facts as "alleged lapses," however, CMS does not even attempt to refute a single episode in which Williamson claimed CMS unnecessarily denied him his needed and doctor's prescribed medications. CMS does, however, record each and every medication distribution and there are also ordering invoices, etc. in CMS's control. Thus, if Williamson's allegations were incorrect, then it is in CMS's control to refute them. It is not surprising, though, that CMS failed to refute even a single episode, because absent falsifying yet more medical records, CMS simply cannot do so. It is well settled that when a party fails to produce evidence that is in its control, it may be inferred that the evidence would be unfavorable to them.

(See <u>McCrary-El v. Shaw,</u> 992 F.2d 809, 812-13 (8th Cir 1993). Indeed, both the record and the ongoing episodes of CCMI clearly belie CMS's preposterous claims of "timely and consistent" medication distribution. For example, the uncontested record shows eleven unnecessary and easily avoidable CCMI(s) since July 05. During the interim –since filing his TRO/PI, CMS caused Williamson a twelfth CCMI from 1-17-07 to 1-22-07. CMS simply refuses to take any real and meaningful action to correct the pervasive and continuous pattern of unnecessary CCMI(s). And like the majority of the CCMI(s), this too was aggravated because the on-site pharmacy actually possessed the already lapsed CC Meds but withheld them. Indeed, eight of eleven of the CCMI(s) were grossly aggravated –unnecessarily- by CMS's onsite pharmacy because it actually possessed the lapsed CC Meds and CMS did not refute or contest this assertion either. (See TRO/PI Memorandum Ex-I-A 1 at 41 and 8 (a) –(c)). We now know it actually involves twelve episodes and that nine were aggravated. And it persisted unabated and uncorrected –despite CMS's erroneous allegations of making "attempts…"; and despite Williamson filing numerous requests, notices, and grievances.

During the twelve continuous and pervasive pattern of CCMI(s), Williamson provided CMS with no less than twenty-five forms of written notice and filed no less than four medical grievances. (See Ex-A Log at _____, _____).

Consequently, the claims of CMS that "Williamson is currently receiving his medications as prescribed" and that the "record evidences attempts by defendants to timely deliver his medications: are in irreconcilable conflict with the uncontested record. Moreover, CMS's claims are further exposed as misrepresentations through its attempt to support said claims in bad faith and mislead the Court with irrelevant and scandalous material. CMS's lone theory of negligence is accordingly frivolous. Contrary to CMS's conclusory allegations and unsupported assertions, Williamson enjoys a likelihood of success on the merits. Williamson did not claim CMS was merely negligent in failing to provide his CC Meds. Alternatively, Williamson's claims are substantially similar to those in <u>Jackson v. First Correctional Medical Services,</u> 380 F. Supp. 2d 387, 391-392 (D. Del 2005). In Jackson this Court held that the inmate plaintiff stated a cause of action for deliberate indifference to his serious medical need when the plaintiff alleged the following:

- That a policy existed that fails to address the immediate needs of inmates with serious medical needs;
- That a policy existed resulted in a continuous pattern of his medical treatment being delayed for non-medical needs; and
- That the absence of a policy to correct defects is tantamount to alleging physicians are unable to exercise professional judgment.

Williamson claimed the above and supported it with sufficiency. Also, he claimed intentional and or aggravated interference with his CC Meds along the lines of <u>White v. Napoleon,</u> 897 F.2d 103, 109-110 (3d Cir. 1990). In the spirit of brevity, however, Williamson will refrain from a full briefing on the issue until defendants file a response to his complaint. Unless, of course, the Court directs otherwise. Williamson has established a substantial likelihood of success on the merits regarding this matter, and for the purpose of his injunction, Defendants have failed to show good cause to deny it.

3. CMS again presents misrepresentations of fact and attempts to mislead the Court in its claim that <u>Williamson's request for medical care for his serious knee injury is moot.</u>

For example, in May 2006, Dr. Durst diagnosed Williamson with a "completely severed" anterior cruciate ligament (ACL) Durst also admitted that the neoprene knee wrap Williamson was provided was not designed for an ACL injury and could not protect the inherent instability of the knee. Thus it was admitted to be wholly inadequate and

CMS was aware of same as early as May 2006. CMS did not dispute this fact. Durst did, however, concede that suitable alternatives existed that were made of rigid plastic frames designed to protect against instability and hyperextensions (i.e. protect against further injuries and falls). (See Declaration in Support of TRO/PI (Decl.), at 33-34). Durst indicated then that he would (a) follow up on the suitable alternative knee brace and (b) pre-file Williamson's surgery referral, but that procedure would nevertheless require a recommendation of a specialist.

Orthopedic specialist, Dr. DuShuttle, confirmed the torn ACL in June 2006, and recommended the following:

- Provide reconstructive surgery,
- Provide a Don Joy ACL knee brace, and
- Provide physical therapy.

DuShuttle's report outlined the permanent and deteriorating nature of Williamson's serious knee injury, and it underscored his opinion –evidently based on experience- that CMS would not provide the medically necessary knee brace due to high cost and would not provide the physical therapy. (Note that CMS was silent as to any physical therapy in its response). DuShuttle stressed the crucial nature of post-op physical therapy as essential to success of the operation. (See Ex-E Aff't dated 7-06-06 at 3-9). DuShuttle also concurred with Durst regarding the acute inadequacy of the neoprene knee wrap and that there were suitable alternatives to the metal Don Joy ACL knee brace that employed rigid plastic framework.

Eight months have passed since the orthopedic specialist made his recommendations; however, CMS has refused to provide a single medically needed recommendation whatsoever to date. CMS has created an inordinate delay that exposes Williamson to unnecessary suffering, deterioration, and a substantial likelihood of future injury via falling incidents, etc. Moreover, contrary to CMS's claims of attempting to follow-up and of holding communications with DuShuttle "over the next few months," the record reflects that as late as 10-18-06, Durst's surgery referral had been ignored and that no indication of follow-up appeared in Williamson's medical file as illuminated by Dr. VanDusen. (See Decl. at 30). Vandusen's 10-18-06 revelation also demonstrates the falsity of CMS's other prior promises to "follow-up" that were made by CMS representatives Gail Eller and S. Altman (8-01-06 and 8-16-06 respectively). (See Decl. at 30-31). Indeed, CMS has demonstrated a history of making false promises and of making misrepresentations. Not only is CMS's claim of holding communications over the next few months in irreconcilable conflict with the record, but any alleged communications with DuShuttle and or any alleged failure to reach a compromise with DuShuttle is extremely dubious. Indeed, no affidavit or report was produced of any alleged communications. When were they conducted? This is material to CMS's claims of taking "extraordinary arrangements" and of "attempting to follow-up." What was the substance of these alleged communications? We do not know the answers to these pertinent questions, because CMS asks this Court and Williamson to simply accept its unsupported and dubious claims of faith. And how is it that no compromise was made regarding a suitable alternative knee brace? Are we to believe that a professional doctor chose to accept the least adequate knee wrap and alternatively opt to forgo any type of upgraded knee brace simply because he could not acquire for Williamson the most favored Don Joy ACL knee brace –like some petulant child who refuses to play because he cannot get his way? This is absurd and CMS's unsupported claims are highly suspect. Clearly any alleged communications are in the control of CMS and it can be inferred had CMS disclosed the actual communications that the evidence would be unfavorable to them. (See McCrary-El v. Shaw, at 812-813). Also, there is not evidence that the Department of Correction has actually prohibited the Don Joy ACL knee brace or whether it was actually privy

to the matter, or whether a medical device needed to prevent permanent injury trumps the alleged security concern. In any event it is irrelevant and illegitimate because there are suitable alternatives. CMS actually offers a pretext to cover its malfeasance and inordinate delay and or denials.

Consequently, surgery alone does not resolve this issue and dubious and unsupported claims must fail, and CMS's silence regarding the essential physical therapy clearly belies mootness.

Lastly, it must be noted that CMS never contested Williamson's claims that his knee is a serious permanent injury that significantly impairs his normal daily functions and that the inordinate delay/denial of providing an appropriate knee brace and doctor's recommended surgery exposes Williamson to a significant and likely risk of future permanent injury via continued deterioration and or inherent dangerous falling/collapsing incidents.

Indeed, CMS created an inordinate delay and or outright denial and knowingly exposed Williamson to an unacceptably high risk of falling incidents when it admittedly provided a substandard knee wrap back in May 2006, and then even after two doctors notified and same and Williamson made several reasonable requests and filed grievance, CMS still refused to provide the medically needed device or any suitable alternative. CMS did not even bother to follow-up on the matter as late as October 2006, and it is more likely that not that it was much later than that. Discovery will bear out the exact date, though. For example, Williamson experience a knee related collapse/fall in November 2005 and was forced to file a medical grievance. (See Decl. at 23, 29). Again Williamson experienced a serious knee related collapse/fall in April of 2006 and was; however, provided the admittedly substandard knee wrap, and was forced to grieve the denial of an appropriate knee brace. (See Ex-F Aff't dated 8-01-06 –part of MG # 37123- at 13-16). Williamson again experienced a serious knee related collapse/falling incident on 2-10-07 that resulted in a Williamson incurring a serious head injury, in which a knot the size of a baseball sliced-in-half arose on his forehead and Williamson was placed under observation for a concussion. Even then CMS attempted to refuse to see Williamson, but the prison's Shift Commander intervened and ordered that the hospital accept Williamson. (See Ex-G Aff't ____ ____). Our Circuit in Spruill v. Gillis, 372 F.3d 218, 235-236 (3d Cir. 2004), specifically noted as key to its holding that inmate's back injury that required significant and continuous medication [(i.e. continuous medical care)] and has caused him excruciating pain…[and that where] inmate claims to have fallen or collapsed form the pain twice…exposing himself to future injury stated a cause of action for deliberate indifference. Like Spruill, Williamson serious knee injury causes him pain and suffering and permanent injury, and it has caused him several serious falling incidents and additional injuries. Williamson's case facts are substantially similar to Spruill and here too Williamson enjoys a substantial likelihood of succeeding on the merits.

Also, this Circuit in Durmer v. O'Carroll, 991 F.2d 64, 68-69 (3d Cir. 1993), (held that delay of treatment for non-medical reasons could constitute deliberate indifference). Williamson asserted that CMS employed cost-avoidance as a non-medical factor to deny Williamson any adequate knee brace and Williamson supported it with an affidavit of DuShuttle's candid opinion. CMS too has denied/delayed any treatment for Williamson about a year (eight months since DuShuttle's report), despite Williamson's reasonable requests and despite the fact that DuShuttle noted the permanent and deteriorating condition of Williamson's knee injury. Durmer was seen by a specialist who recommended certain medical care, but prison doctors created a pretext to deny Durmer physical therapy and began shopping for another doctor who would establish the pretext. In Durmer the defendants delayed needed physical therapy for some seven months despite reasonable requests and despite complaints of a deteriorating condition. Meanwhile, Williamson

too was seen by a specialist who recommended treatment and CMS too employed a pretext (e.g. security concern) to continue to deny any suitable alternatives though it does not apply to a rigid plastic frame, and CMS has no justification for delaying the surgery for some eight months and exposing Williamson to future injuries. None of DuShuttle's recommendations have been challenged –save for an unsupported and dubious and irrelevant security claim regarding the knee brace, which very well may be a pretext, but is certainly irrelevant because suitable alternatives exist. Durmer claimed said denial exposed him to undue suffering and a threat of tangible residual injury and where prison authorities erect arbitrary and burdensome procedures that resulted in inordinate delays and outright denials the inmate stated a cause of action. Williamson too claimed undue suffering and a threat of tangible residual injury (i.e deterioration and serous falling incidents), Thus Williamson has stated a valid cause of action and, if proven, Williamson enjoys a substantial likelihood of success on the merits. Furthermore, CMS failed to challenge any of the four TRO/PI factors in its response regarding this matter, but alternatively offers a misleading and frivolous claim of mootness.
4. CMS did not dispute Williamson's claims regarding his serious periodontal condition, which has resulted in the permanent loss of a total of four teeth (two on CMS's watch). (See Decl. at 41-56).

   CMS did not dispute any of the four TRO/PI factors regarding same and therefore waives the ability to do so. Also, CMS did not dispute Williamson's claim/request for semi-annual teeth cleanings and replacement dentures for the loss teeth. (See Memorandum in Support of TRO/PI at "Order to Show Cause…" items C. and D.). Indeed, CMS last preformed a substantial teeth cleaning on or about 12-07-05 –some fifteen months ago- and Williamson clearly faces significant and likely risk of future injury and permanent loss if the industry standard care is not performed for one who suffers periodontal disease, as Williamson does.

   Consequently, CMS has failed to dispute these claims and CMS has failed to show good cause to deny the relief requested by Williamson.
5. CMS again makes claims that are in irreconcilable conflict with the record and appear both dubious and does run afoul of F.R.E. regarding the final issue: broken tooth that requires crown and root canal.

For example, CMS claims that Williamson's reasonable request for a root canal for his broken tooth is not required and it supports same with an affidavit of Cathy Kinoke. CMS is, alternatively, silent as to the crown request. Kinoke's affidavit fails and is scandalous material for several compelling reasons. First, Kinoke at no time during the four dental visits (three of which CMS denied any treatment whatsoever), or thereafter did she examine Williamson –not even when she replied to the medical grievance and disclosed CMS's blanket policy to prohibit any crowns regardless of medical needs. (See Decl. at 65). Kinoke does not disclose the source of her alleged "personal knowledge," of these matters, and it appears that Kinoke's affidavit violates F.R.E., Rule 602. Her naked claim of personal knowledge by itself is insufficient without a foundation. Moreover, it fails the best evidence rule and appears to violate F.R.E. 1002-1003, too. Presumably doctors Zimble and Bishop created reports in the normal course of business, etc. relative to Williamson's four dental visits about his broken tooth, and CMS clearly has control of any documentation. CMS does not event attempt to explain the absence of any relevant first person accounts, but alternatively offers a naked third-person account that merely talks about the issue without laying sufficient foundation and or producing the best available evidence. Kinoke's affidavit fails and the Court is warranted in striking it from the record. Again, it should be inferred that had CMS produced the evidence, it would have been unfavorable to them. (McCrary-El v. Shaw, 812-13).

Lastly, Zimble and Bishop appear to still have some type of employee/employer relationship with CMS, yet refuses to provide there relevant first person accounts. Also, CMS failed to refute Williamson's assertions that both Zimble and Bishop admitted (a) CMS had a policy/custom of blanket denial of providing crowns despite medical needs, and (b) that the composite was also admittedly a less efficacious procedure.

WHEREFORE, the Court is warranted in either striking the misleading, immaterial, and or scandalous matter CMS shamelessly presented to the Court or alternatively giving CMS's response heavy scrutiny in view of these revelations and accordingly granting Williamson's reasonable request for medical care.

David Williamson, SBI # 183022
1181 Paddock Rd
Smyrna, DE 19977

2-14-07
Date

## CERTIFICATE OF SERVICE

I, David Williamson, the pro se plaintiff in C.A. No. 06-379-SLR, do hereby declare under penalty of perjury

that I have caused to be delivered a true and correct copy of the following documents:

1.   *Motion for Leave to File a Reply ....*

2.   *Plaintiff's Reply and on Motion to Strike ....*

By placing same in a U.S. postal receptacle on this ___14___ day of ___February___ 200 _7_ , and

Addressed to the following parties:

Amy A. Quinlan, Esq.
Morris James LLP
Counsel for Correctional Medical Services, Inc.
500 Delaware Ave., Suite 1500
Wilmington, DE 19801-1494

Dana S. Monzo, Esq.
Counsel for First Correctional Medical, Inc.
1225 N. King St., Suite 1100
P.O. Box 397
Wilmington, DE 19899-0397

N/A

N/A

N/A

N/A

David Williamson, SBI #183022
DCC
1181 Paddock Rd.
Smyrna, DE 19977

I/M David Williamson
SBI# 193022    UNIT W-1, L-12
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977



U.S. District Court
Attu Clerk of Court
844 North French St.
Lock Box 18
Wilm, DE 19801

# EXHIBIT A

\

### AFFIDAVIT OF DAVID WILLIAMSON

(Log of Notices to CMS of CC Med Request for Refills and or Continuing Chronic-care Medication Interruptions)

1. I, David Williamson, am the Affiant listed above and do depose and state the following in support of C.A. No. 06-379-SLR:

2.    I. The first lot of Chronic-care medication (CC Meds) (i.e. four 30-day CC Med Cards each for a total of 120 doses) was ordered to run from 7-18-05 to 11-9-05; however, Correctional Medical Services (CMS) caused four consecutive and unnecessary CC Meds interruptions (CCMI). (See attached Affidavit [Medication Distribution Log] (Aff't LOG hereafter) Ex-AA at 8 (a) and 9-21).

Summary: During the four consecutive CCMI(s) between 7-18-05 to 11-9-05, CMS received six forms of written notice; one verbal on 10-04-05; and two formal medical grievances (MG), which resulted in two hearings before CMS personnel and a written MG Appeal. *(Note that it is a matter of record when a patient receives a CC Med refill via a Clinic and when a CC Med Card is dispensed, thus a patient need not provide any notice or request for CC Meds because CMS already has knowledge of any subsequent due date. Indeed, until 5-03-06 (circa) the procedure did not require a patient to notify the pharmacy for a refill as it ran semi-automatic.)* CMS acknowledged the ongoing and pervasive problem of causing Affiant interruptions with his doctor's prescribed CC Meds (problems hereafter) and consequently promised on 7-28-05 and 10-06-05 to correct the CCMI(s). CMS, however, breached its promises and refused to correct the CCMI(s); and CMS aggravated the CCMI(s) because CMS on several occasions actually possessed the CCMI(s) but withheld them and also by treating Affiant with contempt and scorn.

Detail: I. (a) CMS caused Affiant a CCMI from 7-15-05 to 7-27-05 (12 days) despite adequate notice and despite the on-site pharmacy (pharmacy) actually possessing the lapsed CC Meds since 7-22-05. For example, CMS received adequate notice in the following manner:

    (i)      7-11-05 Request for CC Meds (See Ex-A -1, CC Meds Request),

    (ii)     7-15-05 Filed MG #15453 and grieved the CCMI ( See Ex-A-2 Grievance Package (MG 15453)),

    (iii)    7-22-05 Notice of CCMI to Dr. Alie (Alie) and CMS Del. Regional Offices received copies (C.C. CMS Off's) (See Ex-A-3),

    (iv)    7-28-05 MG 15453 Hearing with CMS representative, Linton, in which CMS acknowledged the problem and stated –via Linton- "CMS will follow the medication administration system ([MAS]) to avoid a repeat of lapse in medicine." (See Ex-A-2 MG at p. 2).

I. (b) CMS caused a second consecutive CCMI from 8-27-05 to 9-05-05 (9 days) despite adequate notice and despite CMS's promise of 7-28-05 (MG hearing). For example, CMS received adequate notice in the following manner:

    (i)      Request for CC Meds prior to 8-30-05 (In CMS control via Affiant's Medical records), and

    (ii)     8-30-05 Filed a MG # 17197, which grieved the ongoing CCMI (See Ex-B-1 MG 17197, p. 1-3).

I. (c) CMS caused a third consecutive CCMI from 10-04-05 to 10-06-05 (2 days) despite adequate notice; despite the pharmacy actually possessing the lapsed CC Meds, but refusing to dispense the already lapsed CC Meds; and despite CMS's 7-28-05 promise. For example, CMS received adequate notice in the following manner:

    (i)      9-28-05 Request for CC Meds (See Ex-C-1, CC Meds Req.);

    (ii)     10-03-05 Renewed request for CC Meds (See Ex-C-2, CCMI Letter);

    (iii)    10-04-05 Verbal request for CC Meds at hospital visit that was scheduled due to the 9-28-05 request. Here CMS staff acknowledged non-medical factors for CMS's denials or interference with Affiant's doctor's prescribed CC Meds. (prescribed Meds) (See Ex-C-3, Aff't dated 10-24-05 at 8-15), and

    (iv)    10-06-05 MG 15453 Hearing (# 2) with CMS representative, Plante, in which Plante initially refused to consider the ongoing and current CCMI, and where Plante treated Affiant with scorn, contempt, and sarcasm, and ultimately ejected Affiant from the hearing. (See Ex-A-2 MG Appeal section at pp. 1-6). Also, Affiant charged CMS with employing a corporate custom/policy of interfering with and or denying Affiant his prescribed Meds. (See Ex-A-2, MG Appeal section at pp. 7-8). Finally CMS again made empty token promises: "Inmate will be placed on pill call to prevent missed medication." (See Ex-A-2 MG 15453 Resolution).

I. (d)    CMS caused the fourth consecutive CCMI from 11-05-05 to 11-09-05 (4 days) despite adequate notice; despite the pharmacy actually possessing the lapsed CC Meds since 11-05-05, but refused to dispense the already lapsed CC Meds; and despite CMS's 7-28-05 and 10-06-05 promises. For example, CMS received adequate notice in the following manner:

    (i)      11-01-05 Request for CC Meds (In CMS control via Affiant's medical file).

3.  II. The second lot of CC Meds should have been refilled on 10-08-05 –in accord with the MAS; however, CMS refused to conduct the Chronic-care Clinic for the Refill (Clinic) despite repeat notice and instead CMS belatedly ordered the lot to run form 1-06-06 to 05-05 **– 06.** This act guaranteed a CCMI. Indeed, CMS caused three more consecutive and unnecessary CCMI(s), with the fifth being the most egregious. (See attached Aff't LOG Ex-AA at 8 (b) and 22-31).

Summary: During the fifth thru seventh consecutive CCMI(s) from 12-07-05 to 3-28-06, CMS received five forms of written notice and another formal MG #21201, which included an Addendum of 11-30-05. CMS however, refused to correct problem of CCMI(s), and or the obvious systemic breakdowns that caused additional CCMI(s); refused to correct repeated malicious acts of retaliation that also resulted an unnecessary CCMI (of an egregious 28 days), which also violated CMS's promises. CMS was ultimately forced to again concede the "merit" of Affiant's claims (3-22-06) ,but CMS still refused to take meaningful corrective action despite the obvious need to do so.

Detail: II. (a) CMS caused Affiant's fifth consecutive CCMI from 12-07-05 to 1-04-06 (28 days) despite adequate notice and despite the pharmacy actually possessing suitable alternative CC Meds in Stock supplies. For example, CMS received adequate notice in the following manner:

    (i)    11-09-05 Complaint letter to Plante and request for a Clinic to refill the next CC Meds cycle in accord with the promises to adhere to the MAS. (See Ex-D-1, Complaint Letter);

    (ii)    11-14-05 Filed MG #21201 for Ihouma's (CMS staff) malicious denial of the needed Clinic and which predicted the inevitable CCMI if CMS failed to correct the act. (See Ex-D-2, MG 21201 at p.p. 1-4);11-30-05 Filed Addendum to MG #21201 for Ihouma's subsequent and repeat denial of Clinic and grieved her blatent retaliation against Affiant for his grievance activities. See Ex-D-3, Add'm at p.p. 1-3) (C.C CMS Off's);

    (iii)    12-30-05 Complaint that confirmed the five prior CCMI(s), failed promises, and Ihouma's refusal to provide necessary Clinics that evince acts of retaliation; and which, also noted Affiant's pain, suffering, and impairment of normal daily functions. (See Ex-D-4, Ongoing… at pp. 1-3) (C.C CMS Off's).

II. (b) CMS caused the sixth consecutive CCMI from 2-11-06 to 2-13-06 (2 days) despite adequate notice and despite the pharmacy actually possessing the already lapsed CC Meds, but again withholding them. For example, CMS received adequate notice in the following manner:

    (i)    2-09-06 Request for CC Meds (See Ex-E-1, Continuing [CCMI] to CMS).

II. (c) CMS caused the seventh consecutive CCMI from 3-13-06 to 3-28-06 (15 days) despite adequate notice and despite the pharmacy actually possessing the already lapsed CC Meds since 3-22-06, but again withholding them. For example, CMS received adequate notice in the following manner:

    (i)    3-13-06 Complaint letter of seventh CCMI (See Ex-F-1, Complaint letter) (C.C. CMS Off's);

    (ii)    Affiant received a letter from CMS's Ombudsman, Altman, dated 3-09-06 of a sham investigation that incredibly stated Affiant's complaints of the ongoing and pervasive CCMI(s) "to be without merit," despite CMS's prior acknowledgments on 7-28-05 and 10-06-05 and despite the obvious systemic breakdowns over the past seven months. (See Ex-F-2, Altman's sham Investigation);

    (iii)    3-21-06 Complaint of ongoing CCMI and Altman's sham investigation/erroneous findings. (C.C. CMS Off's) (See Ex-F-3, Complaint );

    (iv)    Affiant received a letter from CMS, Altman, dated 3-22-06 in which he makes an abrupt about face and acknowledges Affiant's claims have " merit." Thus, CMS has again acknowledged the systemic breakdown that causes said CCMI(s), and which mandates CMS to take immediate corrective action. CMS repeatedly refuses to take any meaningful correct action , however. (See Ex-F-4, Altman's About Face Letter); and

    (v)    4-19-06 Complaint of Altman's preposterous statements and reckless accusations and which also charges Altman with attempting to intentionally belittle Affiant's serious medical condition and of attempting to "obfuscate the problem and its history …" (See Ex-x F-5, Complaint at/Follow Up at p. 1-7) (C.C. CMS Off's).

4.  III. The third lot of CC Meds should have refilled on 1or around 1-18-06 based on the original 7-18-05 Refiill, but because of the repeat CCMI it was pushed back, and adjusted for the belated Clinic of 1-06-06 this third lot should have been Refilled around 4-06-06. CMS again belatedly ordered this lot to run from 5-05-06 to 9-02-06, though, and guaranteed another consecutive CCMI(s). (See attached Aff't LOG Ex-AA at 8 (c) and 32-41).

Summary: During the eighth thru tenth consecutive CCMI(s) from 4-27-06 to 8-08-06, CMS received five forms of written notice, and also another formal grievance (MG #59170), yet still refused to correct the problem of CCMI(s).

Detail: III. (a) CMS caused Affiant's eighth consecutive CCMI from 4-27-06 to 5-09-06 (12 days) despite adequate notice and the pharmacy refused to place Affiant's name on the Med pick up list. For example, CMS received adequate notice in the following manner:

    (i)     4-19-06 Complaint letter of CCMI to Plante (See Ex-G-1, Complaint) (C.C. CMS Off's);

    (ii)    5-03-06 Challenge to CMS's ostensible "New Medication Distrubution System" (See Ex-G-2, Challenge);

III (b) CMS caused Affiant's nineth consecutive CCMI from 6-08-06 to 6-29-06 (22 days) despite adequate notice and again the pharmacy actually possessed the already lapsed CC Meds since 6-21-06, but withheld them. For example, CMS received adequate notice in the following manner:

    (i)     6-01-06 Request for CC Meds (See Ex-H-1 CC Meds Request);

III (c) CMS caused Affiant's tenth consecutive CCMI from 7-30-06 to 8-08-06 (8 days) despite adequate notice. For example, CMS received adequate notice in the following manner:

    (i)     7-01-06 Complaint of continuous CCMI(s) to ACLU, etc. (See Ex- I-1) (C.C. CMS Off's)( p. 1-2);

    (ii)    7-06-06 CC Meds Complaint letter to Altman (See Ex-I-2) (C.C. CMS Off's)( p.1-2);

    (iii)   7-21-06 CC Meds request (Se Ex-I-3 CC meds request);

    (iv)   7-30-06 Complaint of Continuous CCMI(s) (See Ex-I-4); and

    (v)    8-07-06 Notice of Emergency Medical Grievance (EMG # 59170) to CMS. (See Ex-I-5).

5.    IV. Since the last recorded CCMI(s), CMS caused the eleventh and twelfth CCMI(s); however, they too were unnecessary and avoidable, but CMS still refused to correct the problem and obvious systemic breakdown in services.

Summary: During the eleventh thru twelfth CCMI(s), which occurred between 10-05-06 to 1-17-07, CMS received nine forms of written notice and CMS conducted two MG hearings for the denial of Clinics and resulting CCMI(s), but flatly refused to correct the CCMI(s).

Detail: IV. (a) CMS caused Affiant the eleventh CCMI from 10-05-06 to 10-25-06 (19 days) and a twelfth CCMI from 1-17-07 to 1-22-07 (5 days) despite adequate notice. Also, the pharmacy –regarding the 10-05-06 CCMI- actually possessed the already lapsed CC Meds since 10-21-06 and could have corrected some of the CCMI but refused to do so. For example, CMS received adequate notice in the following manner:

    (i)     9-11-06 CC Meds & Clinic request to CMS, etc. (See Ex-J-1);

    (ii)    9-22-06 CCMI(s) Complaint to CMS, etc.  (See Ex-J-2);

    (iii)   10-04-06 Charge that CMS is intentionally causeing the CCMI(s) (See Ex-J-3) (C.C. CMS Off's);

    (iv)   10-15-06 Notice of eleventh CCMI (See Ex-J-4) (C.C. CMS Off's);

    (v)    9-27-06 MG #59170 hearing, which grieved CMS's refusal to conduct a Clinic and then fabricating Affiant's medical records to cover up the denial in direct response to Affiant's grievance activity. (See Ex-J-5 at i-v) (C.C. CmS Off's)( p. 1-2);

    (vi)   10-31-06 Complaint of twenty-day CCMI to CMS (See Ex-J-6)( p. 1-2);

    (vii)   1-09-07 CC Meds request (See Ex-J-7); and

    (viii)  1-16-07 Follow up request on MG # 15453 (See Ex-J-8) (C.C. CMS Off's). and

    (ix)   1-23-07 Complaint of ongoing CCMI(s)  to CMS (See Ex-J-9).

6. Thus, during the twelve continuous, but avoidable CCMI(s) –which spanned from July 2005 to January 2007- Affiant has provided CMS with no less than *twenty-five forms of written notice* (both CC Meds/Clinic requests and or CCMI alerts); filed no less than *four medical grievances against CMS* outlining the CCMI(s) and or denial of Clinics in reprisal;  and CMS conducted no less than *four MG hearings regarding same*. Thus, it is clear that CMS is well aware of the obvious and pervasive CCMI; however, has refused to correct them despite Affiant repeatedly giving notice of the CCMI(s) and of the adverse results: resurgence of chronic symptoms that results in  substantially impairing Affiant's  normal functions, results in marked deterioration of Affiant's physical body and mental sharpness, and results in emotional and mental distress,  in which Affiant was diagnosed with Clinical Secondary Depression due to a general medical condition (e.g. resurgendce of hypothyroidism symptoms, etc.).

7. The above is true and correct and based on Affiant's personal experience and according to the best of his knowledge.

Sworn and Subscribed before me this _5th_ day of February 2007.

_David Williamson_

_Notary Public_

Ex – AA

Medication Distribution Log

Medication Distribution Log Via the

## AFFIDAVIT OF DAVID WILLIAMSON

1. I, David Williamson, am the Affiant listed above and do depose and state the following in support of C.A. 06-379-SLR:

2. CMS caused Affiant to experience eleven needless and avoidable Chronic-care Medication Interruptions (CCMI) between July 2005 and November 2006.

3. These eleven CCMI(s) are summarized below at (e.g. Summary... 8 (a-c)), and detailed (e.g. Details... 9 - 41), but first Affiant must describe the relative terms of the medication distribution system as it pertains to Chronic-care patients (below Background 4 – 7).

4. BACKGROUND: First, Chronic-care patients (CC Patients) receive Chronic-care Clinics (Clinics), which are scheduled automatically about every ninety days, for the purpose of ordering a "Refill" of the next lot of Chronic-care medications (CC Meds). Typically, a Refill order comprises four (thirty dose) blister pack cards (Med Cards) totaling 120 doses if a CC Patient is on "Self Meds." The additional thirty doses are supposed to act as a buffer between the ninety day Clinics to ensure that no medication interruptions occur.

5. Affiant is on Self Meds and receives two Med Cards: one is Levothyroxine (i.e. thyroid medication) and Multivitamins (Mtv) that acts to supplement the thyroid meds and assist in converting food to useful energy.

6. CMS's medication distribution system (Med System) employs a "Fax and Fill" ordering method in which a Clinic's Refill order is placed with the drug distributor and the CMS on-site pharmacy (pharmacy) in turn receives the ordered meds as fast as "twenty-four hours" but no later than "four days." This was verified by CMS representative Mr. Linton at Affiant's Grievance hearing (MG # 15453). Moreover, once the Refill is realized at said Clinic, the pharmacy is to automatically provide the subsequent Med Cards (i.e. second, third, and fourth cards) within the final five doses of any prior card to eliminate CCMI(s). In theory it works, and if followed it works, but in practice it is an utter failure.

7. The pharmacy processes the meds and notifies the CC Patient to retrieve them by listing his name on a Medication Pick-up List (MPL). Typically, the listing continues for five consecutive days, if the CC Patient fails to retrieve his meds- and thereafter is removed from the MPL.

8. SUMMARY OF CCMI(s):

(a). The first lot of CC Meds (i.e. 120 doses ea) were ordered to run form 7/18/05 through 11/15/05, but it was stretched out until 1/06/06 instead due to CMS causing four consecutive CCMI(s):

I. CCMI from 7/15/05 to 7/27/05 (12 days) (pharmacy possessed them since 7/22/05 but withheld them);

II. Consecutive CCMI from 8/27/05 to 9/05/05 (9 days);

III. Consecutive CCMI from 10/04/05 to 10/06/05 (2 days) (pharmacy also failed to post MPL): and

IV. Consecutive CCMI from 11/05/05 to 11/09/05 (4 days) (pharmacy possessed them since 11/05/05 but withheld them);

(b). The second lot of CC Meds (i.e. 120 doses ea) should have been Refilled around 10/18/05 (i.e. within ninety days of the first Clinic date of 7/18/05), but CMS failed to correct the CCMI(s) and belatedly ordered this lot to run from 1/06/06 to 05/05/06:

V. Consecutive CCMI from 12/07/05 to 1/04/06 (28 days) (pharmacy possessed alternative "Stock" supplies but withheld them);

A 1

VI. Consecutive CCMI from 02/11/06 to 02/13/06 (2 days) (pharmacy possessed them on either 02/09 or 02/10/06, but withheld them); and
VII. Consecutive CCMI from 03/13/06 to 03/28/06 (15 days) (pharmacy possessed them since 03/22/06, but withheld them);

*Note that only three Med Cards were supplied with this lot, thus it is actually a 90-dose lot with the next lot beginning thereafter.

(c). The third lot of CC Meds (i.e. 120 doses ea) should have been Refilled around 01/18/06 (i.e. within 180 days of the first Clinic date of 7/18/05), but CMS failed to correct the CCMI(s). Nevertheless, adjusting for the belated second 01/06/06 Clinic Refill order, this third lot should have been Refilled around 04/06/06, but CMS failed to correct the CCMI(s) and belatedly ordered this lot to run from 05/05/06 through 09/02/06 and causing still more CCMI(s):
VIII. Consecutive CCMI from 04/27/06 to 05/09/06 (12 days) (pharmacy also failed to post MPL):
IX. Consecutive CCMI from 06/08/06 to 06/29/06 (22 days) (pharmacy possessed them since 06/21/06, but withheld them);
X. Consecutive CCMI from 07/30/06 to 08/08/06 (8 days); and
XI. CCMI from 10/05/06 to 10/25/06 (19 days) (pharmacy possessed them since 10/21/06, but withheld them).

9. DETAILS OF CCMI: On 07/01/05 Affiant was scheduled for a Clinic, but it was cancelled and CMS caused the first of eleven unnecessary CCMI(s).

10. On 07/18/06 (circa) Dr. Alie placed a Refill order for 120 doses of Affiant's CC Meds (begin 0n 07/18/05 through 11/15/05), in lieu of providing said Clinic. This was in response to complaint Affiant filed on 07/11/05 regarding the cancelled 07/01/05 Clinic, which Affiant predicted would cause an avoidable CCMI.

11. On 07/15/05 CMS caused a CCMI of twelve days (7/15 to 7/27); however, the pharmacy actually possessed these lapsed CC Meds on 07/22/05 but refused to dispense them to Affiant until 07/27/05. (See Ex. AA-1 ).

12. Based on Alie's 07/18/05 Refill order, Affiant's second set of Med Cards should have been provided before 08/18/05, but CMS refused to correct the CCMI and did not dispense them until 09/05/05.

13. For example, on 08/27/05 CMS caused the second consecutive CCMI of nine days (08/27 to 09/05) and also failed to provide the doctor's ordered Multivitamin (Mtv). (See AA-2 ).

14. Adjusting for the second CCMI, Affiant's third set of Med Cards should have been provided before 10/04/05, but CMS still refused to correct the CCMI and did not dispense them until 10/06/05.

15. For example, on 10/04/05 CMS caused the third consecutive CCMI of two days (10/04 to 10/06), however, the pharmacy had no intent even then to provided the CC Meds because it failed to notify Affiant via the MPL and Affiant only received them because he attended a medical grievance hearing at the hospital on 10/06/05 for the very issue. (See AA-3 ).

16. Adjusting for the third CCMI, Affiant's fourth and final set of Med Cards should have been provided before 11/05/05, but CMS still refused to correct the CCMI and did not dispense them until 11/08 or 11/09/05.

17. For example, on 11/05/05 <u>CMS caused the fourth consecutive CCMI of four days</u> (11/05 to 11/09); however, the pharmacy actually possessed these lapsed CC Meds on 11/05. (See AA·4).

18. During the interim, a ninety day Clinic should have been automatically scheduled around 10/18/05 (based on the previous/known 07/18/05 Clinic) in order to Refill the nest 120 dose lot, but CMS still refused to correct the CCMI and did not schedule the Clinic until 11/11/05, and, however, did not actually conduct a Clinic until 1/04/06.

19. For example, on 11/11/05 affiant was sent to a Clinic forty-five minutes tardy; however, this was due to the hospital failing to post Affiant's name on the "Offender activity Schedule" (not his fault or responsibility), and Nurse practitioner Ihuoma refused to conduct the necessary Clinic and refused to otherwise complete the "Refill" order (as Alie had done on 07/18/05).

20. Affiant filed a medical grievance (second regarding CCMI) on 11/14/05 specifically against Ihuoma for her refusal to conduct the Clinic, and provided the deficient "Offender Activity Schedule," and accurately predicted that it would cause another unnecessary CCMI.

21. On 11/29/05, Affiant was again scheduled with Ihuoma for the belated Clinic but she again refused to conduct it or complete the Refill intentionally causing the fifth Consecutive CCMI.

22. Adjusting for the fourth CCMI of 11/05/05, Affiant should have been provided the first Med Card of the second 120 dose lot before 12/08/05, but CMS still refused to correct the CCMI and did not dispense them until an egregious 01/04/06.

23. For example, on 12/07/05 <u>CMS caused the fifth consecutive CCMI of twenty-eight days</u> (12/05 to 01/05/06) and CMS refused to provide any Mtv. in violation of the doctor's order. Indeed, Affiant only received any CC Meds on 01/04/06 because Dr. Burns –who finally conducted the Clinic and who placed the next lot to run from 1/06/06 to 05/05/06- had produced an alternative supply from the pharmacy's "Stock" supplies, which had been there all along (dated since 03/19/05).

24. For example, on 01/11/06 Affiant received his first Med Card (absent the Mtv) and experienced his fifth unnecessary CCMI (See AA·5).

25. Adjusting for the fifth CCMI (based on receiving the 1/11/06 Card), Affiant should have been provided his second set of Med Cards before 02/11/06, but CMS still refused to correct the CCMI and did not dispense them until 02/13/06.

26. For example, on 02/11/06 <u>CMS caused the sixth consecutive CCMI of three days</u> (2/11 to 2/13), however, the pharmacy actually possessed the lapsed CC Meds on either 2/09 or 2/10 but refused to dispense the lapsed CC Meds to Affiant until 2/13/06. (See AA·6).

27. Adjusting for the sixth CCMI of 2/11/06, Affiant should have been provided his third set of Med Cards before 3/12/06, but CMS still refused to correct the CCMI and did not dispense them until an egregious 3/28/06.

28. For example, on 3/13/06 <u>CMS caused the seventh consecutive CCMI of fifteen days</u> (3/13/06 to 3/28/06); however, it is asserted that the pharmacy actually possessed the lapsed CC Meds since 03/22/06 but refused to dispense them until 3/28/06. (See AA·7) and (               ).

29. Adjusting for the seventh CCMI of 03/13/06, Affiant should have been provided the fourth set of his CC Meds before 04/27/06, but CMS still refused to correct the CCMI and did not dispense them until 05/09/06. *Note that the fourth set was not actually provided as a third lot of 120 doses began in its place, thus this lot was in fact a ninety dose lot instead of a 120 dose lot.

30. During the interim the ninety day Clinic should have been provided around 4/06/06 (adjusted for the last known/documented Clinic of 1/06/06 by Dr. Burns) in order to Refill Affiant's CC Meds and avoid another unnecessary CCMI, but CMS still refused to correct the CCMI and did not provide the necessary Clinic until 05/08/06. (Clinic held Refill ordered to run from 05/05/06 to 9/02/06).

31. For example, on 4/27/06 CMS caused the eighth consecutive CCMI of twelve days (4/27/06 to 5/09/06). (See A\8).

32. Adjusting for the eighth CCMI of 4/27/06, Affiant should have been provided his second set of Med Cards before 6/08/06, but CMS still refused to correct the CCMI and did not dispense them until 6/26/06.

33. For example, on 6/08/06 CMS caused the ninth consecutive CCMI of an egregious twenty-two days (6/08/06 to 6/29/06), and even then the pharmacy did not intend to provide them because it refused to list Affiant on the MPL. Affiant was called in at 7:30 pm due to the Deputy Warden's intervention. (See A\9).

34. Again the pharmacy actually possessed the lapsed CC Meds earlier on 6/21/06, but refused to dispense them to Affiant until 6/29/06. (See Altman's 7/19/06 Letter at $\mathbb{I} \cdot \mathbb{0} \cdot \mathbb{1}$   ).

35. Adjusted for the ninth CCMI or 6/08/06, Affiant should have been provided his third set of Med Cards before 7/29/06, but CMS still refused to correct the CCMI and did not dispense them until 8/08/06.

36. For example, on 7/30/06 CMS caused the tenth consecutive CCMI of eight days (7/30/06 to 8/08/06). (See A\10).

37. Adjusted for the tenth CCMI the fourth set of Med Cards was due before 9/07/06, and for the first time since July 05, Affiant received this set in a timely manner. Accordingly, the first set of the nest 120 dose lot should have been provided before 10/07/06, but CMS still reverted back to its custom/policy of creating unnecessary CCMI and did not dispense them until an egregious 10/24/06.

38. But first, during the interim, a ninety day Clinic should have been provided around 8/5/06 (adjusted for the last known/documented Clinic of 05/05/06), but CMS refused to conduct the necessary Clinic until an outrageous 10/18/06, and that was only realized after Affiant filed an Emergency Medical Grievance and went to the first hearing.

39. It appears the CMS's one and only instance of providing Affiant his CC Meds in a timely fashion was merely anomaly.

40. For example, on 10/05/06 CMS caused the eleventh CCMI of an egregious nineteen days (10/05/06 to 10/24/06); however, the pharmacy actually possessed the lapsed CC Meds since 10/21/06, but refused to dispense the lapsed CC Meds until 10/24/06 (even then the pharmacy did not notify Affiant via the MPL or provide Affiant his Mtv.). (See A\11).

41. Indeed, eight of the eleven CCMI(s) were grossly aggravated –unnecessarily- because the pharmacy either actually possessed the lapsed CC Meds but refused to dispense them or refused to otherwise notify Affiant via the MPL. Moreover, this outrageous behavior persisted despite Affiant providing adequate notice before and after each and every CCMI, and despite Affiant filing three related medical grievances.

42. The above is True and Correct based on Affiant's personal experience, observaton, and to the best of his knowledge.

Sworn and Subscribed before me this __29__ day of __November__ 2006.

David Williamson

Brian D. Engrem
Notary Public, State of Delaware
My Commission Expires June 14, 2008

Notary Public

The First 120 dose Lot of CC Meds [1] was ordered by Dr. Alie to run from 7/18/05 to 11/15/05 (i.e. four blister pack cards [2] of thirty-dose each) to run consecutively. Below are photocopies and relevant history of CMS's mismanagement of CC Meds distribution. **FIRST LOT: 1 of 4 CC Med Cards**



Levothroxine (Levo.) Start: 7/18/05  Processed by Pharmacy: 7/22/05  Dispensed: 7/27/05

Result: Unnecessary CCMI form 7/15/05 to 7/27/05



Multivitamin (Mtv.)  Same as above.

[1] Affiant's CC Meds consist of Levothyroxine for his chronic thyroid condition, of which must be taken daily –at the same time- and uninterrupted to ensure their effectiveness; and consists of Multivitamins to supplement the former and assist in converting food to useable energy.

[2] CC Meds come in thirty dose blister packs and normally contain the following information: (1) type and dosage of drug, (2) prescribing physician, (3) the date range (i.e. "Start," Dispense "Disp," and "Stop" dates), and it lists the remaining Refills "RFL" (e.g. after the first of four cards it would read as RFL: 3, which indicates that three thirty dose cards remain to be dispensed). Note that around the Ninety-day mark a Clinic is to be held for the purpose of ordering a subsequent "Refill" of the next 120 dose Lot.

Lot.                                        A **A-1**

The First 120 dose Lot of CC Meds (7/18/05 to 11/15/05): **FIRST LOT: 2 of 4 CC Med Cards**



Levo: Based on the known/documented 7/18/05 Start date, this <u>Card should have been dispensed before</u>
<u>8/15/05</u>, but CMS chose not to correct the Chronic-care Medication Interruption (CCMI).
<u>Adjusted</u> for the prior 7/27/05 CCMI, this Card should have been dispensed before 8/27/05, but
CMS again chose not to correct the CCMI. Alternatively, <u>CMS did not dispense the lapsed CC</u>
<u>Meds to Affiant until 9/05/05</u>. Result: Unnecessary CCMI form 8/27/05 to 9/05/05.



NOT PROVIDED

Mtv: Sammaanna

The First 120 dose Lot of CC Meds (7/18/05 to 11/15/05) **FIRST LOT: 3 of 4 CC Med Cards**



Levo. Based on the known/documented 7/18/05 Start date, this Card should have been dispensed before 9/15/05, but CMS chose not to correct the CCMI. Adjusted for the prior known/documented 9/05/05 CCMI, this Card should have been dispensed before 10/05/05, but CMS again chose not to correct the CCMI. Alternatively, CMS did not provide these lapsed CC Meds to Affiant until 10/0605. Also, the pharmacy did not intend to dispense the lapsed CC Meds, because it refused to notify Affiant via the Medication Pick up List (MPL); Affiant only received them on 10/06/05 because he attended a Medical grievance hearing (# 15453) at the hospital that day.

Result: Unnecessary CCMI form 10/04/05 to 10/06/05.

MULTIVITAMIN
"ONE-A-DAY VIT"
TABS
ONE 0001    30    Exp.08/200
MAJOR        11664519
00904053080.30

PharmaCorr(INDY)   6002 Corporate Way Indianapolis, IN 46278
                   (800)259-3067  FAX (800)259-3066
5362-(MAIN)                                   183022
WILLIAMSON, DAVID
MULTIVITAMIN    TABS
30 OF 30   QTY: 30   RFL  2  Eqv.ONE-A-DAY VIT
                                      Stop  11/15/05
TAKE 1 TAB BY MOUTH DAILY FOR 120 DAYS

1235

Start  07/18/05
Disp  10/04/05
DELEWARE CORRECT
ALIE SITTA B. MD

Mtv:    Same as above.

The First 120 dose Lot of CC Meds (7/18/05 to 11/15/05) **FIRST LOT: 4 of 4 CC Med Cards**



Levo.    Based on the known/documented 7/18/05 Start date, this Card should have been dispensed before

10/15/05, but CMS chose not to correct the CCMI. Adjusted for the prior known/documented

10/06/05 CCMI, this Card should have been dispensed before 11/06/05, but CMS again chose

not to correct the CCMI. Alternatively, CMS did not dispense these lapsed CC Meds to Affiant

until 11/09/05. Also, the pharmacy aggravated the CCMI because it actually possessed the CC

Meds by at least 11/05/05, but withheld them.

Result: Unnecessary CCMI form 11/05/05 to 11/09/05.



Mtv.

Mtv. Same as above

A A-4

The Second 120 dose Lot of CC Meds was ordered by Dr. Burns to run from 1/06/06 to 5/06/06, however, Affiant's prior -known/documented- Clinic of 7/18/05 required the subsequent Clinic to be provided around 10/18/05 (i.e. around the ninety day mark), and it required this Lot to begin before 11/15/05, but CMS chose not to correct the continuous CCMI (s). **SECOND LOT: 1 of 4 CC Med Cards**



Levo: Start: 1/06/06, but adjusted for the prior known/documented 11/09/05 CCMI, this Card should

have been dispensed before 12/08/05; CMS still chose not to correct the (CCMI. Alternatively

CMS did not dispense these egregiously lapsed CC Meds to Affiant until 1/11/06. This also

violated Dr. Burns' Refill order, which was to begin on 1/06/06.

Result: Unnecessary CCMI form 1/04/06 to 1/11/06.



**NOT PROVIDED**

Mtv: was withheld from Affiant in violation of Dr. Burns' 1/06/06 Refill order.

* Note: This Lot actually consisted of only 90 doses (i.e. three cards) and the fourth was skipped as this next Lot began.

The Second 90 dose Lot of CC Meds (1/06/06 to 5/6/06): **SECOND LOT: 2 of 3 CC Med Cards**



Levo.  Based on the known/documented 1/06/06 Start date, this Card should have been dispensed before 2/06/06, but CMS chose not to correct the CCMI. Also, the pharmacy aggravated the CCMI because it actually possessed the CC Meds on either 2/09 or 2/10/06, but withheld the lapsed CC Meds until 2/13/06.

Result: Unnecessary CCMI form 2/11/06 to 2/13/06.



NOT PROVIDED

Mtv. was withheld from Affiant in violation of Dr. Burns' 1/06/06 CC Med order.

The Second 90 dose Lot of CC Meds (1/06/06 to 5/6/06): **SECOND LOT: 3 of 3 CC Med Cards**



Levo.   Based on the known/documented Start date of 1/06/06, this Card should have been dispensed before 3/06/06, but CMS chose not to correct the CCMI. Adjusted for the 2/13/06 CCMI, this Card should have been provided before 3/13/06, but CMS again chose not to correct the repeated CCMI(s). Alternatively, CMS did not dispense the lapsed CC Meds to Affiant until an egregious 3/28/06. Also, once again the pharmacy aggravated the CCMI, because it possessed the lapsed CC Meds as early as 3/22/06 but withheld them. Result: Unnecessary CCMI 3/13/06 to 3/28/06.



Mtv.   Same as above.

\* Note: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

$A$ A-7

The Third 120 dose Lot of CC Meds was ordered by Nurse Practitioner Ihuoma to run from 5/05/06 to 9/02/06, however, Affiant's prior -known/documented- prior Med Card of 3/28/06 (adjusted for the CCMI) required the this Lot to begin before 4/28/06. **THIRD LOT: 1 of 4 CC Med Cards**



Levo: Start: 5/05/06, but adjusted for the prior known/documented 3/28/06 CCMI, this Card should have been dispensed before 4/28/06; CMS chose not to correct the CCMI. Alternatively CMS did not dispense these egregiously lapsed CC Meds to Affiant until 5/09/06. This also violated Ihuoma's Refill order, which was to begin on 05/05/06.

Result: Unnecessary CCMI form 4/27/06 to 5/09/06.



Mtv: Same as above.

The Third 120 dose Lot of CC Meds (5/05/06 to 9/02/06) **THIRD LOT: 2 of 4 CC Med Cards**



Levo.    Based on the known/documented Start date of 5/05/06, this Card should have been dispensed
before 6/05/06, but CMS chose not to correct the CCMI. Adjusted for the 5/09/06 CCMI, this
Card should have been provided before 6/09/06, but CMS again chose not to correct the repeated
CCMI(s). Alternatively, CMS did not dispense the lapsed CC Meds to Affiant until an egregious
6/29/06. Also, once again the pharmacy aggravated the CCMI, because it possessed the lapsed
CC Meds as early as 6/21/06 (according to Altman's 7/19/06 letter (See $\text{II-B-1}$ ), but withheld
them. Result: Unnecessary CCMI 6/08/06 to 6/29/06.



Mtv.  Same as above.

The Third 120 dose Lot of CC Meds (5/05/06 to 9/02/06) **THIRD LOT: 3 of 4 CC Med Cards**



Levo.  Based on the known/documented Start date of 5/05/06, this Card should have been dispensed before 7/05/06, but CMS chose not to correct the CCMI. Adjusted for the egregious 6/29/06 CCMI, this Card should have been provided before 7/29/06, but CMS again chose not to correct the repeated CCMI(s). Alternatively, CMS did not dispense the lapsed CC Meds to Affiant until an egregious 8/08/06. Result: Unnecessary CCMI 7/30/06 to 8/08/06.



Mtv. Same as above.

*NOTE: The final card (4 of 4) was actually provided before another CCMI occurred. This was the first such instance –after ten consecutive CCMI(s) - that CC Meds were timely provided; however, CMS quickly restored its custom/policy of creating CCMI(s) on the very next opportunity. And CMS did so in spectacular fashion.

The Fourth 120 dose Lot of CC Meds was belatedly ordered by Dr. VanDusen to run from 10/20/06 to 2/17/07, however, Affiant's prior -known/documented- Clinic of 5/05/06 required the a subsequent Clinic to occur around 8/05/06, but of course it did not. **FOURTH LOT: 1 of 4 CC Med Cards**



Levo: Start: 10/20/06, but based on the known/documented "Stop" date of the prior Lot 9/02/06, this

Card should have been dispensed before 10/02/06, but CMS chose not to correct the CCMI.

Alternatively CMS did not dispense these egregiously lapsed CC Meds to Affiant until 10/25/06.

Moreover, this belated Clinic was the very same Clinic that CMS had falsified in response to

Affiant's grievance activity (phantom Clinic of 8/31/06), and CMS had to concede by actually

conducting the Clinic on 10/18/06. (See Section VI-A-2 & 3, items 5-17 (9-27-06)    ).

Result: Unnecessary CCMI form 10/05/06 to 10/25/06.

**NOT PROVIDED**

Mtv: Was mistakenly not ordered.

# EXHIBIT A

183022
W·1, L·12
July 11, 05

Cronic Care Physician

JUL 1 6 2005

Re: Cronic Care Medication Refill / Interruptions

Dear Cronic Care Physician:

Greetings, on July 1, 05 my name appeared on the Hospital
List for Cronic Care medication renewal however scheduled
visits were subsequently cancelled. I have not yet been
rescheduled. Consequently, my cronic care medications are due to
run out 7/16/05 without a refill. This will undoubtedly
cause an interruption with these meds, which are of a type
that interruptions lapses greatly reduce the effectiveness and cause
disruptions in my norms daily functions.

Because interruptions have been a common occurrence an agreement
was made (as per previous chronic statement) that the supply would
cover a 120 day period however, the refill ground again every
30 day list then allowing a 30 day grace period to correct any
scheduling problems with the health care provider. It appears that
this problem-solving agreement has unilaterally been abandoned with
the usual and foreseeable consequence. Yet more unacceptable
lapses. I would like to avoid more interruptions and correct these
scheduling. Your help with this matter is greatly
appreciated.

                                                            1    David Williams

WILLIAMSON, DAVID    Qty 30   1
LEVOXYL(LEVOTHYROXINE-50MCG) 50MCG
ID#183022   Start 07/14/05
LAST FILL, NO REFILL   7262475

7/15/05
Sir you meds have
you will be
re-ordered for
deep next
manin

BCC Delaware Correctional Center
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

*u*

## GRIEVANCE REPORT

### OFFENDER GRIEVANCE INFORMATION

| | | | |
|---|---|---|---|
| **Offender Name :** WILLIAMSON, DAVID W | **SBI#** : 00183022 | **Institution** : DCC |
| **Grievance #** : 15453 | **Grievance Date** : 07/15/2005 | **Category** : Individual |
| **Status** : Unresolved | **Resolution Status :** | **Resol. Date :** |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 07/01/2005 | **Incident Time :** |
| **IGC** : Merson, Lise M | **Housing Location :** Bldg W1, Tier L, Cell 12, Single | |

### OFFENDER GRIEVANCE DETAILS

**Description of Complaint:** Inmate claims there was an agreement via grievance concerning refilling of chronic medications. He claims he was not provided with a 120 day supply of chronic care meds or scheduled within 90 days for a doctors refill approval and thus face yet another interruption. Inmate claims on 7-1-05 he was on the list for chronic care appt but it was cancelled and that he was not given the 120 day supply of meds. Inmate claims he wrote chronic care but still did not receive meds.

**Remedy Requested** : Provide new card or stock supplies of Levoxyl and accompanying multiv. and correct this repeat behavior as per agreement.

### INDIVIDUALS INVOLVED

| Type | SBI # | Name |
|---|---|---|
| | | |

### ADDITIONAL GRIEVANCE INFORMATION

| | |
|---|---|
| **Medical Grievance :** YES | **Date Received by Medical Unit :** 07/22/2005 |
| **Investigation Sent :** 07/22/2005 | **Investigation Sent To** : Dunn, Lee Anne |
| **Grievance Amount :** | |

*2*

*A-2*

**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

## INFORMAL RESOLUTION

### OFFENDER GRIEVANCE INFORMATION

| | | |
|---|---|---|
| **Offender Name :** WILLIAMSON, DAVID W | **SBI#** : 00183022 | **Institution** : DCC |
| **Grievance #** : 15453 | **Grievance Date** : 07/15/2005 | **Category** : Individual |
| **Status** : Unresolved | **Resolution Status:** | **Inmate Status :** |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 07/01/2005 | **Incident Time :** |
| **IGC** : Merson, Lise M | **Housing Location** :Bldg W1, Tier L, Cell 12, Single | |

### INFORMAL RESOLUTION

**Investigator Name** : Dunn, Lee Anne                    **Date of Report** 07/22/2005

**Investigation Report :**

**Reason for Referring:**

He recaived his medications on 7/17/05.
cns will follow the medication administration
system to avoid a report of a lepse
in Medicine.

Refured to Scsn
Unresoluvd.

**Offender's Signature:** _____

**Date** : 7-28-05

**Witness (Officer)** _CarylaButore_ Larry A Linton cns

A-2

## Grievance Appeal Form

This must be completed and returned to the IGC within 3 days of receipt of the
Warden/Designee/MGC Decision

Grievant: David Williamson _____ SBI#: 00183022 _____

Housing Unit: W-1 L-12 _____    Case#: 15453

Date: *Thursday, October 06, 2005*  Due Date: *Saturday, October 09, 2005*

This form is to be used Only in the event of a decision appeal. Please specify the reason for the appeal in the space below.
/\/\/\/\/\/\/\/\/\/\/\/\/\/\/\/\/\/\/\/\/\/\/\/\/\/\/\/\/\/\/\/\/\/\/\/\/\/\/\/\/\/\/\/\/\/\/\/\/\/\

This timely Appeal follows a Level Two C.M.S.-
Medical Grievance Hearing (cms-mGH, hereafter). The griev-
ance (# 15453) cited both Current and On-going – Repeat
Interruptions in Receiving Prescribed Chronic Care Medications
(RIRPCCM, hereafter). Remedy requested was two-fold:
(i) Provide Grievant with the meds, and (ii) "Correct this
repeat behavior ...." C.M.S. failed to address the problem
of RIRPCCM and abused the grievance process.
    At the cms-mGH, cms representative ( D. Plante
) (i) Explicitly refused to address Grievant's
legitimate and on-going problem of RIRPCCM, and
instead "toyed" with Grievant namely by playing games
with semantics, which was employed to support their unten-
able, narrow reading of the grievance; (ii) CMS representative,
however, Conveniently disregarded material issues, namely:
a) Grievance itself; (b) Finding by its own representative at
the first Informal Hearing; (c) Determination by Grievance

If you need additional space, attach 8.5" X 11" size sheets of paper.

- /-

Chairperson who dismissed a subsequent grievance as "Duplicate" of the instant Grievance #15453; and (d) Subsequent RIRPCCM, of which has occurred over the past three consecutive months, and finally, (iii) CMS, in its corporate entity, and through its personnel have Explicitly engaged in customs and procedures, and encouraged a culture and attitudinal approach that evinces deliberate indifference to Grievant's serious medical needs.

Grievant will now specifically address the three points made above in support of the instant Appeal:

i. Explicitly refused to address Grievant's legitimate and on-going problem of RIRPCCM: Grievant specifically articulated- in his grievance- repeated interruptions with receiving his prescribed chronic care meds of which are of an on-going nature. Grievant specifically requested, in part, that CMS "Correct this repeat behavior." The fact that Grievant also requested that he be supplied the meds to cure the immediate medication interruption does not absolve CMS from having to correct the problem of repeat interruptions. In fact, the July 05, interruption was simply the most recent episode of an on-going problem, and the effective date of CMS accepting the contract to provide "adequate" health care to grievant and others.

Subsequently, Grievant pulled out his documentation and proceeded to outline the three consecutive medication interruptions- actually Grievant never did receive one of the two precribed meds on two of these occasions - but Grievant was immediately "Silenced" by cms representative

-2-

( ) and explicitly stated that the Board would not consider any other med interruptions subsequent to the July 05, episode. With much condescension, she proceeded to read the Grievance Report version of the grievance, however, highlighting the request for the 30 day cards (i.e. meds) but disregarding the overall request to correct the repeat behavior (e.g. AIRPCCM).

Grievant stated the July 05 episode was merely an incidence of the actual problem, which is and continues to be repeat and unnecessary interruptions in receiving his meds; that Grievant was, in fact, currently out despite having a doctor's order for the meds - good until Nov. 05. She then jumped up and stated very sarcastically and with disdain: "Make sure you write this down too! That I'm going above and beyond for you - I'm going to call the pharmacy to see if your meds are in." She then stated to her colleagues that "He's not writing it down, see!" Evidently providing, belatedly, chronic care meds to Grievant who has suffered three consecutive interruptions and was currently out of his meds is "going above and beyond" CMS's duty.

Consequently, Ms. Nikita Robins, C.J.S. advocate joined the group. CMS rep. was unsuccessful at contacting their pharmacy and directed Grievant to leave the hearing. Grievant protested that his problem has yet to be addressed, but was still ejected and told to wait.

As a result of the Board's narrow reading and shameless play with the semantics of the grievance, the problem of AIRPCCM was never addressed and the issue was knowingly distorted in an effort to create the appearance that Grievant got all he wanted when he was eventually provided a 30 day med card in late July.

-3-

Instead of addressing Grievant's legitimate problem, CMS and its personnel would rather play shenanigans with semantics, abuse the grievance process and squander an opportunity to attend to Grievant's serious medical needs. Moreover, the Board's treatment and reading of the issue is unsupported. The hearing amounted to an avoidance session.

ii. CMS representative conveniently disregarded material issues with their narrow reading of the grievance:

a) The grievance itself states "... still did not receive meds" and gave the July episode as an example of the problem — the on-going and repeat problem with medication interruptions. It requested to "Provide new card or stock supplies ... and correct this repeat behavior ...." The fact is Grievant did not receive his card until 7·27·05, however, the CMS pharmacy had logged his meds in five days earlier yet refused to dispense them. Grievant sent notification prior to running out, during the twelve-day interruption and even filed the instant grievance and despite having full knowledge of Grievant's med interruption, CMS still held the meds an additional five days before dispensing them. More-over, this blatently indifferent behavior continued to repeat itself the following two refills. These facts were disregarded by the Board.

b) Mr. Linton, CMS rep. at the first Informal Grievance Hearing on 7·28·05 read the unambiguous grievance and acknowledged the overall problem in his recommendation: "He received his medications on 7·27·05 CMS will follow the medication administration system to avoid a repeat of the lapse in medicine." The Board

also disregarded this fact (i.e. acknowledgement to "avoid repeat" lapses) when it refused to address the RIRPCCMs and merely treat the July episode as an isolated incident and avoid the problem altogether.

c) CMS rep ("D. Plante") indicated that they would alternatively deal with "other" grievances as they came up - the intrince was that Grievant should complete and file more grievances for subsequent episodes like the ones in Aug. and Sept. 05. Naturally this would be inefficient and a waste of valuable resources; however, Grievant did indeed file a timely grievance to document the consecutive August 05, interruption (# 17197). This grievance was quickly recognized by the Grievance Chair and summarily dismissed as a "Duplicate Grievance" of # 15453. Thus both Mr. Linton and D.O.C. Grievance Chairperson recognized that the instant grievance (# 15453) addressed not just the July 05, episode, but the subsequent on-going and repeat interruptions in meds. In fact, Grievant is precluded from grieving this duplicate issue. The purpose of the administrative grievance procedure is to give Notice to an offending party and an Opportunity to correct the offense. It is not in place to be misused by the offending party to delay or avoid legitimate problems and Grievant should not have to continue to suffer his serious medical condition — untreated and aggrivated because CMS chooses to abuse the grievance procedure. We are at the final phase of the grievance procedure and CMS has made its intentions clear. Grievant need not be precluded or further delayed in seeking appropriate redress in the courts. Grievant continues to needlessly suffer repeat med interruptions that

adversely affects his normal daily functions and ability to pursue and maintain his health. (See "Notice Letter" which was mailed to Dr. Alie on or about 7-22-05, at A-1).

(D) ~~The~~ Subsequent RIRPCCM of which have continued to needlessly occur for three consecutive months: Grievant experienced a _twelve-day med interruption_ (July 15 to July 27, 05), however, the CMS pharmacy possessed his meds on July 22, 05 yet failed to dispense them; again experienced a _nine-day med interruption_ (Aug 27 to Sept. 5, 05), however, during this period CMS personnel, Maggie _____) Nurse Assistant verified that the pharmacy had "Stock Supplies" of the Levothyroxine on 8-31-05 but refused to dispense any to Grievant and stated: " It's not my problem, you'll have to wait!" (See Affidavit A-2). In fact, Grievant was never placed on the "Med-Pick Up List" when he finally received one of two cards on 9-5-05. Once again the pharmacy possessed this one med, but failed to alert Grievant, instead he came in for Blood Work and pleaded for a new nurse to check for him and he got them in this fashion. experienced a _one-day med interruption_ (Oct. 5 to Oct 6, 05) and again only received them because Grievant attended the grievance hearing. Despite the pharmacy possessing-and specifically aware of the lapse — they again failed to place Grievant's name on the Med Pick Up List. (See "List" A-3). Had Grievant not been at the hearing it is no telling when he would have been permitted to receive the meds that were interrupted.

All three of these consecutive interruptions occurred during the doctor's authorized med refill period that spanned from July 15, 05 to Nov 15, 05 (120 DAYS). All three

-6-

interruptions CMS recieved notice prior to Grievant running out of his chronic care meds, notice after and during the lapses, and on all three episodes CMS actually possessed these meds (and or alternative Stock Supplier in Sept.); however, failed to dispense them or notify Grievant via Med Pick Up List in a timely fashion. This behavior is unnecessary and unacceptable, and it evinces a deliberate indifference to Grievant's serious medical needs.

iii. Lastly, CMS in its corperate entity, and through its personnel have Explicitly engaged in customs and procedures, and encouraged a culture and attitutinal approach that evinces a deliberate indifference to Grievant's serious medical needs:

Items above at one and two demonstrate that CMS by and through various personnel have adequate Notice and knowledge of these AIRPCCM that Grievant continues to experience; that CMS has repeatedly failed to correct the problem despite this knowledge and notice, and despite actually possessing the meds – in a timely fashion; that CMS refuses to address the problem and instead engages in avoidance techniques and abuses the grievance procedure forcing Grievant to needlessly suffer; and, according to nurses Cathy _____ and Crystal _____ employs a policy for "Nonformulary" drugs where despite a doctor's approval, these drugs (mmie) are subjected to another round of scrutiny by "Regional" for nonmedical criterial vis "Cost." Grievant was informed of this "Regional" policy of final authorization on Oct. 4,05 when Grievant was mistakenly called in for

-7-

a Sick-Call visit in response to Grievant sending in a request / notice that he would run out of his meds in "seven" days. No sick call visit was required, of course. The only thing that was required was for Grievant to receive his prescribed meds, however, Cathy and Crystal attempted to justify why Grievant was not going to receive his meds by informing him that they were not "Formulary." And just because the doctor authorized them didn't mean I was going to receive them, they still had to be authorized by "Regional." Grievant inquired what "Regional" scrutinized the already approved meds for and the reply as stated by Cathy _____ was flatly and unequivically: "Cost."

Thus it appears that a policy is employed by CMS to second guess the medically based orders of a doctor by a detached body somewhere in "Regional" and based not on medical criteria but on nonmedical factors.

Note that Grievant has been prescribed the generic version of Synthroid as a chronic care med for about four years, albeit infrequently.

In conclusion, as stated above, CMS has made its position clear — to engage in deliberate indifference to grievant's serious medical needs— and it has abused the grievance procedure and squandered its opportunity to correct the problem in a timely and meaningful fashion. Grievant / Appellant should not continue to be denied meaningfull Redress and requests a Finding that the Administrative Grievance Procedure has been Exhausted.

Davie Williams

10-6-05                              -8-              x.c. Nikita Robins, 　 D.C.J.

## CERTIFICATE OF SERVICE

I David Williamson do certify and attest that I have filed this Medical Grievance Appeal in a timely fashion by placing an original copy in W-building's Grievance Box no later than Oct. 8th, 2005.

David W

David Williamson

Date:

W. Bldg. Officer Witnessed

# GRIEVANCE INFORMATION - Appeal

| OFFENDER GRIEVANCE INFORMATION | | | |
|---|---|---|---|
| Offender Name : WILLIAMSON, DAVID W | SBI# : 00183022 | Institution : DCC | |
| Grievance # : 15453 | Grievance Date : 07/15/2005 | Category : Individual | |
| Status : Unresolved | Resolution Status : | Inmate Status : | |
| Grievance Type: Health Issue (Medical) | Incident Date : 07/01/2005 | Incident Time : | |
| IGC : Merson, Lise M | Housing Location : Bldg W1, Tier L, Cell 12, Single | | |

## APPEAL REQUEST

This timely appeal follows a level two CMS- Medical grievance hearing (CMS-MGH, hereafter). The grievance cited both current and on-going-repeat interruptions in receiving prescribed chronic care medications (RIRPCCM, hereafter). Remedy requested was two-fold: (i) provide grievant with the meds, and (ii) "Correct this repeat behavior..." CMS failed to address the problem of EIEPCCM and abused the grievance process.

At the CMS-MGH, CMS representative ( ) (i) Explicitly refused to address Grievant?s legitimate and on-going problem of RIRPCCM, and instead "toyed" with grievant namely by playing games with semantics, which was employed to support their untenable, narrow reading of the grievance; (ii) CMS representative, however, conveniently disregarded material issues, namely: a) grievance itself; (b) finding by it's own representative at the first informal hearing; (c) determination by grievance chairperson who dismissed a subsequent grievance as "Duplicate" of the instant grievance 15453; and (d) subsequent RIRPCCM, of which has occurred over the past three consecutive months; and finally, (iii) CMS, in it's corporate entity, and through it's personnel have explicitly engaged in customs and procedures, and encouraged a culture and attitudinal approach that evinces deliberate indifference to Grievant?s serious medical needs.

Grievant will now specifically address the three points made above in support of the instant appeal:

i. Explicitly refused to address Grievant?s legitimate and on-going problem of RIRPCCM: Grievant specifically articulated in his grievance repeated interruptions with receiving his prescribed chronic care meds of which are of an on-going nature. Grievant specifically requested, in part, that CMS "Correct this repeat behavior." the fact that grievant also requested that he be supplied the meds to cure the immediate medication interruption does not absolve CMS from having to correct the problem of repeat interruptions. Con't

## REMEDY REQUEST

In fact, the July 05, interruption was simply the most recent episode of an on-going problem, and the effective date of CMS accepting the contract to provide "adequate" health care to grievant and others.

subsequently, Grievant pulled out his documentation and proceeded to outline the three consecutive medication interruptions - actually Grievant never did receive one of the two prescribed meds on two of these occasions - but Grievant was immediately "silenced" by CMS representative ( ) and explicitly stated that the board would not consider any other med interruptions subsequent to the July 05, episode. With much condescension, she proceeded to read the grievance report version of the grievance, however, highlighting the request for the 30 day cards (i.e. meds) but disregarding the overall request to correct the repeat behavior (i.e. RIRPCCM)

Note: Appeal is 13 pages long. IGC Merson is forwarding copy to BGO via State Mail. Sent 10-12-2005.

# GRIEVANCE INFORMATION - BGO

| OFFENDER GRIEVANCE INFORMATION | | |
|---|---|---|
| Offender Name : WILLIAMSON, DAVID W | SBI# : 00183022 | Institution : DCC |
| Grievance # : 15453 | Grievance Date : 07/15/2005 | Category : Individual |
| Status : Unresolved | Resolution Status : | Inmate Status : |
| Grievance Type: Health Issue (Medical) | Incident Date : 07/01/2005 | Incident Time : |
| IGC : Merson, Lise M | Housing Location : Bldg W1, Tier L, Cell 12, Single | |

| REFERRED TO | | |
|---|---|---|
| Due Date : | Referred to: | Name: |

Type of Information Requested :

| DECISION |
|---|

Date Received : 10/12/2005

Decision Date :        Vote :

Comments    :

Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

## GRIEVANCE INFORMATION - MGC

### OFFENDER GRIEVANCE INFORMATION

| | | |
|---|---|---|
| Offender Name : WILLIAMSON, DAVID W | SBI#  : 00183022 | Institution  : DCC |
| Grievance #  : 15453 | Grievance Date  : 07/15/2005 | Category  : Individual |
| Status  : Unresolved | Resolution Status: | Inmate Status : |
| Grievance Type: Health Issue (Medical) | Incident Date  : 07/01/2005 | Incident Time : |
| IGC  : Merson, Lise M | Housing Location : Bldg W1, Tier L, Cell 12, Single | |

### MGC

Date Received  : 08/04/2005           Date of Recommendation: 10/12/2005

### GRIEVANCE COMMITTEE MEMBERS

| Person Type | SBI # | Name | Vote |
|---|---|---|---|
| Staff | | Dunn, Lee Anne | Uphold |
| Staff | | Wright, Matthalina | Uphold |
| Staff | | McCreanor, Michael | Abstain |

### VOTE COUNT

| | | |
|---|---|---|
| Uphold : 2 | Deny : 0 | Abstain : 1 |

### TIE BREAKER

| Person Type | SBI # | Name | Vote |
|---|---|---|---|
| | | | |

### RECOMMENDATION

Hearing held 10-6-2005
Uphold
Inmate will be placed on pill call to prevent missed medication.

D Plante RN - uphold

David Williamson
SBI # 00183022, W-1, L-12
DCC – 1181 Paddock RD.
Smyrna, De 19977

Dr. Alie

Re: Repeat Interruptions of Chronic Care Medication (Levoxyl)

Dear Dr. Alie:

Greetings, I am in receipt of a response from you dated 7-12-05, however I received it on 7-21-05, of which assured me that my Chronic Care medication had been "Refilled" and that I would be scheduled to pick it up "next week." Thank you for seeing to the "Refill" requirements, however, I ran out of the Levoxyl on 7-15-05 and have not as yet been scheduled in to pick up a new medication card.

Because I have experienced multiple chronic care medication interruptions that frustrate the effectiveness of this type of med and adversely affects my normal daily functions, I submitted an "Emergency Medical Grievance" (E.M.G.) on 7-15-05 the day I took my last dosage. Despite the health care provider normally keeping this medication in Stock supplies, I again have gone a week without any chronic care meds. This exact behavior has been repeated on several prior occasions, however, unnecessarily because this medication is normally kept in stock supplies. In fact, on two prior occasions I had family members call a complaint into the Warden's Office, and was subsequently provided stock supplies that very day. It appears that friendly letters and E.M.G.s informing one that I am out or due to be out of said meds are disregarded; however, a complaint to the Warden's Office is the only mechanism that secures the meds in a timely fashion. This repeat behavior evinces a Deliberate Indifference to my known serious medical condition. For me to have to experience yet another interruption in chronic care medication, in view of several letters, breached E.M.G. agreements and disregarded E.M.G.s, and the fact that these meds are normally in stock supplies is unacceptable.

I am currently experiencing a resurgence of symptoms, such as i. Chronic fatigue (adversely impairs ability to exercise & stay healthy); ii. Phantom allergies (hives & painful swelling of extremities); iii. Loss of hair about my head & body); iv. Inability to focus and concentrate (adversely impairs ability to work on college & employment responsibilities); and v. Slowing of metabolism (bowel movements average two per week & acute muscle-mass loss). This resurgence suggest that the dosage, which has remained the same these past four years, may need to be adjusted upwards, however, any interruptions in the medication, of course greatly aggravates these existing conditions. As such, my normal daily functions have and are adversely impaired.

My prayer is to avoid having to pursue this matter through formal litigation; it is merely to correct these on-going interruptions in receiving these meds, however, because two prior E.M.G. agreements have been breached by the health care provider, and because my friendly letters and E.M.G.s have not been realized, this letter also serves "Notice" on the Health Care Provider that failure to correct this repeated problem may result in the matter being litigated. Your assistance and cooperation in this matter would be greatly appreciated.

Respectfully,

David Williamson
7.22.05

c.c. Correctional Medical Services Office,
   Attorney General's Office,
   Warden for Delaware Correctional Center, and
   The Center for Justice

3

A.3

# EXHIBIT B

EMERGENCY MEDICAL GRIEVANCE

FORM #585

MEDICAL GRIEVANCE

FACILITY: D.C.C.

INMATE'S NAME: David Williamson

HOUSING UNIT: W.1, L.12

DATE SUBMITTED: 8-30-05

SBI#: 00183022

CASE #: 17/97

////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////

SECTION #1

DATE & TIME OF MEDICAL INCIDENT: Current ¢ ON-GOING

TYPE OF MEDICAL PROBLEM:

Repeat interruptions in receiving Chronic care meds, specifically "Levathyroxine". Prior to the instant interruption of said meds, I experienced a med interruption from 7-15-05 to 7-27-05, and during this duration I wrote a letter requesting meds, filed an Emergency Grievance, and placed C.M.S. on Notice (see A-1). Dispite C.M.S. ¢ its personnel having been placed on "Notice" of problem etc. and dispite C.M.S. receiving said meds or 7-22-05, I still was not given these meds until 7-27-05. Again, I informed C.M.S personnel about recent interruption-via letter to D. Plante ¢ C. Malaney on 8-26-05; however as of 8-30-05 have not received these meds. C.M.S. ¢ its personnel have received adequate notice however remain deliberately indifferent to my known serious medical condition by this behavior

GRIEVANT'S SIGNATURE: David W.                      DATE: 8-30-05

ACTION REQUESTED BY GRIEVANT: (1) Immediate supply of Chronic care issue meds; (2) No further interruptions; (3) Damage awards in the sum of seven-thousand dollars for the repeat deliberate indifference and or negligence in C.M.S' refusal to adequately and timely supply Chronic-care meds.

DATE RECEIVED BY MEDICAL UNIT: _____

RECEIVED

SEP 0 7 2005

Inmate Grievance Office

NOTE: EMERGENCY MEDICAL CONDITIONS WILL TAKE PRIORITY. OTHERWISE, MEDICAL GRIEVANCES WILL BE ADDRESSED AT THE WEEKLY MEDICAL COMMITTEE MEETING.

1

B-1

David Williamson
SBI # 00183022, W-1, L-12
DCC – 1181 Paddock RD.
Smyrna, De 19977

Dr. Alie

Re: Repeat Interruptions of Chronic Care Medication (Levoxyl)

Dear Dr. Alie:

Greetings, I am in receipt of a response from you dated 7-12-05, however I received it on 7-21-05, of which assured me that my Chronic Care medication had been "Refilled" and that I would be scheduled to pick it up "next week." Thank you for seeing to the "Refill" requirements, however, I ran out of the Levoxyl on 7-15-05 and have not as yet been scheduled in to pick up a new medication card.

Because I have experienced multiple chronic care medication interruptions that frustrate the effectiveness of this type of med and adversely affects my normal daily functions, I submitted an "Emergency Medical Grievance" (E.M.G.) on 7-15-05 the day I took my last dosage. Despite the health care provider normally keeping this medication in Stock supplies, I again have gone a week without any chronic care meds. This exact behavior has been repeated on several prior occasions, however, unnecessarily because this medication is normally kept in stock supplies. In fact, on two prior occasions I had family members call a complaint into the Warden's Office, and was subsequently provided stock supplies that very day. It appears that friendly letters and E.M.G.s informing one that I am out or due to be out of said meds are disregarded; however, a complaint to the Warden's Office is the only mechanism that secures the meds in a timely fashion. This repeat behavior evinces a Deliberate Indifference to my known serious medical condition. For me to have to experience yet another interruption in chronic care medication, in view of several letters, breached E.M.G. agreements and disregarded E.M.G.s, and the fact that these meds are normally in stock supplies is unacceptable.

I am currently experiencing a resurgence of symptoms, such as i. Chronic fatigue (adversely impairs ability to exercise & stay healthy); ii. Phantom allergies (hives & painful swelling of extremities); iii. Loss of hair about my head & body); iv. Inability to focus and concentrate (adversely impairs ability to work on college & employment responsibilities); and v. Slowing of metabolism (bowel movements average two per week & acute muscle-mass loss). This resurgence suggest that the dosage, which has remained the same these past four years, may need to be adjusted upwards, however, any interruptions in the medication, of course greatly aggravates these existing conditions. As such, my normal daily functions have and are adversely impaired.

My prayer is to avoid having to pursue this matter through formal litigation; it is merely to correct these on-going interruptions in receiving these meds, however, because two prior E.M.G. agreements have been breached by the health care provider, and because my friendly letters and E.M.G.s have not been realized, this letter also serves "Notice" on the Health Care Provider that failure to correct this repeated problem may result in the matter being litigated. Your assistance and cooperation in this matter would be greatly appreciated.

Respectfully,

David Williamson

COPY DATED 8-30-05

c.c. Correctional Medical Services Office,
    Attorney General's Office,
    Warden for Delaware Correctional Center, and
    The Center for Justice

A-1

RECEIVED

SEP 0 7 2005

Inmate Grievance Office

### Instructions for Submitting a Regular Grievance

Inmates are required, per DOC Procedure 4.4 [Inmate Grievance Procedure] to attempt to resolve complaints prior to filing a regular grievance. Grievances are to be submitted within seven (7) days from the date of the occurrence or incident or within seven days after the inmate became aware of the incident. The grievance is to be placed in the grievance box located in each housing unit.

Only one issue per grievance form will be addressed. If the grievance is submitted on a weekend or a holiday, it will be received during the next working day.

Return of Unprocessed Grievance

Intake Action: This Grievance Form is being returned to the inmate under the provisions outlined in DOV Procedure 4.4 "Inmate Grievance Procedure" for the following reason(s) :

_____ **Vulgar/Abusive or Threatening Language.** The Language that is unacceptable has been highlighted. The grievance may be resubmitted omitting this language.

_____ **Non-Grievable.** This issue has been defined as non-grievable in accordance with DOC Policy 4.4. These procedures have their own appeal process that must be followed.

_____ Disciplinary Action      _____ Parole Decision      _____ Classification Action

_____ **Request.** Requests are not processed through the grievance procedure. Please correspond with the appropriate Office to secure the information that is requested.

__✓__ **Duplicate Grievance(s).** This issue has been addressed previously in Grievance # _15453_

_____ **Original Grievances must be submitted to the Inmate Grievance Chairperson.** Photocopies are not accepted.

_____ **Inquiry on behalf of other inmates.** Inmates cannot submit grievances for other inmates.

_____ **Expired Filing period.** Grievance exceeds seven (7) days from date of occurrence.

Inmate Grievance Chairperson

SEP 0 9 2005

Date

# EXHIBIT C

# DELAWARE DEPARTMENT OF CORRECTIONS
# REQUEST FOR MEDICAL/DENTAL SICK CALL SERVICES
# FACILITY: DELAWARE CORRECTIONAL CENTER

This request is for (circle one): MEDICAL  DENTAL  MENTAL HEALTH

David Williamson
Name (Print)

W.1 (L-12)
Housing Location

5-12-66
Date of Birth

00183022
SBI Number

9-28-05
Date Submitted

Complaint (What type of problem are you having)?  Down to my last seven doses of Levothyroxine and I have not received my Mutivitamin (also chronic CARE meds) for over two months.

```
WILLIAMSON, DAVID                          QTY: 30
LEVOTHYROXINE  50D 0.05MG TABS 183022
6362-      Stop: 11/15/05   RX# 10152345
```

_David W_____
Inmate Signature

_____
Date

**The below area is for medical use only. Please do not write any further.**

S: Referred to pharmacy — dWRN

O:  Temp:____  Pulse:____  Resp:____  B/P:____  WT:____

picked up 30 mv1 on 10/16/05
A: picked up 30 levoxyl on 10/16/05, next refill of 30 pills due 11/4/05. Look for your name then on the medication pick up list.
P:           Danielle Scott CPhT
                    10/11/05

E:

SEP 2 9 2005

Provider Signature & Title                          Date & Time

3/1/99 DE01
FORM#:
MED
263

1

C-1

David Williamson
SBI# 183022
W-1, L-12

Re: Interruption with Chronic-care Medication

To: Mrs. C. Mahaney & Mrs.D. PLante, CMS

Dear Ladies:

Greetings, I am writing to inform you that as of Monday (10-3-05) my name has not appeared on the medication "pick-up" list. I am a Chronic-care patient who receives Levothyroxine and multivitamins for my thyroid condition. I will take my last dose on Tuesday (10-4-05); and, as you are aware any interruptions in taking this type of medication greatly reduces its effectiveness.

Because I experienced a twelve-day interruption in August and another in September (I never did receive the multivitamin), I alerted the pharmacy by placing the Levothyroxine "sticker" –from the med card-on a Sick-call slip on or about September 28, 05. Though I subsequently received a copy of this "sick-call" notice, which stated that it was forwarded to the CMS Pharmacy, my name has not appeared on any medication pick-up list.

Regarding the two prior interruptions, I provided notice –prior to running out- in the form of a two letters, and after running out –in the form of two Emergency Medical Grievances respectively; and I also wrote your offices (Mrs. C. Mahanely & Mrs. D. Plante) during the September interruption for assistance. I did not receive timely assistance, and to make matters worse the situation was aggravated because the CMS Pharmacy had logged the Levothyroxine as received five days prior to finally dispensing it to me despite all the Notice I provided before, during, and after running out! Moreover, this medication is kept in Stock Supplies as verified by Mrs. Maggie *Bailey*_____; however, again I was not provided any substitute. These events were avoidable and unnecessary, and I pray to avoid further interruptions. As such, I would respectfully request a timely supply of these meds, either through Stock supplies or by another 30 day card (my med order is good until November 05).

Your assistance in this matter is appreciated. Thank you.

Respectfully,

David Williamson
David Williamson
*10-3-05*

x.c. D.C.J. Mrs. Robins

2

C-2

## AFFIDAVIT OF DAVID WILLIAMSON

1. I David Williamson am the affiant listed above and do depose and attest the following:

2. Affiant is a Chronic-care patient and receives Chronic-care medications (CCM, hereafter) (e.g. Levothyroxine & multivitamins).

3. Affiant received a "Refill" order for the above CCM on 7-15-05 (120 day supply), which is good until November 15, 05. This "Refill" was authorized by Dr. S. Alie.

4. CMS, however, failed to dispense Affiant's CCM on or before he ran out, and he experienced a (twelve-day) CCM interruption between July 15 & July 27, 05. Moreover, the CMS pharmacy had actually logged in Affiant's CCM five-days earlier on July 22, 05 yet failed to dispense it to him.

5. Affiant experienced another CCM interruption consecutive to the July interruption (nine-day) between Aug. 27 & Sept. 05, 05.

6. Affiant experienced another consecutive CCM interruption Oct. 04 to Oct. 06, 05. Affiant was out again and CMS (pharmacy) was aware, however, failed to place Affiant on the Med Pick-up List. He received them only because he attended a Grievance Hearing concerning this very issue.

7. Specifically, Affiant provided Notice to the CMS pharmacy –Sept. 27, 05- by affixing the CCM "sticker" (from the 30-day CCM card) to a "Sick-call" slip and indicated that Affiant would be of his CCM in seven days. Though the CMS pharmacy policy is to automatically renew 30-day CCM within seven to five days prior to running out, Affiant was attempting to avoid another CCM interruption. This just serves as a friendly reminder.

8. On Oct. 02, 05, Affiant received a copy of his notice to the pharmacy and it specified that it had been forwarded to the pharmacy.

9. On Oct. 04, 05, Affiant was, however, unnecessarily scheduled in to be seen for a "Sick-call" visit even though his notice was forwarded to the pharmacy.

10. However, because Affiant had not been listed on the Med Pick-up list and he had taken his last dose of CCM, he requested the nurses to follow up on the interruption.

11. CMS nurse Cathy _Kionke_ and Crystal _Aston_ attended Affiant and took great pains to justify why Affiant was not going to receive his CCM in a timely fashion.

12. Specifically, Cathy stated that "Because your [Affiant's] particular types of meds are **nonformulary,** they have to be authorized." Affiant stated that they were authorized by Dr. Alie when she completed the "Refll" in July and that it was still good until Nov. Cathy continued with "Just because you had a doctor sign off on them doesn't mean that you're going automatically authorized." "Who else screens the meds?" Affiant inquired. "**Regional does,**" Cathy replied. Affiant asked, "What does Regional base their criteria on?" And Cathy firmly and unequivocally responded: **"COST!"** She then invited CMS pharmacist Debbie _____ to concur and assist her in justifying why Affiant was not going to receive his doctor prescribed CCM, which she did.

13. Affiant checked for clarification, "You mean to tell me that 'Regional' -who is not present in this building-, second guesses a doctor's order based on nonmedical criteria namely cost?" "Sure," Cathy replied.

14. Affiant has received a generic version of Synthroid (i.e. Levothyroxine etc.) for about four years, circa.

15. CMS has incorporated a policy or custom that usurps a doctor's order and or unnecessarily causes an interruption in CCM, which adversely affects the effectiveness of Affiant's type of CCM and does cause him to suffer a resurgence of symptoms that impairs his normal daily functions and ability to promote his health.

16. The above is true and correct as Affiant believes it to be.

SWORN and SUBSCRIBED before me this _24th_ day of October 2005.

David Williamson

Notary Public

3

C-3

# EXHIBIT D

David Williamson
SBI # 183022
W-1, L12
November _?_ , 2005

·Mrs. Plante

Re: Chronic-care Medication Lapses/Refill Order

Dear Mrs. Plante:

Greetings, I am writing because my current 120 day allotment of chronic-care medications are due to end on 11/15/05; however, I have not been scheduled in for a Chronic-care "Refill" visit as is normal. I am concerned with avoiding another interruption in receiving my thyroid meds. In fact, since my last "Refill" order in July 05, I have experienced **four consecutive** med interruptions. This is in the wake of me recently exhausting the Medical Grievance procedure and receiving assurances that this problem would be corrected. It appears that my timely Appeal was indeed appropriate to challenge these hollow promises.

These repeat lapses cause an unnecessary resurgence in common symptoms (e.g. inflammation & hive-like reactions, chronic-fatigue, high cholesterol). For example, I suffer painful inflammation of my extremities (hands & feet, and face) as a result. This has left me in such pain I can barely walk, and I was bed-ridden just recently over the weekend. Moreover, it is now recognized that high levels of inflammation causes damage to the coronary system and is a major contributor to heart disease, yet I suffer this painful and dangerous inflammation on a regular basis due to repeat med interruptions. Also, I suffer chronic fatigue –as is common with this disease- that adversely affects my normal daily functions (e.g. inability to focus on work & college studies) and an inability to pursue and promote a healthy life style (e.g. engage in meaningful & necessary exercise etc). Then there is the incidence of high cholesterol, also common with my ailment. This concerns me greatly, because alone, they are difficult enough to live with; however, the combined effects of the inflammation, inability to consistently promote health, and build-up of cholesterol conspire to degrade and permanently damage my health unnecessarily. As you are aware, this type of medication is required to be taken consistently without lapses or its effectiveness is hindered, and every time I experience a lapse I suffer the pain of the inflammation and complications of the other common symptoms. I simply wish to avoid needless suffering.

Moreover, I find it troubling that the 120 day dosage allotment was instituted to avoid lapses by providing an additional 30 day med card as a cushion greater than the 90 day intervals between the Chronic-care "Refill" visits, yet the last refill interval and this one have both exceeded the 90 day cycles. This defeats the purpose entirely and has aggravated the problem of interruptions.

Still more troubling is that, of the most recent four consecutive med lapses I gave notice prior to the interruptions (e.g. Mrs. Plante, Dr. Alie, and CMS Pharmacy), however, I still experienced the med lapses. This is disturbing because on two of those occasions the pharmacy actually signed in and possessed these meds several days before dispensing them to me, and on the others the pharmacy carried Stock Supplies yet failed again to dispense them. Despite my notices, no one cared to follow up and see to it that when these meds were checked in at the pharmacy, that I am provided them; this behavior unnecessarily prolonged the interruptions. This is unacceptable.

In closing, I request that assistance from CMS personnel with avoiding yet another interruption. Also, since the Medical Grievance hearing was abused by CMS personnel and has clearly failed to rectify this on-going problem, I would request some follow up from the parties listed below.

David Williamson
c.c. Nikita Robins, DCJ
c.c. Thomas Carroll, Warden of DCC
c.c. Dr. Alie

D-1

**FORM #585**

**MEDICAL GRIEVANCE**

FACILITY: D.C.C.

DATE SUBMITTED: 11-14-05

INMATE'S NAME: David Williamson

SBI#: 00183022

HOUSING UNIT: W-1, L-12

CASE #: 21201

///////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////

SECTION#1

DATE & TIME OF MEDICAL INCIDENT: 11-11-05

TYPE OF MEDICAL PROBLEM:

Nov. 11, 05 (10:45 Am) grievant - a chronic-care patient - was arbitrarily denied a "Chronic-care Clinic" by Ms. Ioma. The "clinic" was scheduled in response to a letter of complaint/notice that grievant filed 11-9-05 (A-1). Grievant inquired why he was being denied the clinic and Ʒt Ioma stated: "I'm not seeing you because you didn't come when you were supposed to." Grievant stated that he was not responsible for being tardy because the list posted in the housing unit did not include his name, but Ioma replied "I don't care, you will have to be rescheduled." (continued on page 2).

GRIEVANT'S SIGNATURE: _____    DATE: _____

ACTION REQUESTED BY GRIEVANT: _____

_____

_____

_____

DATE RECEIVED BY MEDICAL UNIT: _____

2

**RECEIVED**

DEC 1 3 2005

**NOTE: EMERGENCY MEDICAL CONDITIONS WILL TAKE PRIORITY. OTHERWISE, MEDICAL GRIEVANCES WILL BE ADDRESSED AT THE WEEKLY MEDICAL COMMITTEE MEETING.** Inmate Grievance Office

D-2

**FORM #585**

**MEDICAL GRIEVANCE**

FACILITY: D.C.C.

INMATE'S NAME: David Williamson

HOUSING UNIT: W.1, L-12

DATE SUBMITTED: 11-14-05

SBI#: 00183022

CASE #: 21201

//////////////////////////////////////////////////////////////////////////////////////////////////////////////////

**SECTION #1**

DATE & TIME OF MEDICAL INCIDENT: 11-11-05 (page 2)

TYPE OF MEDICAL PROBLEM:

(See attached A-2 "Offender Activity Schedule" page 1 of 1) Grievant then inquired: "So, I'm going to be denied my chronic-care clinic and be punished because someone else omitted my name from the sick call list, which is not my fault or responsibility?" Ioma nodded in the affirmative and restated that I would be rescheduled. Grievant is concerned with avoiding yet another med interruption and filed the Nov. 9, 05 notice because CMS had already failed to schedule him in within the 90 days cycle. Clearly denying treatment, wrongfully punishing patients, and constructing malicious obstacles is more important to CMS and its personnel √than correcting on-going problems and providing adequate treatmen

GRIEVANT'S SIGNATURE: David W          DATE: 11-4-05

ACTION REQUESTED BY GRIEVANT: Because this behavior is blatent evidence of CMS's deliberate indifference to Mr. Williamson's serious medical needs, and because the grievance process has failed to correct this in-difference, grievant requests: monetary damages, cms personnel training, & a timely correction to the repeat med interruptions. (Damages will be negot-

DATE RECEIVED BY MEDICAL UNIT: _____
iated at hearing or via
cms cou~~RECEIVED~~
2

**NOTE: EMERGENCY MEDICAL CONDITIONS WILL TAKE PRIORITY. OTHERWISE, MEDICAL GRIEVANCES WILL BE ADDRESSED AT THE WEEKLY MEDICAL COMMITTEE MEETING.**

DEC 13 2005

David Williamson
SBI # 183022
W-1, L12
November _?_ , 2005

Mrs. Plante

Re: Chronic-care Medication Lapses/Refill Order

Dear Mrs. Plante:

Greetings, I am writing because my current 120 day allotment of chronic-care medications are due to end on 11/15/05; however, I have not been scheduled in for a Chronic-care "Refill" visit as is normal. I am concerned with avoiding another interruption in receiving my thyroid meds. In fact, since my last "Refill" order in July 05, I have experienced **four consecutive** med interruptions. This is in the wake of me recently exhausting the Medical Grievance procedure and receiving assurances that this problem would be corrected. It appears that my timely Appeal was indeed appropriate to challenge these hollow promises.

These repeat lapses cause an unnecessary resurgence in common symptoms (e.g. inflammation & hive-like reactions, chronic-fatigue, high cholesterol). For example, I suffer painful inflammation of my extremities (hands & feet, and face) as a result. This has left me in such pain I can barely walk, and I was bed-ridden just recently over the weekend. Moreover, it is now recognized that high levels of inflammation causes damage to the coronary system and is a major contributor to heart disease, yet I suffer this painful and dangerous inflammation on a regular basis due to repeat med interruptions. Also, I suffer chronic fatigue –as is common with this disease- that adversely affects my normal daily functions (e.g. inability to focus on work & college studies) and an inability to pursue and promote a healthy life style (e.g. engage in meaningful & necessary exercise etc). Then there is the incidence of high cholesterol, also common with my ailment. This concerns me greatly, because alone, they are difficult enough to live with; however, the combined effects of the inflammation, inability to consistently promote health, and build-up of cholesterol conspire to degrade and permanently damage my health unnecessarily. As you are aware, this type of medication is required to be taken consistently without lapses or its effectiveness is hindered, and every time I experience a lapse I suffer the pain of the inflammation and complications of the other common symptoms. I simply wish to avoid needless suffering.

Moreover, I find it troubling that the 120 day dosage allotment was instituted to avoid lapses by providing an additional 30 day med card as a cushion greater than the 90 day intervals between the Chronic-care "Refill" visits, yet the last refill interval and this one have both exceeded the 90 day cycles. This defeats the purpose entirely and has aggravated the problem of interruptions.

Still more troubling is that, of the most recent four consecutive med lapses I gave notice prior to the interruptions (e.g. Mrs. Plante, Dr. Alie, and CMS Pharmacy), however, I still experienced the med lapses. This is disturbing because on two of those occasions the pharmacy actually signed in and possessed these meds several days before dispensing them to me, and on the others the pharmacy carried Stock Supplies yet failed again to dispense them. Despite my notices, no one cared to follow up and see to it that when these meds were checked in at the pharmacy, that I am provided them; this behavior unnecessarily prolonged the interruptions. This is unacceptable.

In closing, I request that assistance from CMS personnel with avoiding yet another interruption. Also, since the Medical Grievance hearing was abused by CMS personnel and has clearly failed to rectify this on-going problem, I would request some follow up from the parties listed below.

David Williamson
c.c. Nikita Robins, DCJ
c.c. Thomas Carroll, Warden of DCC
c.c. Dr. Alie

A-1

Report Count: 2

Institution :DCC

Housing Location :Bldg W1/Tier K

# Offender Activity Schedule

Date Range : 11/11/2005 TO 11/11/2005

Date of Report: 11/11/2005

| SBI# | Name | Start Date | Start Time | End Date | End Time | Employer | Activity Desc | No. of Repeat | Housing Location | Destination |
|------|------|-----------|-----------|---------|---------|---------|--------------|--------------|-----------------|-------------|
| 00225129 | Banks, Robert L | 11/11/2005 | 13:00 | 11/11/2005 | | | Medical 0 | ☐ | Bldg W1/Tier K | Others |
| 00286403 | Brown, Grandville D | 11/11/2005 | 13:00 | 11/11/2005 | | | Medical 0 | ☐ | Bldg W1/Tier K | Others |

A-2

C-7

TO: Ms. L. Merson, IGC

From: David Williamson, 00183022, W-1, L-12

Re: Pending Medical Grievance _____ (Addendum to MG 21201)

Date: 11-30-05

Ms. Merson, IGC:

Grievant filed a Medical Grievance (dated 11-14-05) due to the arbitrary and capricious denial of a Chronic-care clinic, which evidences their deliberate indifference to grievants known serious medical needs/condition. This grievance is still pending and no response or informal hearing has occurred as yet.

Subsequent acts, however, that are directly related to the 11-11-05 incident (depicted in said pending 11-14-05 MG) evidence and establish a pattern of continued and "on-going" deliberate indifference to grievant's serious medical needs, as well as actual malice and retaliation towards grievant for his exercising a protected right to seek redress.

Because the facts below are continuing acts directly related to the above incident/grievance, filing another grievance would be considered a "duplicate" and dismissed like grievant's 8-30-05 Emergency Medical Grievance was. Therefore, grievant would request that this information be incorperated as an addendum to the pending M.G. No prejudice will ensue because it has not been heard yet, moreover, respondents health care provider must be made aware and given an opportunity to correct this behavior.

3

The following facts are in support:

1. Grievant - a Chronic-care patient- has experienced no less than four consecutive chronic-care medication lapses between July and November 05, and the health care provider and specifically Dr. Alie and Mrs. Plante have been placed on Notice that these repeat and on-going lapses impair grievant's normal daily functions, cause him harm, suffering, and an inability to promote good health unnecessarily.

2. Health care provider has failed to address and or acknowledge the on-going problem, failed to correct the problem, and does intentionally exacerbate the problem with full knowledge of the resulting harm.

3. Also, when grievant is erroneously scheduled for a medical visit and or scheduled and denied being actually seen, he suffers a day's wages and a loss of good-time credits unnecessarily. This has occurred three times during the July to Nov. 05 period.

4. Moreover, CMS has failed to adhere to pledges made a grievance hearings "... follow medication administration system to avoid repeat of lapse in medication" (July 05 hearing); failed to schedule grievant for his Chronic-care Clinic within 90 days and, arbitrarily and capriciously denied him this clinic, which is needed to "Refill" the med prescription.

5. Grievant filed the 11-14-05 Medical Grievance against Ms. Ioma (sp?) for the 11-11-05 denial of clinic and she has subsequently denied another and retaliated against grievant for same.

6. Grievant's name appeared on the medical schedule for Chronic-care Clinic again on 11-29-05 and while waiting grievant witnessed both Mrs Plante and Ioma present.

7. Grievant inquired with the officer present about his clinic and the officer returned stating: "They're not going to see you today - you can go." Grievant replied that this clinic was already a reschedule and well past the normal 90 days interval at over 120 days, and that grievant was about to run out of meds.

8. The officer conversed with a nurse in the presence of grievant and she stated: "She's not here - he will just have to come back." "What about tommorow?" inquired the officer. "She's out tommorow too, maybe later in the week," the nurse finished.

9. As stated, Ioma was present and it was she who grievant was schedule with for his denied 11-11-05 clinic of which he grieved her actions specifically. Yet Ioma was present again on 11-29-05 and grievant was again denied his scheduled Chronic-care clinic.

10. Moreover, Mrs Plante is on Notice for the deliberate indifference claims regarding meds. lapses and was also present.

11. These acts will result in yet another intentional med lapse and evidence a continuing pattern and culture of deliberate indifference ..., do illustrate intentional acts of malice and retaliation.

David W _____    12-1-05    c.c. Tom Carroll, Warden
David L. Williamson                    c.c. CMS at DOC

David Williamson, #183022
W-1, L12 1181 Paddock Rd.
Smyrna, DE 19977

Commissioner of Corrections, Mr. Stan Taylor
Re: Ongoing, Continuous & Current Chronic Care Medication Lapses

Dear Mr. Taylor:

Greetings, I am a charge of the Department of Corrections (Dept) located at the Delaware Correctional Center. I am also a Chronic-care patient (Patient) who requires chronic care medications (CC Meds) (e.g. Levoxyo or generic alternative) fro my chronic condition. These CC Meds are of the type that must be taken daily – at the same time consistently- to be effective (i.e. Not interrupted). I am writing your office because I have experienced a continuous and pervasive pattern of chronic care medication lapses (CCML) and all of my good faith efforts and appeals have falling on deaf ears.

In fact, I have experienced a whole range of inappropriate behaviors by CMS and its personnel: was ignored; was treated with scorn and contempt; was given empty-token assurances only to have them broken at the first opportunity; was retaliated against by and through the intentional infliction of unnecessary suffering for my exercise of the grievance process; and the Dept, via the IGC, has created a defacto denial of meaningful access seek redress through the grievance process and to the courts by improperly rejecting my Medical Grievances; however, in clear violation of Grievance Procedures 4.4 (GP 4.4). Moreover, despite exhausting the administrative grievance process on the initial issue, CMS has failed to carry-out their promises to correct the problem and has retaliated against grievant. Also, the Dept. has failed to monitor compliance or progress according to GP 4.4 and subsequently rejected my most recent Medical Grievances, of which outlined my fifth consecutive CCML and acts of retaliation by CMS personnel! These acts clearly evince deliberate indifference to my known serious medical needs and cannot be dismissed as mere inadvertence, but are conducted intentionally and are absent any valid medical criteria or legitimate penalogical objective.

Below please find a chronological summary of specific acts that support and outline the above:

1. From 7/15/05 to 7/27/05 I experienced a CCML, yet I notified CMS personnel, Dr. Alie on 7/15/05 of this eventuality.

2. No meds were issued and on 7/11/05 I filed an Emergency Medical Grievance (EMG) directly with CMS.

3. On 7/22/05 I filed a "Notice" of complaint with CMS.

4. I finally received the belated and lapsed meds on 7/27/05, however, I noted that the CMS on-site pharmacy (Pharmacy) had actually checked in my CC Meds some five days earlier on 7/22/05 (the date I filed Notice with CMS), but had refused to notify or dispense them to me until 7/27/05.

5. I attended an Informal Grievance Hearing before CMS rep. Mr. Linton on 7/28/05. He would not explain why my EMG was not heard within 24 hours or who was responsible for determining that the CCML was not an "Emergency." He also would not explain why I was arbitrarily and capriciously denied the CC Meds for an additional five days despite the Pharmacy having taken receipt of them on 7/22/05 and despite all my pleas via Letter, Notice, and EMG.

6. Mr. Linton stated on the grievance the following promises: "CMS will follow the medication administration system (Med System) to avoid a repeat of a lapse in medicine." I refused to "sign-off" knowing this to be an empty-token promise merely designed to frustrate meaningful redress and for CMS to escape their duty and potential liability. (Grievance # 15453)

7. The Med System that Mr. Linton alluded to is supposed to operate in the following manner for chronic-care patients: (a) a doctor's order/prescription is placed for a 120-day supply of CC Med (e.g. four 30-day cards); (b) the patient receives a 30-day card (card) and is automatically scheduled for a med pick-up normally within his final 7-to-5 doses; (c) Then another card is automatically dispensed from the Pharmacy; (d) However, before 90-days elapses, the Patient is automatically scheduled in for a Chronic-care Clinic (Clinic) in which the process begins anew. The 120-day order provides an additional 30-day cushion of CC Meds in the event of scheduling interruptions. I have been issued these CC Meds for about four years as a Chronic-care patient. CMS has failed to follow the Med System.

8. A doctor's order was issued for the 120-day supply, which was effective until 11/15/05 but I nevertheless experienced several CCML. Moreover, the Med System was not followed because I was not rescheduled for the Clinic within 90-days (e.g. 10/15/05), however, was scheduled in on 11/27/05 due to another letter of Notice to CMS personnel.                                     -1-

9. My first card (7/27/05) ran out on 8/27/05, however, as of 8/26/05, I was not automatically scheduled for med pick-up and I wrote CMS Administrative personnel Mrs. Plante and Mrs. Mahaney of the pending med interruption.

10. From 8/28/05 to 9/05/05 I experienced another CCML. I was not actually on the med pick-up list 9/05/05 but was scheduled for blood work. I pleaded with a new and unfamiliar nurse to check the Pharmacy. The CC Meds were here! Again, despite notice and oft-repeated promises by CMS, I *unnecessarily* experienced a CCML, which would have continued if I wasn't there in person for some other reason and begged for my CC Meds.

11. I filed a subsequent EMG for CMS's failure to comply with the Med System as promised in Grievance #15453. This EMG (#17197) was dismissed unilaterally by the IGC without having been forwarded to the Contracted Medical Care Provider or any hearing ostensibly as a "Duplicate Grievance."

12. Moreover, on 8/31/05 I was erroneously scheduled for a Clinic. It was not needed because I had received the doctor's order/prescription good for 120-days (until 11/15/05), but because I was currently experiencing a CCML I requested some "Stock Supplies" from Mrs. Bailey. Mrs. Bailey reluctantly confirmed that stock supplies of an alternate were in the Pharmacy but refused to dispense them to me. Mrs. Bailey exhibited unwarranted malice and contempt towards me during this encounter.

13. Because CMS repeatedly failed to follow the Med System, I filed a Sick-call Slip on 9/27/05 (with an attached CC Med sticker) requesting the next card while I was within my final seven doses. I received notice that said request was forwarded to the pharmacy.

14. On 10/03/05 I sent further Notice to Mrs. Plante and Mrs. Mahaney that my name had not been placed on the med pick-up list, and that I would face another unnecessary CCML on 10/05/05 if they the CC Meds were not provided. I experienced another CCML on 10/05/05.

15. On 10/06/05 I was scheduled in for the follow up Grievance Hearing (#15453), however, as noted I was out of CC Meds and *my name was not on the med pick-up list that day.*

16. The CMS rep. at the hearing (I believe Mrs. Plante, though she did not offer her name) abused the grievance process by refusing to address the stated problem and displayed an attitude of scorn and contempt towards me. She ejected me without any meaningful discussion and I was not made aware of CMS's recommendation until the I GC returned it attached to my Medical Appeal. I requested a Medical Appeal Form after I was ejected from the hearing and promptly filed it. Ironically, I did receive CC Meds that same day despite my name not appearing on the med pick-up list, and did only receive them because I was at a grievance hearing complaining of continuous and current CCML.

17. In fact, Mrs. Plante displayed her contempt and indifferent attitude towards me when she stated: "Make sure you write this down too! That I'm going above and beyond for you – I'm going to call the Pharmacy to see if your meds are in." Evidently belated providing CC Meds that were prescribed by a doctor for a chronic-care patient isn't considered an obligation of the contracted medical care provider, or even ethically and morally correct, but is considered "going above and beyond" the call of duty according to Mrs. Plante.

18. CMS further stated for grievance #15453: "Inmate will be placed on the pill call to prevent missed medication."

19. The Medical Appeal is still pending with the Bureau Chief Officer, and on 1/15/06 the 180-day limit for grievance resolution will have elapsed. To date the problem continues and is actually aggravated by subsequent acts of retaliation by CMS personnel.

20. On 11/01/05 I sent yet another Notice to Mrs. Plante of a pending CCML. As in the past there was no reply.

21. On 11/05/05 to 11/08/05 I experienced my fourth consecutive CCML, and again the CMS Pharmacy actually possessed the CC Meds (checked in 11/05/05) but refused to alert or dispense them to me despite my current notice, grievance, and CMS's promises to follow the Med System/put me on the pill pick-up. Clearly CMS's rote promises are merely empty-token utterances and were never meant or intended to correct these continuous lapses, but was actually designed to pacify grievant and dupe me into "signing-off" on the grievance.

22. On 11/11/05 I was allegedly scheduled at 9:00 AM to attend a Clinic with Mrs. Ioma, however, my name did not appear on the housing "Offender Activity Schedule" which is posted on my unit for the purpose of alerting one to a med visit. (Note, however, that the Med System would normally have automatically scheduled a patient in for a Clinic visit within 90-days, which in this case should have been 10/15/05 but CMS failed to follow the Med System as promises.) Evidently a nurse called the building to check on my whereabouts and the building Sgt. Sent me directly at code green. A new policy is posted in the housing unit that any one who fails to go to a scheduled Sick call visit will receive a "Write-up," however, I did not receive a Write up due to the fact that my name was omitted from the schedule and I could not have known. Though I explained my excusable tardiness to Mrs. Ioma, she refused to conduct the Clinic (a Clinic normally takes about ten minutes and consists of the CMS employee completing a questionnaire and reauthorizing the CC Meds).

$L^7$

filed a Medical Grievance due to the 11/11/05 arbitrary and capricious denial of my Clinic and I attached the posted "Offender Activity Schedule," and of which will certainly result in another unnecessary CCML. It was a Medical Grievance (#21201), for a medical issue, and against the contracted medical care provider, however, the MG was unilaterally and improperly rejected by the IGC in violation of GP 4.4.

23. On 11/29/05 I mailed another Notice to Mrs. Plante that I again faced a CCML. I was also scheduled to make up my denied Clinic on 11/29/05. I was again refused the Clinic, however, the nurse stated: "They're not going to see you today – you can go." "...She's not here...." I physically saw both Mrs. Ioma and Mrs. Plante there on the premises during this time and therefore concluded that I was refused the Clinic and subsequently lied to about the reasons in retaliation for my grievance activity against Mrs. Ioma and Mrs. Plante. (See attached Medical Grievance Appeal "MGA" with attached exhibits: MG #21201 & Addendum).

24. On 11/30/05 I filed an Addendum to the MG #21201 with the IGC noting the continued deliberate indifference to my known serious medical needs and *adding a claim of Retaliation* by CMS personnel. (See attached MGA with Addendum; cc: to Warden Carroll and CMS).

25. On 12/07/05 until present *12·30·05* I have experienced my *fifth consecutive CCML*, nor have I been scheduled for the Clinic of which I grieved, nor have I received any reply from CMS about this matter.

26. On 12/16/05 (Friday evening) I received my MG back having been improperly and unilaterally rejected by the IGC Chairperson without any hearing whatsoever and in clear violation of GP 4.4 and also without providing a Medical Grievance Appeal Form (MGA). I filed a timely handwritten MGA directly with the Bureau Chief Officer due to the circumstances (bias of IGC etc.)(C.c. to Warden Carroll, IGC, and CMS Offices at 245 Mckee Rd.).(See attached MGA above). In short, the IGC improperly created an obstruction to grievant seeking redress and exhausting administrative remedies for his "Medical" issues, and is improperly acting as a gate-keeper for CMS. Medical Grievances are to be forwarded directly to the Contracted Medical Care Provider pursuant to GP 4.4. Because I have been obstructed from exhausting the administrative grievance procedures, I am procedurally barred from seeking redress in the courts, which does act as an absolute bar, and *which is Noted or otherwise acknowledged in the GP 4.4*. Thus, the IGC has knowingly denied me the opportunity to seek meaningful access to the courts on my meritorious medical claims in violation of my civil rights. These rules/notes are clearly stated in the GP 4.4 and one must presume the IGC is fully aware of them, but has intentionally disregarder them.

I have experienced five consecutive yet unnecessary CCML and a complete refusal of treatment by CMS. I needlessly suffer a resurgence of the common symptoms due to these pervasive and continuous lapses, of which does impair my normal daily functions; will likely cause a substantial risk and threat to my future health; and does impair my ability to promote good health (e.g. chronic fatigue inhibits ability to effect meaningful exercise etc.). There is no legitimate penalogical objective found here, nor are these acts the result of legitimate medical decisions; in fact, they are the result of non-medical criteria and retaliation. These acts clearly evince a pervasive pattern of deliberate indifference to my known serious medical needs. Moreover, I have given Notice prior to every CCML and filed medical grievances only to be abused and improperly obstructed.

Finally, it is troublesome that the Dept. would permit its IGC to serve as an obstructionist and actually aid and abet CMS in its intentional infliction of harm, and/or fail to monitor grievance progress as mandated by GP 4.4 with the same result. This behavior by both CMS and the Dept has risen to maliciousness and is unacceptable. Grievant merely sought meaningful redress, however, the nightmare that ensued cannot be dismissed as inadvertence, but does shock the conscious of a reasonable person. Moreover, this shocking behavior is occurring contemporaneously while CMS is under scrutiny by our legislature, the media, and our citizens. One could never guess this in view of CMS's incredible hubris and blatant malfeasance.

In conclusion, I request assistance in a) receiving my CC Meds, b) a meaningful corrective action (e.g. dispense all the 120-day doses to me to cut down the opportunity of lapses), c) the removal of improper grievance obstruction and effect meaningful redress.

David Williamson, 00183022

David Williamson, 00183022                              12·30·05
                                                        Date

C.c Tom Carroll, Warden;
    CMS Offices 245 Mckee Rd
    Dr. James Welch (Service Administrator for DCC)
    Honorable Pamela S. Maier, Delaware House of Representatives

-3-

# EXHIBIT E

David Williamson
SBI #183022, W-1, L-12
1181 Paddock Rd.
Smyrna, DE 19977
February 9, 2006

Correctional Medical Services, Dover, DE Offices
245 McKee Rd.
DOC
Dover, DE 19904-01

Re: Continuing Chronic Care Medication Interruptions

Dear Sir/Madam:

Greetings, I am writing to inform you of yet another Chronic-care medication lapse (the sixth consecutive interruption since July 2005). I received a Doctor's refill order for 120 day/doses in December 05 and my first 30 day cards on 1-10-06. Though, as of 2/9/06, I have not been placed on the medication pick-up list. This matter has been grieved all the way through the administrative process and I repeatedly received perfunctory token assurances that this on-going problem would be corrected, however, the lapses continue. These offices have been notified of this pervasive and systemic problem, yet have utterly failed to correct it.

Moreover, the lapses are inexcusable because the on-site pharmacy has alternate Stock Supplies available though refuses to dispense them altogether and or in a timely fashion. This is a continuous and willful disregard for my documented serious medical needs; needs that if not met do cause me to needlessly suffer impairment of my normal daily functions and quality of life, and threaten my future health.

Lastly, I respectfully request corrective action with this matter.

Sincerely,

David Williamson

c.c.  C Malaney & D. Plante
c.c.  Bureau Chief Officer, for Grievance Appeal # 15453

1

E-1

# Exhibit F

F

David Williamson
SBI #183022, W-1.L-12
1181 Paddock Rd.
Smyrna, DE 19977
March 13, 2006

Correctional Medical Services, Dover, DE Offices
245 McKee Rd.
DOC
Dover, DE 19904-01

Re: Continuing Chronic Care Medications Interruptions

Dear Sir/Madam:

Greetings, I am writing to inform you of yet another Chronic Care medication lapse (the seventh consecutive interruption since July 2005). I received a Doctor's refill order for 120 day/doses in December 05 and my first 30 day cards on 1-10-06. I received the second cards belatedly on 2-13-06, and as of today 3-13-06 I have not been placed on the med pick up list as promised at two different Medical Grievance Hearings regarding this on-going matter. It is clear that these assurances were perfunctory empty promises in view of CMS's failure to adhere to the chronic care medication system. These offices have been notified of this pervasive and systemic problem, yet have utterly failed to correct it.

Moreover, these lapses are inexcusable because the on-site pharmacy normally carries alternate stock supplies, however, refuses to dispense them altogether and or in a timely fashion. This is a continuous and willful disregard for my documented serious medical needs; needs that if not met do cause me to suffer impairment of my normal daily functions and quality of life, and threaten my future health.

Lastly, I respectfully request corrective action with this matter.

Sincerely,

David Williamson

c.c. D. Plante,
Bureau Chief Officer, for Medical Grievance Appeal # 15453,
CMS, Dover Offices

1

F-1



**CMS**
DEDICATED PEOPLE
MAKING A DIFFERENCE
Correctional Medical Services

David Williamson
SBI # 183022, W-1, L-12
1181 Paddock Rd.
Smyrna, DE 19977

9 March 2006

Dear Mr. Williamson,

I received your letter expressing your concerns about lapses in your medical care dated February 9 2006. This letter was received in our regional office on 16 February 2006.

I have investigated your concern and, unfortunately, find it to be without merit. I reviewed your personal medication administration record and the document shows that you signed for your medications on 11 January 2006 and 12 February 2006. The medications you received are exactly what have been prescribed according to your medical chart.

Correctional Medical Services is committed to providing the highest level of care to everyone in our institutions. I apologize for the problems you have had in the past and encourage you to help us meet everyone's healthcare needs by helping us identify problems and concerns with the delivery of healthcare in the prisons.

Should you experience any further lapses in care, please discuss your concerns with the nursing staff at your institution that can help you promptly resolve these matters or refer the matter to me. Once again, thank you for bringing this matter to my attention.

Your Partner in Healthcare,

Scott S. Altman
Delaware Ombudsman
Correctional Medical Services

CC: Warden Thomas Carroll
    Medical Record

F-2

. Correctional Medical Services, Dover, DE Offices
245 McKee Rd. DOC
Dover, DE 19904-01

Re: Continuing Chronic Care Medications Interruptions

Dear Sir/Madam:

Greetings, this is my second Notice to inform you of a continuing Chronic Care medication lapse (the seventh consecutive interruption since July 2005). On or about 3/13/06 I filed a notice of said chronic care medication lapse; however, to date the lapse has not been corrected. Despite CMS's assurances at two different Medical Grievance Hearings that the problem would be corrected, CMS has refused to correct the problem; has refused to issue alternate Stock Supplies from the on-site pharmacy, which would easily solve the problem; and, refused to dispense the belated/interrupted meds upon receipt and logging in at the pharmacy, but capriciously and willfully delays issuing them to Williamson. CMS is aware of these continuous med lapses and more recently issued a statement (through its Ombudsman) that my concerns in their eyes were without merit. This statement is incredible in view of the two medical grievance hearings where none of my claims were debated or challenged and all of the facts clearly evince the claimed lapses. My concerns were about the on-going med lapses, and every month since July 05, I have needlessly experienced a chronic care med lapse and needlessly suffered the inherent resurgent symptoms associated with my chronic disease. Any lapse in the first instance represent misfeasance, but these continuing lapses represent malfeasance and gross negligence. Moreover, the problems are aggravated when notice has been received of a lapse, and the meds are subsequently received and logged in at the on-site pharmacy and or there are suitable alternate Stock Supplies, however, neither are subsequently issued in a timely manner (of which both have occurred several times), this is malfeasance and a willful and deliberate indifference to my known serious medical condition.

Nevertheless, the med interruptions did occur, are still occurring, is currently occurring, and will likely occur again. This is a continuous and willful disregard for my documented serious medical needs; needs that if not met do cause me to suffer impairment of my normal daily functions and quality of life, and threaten my future health.

Lastly, I respectfully request the current lapse be corrected and that future meds be issued in a timely manner.

David Williamson, 183022
W-1, L-12
1181 PADDOCK RD
SmyRNA, DE 19977
MARCH 21, 2006

c.c. Bureau Chief Officer, Med Grievance #/5543
c.c. O. PLANTE

3

F-3



David Williamson
SBI # 183022, W-1, L-12
1181 Paddock Rd.
Smyrna, DE 19977

22 March 2006

Dear Mr. Williamson,

I received your letter expressing your concerns about lapses in your medical care dated March 13, 2006. This letter was received in our regional office on 21 March 2006

I have investigated your concern and find it to be with merit. I met with the pharmacy staff on 22 March 2006 and directed them to place an emergency order with our local pharmacy for your medications. This was accomplished and they are available for you to pick up.

I am concerned with the accuracy of information in your letters to the Bureau Chief Officer for Medical Grievance Appeal. You stated that this is the seventh time we have missed your medications. I discussed your case with the nursing staff at DCC and they showed me documentation of you picking up your medications on 20 April, 19 May, 17 June, 27 July, 5 September, 6 October, 8 November, 2005 as well as on 11 January and 12 February 2006. You have been seen in our Chronic Care clinics in March and August of 2005 as well as January 2006. Your care has been appropriate and well managed.

Correctional Medical Services is committed to providing the highest level of care to everyone in our institutions. I encourage you to help us meet everyone's healthcare needs by helping us identify problems and concerns with the delivery of healthcare in the prisons.

Once again, thank you for bringing this matter to my attention.

Your Partner in Healthcare,

Scott S. Altman
Delaware Ombudsman
Correctional Medical Services

CC:  Warden Thomas Carroll
     James Welch, R.N.
     Medical Record

4

Received 3-26.06

F-4

David Williamson
SBI #183022, W-1, L-12
1181 Paddock Rd.
Smyrna, DE 19977
*April 19, 06*

CMS, Dover, DE Offices

Re: Chronic Care Medication Interruptions/ Mr. Altman's Follow Up

Dear Sir/Madam:

Greetings, I am in receipt of a letter from your Ombudsman, Mr. Altman (dated 3/22/06). I find it offensive for a couple of reasons: it discounts and belittles my serious medical concerns and Mr. Altman calls into question my integrity via an indirect and reckless accusation about the accuracy of my claims.

First, Mr. Altman states that my claim "is with merit," however, he then proceeds to discount my meritorious medical concern by stating that he is "concerned about the accuracy of the information" (i.e. statement in which I claim to have experienced seven consecutive chronic care medication interruptions/lapses since July 05). (See Attached A-1). In fact, the March 22, correspondence was the second regarding this on-going problem and the earlier March letter insulted me by stating that my claim was "without merit" despite the fact that I have then and now currently experience an interruption/lapse in receiving my doctor prescribed chronic care medications. (See attached A-2). These related letters/statements discount and belittle my serious medical needs/concerns.

Moreover, these statements are not based in fact but fiction, and I am concerned with Mr. Altman's ability to comprehend the complaint as well as his ability to employ the basic skills of arithmetic and its application to the relevant calendar dates. For example, Mr. Altman listed several dates on which I was dispensed said meds, but the April and May dates are prior to my July 05 claim and are irrelevant. The relevant dates, however, do not sequentially cover the months from July 05, to the present and current March 06, lapse. The dates that are provided, however, do indeed support my complaint of an interruption in my medication regiment. For example, because the medication cards that are dispensed to me only cover a thirty day period, any time I do not receive a replacement card within said thirty days constitutes an interruption/lapse in receiving those meds. I presume that Mr. Altman reviewed the dates he provided (relative to my claim) and can only conclude that either his definition of an interruption and or lapse is different from the generally accepted definition, and or he is unable to calculate the date when a thirty day card has run out and another card is required to ensure that no lapse occurs (i.e. due date). Webster's II New College Dictionary offers the following definition: *Interrupt* (v) 1. To break the harmony or continuity of. 2. To impede or stop by breaking in on.... *Interruption* is its noun form. p. 580, 1995. (I employ interruption and lapse interchangeably in my many letters of complain/notice.) Since July 05, the continuity of my medication regiment has been broken and or impeded exactly seven times, and this is despite the two empty token promises made by CMS to correct this very problem (made at Medical Grievance hearings in regard to MG (# 15453    ). Thus I have indeed experienced seven medication lapses to date.

Furthermore, it is troubling that several of these interruptions were aggravated because CMS's on-site pharmacy actually possessed my lapsed meds --with the full knowledge of this fact- however, refused to dispense them directly. This caused an even greater, unnecessary lapse and this deliberate indifference to my known serious medical needs is inexcusable. In fact, Mr. Altman claims in his March 22, 06 letter that, as of the same date, my meds are in and I can "pick them up." This is very interesting, because as of March 27, 2006, (an interruption of fourteen days), I have not been placed on the Medication Pick up List, and absent that or my Housing Unit receiving a call from the hospital requesting that I be given a "Pass" to the hospital, I simply cannot pick them up. Assuming that they are in, as Mr. Altman claims, then one would question why these meds have not been dispensed to me?

Lastly, Mr. Altman incredibly characterizes the handling of my chronic care meds as "well managed." This preposterous statement is a contradictory to my claim having "merit," and it discounts and belittles my meritorious claims. Of course, all this appears to indicate gross incompetence, but because it is difficult to believe that CMS would employ an ombudsman that has difficulty with the basic skills of reading and arithmetic, and because Mr. Altman was in contact with the on-site pharmacy regarding this recent lapse, I must conversely conclude that Mr. Altman is indeed competent, however, attempting to obfuscate the problem and its history, and that my other claims of "reprisal" by some CMS staff is supported by the continuing refusal to dispense my lapsed medications.

In closing, I would appreciate corrective action on all points raised herein.

David W
DAVID Williamson, *March 27, 06*

c.c. Bureau Chief Officer (MG # *15453*    )
5    *April 19-06*

F-5



# CMS

**DEDICATED PEOPLE
MAKING A DIFFERENCE**

Correctional Medical Services

David Williamson
SBI # 183022, W-1, L-12
1181 Paddock Rd.
Smyrna, DE 19977

22 March 2006

Dear Mr. Williamson,

    I received your letter expressing your concerns about lapses in your medical care dated March 13, 2006. This letter was received in our regional office on 21 March 2006

    I have investigated your concern and find it to be with merit. I met with the pharmacy staff on 22 March 2006 and directed them to place an emergency order with our local pharmacy for your medications. This was accomplished and they are available for you to pick up.

    I am concerned with the accuracy of information in your letters to the Bureau Chief Officer for Medical Grievance Appeal. You stated that this is the seventh time we have missed your medications. I discussed your case with the nursing staff at DCC and they showed me documentation of you picking up your medications on 20 April, 19 May, 17 June, 27 July, 5 September, 6 October, 8 November, 2005 as well as on 11 January and 12 February 2006. You have been seen in our Chronic Care clinics in March and August of 2005 as well as January 2006. Your care has been appropriate and well managed.

    Correctional Medical Services is committed to providing the highest level of care to everyone in our institutions. I encourage you to help us meet everyone's healthcare needs by helping us identify problems and concerns with the delivery of healthcare in the prisons.

    Once again, thank you for bringing this matter to my attention.

Your Partner in Healthcare,

Scott S. Altman
Delaware Ombudsman
Correctional Medical Services

CC: Warden Thomas Carroll
     James Welch, R.N.
     Medical Record

Received  3·26·06

A-1



**CMS**

DEDICATED PEOPLE
MAKING A DIFFERENCE

Correctional Medical Services

David Williamson
SBI # 183022, W-1, L-12
1181 Paddock Rd.
Smyrna, DE 19977

9 March 2006

Dear Mr. Williamson,

I received your letter expressing your concerns about lapses in your medical care dated February 9 2006. This letter was received in our regional office on 16 February 2006.

I have investigated your concern and, unfortunately, find it to be without merit. I reviewed your personal medication administration record and the document shows that you signed for your medications on 11 January 2006 and 12 February 2006. The medications you received are exactly what have been prescribed according to your medical chart.

Correctional Medical Services is committed to providing the highest level of care to everyone in our institutions. I apologize for the problems you have had in the past and encourage you to help us meet everyone's healthcare needs by helping us identify problems and concerns with the delivery of healthcare in the prisons.

Should you experience any further lapses in care, please discuss your concerns with the nursing staff at your institution that can help you promptly resolve these matters or refer the matter to me.

Once again, thank you for bringing this matter to my attention.

Your Partner in Healthcare,

Scott S. Altman
Delaware Ombudsman
Correctional Medical Services

CC: Warden Thomas Carroll
    Medical Record

A-2

David Williamson
SBI #183022, W-1, L-12
1181 Paddock Rd.
Smyrna, DE 19977
February *9* , 2006

Correctional Medical Services, Dover, DE Offices
245 Mckee Rd.
DOC
Dover, DE 19904-01

Re: Continuing Chronic Care Medication Interruptions

Dear Sir/Madam:

Greetings, I am writing to inform you of yet another Chronic-care medication lapse (the sixth consecutive interruption since July 2005). I received a Doctor's refill order for 120 day/doses in December 05 and my first 30 day cards on 1-10-06. Though, as of *2/9/06* , I have not been placed on the medication pick-up list. This matter has been grieved all the way through the administrative process and I repeatedly received perfunctory token assurances that this on-going problem would be corrected, however, the lapses continue. These offices have been notified of this pervasive and systemic problem, yet have utterly failed to correct it.

Moreover, the lapses are inexcusable because the on-site pharmacy has alternate Stock Supplies available though refuses to dispense them altogether and or in a timely fashion. This is a continuous and willful disregard for my documented serious medical needs; needs that if not met do cause me to needlessly suffer impairment of my normal daily functions and quality of life, and threaten my future health.

Lastly, I respectfully request corrective action with this matter.

Sincerely,

David Williamson

c.c. C Malanely & D. Plante
c.c. Bureau Chief Officer, for Grievance Appeal # *15453*

Correctional Medical Services, Dover, DE Offices
245 McKee Rd. DOC
Dover, DE 19904-01

Re: Continuing Chronic Care Medications Interruptions

Dear Sir/Madam:

Greetings, this is my second Notice to inform you of a continuing Chronic Care medication lapse (the seventh consecutive interruption since July 2005). On or about 3/13/06 I filed a notice of said chronic care medication lapse; however, to date the lapse has not been corrected. Despite CMS's assurances at two different Medical Grievance Hearings that the problem would be corrected, CMS has refused to correct the problem; has refused to issue alternate Stock Supplies from the on-site pharmacy, which would easily solve the problem; and, refused to dispense the belated/interrupted meds upon receipt and logging in at the pharmacy, but capriciously and willfully delays issuing them to Williamson. CMS is aware of these continuous med lapses and more recently issued a statement (through its Ombudsman) that my concerns in their eyes were without merit. This statement is incredible in view of the two medical grievance hearings where none of my claims were debated or challenged and all of the facts clearly evince the claimed lapses. My concerns were about the on-going med lapses, and every month since July 05, I have needlessly experienced a chronic care med lapse and needlessly suffered the inherent resurgent symptoms associated with my chronic disease. Any lapse in the first instance represent misfeasance, but these continuing lapses represent malfeasance and gross negligence. Moreover, the problems are aggravated when notice has been received of a lapse, and the meds are subsequently received and logged in at the on-site pharmacy and or there are suitable alternate Stock Supplies, however, neither are subsequently issued in a timely manner (of which both have occurred several times), this is malfeasance and a willful and deliberate indifference to my known serious medical condition.

Nevertheless, the med interruptions did occur, are still occurring, is currently occurring, and will likely occur again. This is a continuous and willful disregard for my documented serious medical needs; needs that if not met do cause me to suffer impairment of my normal daily functions and quality of life, and threaten my future health.

Lastly, I respectfully request the current lapse be corrected and that future meds be issued in a timely manner.

David Williamson, 183022
W·1, L·12
1181 PADDOCK RD
SMYRNA, DE 19977
MARCH 21, 2006

c.c. Bureau Chief Officer, Med Grievance #/5543
c.c. O· PLANTE

# MEDICATION PICK UP LIST
## 3/28/06
## 1PM-230PM

ABNER, VERNON 167023 ------C
BARNER, JOHN 135346----------W
BOWEN, SHAWN 227939--------V
BUNTING, SHAWN 228772------DW
BURKETT, MARTIN 116769-----S
BUTLER, CHARLES 130629------W
CASSON, ANTHONY 105982-----W
CAULK, JAMES 293676-------------DW
CHRISTOPHER, ANTHONY 374002-DW
CLAYTON, PRESTON 374274-----C
COBB, JEFFREY 369827----------S
COLE, DAVID 501684--------------W
COLON, HERBERDO 509402------V
COLE, DION 480739-----------------W
COLE, DONALD 281479------------DW
COOPER, ANTHONY 275064-------DW
COOPER, STERLING 372545-------W
CRUMP, BENJAMIN 154003---------W
CUFF, JEWEL 281482-----------------V
DANIELS, ROLAND 084358-----------S
DAVIS, JAMES 159694------------------S
DAVIS, TIMOTHY 141567------------W
DEPUTY, PAUL 248755-----------------W
DESHIELDS, GREGORY 256942------DW
DIXON, LLOYD 122634-----------------S
DIZE, TONY 537715--------------------E
EDWARDS, SEQUOIAH 214050------W
ELLIS, HERMAN 546337--------------W
EVANS, RONALD 198390---------------C
EVANS, LEX 278974----------------------W
EVANS, STEVEN 273046----------------V
FARRELL, LINWOOD 289598---------W
FEDDIMAN, WALTER 159983---------C
FELICIANO, MICHAEL 226109-------W
FORD, FRANK 209593-------------------DE
FRANCISCO, ANYHONY 181869-----E

FREEMAN, BARRY 357525—W
FRIEND, DARRYL 149661-----S
GOULD, CHARLES 169352----W
GIVEN, JAMES 236018---------E
GRAVES, KENNETH 215643--W
GROENTHAL, BRUCE 393374-W
GUILFOIL, DALE 166308-------W
HANNAH, KEVIN 358297-------DE
HARMON, WILMER 180812----V
HARRIS, LEWIS 482685---------E
HARRIS, STANLEY 207165-----V
HARRISON, LARRY 207218-----V
HARTMAN, GLENN 129008----DW
HEARN, ROGER 247340--------E
HENRY, TYRONE 184431-------DE
HIGGINS, TERRANCE 377072--E
HOBBS, STERLING 137010------DE
HOUSTON, DAVID 137142------DE
HORNE, KHALID 308887-------V
IRVIN, ANTHONY 124418-------W
JACCOLUCCI, DAVID 215158---E
JENKINS, ANTHONY 235740----E
JENKINS, REGINALD 259112---W
JOHNSON,DAMMEYON 306875DE
JOHNSON, DONALD 119436--DW
JOHNSON, JULIUS 230140----W
JOHNSON, TERRY 405120-----E
JONES, ALONZO 160185-------DW
JONES, CHARLES 228192-----C
KEE, ARTHUR 070100-----------W
KEPERLING, JOHN 318356----S
KNOX, ROBERT 201154---------W
KRAFCHICK, STEVE 178856---DW

# EXHIBIT G

G

David Williamson
SBI #183022, W-1, L-12
1181 Paddock Rd.
Smyrna, DE 19977

Mrs. D. Plante, CMS Administrator
Re: Unnecessary Med Interruptions

Dear Mrs. Plante:

Greetings, I am writing in the hope of avoiding yet another unnecessary Chronic-care Medication Interruption. In fact, I have experienced seven consecutive and unnecessary interruptions since July 05; some of which were the result of a failure to conduct the necessary Chronic-care Clinic (Clinic) in accord with the standard "Medication Administration System." (e.g. around 90 days).

Consequently, I received my last order for said meds on or about 1-6-06 thru 5-6-06, and under the standard Medication Administration System a Clinic should have been scheduled on or about 4-6-06. No Clinic has, however, been scheduled as of ___4-19-06___. Because the last Clinic, which was not conducted until January 06, however, should have occurred in November 05, result in an extended medication lapse, I felt it would be prudent to inform you of another potential and avoidable lapse. Moreover, CMS representatives assured me among other things, the Medication Administrative System would be followed to insure that no further med interruptions would occur. (See MG # ___15453___). Unfortunately, CMS failed to follow said "Systems" and an avoidable Chronic-care med interruption occurred.

In closing, I respectfully request the Clinic or alternatively the medication authorization via doctor's order in lieu of said Clinic to insure that no further unnecessary med interruptions.

Thank you,

David W——

David Williamson    4-19-06

c.c. Bureau Chief Officer (MG # ___15453___)
c.c. CMS Dover DE Offices

1

C-1

David Williamson
SBI #183022, W-1, L-12
1181 Paddock Rd.
Smyrna, DE 19977
May 3 , 2006

Re: New Medication Distribution System
Mr. Tom Carroll, Warden of DCC

Warden Carroll:

    Greetings, I am in receipt of a correspondence from Mr. Altman, CMS Ombudsman dated
_4-25-06_ , which speaks of an ostensible "new" corrective medication distribution system that is to
take effect 4/27/06. (See A-1) Though, I appreciate is effort to reply, I must challenge CMS's actions as
highly suspect and as a mere ruse.
    For example, the "new" procedure is identical to a system that CMS already tested and employed
during its prior contract period with Del. DOC (i.e. the patient submits a Sick Call Slip to initiate a
medication refill when he is down to his final five doses), and which was abandoned -in exchange for
the most recent failed system- due to its systemic-wide failure and the resulting deluge of medical
grievances. In fact, I was one of the grieving parties then too who needlessly suffered repeat chronic-
care med interruptions, just as I am now. (See MG # _0208005_ ). Interestingly the subsequent
replacement med distribution system procedures –which discontinued the patient request via Sick Call
Slip submissions for an <u>automatic</u>  scheduling by CMS personnel- was touted then as the "corrective"
measure; though of course, we know now it too experienced systemic-wide failure and is now to be
replaced with the same failed system that it replaced. This is absurd.
    CMS has the experience and knowledge with both failed systems; nevertheless, CMS
intentionally rotates from one failed process to the other –like some insane musical chairs- and
incredibly claims to implement a corrective measure. It is clear to me, having observed this behavior
first-hand and needlessly suffered because of it, that CMS has no intent to actually correct the
continuous med interruptions, but in contrast, intentionally employs a ruse with the full knowledge of its
systemic-wide failures in order to maintain the status quo. (E.g. strategy of cost-avoidance by and
through shorting patients their needed and doctored prescribed
Chronic-care meds).
    In fact, I gave notice prior to my most recent chronic-care med interruption (eighth consecutive
lapse since July 05) ;               ; however, as of    _5-3-06_    I am still
experiencing an unnecessary med interruption. (See attach. A-2        ). Moreover, I also gave notice of
CMS's failure to conduct the necessary Chronic-care Clinic within the requisite 90 days of the med
cycle to reorder my chronic-care meds and that too has failed to be realized. (See . A-3).This failure will
surely create another needless (ninth consecutive) med interruption.
    In reality CMS's systemic and continuous failures are due to their failure to adequately
implement, follow up, and enforce a given medication procedure. In closing, I would request that my
lapsed chronic-care meds be provided or replaced with a suitable substitute from Stock supplies, and that
the reorder be placed since the Clinic has not been realized. Also, I would respectfully encourage that
your office scrutinize this ostensible corrective procedure.

_David W———_
David Williamson
C.c. Mr. Altman, CMS Ombudsman & CMS Dover, De office

2                                                                          G-2

# EXHIBIT H

H

# DELAWARE DEPARTMENT OF CORRECTIONS
# REQUEST FOR MEDICAL/DENTAL SICK CALL SERVICES
# FACILITY: DELAWARE CORRECTIONAL CENTER

This request is for (circle one):  MEDICAL  ~~DENTAL  MENTAL HEALTH~~

*Medication Pick-Up - Forward to the Pharmacy* ✓

David Williamson _____ W-1, L-12 _____
Name (Print)                                    Housing Location

5-12-66 (DOB) _____ 00183022 _____ 6-1-06
Date

```
WILLIAMSON, DAVID          QTY: 30    WILLIAMSON, DAVID          QTY: 30
MULTIVITAMIN  TABS      183022       LEVOTHYROXINE  50D 0.1 MG TABS 183022
6362-    Stop: 09/02/06  RX# 11910331   6362-   Stop: 09/02/06  RX# 11910316
```

Complaint (Why

I was directed by CMS Ombudsman, Mr. Altman, to submit my chronic care medication stickers prior to running out of meds to alert the "Pharmacy" of the need for a refill. I'm down to my final seven doses & I have three refil cards left. Please place me on the med "Pick-up List."

David W _____ 6-1-06
       Inmate Signature                              Date

**The below area is for medical use only. Please do not write any further.**

S: I do not require a sick-call visit - just require my chronic-care meds. Do not schedule a sick-call visit.

O: Temp:_____ Pulse:_____ Resp:_____ B/P:_____ WT:_____

A: N/A

P: N/A

E: N/A

Provider Signature & Title                   Date & Time

3/1/99 DE01
FORM#:
MED
263

# EXHIBIT I

David Williamson
183022, W-1, L-12
1181 Paddock Rd.
Smyrna, DE 19977
July __/__, 2006

American Civil Liberties Union
Re: Continuous, Pervasive, & Intentional Denial of Chronic Care Medication

To Whom It May Concern:

Greetings, I am writing your organization to alert you to a pervasive problem that has continued unabated for some twelve months despite adequate notice to both CMS and every level of the DOC administration. I am hopeful that some corrective action will result.

First, I have experienced nine consecutive Chronic-care medication lapses (CCML) between July 05 and June 06. For instance, the longest lapse of 28 days occurred in January 06 and the second longest at 23 days, and still counting, is currently running as of June 29, 06.

Second, I began the grievance process in July 05, and met with CMS representative Mr. Linton on 7-28-05 for the first grievance hearing. Mr. Linton promised in writing that CMS would correct the CCML, but I nevertheless experienced eight unnecessary CCML thereafter. CMS's promise has proved false. The grievance procedure has been completed but to no avail. Moreover, Mr. Linton explained that CMS employs a "Fax and Fill" medication refill system that normally results in the on-site pharmacy receiving the ordered med within 48 hours or at the latest four days.

Third, CMS Ombudsman, Mr. Altman wrote me a reply regarding my March 06, CCML notice/complaint, and stated that CMS had identified flaws in their internal process and revamped the medication ordering distribution system. Altman then described a system that had been employed by CMS during a prior contract period; however, that was found to be equally defective. The prior failed system was replaced with the current failed system, and now the current failed system is again being replaced with the prior failed system, of which CMS incredibly claims to be a "corrective" action!

I immediately recognized CMS's ostensible corrective action as a charade -that merely recycles one known failed system for another known failed system- of which CMS employs to mask its intention to maintain the status quo. I specifically challenged the ostensible corrective action in a letter to Warden Tom Carroll (c.c. CMS Office, Altman) dated May 3, 06.

Prophetically, my claim was substantiated thereafter and I experienced a subsequent CCML form June 8th to June 28, 06 (second longest lapse of 23 days). Moreover, CMS received a seven days notice prior to my CCML, a second notice shortly before the lapse began, another notice dated 6-19-06 during the lapse, and my mother contacted Deputy Warden Pierce's office regarding the extended CCML on or about 6-16-06, 6-22-06, and 6-28-06; however, as of 6-28-06I have not received my doctor's prescribed and needed chronic-care medications. Recall that Mr. Linton stated the fax and fill system required a maximum of four days to fill a

1

T-1

medication order, yet 23 days have elapsed since the CCML began, and if we count the seven day prior notice CMS has had 30 days notice to ensure the medication is filled but has failed to do so.

In fact, CMS's behavior cannot be dismissed as a mere mistake or negligence. Clearly, these acts evince an intentional deprivation of prescribed chronic care meds. Moreover, CMS has deprived me of just over 30 percent of my thyroid meds and 50 percent of the accompanying multivitamin (cumulative aggregate of the nine CCML). I suspect that this is likely representative across the chronic care population. Nevertheless, this behavior is unconscionable and unacceptable. It is a human rights abuse!

Unfortunately, all my reasonable efforts to realize a remedy have failed: the administrative grievance procedure has failed to remedy it; the DCC administration via the Warden/Deputy Warden has failed to remedy it; the Delaware Center of Justice has failed to remedy it; the Bureau Chief and Commissioner of Corrections, Stan Taylor have failed to remedy it; the prospect of a federal investigation has failed to remedy it; and my recent filing of a civil suit against CMS has failed to remedy this continuous and pervasive problem.

CMS consciously ignores its duty and these all measures to persuade it to follow through with its duty in order to achieve its morally reprehensible yet wholly rational pursuit of profit. CMS has over a decade of experience in the prison health care field and it is absurd to believe that it has not, as yet, mastered the simple task of ordering, receiving, and distributing medications. It is more likely that CMS is rationally pursuing a custom/policy of profit maximization. A fundamental fact of business is that no private company survives by being incompetent or inefficient, so they make every effort to be highly productive and or efficient unless, of course, as is the instant case, it is advantageous for the company to fend incompetence. Evidently it is more cost efficient for CMS to deprive a disorganized and marginalized population of needed meds over the course of its contract period and alternatively combat this group (who suffer a disproportionately low litigation success rate-assuming they have they wherewithal to pursue litigation) with professional attorneys. In fact, an analysis of CMS litigation history regarding just this matter is telling. And simply based on CMS's extensive (medication deprivation) litigation history, one would have to grow suspect as to how and why CMS -over the course of its corporate history- still continues to make the same ostensible "mistakes" that it has perpetrated since its genesis? By their nature "mistakes" at times benefit and at other times prove to be detrimental, however, when so-called "mistakes" consistently benefit a for profit company, they cannot possibly be considered mistakes. This is a policy/custom that masquerades as mistake/negligence.

In closing, I would appreciate any assistance that your organization may be able to provide. I look forward to contact regarding this matter and I thank you in advance.

Respectfully,

David Williamson

c.c. Commissioner of Corrections, Mr. Stanley Taylor
    Bureau Chief (monitoring of medical grievance #15435),
    CMS, Mr. Altman

David Williamson
SBI #183022, W-1, L-12
1181 Paddock Rd.
Smyrna, DE 19977
July __6__, 2006

CMS Ombudsman, Mr. Altman
Re: Chronic Care Medications

Mr. Altman;

Greetings, on 6-29-06 I was finally distributed my belated Chronic Care Medications (CCM) after a 22 day interruption (ninth consecutive interruption since July 05). There are several troubling issues, however:

1.  My meds (120 doses -four 30 day cards), were to have begun on 5/5/06, however, actually began belated on 5/8/06. Counting from the actually date of receipt (5/8/06) a second 30 day card should have begun on 6/08/06. It did not, and this was despite the fact that I submitted a 'Sick call' slip with my med label stickers affixed some seven days prior to running out (5/31/06) as you directed in your April correspondence outlining an ostensible new med distribution system.

2.  Moreover, when I received my second 30 day card belatedly on 6/29/06, I noted that it had a computer generated distribution date of 6/21/06–some nine days before I actually received them! Why did this card have a distribution date of 6/21/06 when the first 30 day card ran out on 6/08/06? Why did I not receive my needed chronic care meds on 6/08/06 in accord with my notice and in accord with the already known original distribution date? Also, why was I not provided these needed meds–at the very least- on or about 6/21/06, which is when the CMS on-site pharmacy took possession of them but refused to distribute them to me? Why is there a distribution date manually plugged in that differs from the known date of needed subsequent cards (within the 120 doses allotted via a doctor's order)? The pharmacy is aware of the doctor's order, the start date, and the amount of a single med card, so clearly it also knows the consequent dates of refills.

3.  Also, I noted upon receiving said belated meds that the medication 'label stickers' had been removed by the on-site pharmacy. How am I to make the next request for my third card if the stickers have been removed prior to dispensing them to me? Has the so called new system been abandoned already, and if so, what is the new procedure?

In closing, I hope to avoid yet another unnecessary chronic care medication interruption and a timely investigation and response to this recent matter is appreciated. This is a pervasive and on-going problem and I expect a reply to my relevant and valid inquiries. Thank you for your time and consideration in this matter.

*David N—*

David Williamson

C.c.  Bureau Chief (MG # 15453), ~~Deputy Warden Pierce's Office~~

2

David Williamson
SBI #183022, W-1, L-12
1181 Paddock Rd.
Smyrna, DE 19977
July __6__, 2006

CMS Director of Nursing (On-site for DCC)
Re: Chronic Care Medications

To Whom It May Concern:

Greetings, on 6-29-06 I was finally distributed my belated Chronic Care
Medications (CCM) after a 22 day interruption (ninth consecutive interruption since July
05). I noted that both'sticker labels'had been removed from the 30 day med cards prior to
my receipt; however, I received notification from CMS Ombudsman, Mr. Altman in
April 06, that CMS was employing an [ostensibly] new medication distribution system
that requires me to affix the medication label stickers to a sick call slip and submit it to
the infirmary once I am down to my final five doses. Clearly, I cannot accomplish this act
if the label stickers have been removed by the CMS on-site pharmacy prior to dispensing
them to me.

Consequently, I am inquiring whether the medication distribution system Mr.
Altman referenced in his April 06, correspondence is still in effect or whether it has been
abandoned for another system? Also, if it is still in effect how do you suggest I go about
requesting my next card (third of four 30 day cards), without experiencing yet another
unnecessary chronic care medication interruption? If it has been abandoned, then what is
the new procedure?

Thank you for your time and consideration in this matter.

Dave W—2

David Williamson

C.c. Mrs. Mahaney, CMS Administrator

David Williamson
183022, W-1, L-12
July 21, 2006

Re: <u>Chronic-care Meds - Require Next Set of Cards</u>

<u>To Whom it May Concern:</u>

I am down to my final eight doses of my chronic-care meds: Levothyroxine & Multivitamins and I have two Refills remaining. I had received my second - current med cards - on 6-30-06 after a 22 day interuption (ninth consecutive lapse since July 05) and the med sticker/ lables had been removed, thus I cannot provide said med stickers. Please provide my next requisite set of chronic-care meds in a timely fashion. I hope to avoid yet another unnecessary med interruption.

Thank you.

Respectfully
David W
David Williamson

c.c. Mr. Altman

3

I-3

David Williamson
SBI #183022, W-1, L-12
1181 Paddock Rd.
Smyrna, DE 19977
July _30_ , 2006

Mr. S. Altman, CMS Ombudsman
Re: Continuous and Pervasive Pattern of Chronic-care Medication Interruptions

Dear Sir:

Greetings, in April 06 (circa) you assured me that a "new" corrective medication distribution system was being employed. I challenged this assertion, because I recognized its description as a known inadequate distribution system of which had been employed by CMS during its prior contract period with the DOC. Prophetically, I subsequently experienced my eighth and ninth consecutive chronic-care meds interruptions. In fact, the June 06 interruption exceeded twenty days and was the second longest of the ten prior consecutive interruptions between July 05 and July 06.

Moreover, upon finally receiving my lapsed and belated chronic-care meds (June 30, 06) I noticed that (a) the med label-stickers had been removed and (b) that the July 06 card, the second of four thirty-day med cards, had a distribution date that well exceeded the first thirty-day card. I immediately brought this to both your attention and the on-site DCC hospital Staff's attention. I inquired as to how I was supposed to make my subsequent request for my next -third of four cards- without the requisite label-sticker? Staff here failed to even reply. Nevertheless, I provided adequate notice/request for the third card. I took my final dose on 7/30/06 and once again CMS has refused to provide my prescribed chronic-care meds, and failed to correct this ongoing and serious problem despite knowledge thereof and opportunity. This is outrageous.

Indeed, any subsequent distribution date that exceeds a prior thirty-day card knowingly creates an interruption. Also, it is inexcusable because I had followed the med procedure, as described by you, and gave a seven day notice (actually two additional days) in June and at least five days in July 06 to provide said second and third cards respectively. In reality, however, there is no legitimate reason for CMS to require any notice at all in view of the facts: (a) a 120 dose regiment is prescribed at a time; (b) the cards are knowingly thirty doses (or of a known allotment) and knowingly given on a particular date; thus (c) CMS is well aware of when subsequent cards would be required to avoid any interruption yet acts as if it is unable to get a handle on this problem. CMS's behavior is suspect.

Consequently, I am a chronic-care patient, who is prescribed and requires chronic-care meds. The effectiveness of said meds is greatly impaired by any interruption and my normal daily functions have and continue to be impaired by these repeat and needless interruptions. Enclosed is a copy of an Emergency Medical Grievance (EMG) that according to the IGP 4.4 requires a response within 24 hours. I expect my chronic-care meds to be provided within 24 hours of receipt or a suitable alternative to be supplied from "Stock Supplies" etc. until the next card can be provided.

Thank you.

Dave W

4

I.4

David Williamson
SBI #183022, W-1, L-12
1181 Paddock Rd.
Smyrna, DE 1977
August 7, 2006

Mr. S. Altman, CMS Ombudsman
Re: Emergency Medical Grievance for On-going Chronic Care Medication Interruptions
Dear Sir:

Greetings, I had questioned you regarding my ninth unnecessary Chronic-care medication interruption (CCMI) in May/June 06. You admitted failure and incredibly offered another empty assurance that the continuous and pervasive problem would be corrected. This was the fourth time CMS had offered such useless assurances. However, CMS has failed to actually correct the problem. CMS made these empty assurances twice in grievance hearings for MG #15453, and twice from your office since this MG was closed. However, like all the proceeding times, this latest assurance proved to be false. I experienced yet another –my tenth consecutive CCMI since July 05- on 7-30-06, and as of 8-7-06 still have not been provided the lapsed meds. Consequently, I filed an Emergency Medical Grievance (EMG) (dated 7/30/06) for the following reasons:

1. because the prior assurances proved false and ineffective;
2. because MG #15453 has not been monitored for compliance;
3. because of experiencing this the tenth consecutive CCMI between July 05 and July 06; and
4. because any such interruption causes me to needless suffer a resurgence of symptoms that do impair my normal daily functions.

Your office received a copy of the EMG directly and CMS has failed to adequately respond to it. The EMG raised this most recent incident, the repeat failures, the useless assurances, and the fact that this is a continuous and pervasive problem. Eight days have elapsed, and to date my EMG has not been addressed. The IGP 4.4 states that EMG are to be determined whether the matter is an "Emergency" and if so to be responded to within "24-hours," however, if it is determined not to be an emergency, then it will be processed through the normal channels. Evidently my EMG has been determined not to constitute an emergency. CMS has not responded to the EMG, has not provided the relief I/Grievant requested, and has not even corrected the avoidable and unacceptable current CCMI. Moreover, whether or not an agent is employed to review medical grievances, it is CMS's responsibility to address and resolve medical grievances. Therefore, I request the following: (a) Who determined my EMG was not an emergency and why? (b) What were the criteria used for the determination? When will I receive the requested relief (e.g. provided all four med cards, 120 doses, upon reorder etc.)? If not, I expect a valid reason why and an explanation of what alternative will be employed to correct this continuous and pervasive problem.

Respectfully,
David W.
David Williamson

C.c. Bureau Chief of Prisons

5

I-5

# EXHIBIT J

David Williamson
SBI# 183022, W-1, L-12
1181 Paddock Rd.
Smyrna, DE 19977
September 11, 2006

Ms. Altman, Ombudsman, CMS
RE: Chronic Care Medication / Clinic Refill

Ms. Altman:

Greetings. I am writing you in the hope that I will not be forced to endure another unnecessary medication interruption. As you know, I have experienced ten consecutive med interruptions since July 05, and I wish to avoid further lapses.

The pending lapse is unnecessary because had CMS followed the established "Clinic" protocol, there would likely be no interruption. For example, my 120 day "Refill" began on 5-5-06 and on or about the ninety-day mark a "Chronic-Care Clinic" was to have been scheduled for the purpose of refilling the next 120 dose alottment. The whole point of providing 120 doses was to create a cushion between the clinic and the arrival of the first refill card. (i.e. Because med interruptions were common following said clinic, the dose amount was increased from 90 to 120 days.) Ninety days passed on 8-5-06 and 120 days passed on 9-5-06, however, I have not been scheduled in for any clinic refill. Has CMS abandoned one of the few legitimate corrective fail-safes against chronic care medication interruptions?

Granted, I need not be present for the refill order; however, to my knowledge no refill has been placed and this ensures a medication interruption. I trust this will be corrected.

David W. _____

1 c.c. Bureau Chief MG# 15453

T-1

David Williamson
SBI # 183022, W-1, L-12
1181 Paddock Rd.
Smyrna, DE 19977
September 22, 2006

Mr. Altman, CMS Ombudsman

RE: Chronic-care Medication Interruptions/Monitoring of Medical Grievance 15453

Dear Sir:

Greetings. I am faced once again with an inevitable; however, unnecessary chronic-care medication interruption (CCMI). I have experienced ten such CCMI9s since July 05. As a result of this I filed and completed the grievance process (See MG #15453); however, CMS continues to refuse to follow their repeated assurances to correct this pervasive problem. In fact, CMS does continue to actually cause and or ensure unnecessary interruptions because CMS appears to have abandoned one of the few legitimate medication distribution policies that acted to limit an interruption. (See attached 9/11/06 letter regarding Chronic-care Clinic). Moreover, once the above grievance had been completed, the IGP 4.4 calls for the Department to monitor for progress/compliance. Unfortunately the grieved behavior (e.g. CCMI) continues unabated. I respectfully request meaningful corrective action, hopefully before I am forced to experience another unnecessary and harmful CCMI.

Indeed, I experienced a twenty-eight day CCMI from December 16, 05 to January 4, 06 because CMS twice refused to conduct the requisite Chronic-care Clinics and "Refill" my medications. I separately grieved this behavior (MG #_____, dated 11/14/05), but it was improperly rejected by IGC McCreanor. I filed a timely Final Appeal; however, to date there has been no decision. Nine months later this grievance is finally being opened, yet I now face the very same behavior and the likely result will be another prolonged and unnecessary CCMI. For example, I have thirteen doses left of the 120 doses and no clinic has been scheduled. My 9/11/06 letter to CMS informs them that the time to conduct any required Clinic has long since lapsed (e.g. ninety days 8/5/06 and 120 days on 9/05/06), but to date CMS has not taken any corrective action. There is no legitimate medical or penological objective in denying me my chronic-care meds. Moreover, CMS and the Department have full knowledge of this continuing problem and simply refuse to make any meaningful corrective action. Indeed, CMS's behavior indicates intent to create these repeated and unnecessary interruptions. This is unacceptable. I even filed an Emergency Medical Grievance (EMG # 59170) for a recent July 06 CCMI and it is pending, but CMS is apparently not receptive or motivated to correct this matter. I am forced to request assistance from the Department.

In closing, I trust that this pervasive problem will be investigated and corrected as appropriate, and that the completed MG # 15453 will continue to be monitored for progress and compliance. Thank you for your time and consideration in this matter.

David W

David Williamson

c.c. Bureau Chief of Prisons
     Deputy Warden Pierce
     Gail Eller

2

J-2

David Williamson
SBI #183022, W-1, L-12
1181 Paddock Rd.
Smyrna, DE 19977
October  *4* , 2006

Mr. Altman, CMS Ombudsman
RE: CMS Intentionally Created an Unnecessary Chronic-care Medication Interruption (CCMI)
Mr. Altman:

In July/August 06 I experienced my tenth consecutive and unnecessary CCMI. This is despite providing prior notice to CMS on every occasion, despite completing the entire medical grievance process (MG # 15453) only to receive empty token assurances by CMS but no actual corrective action, and despite receiving more empty token assurances from your office with the same result.

Consequently, I grieved that newest incident of CCMI with an Emergency Medical Grievance (EMG 59170), and requested that CMS provide all 120 doses (all four med cards) once the "Refill" was placed/ordered by the doctor at the requisite Chronic-care Clinic (Clinic), and or provide adequate supplies form stock until the med cards arrived. This was a reasonable request in view of CMS's utter failure to correct this pervasive problem over the past year despite ample opportunity, and because it would effectively limit the incidence of any CCMI to a mere three per year, as opposed to the wholly unnecessary and unacceptable "ten" CCMI(s) per year. In fact, CMS has no legitimate medical or penological reason not to provide all 120 self-med doses once the "Refill" order has been realized. CMS, however, flatly refused to correct the problem and flatly refused this reasonable request at the RGC grievance hearing (EMG 59170) on 9/27/06. Moreover, I have not received the past due Clinic, which is necessary to head off yet another unnecessary CCMI, I have not received any additional chronic-care meds, and to my knowledge I have not received the requisite "Refill" order. I have received, however, blatant lies: CMS fabricated medical records to show that a Clinic had taken place, but it had not, and no Refill was realized on the fabricated Clinic date. This is outrageous! CMS has deliberately chosen to refuse to provide the care it contracted to provide.

Additionally, during the interim I wrote you on 9/11/06 about the past due Clinic, I wrote you again on 9/22/06 (c.c. to Gail Eller) about the past due Clinic, and on 9/27/06 at the RGC hearing, I personally alerted Eller that I was on my last card with some six doses left, that I required the Clinic (that was when I was alerted to the fabricated Clinic) and or provide the refill order to head off another preventable CCMI. Despite all this notice CMS still failed/refused to provide me with my Chronic-care meds. I took my last dose on 10/04/06, and I am again experiencing another unnecessary and preventable CCMI. CMS received notice, was and is aware of this prevalent and ongoing problem, and deliberately refuses to correct it. These CCMI(s) cause me to suffer a resurgence of symptoms unnecessarily that so impair my normal daily functions there is no valid excuse for this.

Perhaps you would care to elaborate on how this is not intentional behavior? Perhaps you would care to elaborate on when I am to receive my required chronic-care meds? Perhaps you would also care to elaborate on how –since CMS refuses to provide the 120 doses- you propose to correct this never ending problem?

David Williamson

$3$

$T\text{-}3$

David Williamson
SBI #183022, W-1, L12
1181 Paddock Rd.
Smyrna, DE 19977
October _15_ , 2006

Deputy Warden Pierce
RE: Eleventh Unnecessary & Preventable Chronic-care Medication Interruption (CCMI)

Mr. Pierce:

CMS continues to refuse to provide me with my necessary chronic-care medications for the eleventh time since July 05. In fact, it is clear that CMS is and has repeatedly created these preventable CCMI(s) intentionally because CMS has had ample notice and opportunity to correct same, but has refused to do so. And CMS has even engaged in creating fabricated medical records in order to create the illusion of taking corrective action, but none has actually taken place.

Ample notice had been provided to CMS for this most recent incident, which incidentally occurred during the grievance hearing process of a prior –the tenth CCMI- episode. CMS refused to act. For example:

(i) On 9/11/06 I wrote Altman's office about a past due Chronic-care Medication Clinic (Clinic), and informed CMS that another unnecessary CCMI was inevitable if CMS continued to refuse to provide the Clinic and or refused to refill the med order.

(ii) On 9/22/06 I again wrote Altman's office concerning the past due Clinic and inevitable CCMI, and I provided the on-site hospital with a copy by C.c. Mrs. Gail Eller.

(iii) On 9/27/06 I personally informed Eller, at the Formal RGC grievance hearing for MG #59170, that I had approximately six doses left on my final thirty-day self administered med card. CMS flatly refused to provide my request to provide all 120 doses receipt (which would limit the incidence of CCMI(s) to a maximum of three per year as opposed to the maximum twelve per year that I now face), and CMS flatly refused to provide any "Stock Supplies" as an alternative during the interim of any lapse episode. It was at this hearing that CMS disclosed it had created false medical records (e.g. that it had conducted the Clinic; however, it had not). Indeed, the conspiracy quickly fell apart when it was determined that the purpose of any med Clinic –refill/reorder the chronic care meds- had not been done at the alleged Clinic. Very sloppy of CMS to attempt to create false records but fail to also complete its underlying function. I did not even have to supply proof of my work record to disprove the false record!

(iv) October 4, 2006 I wrote Altman's office again to point out in detail all of the above and to alert CMS that I am again experiencing another preventable CCMI- the very inevitability that I gave notice of on 9/11/06, 9/22/06, and 9/27/06.

(v) From October 5, 2006 until the present date of October 15, 2006, I have experienced a "ten day" CCMI as a result of CMS refusing to provide me my chronic-care meds. It was clearly preventable and unnecessary because CMS has conducted two different sets of grievance hearing regarding the matter (e.g. MG# 15435 & EMG #59170), and because I provided ample prior notice. Moreover, it is inexcusable because Mr. Linton –CMS representative at the first medical grievance hearing for MG #15435- disclosed that CMS employs a "Fax and Fill" medication refill system that typically takes "forty-eight hours" or at worst no more than four days for the on-site pharmacy to receive the meds. By the most recent notification date it has been ten days since I ran out of these meds! Consequently, I had my mother contact your office (Deputy Warden Pierce) on 10/11/06 about the matter because CMS continues its refusal.

In closing, I am suffering a resurgence of the common and known symptoms of my chronic condition, of which do impair my normal daily functions. I request assistance in correcting this repeat and pervasive problem. And it is appropriate to reconsider CMS's refusal to provide me all 120 doses to limit the incidence of these repeated CCMI(s). Thank you.

_David W_
DAVID WILLIAMSON

4

c.c. CMS Altman

J-4

## AFFIDAVIT OF DAVID WILLIAMSON

1. I, David Williamson, am the Affiant listed above and do depose and state the following:

2. Affiant attended the first grievance hearing for a "Reprisal grievance" against CMS (#_____ )
   (RG hereafter), with CMS representative Debbie Rodweller on 10/18/06.

3. This RG charged CMS with "Adverse Acts" of "Reprisal" committed against Affiant/grievant by CMS
   directly due to Affiant's grievance activity. Specifically as follows:

   (i)   In response to Emergency Medical Grievance #59170 (EMG hereafter), CMS
         intentionally falsified Affiant's medical records to (a) create the appearance that CMS
         had provided treatment/corrective action when it in fact had not; and (b) create a bad
         faith defense to current litigation/claims by shifting the blame for the repeat chronic-
         care medication interruptions to me (Affiant/grievant).

   (ii)  The false medical records were disclosed by Gail Eller (CMS representative) on
         9/27/06 at the EMG RGC hearing; IGC McCreanor was present at the hearing.

   (iii) Affiant immediately charged Eller with a falsified medical record (e.g. false record of
         a Clinic that never occurred) and easily proved the point by demonstrating that no
         clinic could have occurred because *no Refill Order was placed* for Affiant's chronic-
         care meds. (Also, Affiant provided a copy of his P.I. Work Attendance record that
         definitively proved that Affiant was at work on the alleged Clinic date with the RG).

   (iv)  IGC McCreanor neither did nor said anything to protect the integrity of the RGC
         Hearing and Affiant's rights to be free from Reprisal for his grievance activities.

4. Consequently, Affiant filed the RG against CMS, and specifically named Eller and McCreanor as
   involved. It was not a medical grievance, but a Reprisal Grievance.

5. The Inmate Grievance Procedure prohibits anyone named in a "Reprisal" grievance from taking part in
   any decision making process.

6. Affiant's RG was forwarded to CMS despite CMS specifically being named as the actor (and naming
   CMS personnel Eller and DCC's McCreanor), despite the fact that the RG was not a medical grievance,
   and despite the fact that the action requested was directed to the Department of Correction (specifically
   DCC) to correct behavior that clearly violates both Affiant's constitutional rights and prohibitions of the
   Department's IGP.

7. Moreover, the Department directed Rodweller to "not talk about" the substance of the RG (e.g.
   allegation of fabricated medical records/Reprisal); but to only give Affiant a directive that he may view
   his medical records by appointment only. The Department deliberately refused to investigate the matter
   –a matter witnessed by DCC personnel, IGC McCreanor- and deliberately refused to correct the matter.

8. Also, the Department violated its own IGP regulations by forwarding the RG to CMS to handle in the
   process of aiding CMS and denying Affiant his rights. This continues and exacerbates the Reprisal and
   is likely to also deny Affiant meaning access to the courts, because it will result in a dismissal of any
   viable "Reprisal" legal claim.

9. For example, Affiant inquired of Rodweller what this grievance was for and Rodweller became visibly
   agitated and anxious. Rodweller forcefully stated: "I'm not authorized to speak about anything else, but
   to tell you that you can inspect your medical records by appointment!" (Affiant had not received any
   processed copy of the RG and did not know which grievance was being heard, so Affiant asked for
   clarification.)

10. Affiant requested to see the processed RG and quickly determined that it was the RG for the fabricated
    medical records. Affiant stated: "Oh, this is about CMS fabricating my medical records..." Rodweller

1    $\cancel{5}$

J-5

interrupted: "I can't talk to you about that! I'm not going to lose my job over this! I can't talk about this!" Rodweller seemed very upset, fearful, and defensive to Affiant.

11. Affiant replied: "Well, Mrs. Rodweller, the grievance is about CMS fabricating records, and really CMS should not be handling this grievance, but since you are then we must discuss the merits of the allegations if we are to come to understanding. Also, I don't appreciate CMS continuing to manipulate the grievance process, but I guess it is to be expected when you get caught *Red Handed fabricating medical records,* that CMS would attempt to circle the wagons."

12. Rodweller exploded: "I didn't do anything wrong! I'm a good nurse! I try to take care of my patients! I'm not going to lose my job over this! I can't talk about it!"

13. Evidently, Rodweller felt her employment was threatened if she discussed the merits of the RG with Affiant despite the fact that she was ostensibly charged with conducting the RG hearing.

14. Affiant replied to Rodweller's emotional outburst: "Mrs. Rodweller no body has accused you personally of any wrong doing. I was commenting on the behavior of your employer CMS and Mrs. Eller."

15. Rodweller replied: "This direction didn't come from my employer; it came from the Department of Correction –see here!" (She motioned to the second page of the RG and pointed presumably to some type of identifying mark of the D.O.C.).

16. Affiant continued: "Well then the Department is aiding CMS to cover up its malfeasance by creating an impediment or refusing to investigate or process this grievance properly, which will surely permit CMS time to purge the fabricated files, but it was CMS that fabricated the records in the first place –it was CMS that committed the Reprisal for my grievance activity in the first place, and that is who I am directing my attention at."

17. Rodweller replied: "I can't talk to you about this! I'm going to send this grievance forward to the next level. I am authorized to tell you that you can inspect your medical files by appointment, you can't have copies, but you can take pen and paper to make notes."

18. "Who do I make the appointment with?" inquired Affiant.

19. "You can write Lee Ann Dunn in records, and you can have one hour per appointment to inspect your records.

20. Affiant did not request to view his medical records, did not request to inspect the fabricated records, and did not request the Department to violate its own IGP by providing CMS the Reprisal Grievance and fore-knowledge of the Affiant's allegations prior to seizing the incriminating evidence.

21. Affiant did request in the "Action requested" section of the RG the following: (1) Immediately seize all my [medical] records...-and copy same and provide a copy to me as I am litigating my civil case (06-379-SLR) pro se- and or forward to the U.S. District Court, (2) Correct the matter and reprimand the person responsible..., and (3) Provide Damages.

22. The above is True and Correct upon Affiant's personal experience.

Sworn and Subscribed before me this ~~23~~ 25 day of October 2006.

David Williamson

Notary Public     **Brian D. Engrem**
**Notary Public, State of Delaware**
Brian D. Engrem  **My Commission Expires June 14, 2008**
Notary Public, St      Delaware
**My Commission** Exp. J.L.    '4, **2008**

2

David Williamson
SBI 183022, W-1, L-12
1181 Paddock Rd.
Smyrna, DE 19977
October  3/ , 2006

Mr. Altman, CMS Ombudsman

RE: Twenty Day Unnecessary and Avoidable Chronic-care Medication Interruption

On 10/18/06 I was "called" in for an unscheduled Clinic. This Clinic resulted from an unrelated medical grievance hearing with Mrs. D. Rodweller. She personally arranged for it when I disclosed that I was experiencing another avoidable CCMI of then thirteen days. Prior to this I had provided CMS the following Notice concerning the needed Clinic and the inevitable CCMI:

- a. 9/11/06 Notice to CMS that the 90-day Clinic was past due (should have been automatically scheduled on or about 8/05/06 (90-days) CMS refused to reply and refused to correct the deliberate denials;
- b. 9/22/06 Another Notice, but CMS refused to reply and refused to correct the deliberate denials;
- c. 9/27/06 Affiant attended a medical grievance hearing (third such grievance for the ongoing CCMI(s) MG 59170), and Gail Eller first disclosed the fabricated medical records entry in Affiant's file that CMS had conducted the Clinic on 8/31/06, but when I demonstrated that the entry was fabricated (because no Refill order had been placed on that date, etc), Eller promised to refill Affiant's meds. Eller never did schedule the Clinic or place the refill order.
- d. 9/29/06 Notice via a copy of Final Grievance Appeal c.c. to CMS, but CMS refused to reply and refused to correct the deliberate denials; and
- e. 10/05/06 Notice of my eleventh avoidable CCMI, but CMS refused to reply and refused to correct the deliberate denials.

Thus on 10/05/06 I began my eleventh avoidable CCMI despite all this prior and concurrent notice, and despite Eller's promise on 9/27/06. Consequently, I experienced a twenty day CCMI due to CMS refusing to either conduct the obscenely past due Clinic and or simply placing the Refill/Order for my chronic-care meds (CCM).

Moreover, it was not CMS's intent to finally schedule the 10/18/06 Clinic. For example, CMS never scheduled me for any Clinic (despite Eller's 9/27/06 promise), and the 10/18/06 Clinic was unscheduled and only resulted from Rodweller's unilateral intercession. Rodweller usurped CMS's custom/policy of cost-avoidance and called Affiant in to the hospital for the unscheduled Clinic: Affiant had met Rodweller on 10/18/06 for an unrelated medical grievance and explained Eller's promise, my repeat notices, and that I had been out of his meds for thirteen days. Thus, Rodweller called me in for the unscheduled Clinic later that same day.

CMS, however, did not place any Refill/Order for the lapsed meds as a result of Affiant's 9/11/06, 9/22/06, 9/27/06, 9/29/06, and 10/05/06 notices and or grievance. If CMS had, it would have been done shortly after 9/27/06 following the related grievance hearing with Eller (and more importantly before the 10/05/06 CCMI) and not on 10/18/06 after an unrelated grievance hearing with Rodweller. It only occurred on 10/18/06

1     ℓ

J-6

due to Rodweller's courage and unnoticed and unofficial efforts. Indeed, my past due meds were not ordered until the unscheduled Clinic on 10/18/06.

Moreover, CMS deliberately aggravated the CCMI by continuing to refuse to dispense the lapsed meds after the on-site pharmacy took receipt of the meds. For example, I met again with Rodweller for a 10/25/06 Medical grievance 21201 and I explained that I had been called in for an unscheduled Clinic on 10/18/06 but that I still had not received the past due meds. Rodweller replied: "Yeah, I know you were called in, because I personally saw to it –and I try to take care of my patients. That is why *they don't like me here…* And right here is the doctor's order."

I explained to Rodweller that I "was having a rough time" and that the chronic fatigue and depression was incapacitating; that I even had to cancel a scheduled visit with his mother over the Sunday (10/22/06) as a result. I requested Rodweller to check with the on-site pharmacy because in the past it had received lapsed meds but still failed to distribute them to me. Rodweller checked and returned with Affiant's thyroid meds, but not the accompanying multivitamins.

I signed for them and discovered that the on-site pharmacy did indeed process and possess the lapsed meds on 10/21/06 (four days earlier); however, still refused to dispense the obscenely lapsed CCM(s) to Affiant!

Once again CMS makes every effort to deliberately and unnecessarily deny Affiant his CCM(s) (i.e. by intentionally refusing to conduct the requisite Clinic, by intentionally refusing to place the Refill/Order prior to the known lapse; and by intentionally refusing to dispense the lapsed meds when CMS took possession of them on 10/21/06.

This behavior is inexcusable; CMS has continued for over a year to routinely cause these repeat CCMI(s)despite professed corrective measures and "new" med distribution systems; despite prior notice on each and every CCMI; despite my filing of multiple grievances; and despite often times actually possessing the meds. Also, CMS has engaged in an active campaign of Reprisal and deceit (entering false medical records, etc) in order to continue its deliberate custom/policy of cost-avoidance through the denial of chronic-care meds.

Some serious questions need to be answered regarding this shocking behavior:

1. Why did CMS refuse to reorder my CC meds prior to the 10/05/06 interruption?
2. Why did Eller refuse to ensure that the CC meds were reordered despite her assurance on 9/27/06?
3. Why did the on-site pharmacy refuse to dispense the lapsed CC meds when they processed them on 10/21/06?

I trust you will not continue to ignore this like you did with my 9/11/06 through 10/05/06 letters of notice/pleas for relief.

Respectfully,

David Williamson
C.c. Bureau Chief (MG _/5453_ , _59/70_ )
Deputy Warden Pierce

2

# DELAWARE DEPARTMENT OF CORRECTIONS
## REQUEST FOR MEDICAL/DENTAL SICK CALL SERVICES
## FACILITY: DELAWARE CORRECTIONAL CENTER.
### This request is for (circle one): MEDICAL DENTAL MENTAL HEALTH

David Williamson                                    W-1
_____                    _____
Name (Print)                                      Housing Location

5/12/66                      183022                      1/09/07
_____    _____    _____
Date of Birth              SBI Number              Date Submitted

Complaint (What type of problem are you having)? _____

Please schedule me in for my Chronic-care Clinic as I'm approaching the ninety-day mark required for the Refill.

Also, I'm down to my last seven doses of Levothyroxine and I have one refill left on this order, so please provide

me with the last chronic-care med card. Thank you.

David W                                        1-9-07
_____                    _____
Inmate Signature                                  Date

**The below area is for medical use only. Please do not write any further.**

S:    You are scheduled in February for
      Chronic care + Refills   Medical/CD

O:    Temp: _____ Pause: _____ Resp: _____ B/P: _____ WT: _____

_____

_____

P: _____

_____

_____

_____

E: _____

_____

_____
Provider Signature & Title                        Date & Time

**7/1/99 DE01**
rm#:
**MED**
**263**

J-7

David Williamson
SBI # 183022
DCC
1181 Paddock Rd
Smyrna, DE 19977
January 16, 2007

Mr. Rundle, Health Services Administrator
Re: Follow up: MG# 15453 Chronic-care Meds Interruptions & MG# 23193 & # 59170 Clinic Denials

Mr. Rundle:

On 10/16/06 Deputy Warden Pierce forwarded to you a package containing several medical grievances. In pertinent part I grieved the ongoing and pervasive incidence of Chronic-care Medications interruptions and associated denial of Clinics. Despite this issue continuing for some seventeen months, it still persists unabated. Indeed, I am facing my twelfth avoidable and unnecessary CCMI due to the following: (i) CMS staff refusing to follow the medication distribution system and denying my refill request of my needed Chronic-care Medications (CC Meds), and (ii) CMS staff refusing to conduct the necessary Chronic-care Clinic (Clinic) within enough time to avoid an inevitable CCMI.

For example, on 1/09/07, I submitted a Medical Request slip informing CMS staff that "I'm down to my last seven doses of Levothyroxine and I have one refill [card] left on this order, so please provide me with the last ... card." As of 1/16/07, the CMS on-site pharmacy has refused to provide me with my CC Meds. I have checked the Med Pick-up List every day (none was posted on 1/15/07), and my name has never appeared for pick-up. These continuing and pervasive CCMI(s) violate promises CMS made regarding MG #15453 and subsequent assurances issued from your office regarding same. It is unacceptable.

In addition, I also requested, on the same date, a "Clinic" for the purpose of "Refilling" my CC Meds as it was nearing the "ninety-day mark" since the last Clinic was held on 10/18/06. In reply, CMS medical Staff stated that I am "scheduled in February for chronic-care refills." Consequently, for CMS staff to intentionally not schedule me in for my needed Clinic until well after the ninety-day mark and just before my current CC Meds order ends, will likely result in another avoidable and unnecessary CCMI. The incidence of CCMI(s) is ongoing and pervasive and this surely aggravates the problem. Indeed, I have also grieved the denial of Clinics specifically as an ongoing and pervasive problem (e.g. MG # 21201 & 59170). Moreover, scheduling a Clinic well after ninety-days –which deviates from normally required scheduling practices- appears to support a deliberate intent to cause me yet another unnecessary CCMI. There is no excuse or legitimate medical criteria for this decision.

I have repeatedly informed CMS and its medical staff that these repeat CCMI(s) case resurgence of chronic symptoms that in turn cause me to unnecessarily suffer and causes a significant impairment to my normal daily functions. Accordingly, these delays/denials of care are so likely to violate my rights, that immediate corrective action is required.

In closing, I trust that the Department will take the needed corrective action as it is clear that CMS has no intent to do so. (e.g. provided alternate Stock supplies and or provide the next CC Med card and a timely Clinic). Thank you for your time with this matter.

Respectfully,

David W

David Williamson

C.c. Deputy Warden Pierce, CMS Delaware Regional Offices

SBI #183022, W-1, L-12
1131 Paddock Rd.
Smyrna, DE 19977
January 23, 2007

CMS Ombudsman, S. Altman
RE: Ongoing & Unnecessary Interruptions of Chronic-care Medications

Mr. Altman:

On 1-17-07 I experienced my twelfth unnecessary and avoidable Chronic-care Medications Interruption (CCMI) since July 2005. This CCMI lasted from 1-17-07 till 1-22-07 despite the on-site pharmacy actually possessing my already lapsed Chronic-care Meds (CC Meds). Moreover, the lapse would have continued had I not been at the hospital on 1-22-07 for an unrelated scheduling, because CMS staff refused to place me on the Medication Pick-up List (MPL).

Indeed, this most recent CCMI was unnecessary and avoidable because I gave ample notice in accord with the medication distribution system (MDS), which was outlined in your 4-25-06 letter (e.g. provide five days notice for refill request). For example, I picked up my third of four CC Meds Cards on 12-19-07, which would necessitate CMS providing the fourth and final card before 1-19-07. Two doses broke apart and crumbled and were lost, however, so my CC Meds lapsed on 1-17-07. Consequently, I filed a request on 1-09-07 for my fourth and final CC Med Card as I was down to my last seven doses. Said request was subsequently stamped "Received" on 1-11-07 by CMS staff and returned to me. Thus, CMS on-site staff received my timely request yet still refused to provide my CC Meds to me in violation of grievance agreements (e.g. MG #15453), despite subsequent grievance filings (e.g. MG #21201 & 59170), and in violation of the established MDS. In addition, I filed further notice about this impending and likely CCMI prior to the lapse addressed to your office dated 1-16-07. It also noted CMS's refusal to provide –as of 1-16-07- said CC Meds and that I faced my twelfth impending CCMI, which of course occurred despite my repeat notices.

Moreover, the problem was aggrivated by CMS on-site pharmacy staff (Heidi) as she attempted to avoid responsibility by shifting the blame to me; she also attempted to mislead me by issuing erroneous ad hoc MDS procedures. This shocking behavior has also emerged as a common theme employed by CMS in bad faith to justify its refusal to correct these on going and pervasive CCMI

For example, I was at the hospital on 1-22-07 for an unrelated scheduling. Although my name was not posted on the MPL between 1-09-07 and 1-22-07, it has been a practice of the on-site pharmacy to actually possess lapsed CC Meds but withhold them, so I inquired whether my lapsed CC Meds were actually in. Not surprisingly they were! When I requested them Heidi attempted to avoid responsibility for the CCMI by suggesting that I was at fault for not alerting CMS staff prior to the interruption. Of course, this is absolutely false because CMS staff stamped "Received" on my refill request as early as 1-11-07. When I refuted her recklessly false accusation and Heidi then changed course and stated that she never received said request. Incredibly, she then attempted to mislead me with preposterous ad hoc MDs procedures that I was to follow in order to avoid further CCMI(s). Indeed, Heidi went to great lengths to explain that "PharmaCorr" automatically sent the ordered CC Meds to the on-site pharmacy well in advance and that I must come to the pharmacy prior to any lapse and tell her. This too is wholly erroneous because Security Staff will not just provide an inmate a "Pass" to the hospital absent CMS placing the inmate's name on the "Offender Activity Schedule" and or the "MPL" and anyone found "Off Limits" faces severe and lasting sanctions. Therefore, it is CMS's responsibility to alert and schedule an inmate for his medical needs and not the other way around as suggested by Heidi.

CMS staff is well aware of this fact, but what is important to note here is that CMS continues to refuse to provide the doctor's prescribed CC Meds in a timely fashion; CMS continues to refuse to correct this well known and pervasive problem; and CMS continues to shamelessly avoid responsibility and shift the blame with bad faith accusations and erroneous ad hoc procedures.

This behavior is unacceptable; it must be corrected. I simply cannot continue to endure the continuous adverse effects that result form these CCMI(s). Indeed, because the CCMI(s) are so common and regular -and- because I experience a resurgence of chronic symptoms as a result that do cause a substantial impairment of my normal daily functions and do accumulate to cause an observable deterioration of my general health- I needlessly suffer acute anxiety and frustration as I near the thirty-day refill period. Also, during any CCMI, I suffer depression that aggravates the common symptom, chronic fatigue.

For instance, my fatigue and depression was so great over this past weekend (1-20-07 & 1-21-07) that I was bed ridden and unable to motivate myself to perform any of my meals, important religious services, and or engaged in any meaningful social activities or promote good health via meaningful exercise, etc. Indeed, had I not missed work due to the 1-22-07 hospital scheduling, I would have called off work due to my overwhelming chronic fatigue and depression.

Consequently, there is not a single aspect of my life that escapes the substantial impairment due to these repeat CCMI(s) and I am pleading with you to follow my reasonable request in order to limit the continuing potential incidence of CCMI(s):

     (i)     Provide me all four (i.e. 120 doses) CC Meds Cards at the beginning of the CC Meds cycle, and

     (ii)    Provide the subsequent clinics on or about the ninety-day mark to ensure a timely Reorder/Refill.

I look forward to your assistance in resolving this pervasive and unacceptable problem once and for all.

Respectfully,

David W———
David Williamson

c.c. Bureau Chief (noncompliance with MG #15453)

9

# EXHIBIT B



**CMS**

DEDICATED PEOPLE
MAKING A DIFFERENCE

Correctional Medical Services

David Williamson
SBI # 183022, W-1, L-12
1181 Paddock Rd.
Smyrna, DE 19977

9 March 2006

Dear Mr. Williamson,

I received your letter expressing your concerns about lapses in your medical care dated February 9 2006. This letter was received in our regional office on 16 February 2006.

I have investigated your concern and, unfortunately, find it to be without merit. I reviewed your personal medication administration record and the document shows that you signed for your medications on 11 January 2006 and 12 February 2006. The medications you received are exactly what have been prescribed according to your medical chart.

Correctional Medical Services is committed to providing the highest level of care to everyone in our institutions. I apologize for the problems you have had in the past and encourage you to help us meet everyone's healthcare needs by helping us identify problems and concerns with the delivery of healthcare in the prisons.

Should you experience any further lapses in care, please discuss your concerns with the nursing staff at your institution that can help you promptly resolve these matters or refer the matter to me.

Once again, thank you for bringing this matter to my attention.

Your Partner in Healthcare,

Scott S. Altman
Delaware Ombudsman
Correctional Medical Services

CC: Warden Thomas Carroll
    Medical Record

# Exhibit-C

## AFFIDAVIT OF DAVID WILLIAMSON

1. I, David Williamson, am the Affiant listed above and do depose and state the following:

2. Affiant attended the first grievance hearing for a "Reprisal grievance" against CMS (#_____)
   (RG hereafter), with CMS representative Debbie Rodweller on 10/18/06.

3. This RG charged CMS with "Adverse Acts" of "Reprisal" committed against Affiant/grievant by CMS
   directly due to Affiant's grievance activity. Specifically as follows:

   (i)   In response to Emergency Medical Grievance #59170 (EMG hereafter), CMS
         intentionally falsified Affiant's medical records to (a) create the appearance that CMS
         had provided treatment/corrective action when it in fact had not; and (b) create a bad
         faith defense to current litigation/claims by shifting the blame for the repeat chronic-
         care medication interruptions to me (Affiant/grievant).

   (ii)  The false medical records were disclosed by Gail Eller (CMS representative) on
         9/27/06 at the EMG RGC hearing; IGC McCreanor was present at the hearing.

   (iii) Affiant immediately charged Eller with a falsified medical record (e.g. false record of
         a Clinic that never occurred) and easily proved the point by demonstrating that no
         clinic could have occurred because *no Refill Order was placed* for Affiant's chronic-
         care meds. (Also, Affiant provided a copy of his P.I. Work Attendance record that
         definitively proved that Affiant was at work on the alleged Clinic date with the RG).

   (iv)  IGC McCreanor neither did nor said anything to protect the integrity of the RGC
         Hearing and Affiant's rights to be free from Reprisal for his grievance activities.

4. Consequently, Affiant filed the RG against CMS, and specifically named Eller and McCreanor as
   involved. It was not a medical grievance, but a Reprisal Grievance.

5. The Inmate Grievance Procedure prohibits anyone named in a "Reprisal" grievance from taking part in
   any decision making process.

6. Affiant's RG was forwarded to CMS despite CMS specifically being named as the actor (and naming
   CMS personnel Eller and DCC's McCreanor), despite the fact that the RG was not a medical grievance,
   and despite the fact that the action requested was directed to the Department of Correction (specifically
   DCC) to correct behavior that clearly violates both Affiant's constitutional rights and prohibitions of the
   Department's IGP.

7. Moreover, the Department directed Rodweller to "not talk about" the substance of the RG (e.g.
   allegation of fabricated medical records/Reprisal); but to only give Affiant a directive that he may view
   his medical records by appointment only. The Department deliberately refused to investigate the matter
   --a matter witnessed by DCC personnel, IGC McCreanor- and deliberately refused to correct the matter.

8. Also, the Department violated its own IGP regulations by forwarding the RG to CMS to handle in the
   process of aiding CMS and denying Affiant his rights. This continues and exacerbates the Reprisal and
   is likely to also deny Affiant meaning access to the courts, because it will result in a dismissal of any
   viable "Reprisal" legal claim.

9. For example, Affiant inquired of Rodweller what this grievance was for and Rodweller became visibly
   agitated and anxious. Rodweller forcefully stated: "I'm not authorized to speak about anything else, but
   to tell you that you can inspect your medical records by appointment!" (Affiant had not received any
   processed copy of the RG and did not know which grievance was being heard, so Affiant asked for
   clarification.)

10. Affiant requested to see the processed RG and quickly determined that it was the RG for the fabricated
    medical records. Affiant stated: "Oh, this is about CMS fabricating my medical records..." Rodweller

1

interrupted: "I can't talk to you about that! I'm not going to lose my job over this! I can't talk about this!" Rodweller seemed very upset, fearful, and defensive to Affiant.

11. Affiant replied: "Well, Mrs. Rodweller, the grievance is about CMS fabricating records, and really CMS should not be handling this grievance, but since you are then we must discuss the merits of the allegations if we are to come to understanding. Also, I don't appreciate CMS continuing to manipulate the grievance process, but I guess it is to be expected when you get caught *Red Handed fabricating medical records,* that CMS would attempt to circle the wagons."

12. Rodweller exploded: "I didn't do anything wrong! I'm a good nurse! I try to take care of my patients! I'm not going to lose my job over this! I can't talk about it!"

13. Evidently, Rodweller felt her employment was threatened if she discussed the merits of the RG with Affiant despite the fact that she was ostensibly charged with conducting the RG hearing.

14. Affiant replied to Rodweller's emotional outburst: "Mrs. Rodweller no body has accused you personally of any wrong doing. I was commenting on the behavior of your employer CMS and Mrs. Eller."

15. Rodweller replied: "This direction didn't come from my employer; it came from the Department of Correction –see here!" (She motioned to the second page of the RG and pointed presumably to some type of identifying mark of the D.O.C.).

16. Affiant continued: "Well then the Department is aiding CMS to cover up its malfeasance by creating an impediment or refusing to investigate or process this grievance properly, which will surely permit CMS time to purge the fabricated files, but it was CMS that fabricated the records in the first place –it was CMS that committed the Reprisal for my grievance activity in the first place, and that is who I am directing my attention at."

17. Rodweller replied: "I can't talk to you about this! I'm going to send this grievance forward to the next level. I am authorized to tell you that you can inspect your medical files by appointment, you can't have copies, but you can take pen and paper to make notes."

18. "Who do I make the appointment with?" inquired Affiant.

19. "You can write Lee Ann Dunn in records, and you can have one hour per appointment to inspect your records.

20. Affiant did not request to view his medical records, did not request to inspect the fabricated records, and did not request the Department to violate its own IGP by providing CMS the Reprisal Grievance and fore-knowledge of the Affiant's allegations prior to seizing the incriminating evidence.

21. Affiant did request in the "Action requested" section of the RG the following: (1) Immediately seize all my [medical] records…-and copy same and provide a copy to me as I am litigating my civil case (06-379-SLR) pro se- and or forward to the U.S. District Court, (2) Correct the matter and reprimand the person responsible…, and (3) Provide Damages.

22. The above is True and Correct upon Affiant's personal experience.

Sworn and Subscribed before me this ~~23~~ 25 day of October 2006.

David Williamson

Notary Public   **Brian D. Engrem**
**Notary Public, State of Delaware**
Brian D. Engrem **My Commission Expires June 14, 2008**
**Notary Public, St     Delaware**
**My Commissi     14, 2008**

2

# EXHIBIT D

## AFFIDAVIT OF DAVID WILLIAMSON

1. I David Williamson am the Affiant listed above and do Depose and State the following:

2. March 13, 06 Affiant experienced his seventh consecutive Chronic-care Medication Lapse (CCML), and Affiant filed Notice (dated 3/13/06) with CMS, Dover Office, , Mrs. D. Plante (on-site CMS administrator), and Bureau Chief Officer (MG# 15453) (See A-1).

3. CMS failed to follow their repeated token promises to correct the continuous CCMLs (relative to Medical Grievance #15453), failed to provide alternate "Stock Supplies," and failed to correct this latest CCML.

4. March 21, 06, Affiant filed a second Notice (dated 3/21/06), to the same parties listed at item #2, because the CCML was not corrected and Affiant was needlessly experiencing a resurgence of symptoms that do impair his normal daily functions. (See A-2).

5. March 26, 06, Affiant received an erroneous and offensive response from CMS Ombudsman, Mr. Altman, (dated 3/22/06), who stated that as of 3/22/06 he had met with the on-site pharmacy staff and Affiant's [interrupted and belated] Chronic-care Meds (CCM) were in and "available for you [Affiant] to pick up." (See A-5).

6. However, between 3/22/06 and 3/28/06 Affiant's name never appeared on the Medication Pick-up List (MPL) and Affiant experienced still further needless CCML.

7. Affiant filed a letter of complaint (dated 3/27/06) with CMS, Dover Office, questioning why if the lapsed meds have been available since 3/22/06 and the pharmacy staff is aware of the CCML, then has the on-site pharmacy refused to dispense Affiant's CCMs to him? Affiant also took issue with Mr. Altman's reckless accusations and his treatment of Affiant's serious medical needs. (See A-3 to A-5).

8. March 28, 06, Affiant still was not placed on the MPL (See A-6), and some fifteen days had passed since the initial 3/13/06 interruption (seven days since the pharmacy received the CCM on 3/22/06), however, Affiant was scheduled to be seen for an annual physical and Affiant explained in detail the two week CCML, Mr. Altman's statement that the CCMs were received on 3/22/06, and how Affiant's normal daily functions are impaired as a result of the CCML to Nurse Practitioner Mrs. Ihuoma –during the physical.

9. Ihuoma dismissed Affiant's pleas with "You have to be patient; they will schedule you for your meds."

10. Affiant replied: "That is unacceptable! I've been out two weeks –Mr. Altman stated they were in, and this is my seventh consecutive medication interruption!"

11. Ihuoma displayed an attitude of indifference by rolling her eyes and mumbling something unintelligible, and instead of ensuring that Affiant received his belated CCMs, she wrote in the order section of Affiant's medical file: schedule in for med pick-up (paraphrased). Ihuoma then stated: "There, I've placed an order – they will schedule you in so look for your name on the medication list."

12. Affiant grieved Ihuoma's deliberate indifference to his serious medical needs on a prior though related occasion (denial of Chronic-care Clinic (CCC) that would likely cause a needless CCML) and for "Reprisal" (second consecutive denial of CCC that did indeed cause an unnecessary CCML)(See Medical Grievance and Addendum #20201), and Affiant believes –the current refusal to provide the lapsed meds is further evidence of Reprisal for Affiant's Grievance activity and is an intentional act to inflict needless suffering and harm upon Affiant.

13. Affiant returned to his housing unit and showed the bldg. Sgt. Mr. Altman's 3/22/06 letter and explained the CCML. He then provided Affiant with a "Pass" to the hospital pharmacy to see if the meds were in.

14. Normally, absent a call from the pharmacy, DCC Staff will not provide a "Pass" unless your name is on the MPL.

15. Affiant received his belated, lapsed meds on 3/28/06 that afternoon due to the efforts of DCC Staff.

16. The above is True and Correct as Affiant believes it to be.

Sworn and Subscribed before me this _**10th**_ day of _**April**_ 2006.

_David Williamson_

David Williamson, SBI #183022

_Timothy J. Mast_
( Notary Public)

my commission expires: June 14th 2006.

David Williamson
SBI #183022, W-1.L-12
1181 Paddock Rd.
Smyrna, DE 19977
March 13, 2006

Correctional Medical Services, Dover, DE Offices
245 McKee Rd.
DOC
Dover, DE 19904-01

Re: Continuing Chronic Care Medications Interruptions

Dear Sir/Madam:

Greetings, I am writing to inform you of yet another Chronic Care medication lapse (the seventh consecutive interruption since July 2005). I received a Doctor's refill order for 120 day/doses in December 05 and my first 30 day cards on 1-10-06. I received the second cards belatedly on 2-13-06, and as of today 3-13-06 I have not been placed on the med pick up list as promised at two different Medical Grievance Hearings regarding this on-going matter. It is clear that these assurances were perfunctory empty promises in view of CMS's failure to adhere to the chronic care medication system. These offices have been notified of this pervasive and systemic problem, yet have utterly failed to correct it.

Moreover, these lapses are inexcusable because the on-site pharmacy normally carries alternate stock supplies, however, refuses to dispense them altogether and or in a timely fashion. This is a continuous and willful disregard for my documented serious medical needs; needs that if not met do cause me to suffer impairment of my normal daily functions and quality of life, and threaten my future health.

Lastly, I respectfully request corrective action with this matter.

Sincerely,

David Williamson

c.c. D. Plante,
    Bureau Chief Officer, for Medical Grievance Appeal # 15453,
    CMS, Dover Offices

Correctional Medical Services, Dover, DE Offices
245 McKee Rd. DOC
Dover, DE 19904-01

Re: Continuing Chronic Care Medications Interruptions

Dear Sir/Madam:

Greetings, this is my second Notice to inform you of a continuing Chronic Care medication lapse (the seventh consecutive interruption since July 2005). On or about 3/13/06 I filed a notice of said chronic care medication lapse; however, to date the lapse has not been corrected. Despite CMS's assurances at two different Medical Grievance Hearings that the problem would be corrected, CMS has refused to correct the problem; has refused to issue alternate Stock Supplies from the on-site pharmacy, which would easily solve the problem; and, refused to dispense the belated/interrupted meds upon receipt and logging in at the pharmacy, but capriciously and willfully delays issuing them to Williamson. CMS is aware of these continuous med lapses and more recently issued a statement (through its Ombudsman) that my concerns in their eyes were without merit. This statement is incredible in view of the two medical grievance hearings where none of my claims were debated or challenged and all of the facts clearly evince the claimed lapses. My concerns were about the on-going med lapses, and every month since July 05, I have needlessly experienced a chronic care med lapse and needlessly suffered the inherent resurgent symptoms associated with my chronic disease. Any lapse in the first instance represent misfeasance, but these continuing lapses represent malfeasance and gross negligence. Moreover, the problems are aggravated when notice has been received of a lapse, and the meds are subsequently received and logged in at the on-site pharmacy and or there are suitable alternate Stock Supplies, however, neither are subsequently issued in a timely manner (of which both have occurred several times), this is malfeasance and a willful and deliberate indifference to my known serious medical condition.

Nevertheless, the med interruptions did occur, are still occurring, is currently occurring, and will likely occur again. This is a continuous and willful disregard for my documented serious medical needs; needs that if not met do cause me to suffer impairment of my normal daily functions and quality of life, and threaten my future health.

Lastly, I respectfully request the current lapse be corrected and that future meds be issued in a timely manner.

David Williamson, 183022
W-1, L-12
1181 PADDOCK RD
SmyRNA, DE 19977
MARCH 21, 2006

c.c. Bureau Chief Officer, Med Grievance #/5543
c.c. O. PLANTE

David Williamson
SBI #183022, W-1, L-12
1181 Paddock Rd.
Smyrna, DE 19977

CMS, Dover, DE Offices

4-19-06

*Original
dated 3.27-06
Copies mailed out to
Bureau Chief
4-19-06*

Re: Chronic Care Medication Interruptions/ Mr. Altman's Follow Up

Dear Sir/Madam:

Greetings, I am in receipt of a letter from your Ombudsman, Mr. Altman (dated 3/22/06). I find it offensive for a couple of reasons: it discounts and belittles my serious medical concerns and Mr. Altman calls into question my integrity via an indirect and reckless accusation about the accuracy of my claims.

First, Mr. Altman states that my claim "is with merit," however, he then proceeds to discount my meritorious medical concern by stating that he is "concerned about the accuracy of the information" (i.e. statement in which I claim to have experienced seven consecutive chronic care medication interruptions/lapses since July 05). (See Attached A-1). In fact, the March 22, correspondence was the second regarding this on-going problem and the earlier March letter insulted me by stating that my claim was "without merit" despite the fact that I have then and now currently experience an interruption/lapse in receiving my doctor prescribed chronic care medications. (See attached A-2). These related letters/statements discount and belittle my serious medical needs/concerns.

Moreover, these statements are not based in fact but fiction, and I am concerned with Mr. Altman's ability to comprehend the complaint as well as his ability to employ the basic skills of arithmetic and its application to the relevant calendar dates. For example, Mr. Altman listed several dates on which I was dispensed said meds, but the April and May dates are prior to my July 05 claim and are irrelevant. The relevant dates, however, do not sequentially cover the months from July 05, to the present and current March 06, lapse. The dates that are provided, however, do indeed support my complaint of an interruption in my medication regiment. For example, because the medication cards that are dispensed to me only cover a thirty day period, any time I do not receive a replacement card within said thirty days constitutes an interruption/lapse in receiving those meds. I presume that Mr. Altman reviewed the dates he provided (relative to my claim) and can only conclude that either his definition of an interruption and or lapse is different from the generally accepted definition, and or he is unable to calculate the date when a thirty day card has run out and another card is required to ensure that no lapse occurs (i.e. due date). Webster's II New College Dictionary offers the following definition: *Interrupt* (v) 1. To break the harmony or continuity of. 2. To impede or stop by breaking in on.... *Interruption* is its noun form. p. 580, 1995. (I employ interruption and lapse interchangeably in my many letters of complain/notice.) Since July 05, the continuity of my medication regiment has been broken and impeded exactly seven times, and this is despite the two empty token promises made by CMS to correct this very problem (made at Medical Grievance hearings in regard to MG (# 15453    ). Thus I have indeed experienced seven medication lapses to date.

Furthermore, it is troubling that several of these interruptions were aggravated because CMS's on-site pharmacy actually possessed my lapsed meds –with the full knowledge of this fact- however, refused to dispense them directly. This caused an even greater, unnecessary lapse and this deliberate indifference to my known serious medical needs is inexcusable. In fact, Mr. Altman claims in his March 22, 06 letter that, as of the same date, my meds are in and I can "pick them up." This is very interesting, because as of March 27, 2006, (an interruption of fourteen days), I have not been placed on the Medication Pick up List, and absent that or my Housing Unit receiving a call from the hospital requesting that I be given a "Pass" to the hospital, I simply cannot pick them up. Assuming that they are in, as Mr. Altman claims, then one would question why these meds have not been dispensed to me?

Lastly, Mr. Altman incredibly characterizes the handling of my chronic care meds as "well managed." This preposterous statement is a contradictory to my claim having "merit," and it discounts and belittles my meritorious claims. Of course, all this appears to indicate gross incompetence, but because it is difficult to believe that CMS would employ an ombudsman that has difficulty with the basic skills of reading and arithmetic, and because Mr. Altman was in contact with the on-site pharmacy regarding this recent lapse, I must conversely conclude that Mr. Altman is indeed competent, however, attempting to obfuscate the problem and its history, and that my other claims of "reprisal" by some CMS staff is supported by the continuing refusal to dispense my lapsed medications.

In closing, I would appreciate corrective action on all points raised herein.

David W
DAVIO Williamson, March 27 06

c.c. Bureau Chief Officer (MG # *15453*    )
4-19-06



**CMS**

DEDICATED PEOPLE
MAKING A DIFFERENCE

Correctional Medical Services

David Williamson
SBI # 183022, W-1, L-12
1181 Paddock Rd.
Smyrna, DE 19977

9 March 2006

Dear Mr. Williamson,

I received your letter expressing your concerns about lapses in your medical care dated February 9 2006.  This letter was received in our regional office on 16 February 2006.

I have investigated your concern and, unfortunately, find it to be without merit.  I reviewed your personal medication administration record and the document shows that you signed for your medications on 11 January 2006 and 12 February 2006.  The medications you received are exactly what have been prescribed according to your medical chart.

Correctional Medical Services is committed to providing the highest level of care to everyone in our institutions.   I apologize for the problems you have had in the past and encourage you to help us meet everyone's healthcare needs by helping us identify problems and concerns with the delivery of healthcare in the prisons.

Should you experience any further lapses in care, please discuss your concerns with the nursing staff at your institution that can help you promptly resolve these matters or refer the matter to me.

Once again, thank you for bringing this matter to my attention.

Your Partner in Healthcare,

Scott S. Altman
Delaware Ombudsman
Correctional Medical Services

CC:  Warden Thomas Carroll
     Medical Record



**CMS**
DEDICATED PEOPLE
MAKING A DIFFERENCE
Correctional Medical Services

David Williamson
SBI # 183022, W-1, L-12
1181 Paddock Rd.
Smyrna, DE 19977

22 March 2006

Dear Mr. Williamson,

I received your letter expressing your concerns about lapses in your medical care dated March 13, 2006. This letter was received in our regional office on 21 March 2006

I have investigated your concern and find it to be with merit. I met with the pharmacy staff on 22 March 2006 and directed them to place an emergency order with our local pharmacy for your medications. This was accomplished and they are available for you to pick up.

I am concerned with the accuracy of information in your letters to the Bureau Chief Officer for Medical Grievance Appeal. You stated that this is the seventh time we have missed your medications. I discussed your case with the nursing staff at DCC and they showed me documentation of you picking up your medications on 20 April, 19 May, 17 June, 27 July, 5 September, 6 October, 8 November, 2005 as well as on 11 January and 12 February 2006. You have been seen in our Chronic Care clinics in March and August of 2005 as well as January 2006. Your care has been appropriate and well managed.

Correctional Medical Services is committed to providing the highest level of care to everyone in our institutions. I encourage you to help us meet everyone's healthcare needs by helping us identify problems and concerns with the delivery of healthcare in the prisons.

Once again, thank you for bringing this matter to my attention.

Your Partner in Healthcare,

Scott S. Altman
Delaware Ombudsman
Correctional Medical Services

CC: Warden Thomas Carroll
James Welch, R.N.
Medical Record

Received  2-26-06



# MEDICATION PICK UP LIST
## 3/28/06
## 1PM-230PM

ABNER, VERNON 167023 ------C
BARNER, JOHN 135346-----------W
BOWEN, SHAWN 227939--------V
BUNTING, SHAWN 228772------DW
BURKETT, MARTIN 116769-----S
BUTLER, CHARLES 130629------W
CASSON, ANTHONY 105982-----W
CAULK, JAMES 293676-------------DW
CHRISTOPHER, ANTHONY 374002-DW
CLAYTON, PRESTON 374274-----C
COBB, JEFFREY 369827----------S
COLE, DAVID 501684---------------W
COLON, HERBERDO 509402------V
COLE, DION 480739------------------W
COLE, DONALD 281479-------------DW
COOPER, ANTHONY 275064-------DW
COOPER, STERLING 372545-------W
CRUMP, BENJAMIN 154003---------W
CUFF, JEWEL 281482-----------------V
DANIELS, ROLAND 084358-----------S
DAVIS, JAMES 159694------------------S
DAVIS, TIMOTHY 141567-------------W
DEPUTY, PAUL 248755-----------------W
DESHIELDS, GREGORY 256942------DW
DIXON, LLOYD 122634-----------------S
DIZE, TONY 537715----------------------E
EDWARDS, SEQUOJAH 214050------W
ELLIS, HERMAN 546337---------------W
EVANS, RONALD 198390---------------C
EVANS, LEX 278974----------------------W
EVANS, STEVEN 273046-----------------V
FARRELL, LINWOOD 289598---------W
FEDDIMAN, WALTER 159983---------C
FELICIANO, MICHAEL 226109-------W
FORD, FRANK 209593--------------------DE
FRANCISCO, ANYHONY 181869-----E

FREEMAN, BARRY 357525—W
FRIEND, DARRYL 149661-----S
GOULD, CHARLES 169352----W
GIVEN, JAMES 236018---------E
GRAVES, KENNETH 215643--W
GROENTHAL, BRUCE 393374-W
GUILFOIL, DALE 166308-------W
HANNAH, KEVIN 358297-------DE
HARMON, WILMER 180812----V
HARRIS, LEWIS 482685---------E
HARRIS, STANLEY 207165-----V
HARRISON, LARRY 207218-----V
HARTMAN, GLENN 129008----DW
HEARN, ROGER 247340--------E
HENRY, TYRONE 184431-------DE
HIGGINS, TERRANCE 377072--E
HOBBS, STERLING 137010------DE
HOUSTON, DAVID 137142------DE
HORNE, KHALID 308887-------V
IRVIN, ANTHONY 124418-------W
JACCOLUCCI, DAVID 215158---E
JENKINS, ANTHONY 235740----E
JENKINS, REGINALD 259112---W
JOHNSON,DAMMEYON 306875DE
JOHNSON, DONALD 119436--DW
JOHNSON, JULIUS 230140----W
JOHNSON, TERRY 405120-----E
JONES, ALONZO 160185-------DW
JONES, CHARLES 228192-----C
KEE, ARTHUR 070100-----------W
KEPERLING, JOHN 318356----S
KNOX, ROBERT 201154---------W
KRAFCHICK, STEVE 178856---DE

# Exhibit E

## AFFIDAVIT OF DAVID WILLIAMSON

1. I David Williamson am the Affiant listed above and do depose and state the following:

2. On 6/12/06 Affiant was seen by an orthopedic specialist, Dr. DuShuttle, (240 Beiser Bldv., Suite 101, Dover, DE 19904 –PO Box 662, Dover, DE 19903-0662), in regard to Affiant's completely severed ACL (right knee ligament).

3. After DR. DuShuttle reviewed the MRI results and performed a physical exam, he stated that the severed ACL required orthopedic surgery, a complete ACL replacement/reconstruction, a special knee brace that prohibits hyper-extension of the knee joint and the necessity for the post-op rehab/physical therapy....

4. Dr. DuShuttle further explained that the surgery was required, otherwise Affiant would have to wear the special brace continuously and Affiant would nevertheless experience subsequent degradation and injury to the non-repaired knee.

5. Also, Dr. DuShuttle stressed the importance of post-op rehab/physical therapy and stated that because the replacement ACL was harvested from a cadaver that post-op rehab was crucial to success and that if the necessary rehab etc. was not conducted competently, the replacement would likely "fail." In fact, Dr. DuShuttle opined that the prison health care provider (CMS hereafter) would not provide the needed rehab treatment -that the brace alone costs upwards of a "thousand dollars" and that "they" probably would not provide it. His attempt to dissuade Affiant form pursuing the needed ACL replacement surgery, ACL surgery that was recommended by both himself and Dr. Durst as necessary, is not based on any legitimate medical factors; however, in contrast is rooted in Dr. DuShuttle's belief that CMS would refuse/fail in its duty to provide the needed post-op rehab thus causing the "ACL replacement" to consequently "fail!"

6. Dr. DuShuttle's effort to discourage Affiant is however based on "non-medical factors" of which was the assumption that CMS would be deliberately indifferent to Affiant's medical needs and or grossly negligent.

7. Affiant retorted: "...If the standard treatment for this type of injury is orthopedic surgery and an ACL replacement et cetera, then recommend it and you let me worry about my part and about CMS's duties after the operation. I certainly don't want to continue to experience the pain and suffering of a permanent injury or disability and forego a needed procedure because you assume that CMS will fail in its duty."

8. Officers T. Carr, Hastings, and a third unknown officer were direct witnesses to this conversation.

9. Dr. DuSuttle replied: "Absolutely! I'll recommend it, besides if you didn't have the replacement you would still require the brace and that wouldn't stop you knee from further deterioration and injury, but you are going to have to fight for this!"

10. Affiant believes the above is true and correct to the best of his knowledge.

Signed and subscribed before me this day of __CE__ ~~June~~ July 2006.

David Williamson

Notary Public

# EXHIBIT F

<u>AFFIDAVIT OF DAVID WILLIAMSON</u>

1. I, David Williamson, am the Affiant listed above and do make this declaration in support of civil Action No. 06-379-SLR.

2. On 8-1-06 Affiant was provide the "Formal Grievance Hearing" in regards to Emergency Medical Grievance (EMG) # 37123 of which claimed deliberate indifference to Grievant's (i.e. Affiant's) known serious medical condition (e.g. acute knee injury); that an ongoing custom/policy of cost avoidance was employed by and through the deliberate denial, inordinate delay, or knowingly providing substandard treatment.

3. Affiant had grieved said treatment denial on 11-29-05, and even predicted the likelihood of future-permanent injury and suffering if continued, however, that Medical Grievance was improperly obstructed by the non-medical IGC McCreanor for erroneous reasons. Affiant consequently was denied treatment/knee protection.

4. On 4-3-06 the predicted future injury occurred and Affiant was subsequently found to have completely severed his ACL and which requires immediate surgery.

5. The reinjury was highly likely — indeed predicted — however avoidable if (a) the health care provider had provided the needed treatment of which Affiant grieved and (b) if McCreanor had not improperly obstructed Affiant's properly filed EMG. of 11-29-05.

6. Affiant filed a "Reprisal" grievance against McCreanor for his adverse reaction (e.g. improper obstruction of 11-29-05 EMG "knee" grievance and that too was unilaterally and summarily rejected by the IGC in contravention of IGP 4.4.

7. Affiant filed (a) Direct Appeal with the W/WD for McCreanor's reprisal and that too was improperly and summarily ~~sejed~~ rejected in contravention of the IGP.

8. In fact, McCreanor has improperly – unilaterally and summarily obstructed/rejected three other properly filed Medical Grievances ostensibly because Affiant requested "Damages" among the medical treatment requested.

9. There is no such prohibition contained in the IGP 4.4, and Deputy Warden Pierce explicitly made this finding regarding another reprisal grievance filed against McCreanor (# 46408) (46403).

10. Because McCreanor had demonstrated a clear and recent history of Reprisal and erroneous unilateral rejections of medical grievance that requested "damages", Affiant was forced to file his EMG # 37123 absent his request for "Damages" and this is an improper denial of access to the Courts regarding a protected right of claim. Though Affiant grieved the issue and timely appealed it, the DOC has failed to correct the erroneous obstruction/denials and Affiant was forced to choose foregoing the desperately needed treatment and attention if he requested "Damages", so he filed 37123 and made no mention of damages – waiting to pass McCreanor by.

11. Affiant does not waive his claim of damages though and incorporates it herein with his EMG 37123 Appeal.

12. Affiant filed a timely Appeal – Final on 1-13-06, however, it is still pending final resolution despite exceeding 180 day limitation.



13. EMG 37123 is actually the third medical grievance regarding Affiant's acute knee injury and the denial of adequate medical treatment spans 24 months. (MG(s) 7463, the 11-29-05 rejected MG, and the recent 37123) However, Affiant is still deliberately being denied adequate treatment and as a result, Affiant now has a completely severed ACL - a permanent injury.

14. More recently two doctors stated (Durst, M.D. & DuShuttle, M.D.) that a) the injury required a brace to protect the knee joint from hyperextension and that suitable alternative plastic frame braces were available. Both doctors acknowledge that the CMS supplied neoprene & velcro knee brace-without any type of frame and locking joint-was inadequate. (B) Immediate surgery was required

15. Affiant stated these facts at the 8-1-06 hearing and CMS Rep. Gail Eller responded: "Well you have to understand you are not on the outside - you are here - in a prison - a prisoner and you can't expect to get what you want."

16. Affiant replied to Gail's deliberately indifferent attitude with "It's not about what I think, it's about what Dr. Durst and Dr. DuShuttle stated was medically required for this type of injury. Moreover, Durst admitted that CMS provided a substandard brace that failed to protect the knee from additional injury - (e.g. hyperextension).

17. Gail then switched course with "We can't give you that type - it's a security issue because the frames are metal."

-3-

18. Affiant challenged this assertion: "That is irrellavant because both doctors acknowledged that suitable alternatives (e.g. rigid plastic frame) existed of which are designed to protect against the common and dangerous hyperextensions."

19. Gail abruptly interrupted with an aggitated erruption: "They are not suitable alternatives! This is the best you can get!"

20. Affiant inquired, "Are you substatuting your opinion for that of the doctors'?" Gail ignored that question.

21. Continuing, Affiant stated: "Besides - the security assertion is suspect because you don't deny necessary medical devices like steel wheel-chairs, or wooden and or metal tube canes. In fact, I just witness a person with a telescopic metal tube cane in the waiting room. And you have avoided the plastic alternatives.

22. Gail finished "It is all we can do for you. I'll follow up on Dr. Durst's referal for surgery."

23. CMS continues to expose Affiant to unnecessary suffering and a substantial risk to future injury by knowing providing a substandard medical treatment/device in its effort to avoid costs, however, without a valid medical or penological reason.

24. CMS continues to deny and or create an inordinate delay in providing known necessary treatment (e.g. ACL Replacement surgery & adequate knee brace) that does cause Affiant to needlessly suffer impairment of normal daily functions and exposes Affiant to future injury.

4

25. Doctor DuShuttle explained to Affiant that the needed plastic frame knee brace costs about a thousand dollars and it is this cost that CMS avoids by knowing providing the substandard $20⁰⁰ (approx.) neoprene brace.

26. Moreover, the same IGC McCreanor who improperly rejected Affiant's 11-29-05 knee grievance — and did expose Affiant to the very re-injury of 4-03-06 causing a severed ACL — and who Affiant filed Reprisal Grievances against for this very behavior, sat in on the Hearing as the IGC !

27. This is inappropriate and it continues to expose Affiant to McCreanor's adverse reactions of Reprisal. For example, Affiant was too told by McCreanor to complete the "Appeal Form" and return it by 8-8-06 (7 days later) and even wrote said date on the form. This is but another tactic to deny/obstruct Affiant's use of the administrative grievance procedure, because an Appeal must be filed within "3-days" or be defaulted by Grievant.

28. The form even states this and unless the IGP has been changed without notice to Grievant, McCreanor's statement is an intentional fiction with only one outcome: Deny Grievant the AGP.

29. The above is True and Correct.

Signed and Subscribed before me this 1 day August 2006

David W.

David Williamson

Edward John

Notary

# EXHIBIT-6

## AFFIDAVIT OF DAVID WILLIAMSON

1. I, David Williamson, am the Affiant listed above and do depose and state the following in support of 06-379-SLR:

2. On 2-10-07 Affiant was merely walking down his tier of his housing unit when he turned counter clockwise to his name being called and he suddenly collapesed unexpectedly.

3. The fall was caused by a sudden sharp pain in Affiant's right knee as it buckled-in at an acute and unnatural angle.

4. Affiant consequently fell into the tier phone and struck his head on the ice cooler chest. It occurred about 11:50 AM.

5. At the time of the fall, Affiant was wearing two substandard knee braces: an elastic sleeve and a neoprene-velcro wrap, but his unstable knee nevetheless dislocated causing the fall.

6. Affiant was in excruiating pain and had to physically pop his knee back into place - with an audible popping sound witnessed by Mark Legg and Darnell Harris who were on scene.

7. A knot instantly rose on Affiant's forehead equivalent in diameter and nearly as high as a baseball sliced in half.

8. Affiant became dizzy, nauseaus, and his hands visably shook for nearly 1½ hours.

9. Affiant was immediated escorted to the housing unit's front desk and security staff C/O Read called the hospital.

10. C/O Read promptly alerted the hospital of Williamson's torn anterior cruciate ligament (ACL), the resulting fall, the massively large knot on Affiant's forehead, and Affiant's symptoms of dizziness, nausea, and visable shaking; and that Read wanted to send Affiant to the hospital directly.

11. The on-site hospital refused Pease's request to send Affiant to them and stated that it was Saturday

and there was no doctor present — "nobody there to see him"— and that Ben the medication nurse would see Affiant at 4:30 pm when Ben made his usual rounds.

12. Affiant reiterated that he felt dizzy and nauseous and requested Rease to contact the Prison's Shift Commander to intervene because Affiant may have suffered a concussion.

13. Rease could visibly see Affiant's distress and contacted the Shift Commander, who in turn ordered Affiant to be taken to the hospital despite the hospital's refusal.

14. C/O Gandalla was sent for and Affiant was brought to the hospital with the aid of a wheel chair as he could not walk.

15. The incident was documented at the W-Housing Unit.

16. Affiant arrived to an empty hospital, save one inmate eating lunch and the five visible nurses.

17. Nurse Ben interviewed Affiant and when Ben learned of Affiant's torn ACL, he accused Affiant of causing the fall by not wearing his knee brace. Ben never examined the knee.

18. Shocked, Affiant rolled up his pant leg to show that he was indeed wearing both of his knee braces.

19. Affiant complained his knee was in pain, swollen, stiff, and that he could not put any weight on it. Ben never examined it.

20. Ben conducted a neurological questions test and Affiants replies were correct but delayed. Affiant's blood pressure spiked at 157 over 92, and Affiant was held for observation of a concussion for two hours. Ben provided 600 mgs of Motrine and released Affiant telling him not to sleep for the next six hours.

21. The above is true and correct based on personal observations.

Sworn and Subscribed before me this 12th day of February 2007.

David W_____
David Williamson
183022
1181 Paddock Rd.
Smyrna, DE 19977

Notary Public