IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DAVID WILLIAMSON,     :
             :
   Plaintiff,     :
             :  C.A. No.: 06-379 SLR
   V.        :
             :  TRIAL BY JURY OF TWELVE
CORRECTIONAL MEDICAL SERVICES, INC., :  DEMANDED
C. MALANEY, DONNA PLANTE, MAGGIE :
BAILEY, CHUKS IHUOMA, DR. S. ALIE, :
DR. ZIMBULL, MICHELLE ROBINSON, :
JUANITA CLARK, DENTIST JANE JOE, and :
FIRST CORRECTIONAL MEDICAL,  :
             :
   Defendants.    :

**DEFENDANT CORRECTIONAL MEDICAL SERVICES, INC.'S RESPONSE TO
PLAINTIFF'S THIRD SET OF REQUESTS FOR ADMISSIONS DIRECTED TO
CORRECTIONAL MEDICAL SERVICES, INC.**

   Defendant, Correctional Medical Services, Inc. ("CMS") through its undersigned counsel,

hereby submits the following responses and objections to Plaintiff's Third Set of Requests for

Admissions (collectively the "Requests") as follows:

**GENERAL OBJECTIONS AND RESERVATION OF RIGHTS**

   1.   CMS objects to the Requests to the extent that they call for, or could be construed

as calling for, information that is protected by the attorney-client privilege, the attorney-work-product

doctrine, the right to privacy under applicable law, or any other applicable privilege, doctrine, or

right.  Any inadvertent production of information protected by any of these privileges, doctrines, or

rights shall not be deemed a waiver of the protections that those privileges, doctrines, or rights afford.

   2.   CMS objects to the Requests to the extent that they request information not in their

possession, custody or control, or information that is more appropriately requested of the co-defendant FCM.

3.      CMS objects to the Requests to the extent that they are vague, ambiguous, and overly broad, and as a consequence, are unduly burdensome and harassing and are not reasonably calculated to lead to the discovery of admissible evidence.

4.      CMS objects to the Requests to the extent that they seek to impose obligations in excess of or different from those required by the Federal Rules of Civil Procedure and the Rules of this Court.

5.      All general objections are hereby incorporated into each specific response.

## RESPONSE TO REQUESTS

1.      An ACL injury in which the ligament is ruptured, the meniscus discs are deteriorating, and contusions to the upper and lower leg bones are occurring (instant ACL injury hereafter) is an objective serious medical condition.

**RESPONSE: Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

2.      The instant ACL injury significantly impairs one's normal daily functions.

**RESPONSE: Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

DE083530.1

3.      The instant ACL injury - left untreated for an extended period of (i.e. a year or more) causes significant further deterioration and injury to the knee.

**RESPONSE:  Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

4.      The instant ACL injury - including the highly unstable nature and proneness to hyperextensions of the knee - causes significant and likely risk of falling/collapsing incidents.

**RESPONSE:  Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

5.      The instant ACL injury - including the highly unstable nature and proneness to hyperextensions of the knee-requires the use of a rigid framed knee brace to protect against the inherent incidence of hyperextensions and instability of the knee.

**RESPONSE:  Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

6.      The instant ACL injury - including the highly unstable nature and proneness to hyperextensions of the knee-is known to cause significant pain and suffering.

**RESPONSE:  Defendant objects that the request calls for an expert opinion and after**

**a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

7.    CMS/medical staff failed to consult Dr. DuShuttle relating to the Don Joy ACL knee brace and/or any suitable alternative knee brace for Williamson as late as October 2006.

**RESPONSE: Denied.**

8.    CMS/medical staff failed to consult DDOC/DCC Security Staff relating to the Don Joy ACL knee brace and/or any suitable alternative knee brace for Williamson as late as October 2006.

**RESPONSE: Denied.**

9.    CMS was fully aware of Williamson's instant ACL injury as of June 2006 (circa), including that it required a special ACL knee brace (e.g. Don Joy ACL or suitable alternative with rigid plastic frame, etc.).

**RESPONSE:  Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.  As a further answer, Admitted that CMS knew of Williamson's ACL injury as of June 2006.**

10.    There was no legitimate or penological factors for delaying Williamson's needed reconstructive knee surgery for some seven months.

DE083530.1

**RESPONSE: Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

11.     There was no legitimate medical or penological factors for denying Williamson the needed Don Joy ACL and/or suitable rigid plastic framed alternative knee brace.

**RESPONSE: Denied.**

12.     A seven month delay in providing said needed reconstructive surgery for Williamson's instant ACL injury exposed Williamson to the following:

> a)     Unnecessary pain and suffering;
>
> b)     Unnecessary permanent injuries;
>
> c)     Unnecessary and significant impairment of his normal daily functions;
>
> d)     Unnecessary and significant risk or future - including falling/collapsing incidents;
>
> e)     Unnecessary loss of enjoyment of life;
>
> f)     Unnecessary and significant further deterioration of the knee and its related parts, which may be permanent; and
>
> g)     Unnecessary loss of earning capacity due to impairment of Williamson's ability to perform his profession as a martial arts instructor.

**RESPONSE: Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is**

DE083530.1

**insufficient to enable it to admit or deny this request.**

13.     Williamson exhausted all available administrative remedies relating to MG# 37123 and 78623 of which related to CMS's deliberate indifference to Williamson's objective serious knee injury, inordinate delay in providing the known and needed reconstructive surgery, and denial of a suitable knee brace, and that CMS knowing provided a substandard knee brace that unnecessarily exposed Williamson's to further injury.

**RESPONSE:  Denied.  By way of further answer, this request for admission is a conclusion of law upon which plaintiff bears the burden of proof at trial.**

14.     Durst and/or DuShuttle admitted that the Dynamic Pull Wrap knee brace that CMS supplied for Williamson's instant ACL injury was substandard and failed to protect the unstable knee from dangerous hyper-extensions and/or inherent falling/collapsing incidents.

**RESPONSE:  Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

15.     Seven month delay in providing reconstructive knee surgery for Williamson's instant ACL injury is an unnecessary and inordinate delay that is in conflict with legitimate medical criteria/recommendations.

**RESPONSE:  Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is**

**insufficient to enable it to admit or deny this request.**

16.    Currently at DCC are inmate patients who have been provided medical devices that contain metal - including telescopic tubular metal canes and/or mechanical devices, etc.

**RESPONSE: Denied.  Admitted that the only medical devices containing metal that inmate patients have received are wheelchairs and C-Pap machines.**

17.    Knee braces exist that are constructed primarily with rigid frames of plastic or like materials that have minimal metal fastenings that offer suitable protection - including superior protection to a Dynamic knee wrap made of neoprene and Velcro-that protects an injured knee with the instant ACL injury.

**RESPONSE:  Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

18.    Such a knee brace at 17 would be a marked improvement to the Dynamic knee wrap, which was provided to Williamson.

**RESPONSE:  Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

19.    Dental care for active periodontal infections (perio infections) includes the following:

DE083530.1

a)     Antibiotics;

b)     Teeth/gum cleaning/scrapings;

c)     Antibacterial mouth wash;

d)     Root canal for recurring/chronic cases; and

e)     Pain medications.

**RESPONSE: Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

20.     Recurring perio infections require a minimum of semi-annual teeth/gum cleanings/scrapings.

**RESPONSE: Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

21.     Active perio infections cause a significant and serious threat to health including possible heart damage from infection spreading in the blood stream/circulatory system.

**RESPONSE: Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

22.     Active perio infections are considered medical emergencies under the Inmate

Grievance Procedure 4.4. (IGP).

**RESPONSE:  Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

23.    Standard/recommended dental care for active and/or recurring perio infections is not considered cosmetic dental care, but required medical care.

**RESPONSE:  Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

24.    Active perio infections require immediate standard dental care (e.g. teeth/gum cleanings, etc). and in chronic outbreaks immediate antibiotics and/or root canal.

**RESPONSE:  Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

25.    A year delay in providing the standard perio infection dental care including teeth/gum cleanings/scrapings following a perio infection incident is an inordinate delay.

**RESPONSE:  Denied.  By way of further answer, this request for admission is a conclusion of law upon which plaintiff bears the burden of proof at trial.**

DE083530.1

26.    The inordinate delay described in 25 above is likely to cause the following:

a)    Recurring perio infections;

b)    Permanent injury and tooth loss;

c)    Unnecessary pain and suffering; and

d)    Irreparable injury to teeth or gums.

**RESPONSE:  Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

27.    CMS employs a blanket prohibition against providing root canals despite the medical needs of a patient.

**RESPONSE: Denied.  Admitted that CMS does not have the equipment to provide root canals, nor is it required under NCCHC guidelines.**

28.    CMS failed to provide needed dental care to Williamson for his repeat periodontal infections.

**RESPONSE:  Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

29.    Williamson experienced permanent tooth loss on 3/11/05 related to his recurring perio infections which were under treated.

DE083530.1

**RESPONSE: Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

30.     A broken tooth that has sheared in half down to the gum line and is exposing a raw nerve (Williamson's dental emergency hereafter), is clearly an objective serious medical condition and is known to cause acute pain and suffering.

**RESPONSE: Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

31.     Williamson's dental emergency is a clear emergency medical condition under the IGP.

**RESPONSE: Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

32.     Williamson filed a request on 1/8/06 for dental care for said dental emergency.

**RESPONSE: Admitted.**

33     Zimble denied any dental care for Williamson's dental emergency on each and every date in which Zimble saw Williamson including a denial of pain meds.

**RESPONSE: Defendant states that this request for admission is directed to another**

DE083530.1

party, and after a reasonable inquiry, the information known to or readily obtainable by them is insufficient to enable it to admit or deny this request.

34.    Zimble's repeat denials of needed emergency dental care for said dental emergency were not the product of (a) any legitimate medical factors or (b) any exercise of professional medical judgment.

**RESPONSE:  Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

35.    Zimble admitted that Williamson's dental emergency Medically required a "crown."

**RESPONSE:  Defendant states that after a reasonable inquiry, the information known to or readily obtainable by them is insufficient to enable it to admit or deny this request.**

36.    Zimble admitted and/or announced to Williamson that Zimble was prohibited from providing the needed crown by CMS custom/policy (e.g. "Budgetary, it simply is not in our Budget").

**RESPONSE:  Defendant states that after a reasonable inquiry, the information known to or readily obtainable by them is insufficient to enable it to admit or deny this request.**

37.    Williamson's dental emergency caused him the following:

(a)    Unnecessary pain and suffering for some forty days;

(b)    Unnecessary permanent injury;

DE083530.1

(c)     Unnecessary and acute loss of enjoyment of life while he was denied the needed treatment;

(d)     Unnecessary loss of sleep;

(e)     Unnecessary loss of work/school; and

(f)     Unnecessary impairment of ability to eat solid food for some forty days.

**RESPONSE:  Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

38.     Zimble inquired of Williamson whether the broken tooth was painful and Williamson emphatically affirmed that it was very painful but Zimble denied to provide any dental care of any pain meds whatsoever despite the obvious need.

**RESPONSE:  Defendant states that the language of this request is vague and incapable of being admitted or denied.  By way of further answer, Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request**.

39.     Williamson fully exhausted all available administrative remedies relating to Williamson's dental emergency and CMS's deliberate indifference to it.

**RESPONSE:  Denied.  By way of further answer, this request for admission is a conclusion of law upon which plaintiff bears the burden of proof at trial.**

DE083530.1

40.     Zimble admitted that a composite repair was (a) clearly substandard, (b) temporary in nature, and (c) likely to fail.

**RESPONSE:  Defendant states that after a reasonable inquiry, the information known to or readily obtainable by them is insufficient to enable it to admit or deny this request.**

41.     Zimble announced that the only alternative in view of CMS custom/policy prohibiting crowns was to extract the broken tooth.

**RESPONSE:  Defendant states that after a reasonable inquiry, the information known to or readily obtainable by them is insufficient to enable it to admit or deny this request.**

42.     CMS failed to (a) provide the needed immediate emergency dental care for Williamson's dental emergency, (b) failed to provide immediate care relating to Williamson's EMG# 23193 dated 1/12/06; failed to provide the minimal standard dental care: a crown; (d) admittedly provided a substandard temporary composite repair, and (e) created an unnecessary and inordinate delay in providing even the substandard dental care; and (f) unnecessarily exposes Williamson to a likely repeat dental emergency episode when the temporary repair fails.

**RESPONSE:  Denied.  By way of further answer, this request for admission is a conclusion of law upon which plaintiff bears the burden of proof at trial.**

43.     CMS/medical staff had repeat notice/knowledge of Williamson's dental emergency but maliciously and/or with gross disregard caused Williamson to suffer unnecessarily for some forty days; however, absent legitimate medical factors.

DE083530.1

**RESPONSE: Denied. By way of further answer, this request for admission is a conclusion of law upon which plaintiff bears the burden of proof at trial.**

44.    CMS constructively determined that Williamson's dental emergency listed in EMG#23193 was not an emergency when it failed to render immediate dental care within the mandated 24 hours pursuant to IGP, and as such violated IGP.

**RESPONSE: Denied. By way of further answer, this request for admission is a conclusion of law upon which plaintiff bears the burden of proof at trial.**

45.    Bishop admitted on 2/24/06 that Williamson's dental emergency required a crown and also added that because the nerve was exposed for so long and damaged, that Williamson's dental needs now required a root canal too.

**RESPONSE: Defendant states that after a reasonable inquiry, the information known to or readily obtainable by them is insufficient to enable it to admit or deny this request.**

46.    Bishop admitted that the composite repair was temporary in nature that it would not last the duration of Williamson's sentence (i.e. nine years).

**RESPONSE: Defendant states that after a reasonable inquiry, the information known to or readily obtainable by them is insufficient to enable it to admit or deny this request.**

47.    CMS via its blanket policy/custom prohibiting crowns despite medical needs and/or through admittedly providing a temporary repair does expose Williamson to a substantial and likely

DE083530.1

risk of future dental emergency episode when the temporary composite fails.

**RESPONSE: Denied. By way of further answer, this request for admission is a conclusion of law upon which plaintiff bears the burden of proof at trial.**

48.    CMS has a history of providing temporary repairs (e.g. fillings, etc.) that have repeatedly failed.

**RESPONSE: Defendant states that after a reasonable inquiry, the information known to or readily obtainable by them is insufficient to enable it to admit or deny this request.**

49.    Repeat acute perio infections in the same area/teeth eventually destroy the tooths' roots and bone and subsequently cause tooth loss if left untreated and/or under treated.

**RESPONSE: Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

50.    On 10/31/06, dentist Kinoke also outlined CMS's blanket custom/policy prohibition against needed crowns despite medical needs in response to EMG# 23193.

**RESPONSE: Defendant states that after a reasonable inquiry, the information known to or readily obtainable by them is insufficient to enable it to admit or deny this request.**

51.    Between December 2001 and May 2001, Williamson experienced multiple acute perio infections including several in the same area which ultimately caused Williamson's tooth loss of

March 11, 2005.

**RESPONSE:  Denied.  By way of further answer, this request for admission is a conclusion of law upon which plaintiff bears the burden of proof at trial.**

52.    Robinson accurately diagnosed Williamson with recurring active and acute perio infections on or about 12/4/01 and stated Williamson's infections required a root canal but refused to provide it due to CMS's custom/policy of prohibiting same.

**RESPONSE:  Defendant states that after a reasonable inquiry, the information known to or readily obtainable by them is insufficient to enable it to admit or deny this request.**

53.    Robinson even notified Williamson that he could likely expect to experience tooth loss as a result of the recurring perio infections. (i.e, under treated perio infections).

**RESPONSE:  Defendant states that after a reasonable inquiry, the information known to or readily obtainable by them is insufficient to enable it to admit or deny this request.**

54.    Williamson's tooth loss of March 11, 2005 was a direct and proximate result of said recurring perio infections which were untreated/under treated.

**RESPONSE:  Denied.  By way of further answer, this request for admission is a conclusion of law upon which plaintiff bears the burden of proof at trial.**

55.    Williamson's permanent injury was avoidable had it not been for CMS's custom/policy of not treating/under treating his perio infections.

**RESPONSE: Denied. By way of further answer, this request for admission is a conclusion of law upon which plaintiff bears the burden of proof at trial.**

56.     Date of discovery of Williamson's permanent tooth loss is the date that he was informed that they could no longer be saved and would have to be extracted (e.g. 3/4/05).

**RESPONSE: Denied. By way of further answer, this request for admission is a conclusion of law upon which plaintiff bears the burden of proof at trial.**

57.     CMS/medical staff did not provide a Clinic and/or any medical care/visit to Williamson on 8/31/06 despite claims by Eller on 9/27/06 at the grievance hearing (#59170) of doing so.

**RESPONSE: Defendant states that after a reasonable inquiry, the information known to or readily obtainable by them is insufficient to enable it to admit or deny this request.**

58.     Eller's notice/claims of providing a Clinic in August 2006 was false.

**RESPONSE: Denied. By way of further answer, this request for admission is a conclusion of law upon which plaintiff bears the burden of proof at trial.**

59.     Eller's false claim was in response to Williamson's grievance activity.

**RESPONSE: Denied. By way of further answer, this request for admission is a conclusion of law upon which plaintiff bears the burden of proof at trial.**

60.     CMS manipulated and/or attempted to deny Williamson meaningful and timely access

DE083530.1

and/or attempted to deny access to the grievance process by falsifying the Clinic in response to grievance #59170.

**RESPONSE: Denied. By way of further answer, this request for admission is a conclusion of law upon which plaintiff bears the burden of proof at trial.**

61.    Williamson nevertheless exhausted the administrative grievance process via his extraordinary efforts.

**RESPONSE: Defendant states that after a reasonable inquiry, the information known to or readily obtainable by them is insufficient to enable it to admit or deny this request.**

62.    CMS's acts in #58-60 equate to an effort to deny Williamson meaningful access to the courts relating to Williamson's claims of retaliation against Williamson for his grievance activity.

**RESPONSE: Denied. By way of further answer, this request for admission is a conclusion of law upon which plaintiff bears the burden of proof at trial.**

– Signature on next page –

/s/ Megan T. Mantzavinos
Megan T. Mantzavinos, Esquire (ID No. 3802)
Marks, O'Neill, O'Brien & Courtney, P.C.
913 Market Street, Suite 800
Wilmington, DE  19801
(302) 658-6538
*Attorney for Defendant*

DATED: June 15, 2007

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DAVID WILLIAMSON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | C.A. No.: 06-379 SLR |
| V. | : | |
| | : | TRIAL BY JURY OF TWELVE |
| CORRECTIONAL MEDICAL SERVICES, INC., | : | DEMANDED |
| C. MALANEY, DONNA PLANTE, MAGGIE | : | |
| BAILEY, CHUKS IHUOMA, DR. S. ALIE, | : | |
| DR. ZIMBULL, MICHELLE ROBINSON, | : | |
| JUANITA CLARK, DENTIST JANE JOE, and | : | |
| FIRST CORRECTIONAL MEDICAL, | : | |
| | : | |
| Defendants. | : | |

**DEFENDANT CORRECTIONAL MEDICAL SERVICES, INC.'S RESPONSE TO PLAINTIFF'S THIRD SET OF REQUESTS FOR ADMISSIONS DIRECTED TO CORRECTIONAL MEDICAL SERVICES, INC.**

Defendant, Correctional Medical Services, Inc. ("CMS") through its undersigned counsel, hereby submits the following responses and objections to Plaintiff's Third Set of Requests for Admissions (collectively the "Requests") as follows:

**GENERAL OBJECTIONS AND RESERVATION OF RIGHTS**

1. CMS objects to the Requests to the extent that they call for, or could be construed as calling for, information that is protected by the attorney-client privilege, the attorney-work-product doctrine, the right to privacy under applicable law, or any other applicable privilege, doctrine, or right. Any inadvertent production of information protected by any of these privileges, doctrines, or rights shall not be deemed a waiver of the protections that those privileges, doctrines, or rights afford.

2. CMS objects to the Requests to the extent that they request information not in their

possession, custody or control, or information that is more appropriately requested of the co-defendant FCM.

3.     CMS objects to the Requests to the extent that they are vague, ambiguous, and overly broad, and as a consequence, are unduly burdensome and harassing and are not reasonably calculated to lead to the discovery of admissible evidence.

4.     CMS objects to the Requests to the extent that they seek to impose obligations in excess of or different from those required by the Federal Rules of Civil Procedure and the Rules of this Court.

5.     All general objections are hereby incorporated into each specific response.

## RESPONSE TO REQUESTS

1.     An ACL injury in which the ligament is ruptured, the meniscus discs are deteriorating, and contusions to the upper and lower leg bones are occurring (instant ACL injury hereafter) is an objective serious medical condition.

**RESPONSE: Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

2.     The instant ACL injury significantly impairs one's normal daily functions.

**RESPONSE: Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

DE083530.1

3.     The instant ACL injury - left untreated for an extended period of (i.e. a year or more) causes significant further deterioration and injury to the knee.

**RESPONSE:  Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

4.     The instant ACL injury - including the highly unstable nature and proneness to hyperextensions of the knee - causes significant and likely risk of falling/collapsing incidents.

**RESPONSE:  Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

5.     The instant ACL injury - including the highly unstable nature and proneness to hyperextensions of the knee-requires the use of a rigid framed knee brace to protect against the inherent incidence of hyperextensions and instability of the knee.

**RESPONSE:  Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

6.     The instant ACL injury - including the highly unstable nature and proneness to hyperextensions of the knee-is known to cause significant pain and suffering.

**RESPONSE:  Defendant objects that the request calls for an expert opinion and after**

DE083530.1

**a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

7.      CMS/medical staff failed to consult Dr. DuShuttle relating to the Don Joy ACL knee brace and/or any suitable alternative knee brace for Williamson as late as October 2006.

**RESPONSE: Denied.**

8.      CMS/medical staff failed to consult DDOC/DCC Security Staff relating to the Don Joy ACL knee brace and/or any suitable alternative knee brace for Williamson as late as October 2006.

**RESPONSE: Denied.**

9.      CMS was fully aware of Williamson's instant ACL injury as of June 2006 (circa), including that it required a special ACL knee brace (e.g. Don Joy ACL or suitable alternative with rigid plastic frame, etc.).

**RESPONSE:  Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.  As a further answer, Admitted that CMS knew of Williamson's ACL injury as of June 2006.**

10.      There was no legitimate or penological factors for delaying Williamson's needed reconstructive knee surgery for some seven months.

DE083530.1

**RESPONSE: Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

11.     There was no legitimate medical or penological factors for denying Williamson the needed Don Joy ACL and/or suitable rigid plastic framed alternative knee brace.

**RESPONSE: Denied.**

12.     A seven month delay in providing said needed reconstructive surgery for Williamson's instant ACL injury exposed Williamson to the following:

      a)     Unnecessary pain and suffering;

      b)     Unnecessary permanent injuries;

      c)     Unnecessary and significant impairment of his normal daily functions;

      d)     Unnecessary and significant risk or future - including falling/collapsing incidents;

      e)     Unnecessary loss of enjoyment of life;

      f)     Unnecessary and significant further deterioration of the knee and its related parts, which may be permanent; and

      g)     Unnecessary loss of earning capacity due to impairment of Williamson's ability to perform his profession as a martial arts instructor.

**RESPONSE: Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is**

**insufficient to enable it to admit or deny this request.**

13.     Williamson exhausted all available administrative remedies relating to MG# 37123 and

78623 of which related to CMS's deliberate indifference to Williamson's objective serious knee

injury, inordinate delay in providing the known and needed reconstructive surgery, and denial of a

suitable knee brace, and that CMS knowing provided a substandard knee brace that unnecessarily

exposed Williamson's to further injury.

**RESPONSE:  Denied.  By way of further answer, this request for admission is a**

**conclusion of law upon which plaintiff bears the burden of proof at trial.**

14.     Durst and/or DuShuttle admitted that the Dynamic Pull Wrap knee brace that CMS

supplied for Williamson's instant ACL injury was substandard and failed to protect the unstable knee

from dangerous hyper-extensions and/or inherent falling/collapsing incidents.

**RESPONSE:  Defendant objects that the request calls for an expert opinion and after**

**a reasonable inquiry, the information known to or readily obtainable by defendant is**

**insufficient to enable it to admit or deny this request.**

15.     Seven month delay in providing reconstructive knee surgery for Williamson's instant

ACL injury is an unnecessary and inordinate delay that is in conflict with legitimate medical

criteria/recommendations.

**RESPONSE:  Defendant objects that the request calls for an expert opinion and after**

**a reasonable inquiry, the information known to or readily obtainable by defendant is**

DE083530.1

**insufficient to enable it to admit or deny this request.**

16.    Currently at DCC are inmate patients who have been provided medical devices that contain metal - including telescopic tubular metal canes and/or mechanical devices, etc.

**RESPONSE: Denied.  Admitted that the only medical devices containing metal that inmate patients have received are wheelchairs and C-Pap machines.**

17.    Knee braces exist that are constructed primarily with rigid frames of plastic or like materials that have minimal metal fastenings that offer suitable protection - including superior protection to a Dynamic knee wrap made of neoprene and Velcro-that protects an injured knee with the instant ACL injury.

**RESPONSE:  Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

18.    Such a knee brace at 17 would be a marked improvement to the Dynamic knee wrap, which was provided to Williamson.

**RESPONSE:  Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

19.    Dental care for active periodontal infections (perio infections) includes the following:

DE083530.1

a)   Antibiotics;

b)   Teeth/gum cleaning/scrapings;

c)   Antibacterial mouth wash;

d)   Root canal for recurring/chronic cases; and

e)   Pain medications.

**RESPONSE:  Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

20.    Recurring perio infections require a minimum of semi-annual teeth/gum cleanings/scrapings.

**RESPONSE:  Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

21.    Active perio infections cause a significant and serious threat to health including possible heart damage from infection spreading in the blood stream/circulatory system.

**RESPONSE:  Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

22.    Active perio infections are considered medical emergencies under the Inmate

Grievance Procedure 4.4. (IGP).

**RESPONSE:  Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

23.     Standard/recommended dental care for active and/or recurring perio infections is not considered cosmetic dental care, but required medical care.

**RESPONSE:  Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

24.     Active perio infections require immediate standard dental care (e.g. teeth/gum cleanings, etc). and in chronic outbreaks immediate antibiotics and/or root canal.

**RESPONSE:  Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

25.     A year delay in providing the standard perio infection dental care including teeth/gum cleanings/scrapings following a perio infection incident is an inordinate delay.

**RESPONSE:  Denied.  By way of further answer, this request for admission is a conclusion of law upon which plaintiff bears the burden of proof at trial.**

26.     The inordinate delay described in 25 above is likely to cause the following:

a)      Recurring perio infections;

b)      Permanent injury and tooth loss;

c)      Unnecessary pain and suffering; and

d)      Irreparable injury to teeth or gums.

**RESPONSE:  Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

27.     CMS employs a blanket prohibition against providing root canals despite the medical needs of a patient.

**RESPONSE: Denied.  Admitted that CMS does not have the equipment to provide root canals, nor is it required under NCCHC guidelines.**

28.     CMS failed to provide needed dental care to Williamson for his repeat periodontal infections.

**RESPONSE:  Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

29.     Williamson experienced permanent tooth loss on 3/11/05 related to his recurring perio infections which were under treated.

DE083530.1

**RESPONSE:  Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

30.      A broken tooth that has sheared in half down to the gum line and is exposing a raw nerve (Williamson's dental emergency hereafter), is clearly an objective serious medical condition and is known to cause acute pain and suffering.

**RESPONSE:  Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

31.      Williamson's dental emergency is a clear emergency medical condition under the IGP.

**RESPONSE:  Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

32.      Williamson filed a request on 1/8/06 for dental care for said dental emergency.

**RESPONSE: Admitted.**

33      Zimble denied any dental care for Williamson's dental emergency on each and every date in which Zimble saw Williamson including a denial of pain meds.

**RESPONSE:  Defendant states that this request for admission is directed to another**

DE083530.1

party, and after a reasonable inquiry, the information known to or readily obtainable by them is insufficient to enable it to admit or deny this request.

34.     Zimble's repeat denials of needed emergency dental care for said dental emergency were not the product of (a) any legitimate medical factors or (b) any exercise of professional medical judgment.

**RESPONSE:  Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

35.     Zimble admitted that Williamson's dental emergency Medically required a "crown."

**RESPONSE:  Defendant states that after a reasonable inquiry, the information known to or readily obtainable by them is insufficient to enable it to admit or deny this request.**

36.     Zimble admitted and/or announced to Williamson that Zimble was prohibited from providing the needed crown by CMS custom/policy (e.g. "Budgetary, it simply is not in our Budget").

**RESPONSE:  Defendant states that after a reasonable inquiry, the information known to or readily obtainable by them is insufficient to enable it to admit or deny this request.**

37.     Williamson's dental emergency caused him the following:

(a)     Unnecessary pain and suffering for some forty days;

(b)     Unnecessary permanent injury;

DE083530.1

      (c)     Unnecessary and acute loss of enjoyment of life while he was denied the needed treatment;

      (d)     Unnecessary loss of sleep;

      (e)     Unnecessary loss of work/school; and

      (f)     Unnecessary impairment of ability to eat solid food for some forty days.

**RESPONSE: Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

38.     Zimble inquired of Williamson whether the broken tooth was painful and Williamson emphatically affirmed that it was very painful but Zimble denied to provide any dental care of any pain meds whatsoever despite the obvious need.

**RESPONSE: Defendant states that the language of this request is vague and incapable of being admitted or denied. By way of further answer, Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request**.

39.     Williamson fully exhausted all available administrative remedies relating to Williamson's dental emergency and CMS's deliberate indifference to it.

**RESPONSE: Denied. By way of further answer, this request for admission is a conclusion of law upon which plaintiff bears the burden of proof at trial.**

DE083530.1

40.    Zimble admitted that a composite repair was (a) clearly substandard, (b) temporary in nature, and (c) likely to fail.

**RESPONSE:  Defendant states that after a reasonable inquiry, the information known to or readily obtainable by them is insufficient to enable it to admit or deny this request.**

41.    Zimble announced that the only alternative in view of CMS custom/policy prohibiting crowns was to extract the broken tooth.

**RESPONSE:  Defendant states that after a reasonable inquiry, the information known to or readily obtainable by them is insufficient to enable it to admit or deny this request.**

42.    CMS failed to (a) provide the needed immediate emergency dental care for Williamson's dental emergency, (b) failed to provide immediate care relating to Williamson's EMG# 23193 dated 1/12/06; failed to provide the minimal standard dental care: a crown; (d) admittedly provided a substandard temporary composite repair, and (e) created an unnecessary and inordinate delay in providing even the substandard dental care; and (f) unnecessarily exposes Williamson to a likely repeat dental emergency episode when the temporary repair fails.

**RESPONSE:  Denied.  By way of further answer, this request for admission is a conclusion of law upon which plaintiff bears the burden of proof at trial.**

43.    CMS/medical staff had repeat notice/knowledge of Williamson's dental emergency but maliciously and/or with gross disregard caused Williamson to suffer unnecessarily for some forty days; however, absent legitimate medical factors.

DE083530.1

**RESPONSE: Denied. By way of further answer, this request for admission is a conclusion of law upon which plaintiff bears the burden of proof at trial.**

44.    CMS constructively determined that Williamson's dental emergency listed in EMG#23193 was not an emergency when it failed to render immediate dental care within the mandated 24 hours pursuant to IGP, and as such violated IGP.

**RESPONSE: Denied. By way of further answer, this request for admission is a conclusion of law upon which plaintiff bears the burden of proof at trial.**

45.    Bishop admitted on 2/24/06 that Williamson's dental emergency required a crown and also added that because the nerve was exposed for so long and damaged, that Williamson's dental needs now required a root canal too.

**RESPONSE: Defendant states that after a reasonable inquiry, the information known to or readily obtainable by them is insufficient to enable it to admit or deny this request.**

46.    Bishop admitted that the composite repair was temporary in nature that it would not last the duration of Williamson's sentence (i.e. nine years).

**RESPONSE: Defendant states that after a reasonable inquiry, the information known to or readily obtainable by them is insufficient to enable it to admit or deny this request.**

47.    CMS via its blanket policy/custom prohibiting crowns despite medical needs and/or through admittedly providing a temporary repair does expose Williamson to a substantial and likely

DE083530.1

risk of future dental emergency episode when the temporary composite fails.

**RESPONSE: Denied. By way of further answer, this request for admission is a conclusion of law upon which plaintiff bears the burden of proof at trial.**

48. CMS has a history of providing temporary repairs (e.g. fillings, etc.) that have repeatedly failed.

**RESPONSE: Defendant states that after a reasonable inquiry, the information known to or readily obtainable by them is insufficient to enable it to admit or deny this request.**

49. Repeat acute perio infections in the same area/teeth eventually destroy the tooths' roots and bone and subsequently cause tooth loss if left untreated and/or under treated.

**RESPONSE: Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request.**

50. On 10/31/06, dentist Kinoke also outlined CMS's blanket custom/policy prohibition against needed crowns despite medical needs in response to EMG# 23193.

**RESPONSE: Defendant states that after a reasonable inquiry, the information known to or readily obtainable by them is insufficient to enable it to admit or deny this request.**

51. Between December 2001 and May 2001, Williamson experienced multiple acute perio infections including several in the same area which ultimately caused Williamson's tooth loss of

DE083530.1

March 11, 2005.

**RESPONSE:  Denied.  By way of further answer, this request for admission is a conclusion of law upon which plaintiff bears the burden of proof at trial.**

52.    Robinson accurately diagnosed Williamson with recurring active and acute perio infections on or about 12/4/01 and stated Williamson's infections required a root canal but refused to provide it due to CMS's custom/policy of prohibiting same.

**RESPONSE:  Defendant states that after a reasonable inquiry, the information known to or readily obtainable by them is insufficient to enable it to admit or deny this request.**

53.    Robinson even notified Williamson that he could likely expect to experience tooth loss as a result of the recurring perio infections. (i.e, under treated perio infections).

**RESPONSE:  Defendant states that after a reasonable inquiry, the information known to or readily obtainable by them is insufficient to enable it to admit or deny this request.**

54.    Williamson's tooth loss of March 11, 2005 was a direct and proximate result of said recurring perio infections which were untreated/under treated.

**RESPONSE:  Denied.  By way of further answer, this request for admission is a conclusion of law upon which plaintiff bears the burden of proof at trial.**

55.    Williamson's permanent injury was avoidable had it not been for CMS's custom/policy of not treating/under treating his perio infections.

**RESPONSE: Denied. By way of further answer, this request for admission is a conclusion of law upon which plaintiff bears the burden of proof at trial.**

56.    Date of discovery of Williamson's permanent tooth loss is the date that he was informed that they could no longer be saved and would have to be extracted (e.g. 3/4/05).

**RESPONSE: Denied. By way of further answer, this request for admission is a conclusion of law upon which plaintiff bears the burden of proof at trial.**

57.    CMS/medical staff did not provide a Clinic and/or any medical care/visit to Williamson on 8/31/06 despite claims by Eller on 9/27/06 at the grievance hearing (#59170) of doing so.

**RESPONSE: Defendant states that after a reasonable inquiry, the information known to or readily obtainable by them is insufficient to enable it to admit or deny this request.**

58.    Eller's notice/claims of providing a Clinic in August 2006 was false.

**RESPONSE: Denied. By way of further answer, this request for admission is a conclusion of law upon which plaintiff bears the burden of proof at trial.**

59.    Eller's false claim was in response to Williamson's grievance activity.

**RESPONSE: Denied. By way of further answer, this request for admission is a conclusion of law upon which plaintiff bears the burden of proof at trial.**

60.    CMS manipulated and/or attempted to deny Williamson meaningful and timely access

and/or attempted to deny access to the grievance process by falsifying the Clinic in response to grievance #59170.

**RESPONSE: Denied. By way of further answer, this request for admission is a conclusion of law upon which plaintiff bears the burden of proof at trial.**

61.    Williamson nevertheless exhausted the administrative grievance process via his extraordinary efforts.

**RESPONSE: Defendant states that after a reasonable inquiry, the information known to or readily obtainable by them is insufficient to enable it to admit or deny this request.**

62.    CMS's acts in #58-60 equate to an effort to deny Williamson meaningful access to the courts relating to Williamson's claims of retaliation against Williamson for his grievance activity.

**RESPONSE: Denied. By way of further answer, this request for admission is a conclusion of law upon which plaintiff bears the burden of proof at trial.**

– Signature on next page –

/s/ Megan T. Mantzavinos
Megan T. Mantzavinos, Esquire (ID No. 3802)
Marks, O'Neill, O'Brien & Courtney, P.C.
913 Market Street, Suite 800
Wilmington, DE 19801
(302) 658-6538
*Attorney for Defendant*

DE083530.1

DATED: June 15, 2007

## CERTIFICATE OF SERVICE

I, **Megan T. Mantzavinos, Esquire**, of Marks, O'Neill, O'Brien & Courtney, P.C. hereby

certify that on this **15th** day of June, 2007, two copies of the attached **Defendant Correctional**

**Medical Services, Inc.'s Response to Plaintiff's Third Set of Requests For Admissions**

**Directed to Correctional Medical Services, Inc.** were served via First Class Mail and Electronic

Service upon the following counsel of record:

David W, Williamson
SBI # 183022
Delaware Correctional Center
1181 Paddock Rd.
Smyrna, DE 19977


James Edward Drnec, Esquire
Balick & Balick, LLC
711 King Street
Wilmington, DE 19801

Daniel L. Mckenty
McCullough & Mckenty, P.A.
1225 North King Street, Suite 1100
P.O. Box 397
Wilmington, DE 19899-0397

    */s/ Megan T. Mantzavinos, Esquire*    
Megan T. Mantzavinos, Esquire (I.D. No. 3802)
Marks, O'Neill, O'Brien & Courtney, P.C.
913 North Market Street, Suite 800
Wilmington, DE  19801
(302) 658-6538
*Attorney for Defendant*

DE084558.1