

David Williamson
SBI # 183022, W-1, L-12
1181 Paddock Rd.
Smyrna, DE 19977

Honorable Judge Sue L. Robinson

RE: Williamson v. CMS, et al, 06-379-SLR: CMS Nullified its Prior Objection to Williamson's TRO/PI Request for Medical Care

Honorable Judge Sue L. Robinson:

Defendant CMS recently made an admission that "...*CMS must adhere to any grievance that is upheld*." (Emphasis added). CMS's admission effectively nullifies its prior objection to the medical care Williamson requested, in part, in his TRO/PI. (D.I. 38). In practice the admission would moot the need for the Court to order compliance; however, CMS has not actually employed its admission in practice.

For example, Williamson requested in his TRO/PI that CMS provide Plaintiff all four sets of his KOP (i.e. Self meds), thyroid meds/multivitamins at the beginning of the med cycle. CMS objected to this TRO/PI request in its reply.

On March 15, 2007, the Bureau Chief, Richard Kearney, upheld Williamson's grievance appeal (MG #59170). Accordingly, Williamson's MG/appeal requested that CMS provide him all four sets of his KOP thyroid/m/meds at the beginning of the med cycle. Said request is identical to the relief Williamson requested in his TRO/PI. Thus, according to CMS's admission it must adhere to the relief requested in MG #59170 because this relief was "upheld" by the DOC at the highest and final level.

Contrary to CMS's admission, however, CMS has failed to follow through and provide Williamson the relief requested. This is despite adequate and repeated notice of the upheld appeal decision.

For example, Williamson specifically filed notice of the appeal decision on 4-04-07 and a request for the specific relief therein to CMS Delaware Regional Offices (Attn. S. Altman). CMS failed to respond or comply. (See Ex-A Addendum to Plaintiff's TRO/PI at attachment C). (D.I. ____).

Consequently, Williamson filed an Addendum to Plaintiff's TRO/PI with the Court, which outlined these subsequent events on 4-07-07. (D.I. ____). (i.e. That MG #59170 was upheld; that the relief requested therein was identical to that requested in Williamson's TRO/PI; and that despite on going med interruptions, CMS refused to acknowledge or comply with the upheld appeal decision. (See Ex-A).

Subsequently, CMS boldly proclaims that it "must adhere" to any grievance that is "upheld." (D.I. 103 at item 51). Therefore, by its own admission, CMS has no legitimate grounds to deny the relief Williamson requested in his TRO/PI and which was subsequently upheld in MG #59170. Nevertheless, CMS has defied Williamson's TRO/PI request, defied the upheld final appeal decision, and defied its own admission. CMS refuses to provide all four sets of Williamson's KOP thyroid meds at the beginning to the med cycle.

In conclusion, there is no longer a valid dispute/objection regarding this particular form of relief for the Court to weigh. CMS no longer has grounds to object to or deny said relief, yet it continues to do so. As to this TRO/PI matter, the question as to whether to provide the relief requested has been nullified by the upheld MG and by CMS's admission. Thus, the appropriate course for this Court is to grant Williamson's TRO/PI and force CMS to actually practice what it preaches- what CMS admits is its duty.

Always Respectfully,

David Williamson

FILED

JUL - 6 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

7-2-07
Date

## CERTIFICATE OF SERVICE

I, David Williamson, Plaintiff, do swear that I have caused to be delivered upon the defendants listed

below the following true and correct documents:

1. _Letter: Williamson v. CMS, et al, 06·379 SLR / CMS Nullified its Prior Objection to Williamson's TRO/PI Request for Medical Care_,

2. _N/A_

By placing same in a U.S. Mail receptacle on the ___3___ day of ___July___ 200 7.

Megan T. Matzavinos, Esq.
913 N. Market St., Suite 800
Wilmington, DE 19801
(Counsel for CMS. Et al)

McKenty Daniel, Eq Bar # 2689
1225 N. King St., Suite 1100
P.O. Box 397
Wilmington, DE 19899-0397
(Counsel for FCM, Inc.)

James E. Drnec, Esq
711 N. King St.
Wilmington, DE 19801
(Counsel for Dr. A. Zimble)

_N/A_

_N/A_

David Williamson, SBI #183022
1181 Paddock Rd., W-1, L-12
Smyrna, DE 19977

_signed as original_

# EXHIBIT A

David Williamson
SBI # 183022, W-1., L-12
1181 Paddock Rd.
Smyrna, DE 19977

Honorable Judge Sue L. Robinson

Re: Williamson v. CMS. Et al, C.A No. 06-379-SLR: Addendum to Plaintiff's TRO/PI

Honorable Judge Sue L. Robinson:

Williamson filed a TRO/PI on 1-12-07 (DI 38). Therein, Williamson made reasonable requests for needed medical care to avoid permanent and likely future injuries. In part, Williamson requested that CMS provide all four sets of his

(i.e. Self meds), chronic-care meds (i.e. 120 doses each) at the beginning of the med cycle. This would greatly limit the opportunity for CMS to cause chronic-care med interruptions (CCMI). Subsequent to filing the TRO/PI, events have occurred that are relevant to these continuing and unresolved CCMI. Williamson moves this Court to consider these facts and treat this filing as an addendum to Williamson's TRO/PI.

I.    Outline of TRO/PI Claims:

1.  Williamson's TRO/PI claimed eleven CCMI –inter alia- ten of which were consecutive, and Williamson supported same with an Affidavit of Medication Distribution Log (at I-A 1-4 of the TRO/PI).

2.  CMS objected in a response dated 02-01-07 (DI ___) (CMS Response). Regarding the CCMI, however, CMS misrepresented a medication "policy" to the Court that purportedly corrected the CCMI. (CMS Response at EX-Marked A). This was false however, because the policy provided by CMS pertained to the nurse's daily dispensed meds and not to Williamson's self-meds. Moreover, CMS made an unsupported and frivolous claim, which is in irreconcilable conflict with the record: "Plaintiff is currently receiving his medications in a timely and consistent manner." (CMS Response at B).

3.  Williamson filed a reply and or motion to strike CMS's Response as scandalous and as factually and legally frivolous dated 02-14-07. (DI ___) (Williamson's Reply). Therein, Williamson noted to the Court the following un-refuted facts:

    a) Williamson suffers a serious medical disease that requires consistent daily meds at about the same time to control the resurgence of acute chronic symptoms (symptoms);

    b) Every CCMI causes Williamson to needlessly suffer the resurgence of symptoms, which includes a significant impairment of his normal daily functions, significant tangible threat to his current and future health, and severe mental and emotional distress;

    c) CMS failed to refute a single episode of the eleven Williamson claimed they needlessly caused him;

    d) CMS failed to dispute the serious nature or the dangerous affects of the resurgence of symptoms; and

    e) CMS failed to correct the unnecessary and pervasive CCMI despite Williamson providing CMS some twenty-five forms of written notice, four formal medical grievances, and even despite the Agreement that CMS and the State of Delaware entered into in December 2006 with the Department of Justice (DOJ Agreement) (See Ex A at p 4 at item G).

4.  Also, CMS has established a history of making false promises and of offering mock corrective action. (Williamson's Reply at 2). Indeed, CMS caused Williamson his twelfth needless CCMI shortly after Williamson filed his TRO/PI. (Williamson's Reply at item 2 on pg. 4: "… twelfth CCMI from 01-17-07 to 01-22-07."). But the CCMI still did not end there and CMS's unsupported and self-serving claims fail miserably.

II.    Subsequent Events That Warrant Consideration:

1.   The Department of Corrections (DOC) has "upheld" Williamson's reasonable request to have CMS provide Williamson all four of the CC-med cards at the beginning of the med cycle. (See EX-B MG Appeal # 59170 at cover page and at p. 1 "Remedy Requested"). Said remedy is identical to the relief Williamson requested in his TRO/PI.

2.   CMS continues to refuse to provide Williamson his prescribed CC meds in a timely and consistent manner. For example, CMS needlessly caused the thirteenth CCMI on 4-14-07 until $4$-$25$-$07$ ____. This is despite two forms of adequate prior notice, despite MG    59170, despite CMS's frivolous claims, and despite the DOJ Agreement. Indeed, CMS blatantly violated the DOJ Agreement when it failed to notify the treating physician after Williamson was denied his CC meds for three consecutive days. (See Ex-A DOJ Agreement at p. 10 item 24). Granted, said agreement does not impose any enforceable rights on a third party, but Williamson does not wish to enforce the agreement. Williamson believes that CMS's acts in the face of the Agreement is illustrative of its contempt for authority and or mandates that attempt to force it to provide needed medical treatment that it clearly does not wish to provide. Moreover, this latest and current CCMI was aggravated by CMS.

3.   For instance, Williamson received a doctor's prescription for 120 doses of his thyroid meds to begin on 01-29-07 and run thru 05-29-07. (i.e. four thirty dose KOP med cards). Williamson received the first two cards, but when he requested the third of four cards, CMS caused the thirteenth CCMI to date. Specifically, Williamson notified CMS at its Delaware Regional Offices on 04-04-07 of the DOC's Appeal finding regarding MG # 59170, and Williamson subsequently requested that he be provided the final two sets in accord with the Appeal holding. (See Ex-C). CMS refused to acknowledge Williamson's request or the DOC's holding.

4.   On 04-07-07, Williamson filed a formal Sick Call Request (SCR) to the DCC pharmacy and notified same that he was down to his last six doses of CC meds and Williamson requested to be provided the next card. (Note that Williamson's request did not involve a reorder Clinic, because he still had 60 doses left on this existing med cycle).

5.   Contrary to its unsupported claims, CMS did not provide Williamson his meds in a timely and consistent manner, but alternatively caused the thirteenth CCMI on 04-14-07. The twelfth occurred after Williamson filed his TRO/PI, and the thirteenth occurred after Williamson filed his Reply to CMS's objection to the TRO/PI.

6.   Moreover, the DOJ Agreement mandates that the prescribing physician be notified after a patient is denied his chronic-care meds for three consecutive days. CMS did not even attempt to implement or comply with the mandate. (See EX-A at p. 10 item 24) and (See EX-D Noncompliance Complaint). Williamson's thirteenth CCMI was also aggravated because as of 04-18-07, CMS had not even ordered his already lapsed CC meds. Williamson, however, notified the daily meds nurse every single day between 04-14-07 and 04-18-07 of his CCMI. She failed to provide the lapsed meds and she failed to notify the prescribing physician of the *then* 5 day CCMI.

7.   On 04-18-07, Williamson met with a doctor for follow up on his knee surgery, and there Williamson explained the five day CCMI to the doctor. She checked the pharmacy and returned and notified Williamson that the meds were not in the pharmacy, had not been ordered, and that there were no alternative Stock Supplies. Instead of correcting the five day CCMI, she scratched the existing order –despite Williamson having 60 doses on it- and reorder a new 120 doses, however, this merely extended Williamson's CCMI because the order would have to be faxed, processed, and finally distributed to Williamson.

8.  In short, CMS's unsupported and self-serving claims are belied by the facts. CMS repeatedly fails to ensure that
    Williamson receive his prescribed CC meds, and in addition, CMS evidently is not inclined to respect or follow the
    DOC's holding in MG # :59170, or the DOJ Agreement, and or its promises to correct these shocking CCMI.
In conclusion, CMS's on going pattern of creating these CCMIs cannot be considered as an isolated incident, but are
actually a clear and continuing pattern of behavior that needlessly threatens Williamson's health. Williamson filed to
Show Cause, and he prays that this Court grant his TRO/PI and or conduct the Cause hearing.

Respectfully,

David W.
David Williamson

                                                    Date

2

## AFFIDAVIT OF MAILING

I David Williamson, pro se plaintiff, do swear that I have caused the following documents to be placed in a U.S. Mail Receptacle on _____ day of _April_ 200 7 :

1. _Williamson v. CMS, et al, C.A. No. 06-379-SLR: Addendum to Plaintiff's TRO/PI._

2. _N/A_

3. _N/A_

4. _N/A_

These originals/true copies were addressed to the following parties:

1. _Amy A. Quinlan, Esq._          2. _Dana S. Monzo, Esq._
   _(Counsel for CMS, CLARK, CHUKS, LOVE &_   _(Counsel for Fcm )_
   _Zimble) 500 Delaware Ave._      _1225 N. King St._
   _Suite 1500, P.O. Box 2306_      _Suite 1100, P.O. Box 397_
   _Wilm., DE 19899-2306_           _Wilm., DE 19899-0397_

3. _N/A_                            4. _N/A_

The above is signed under penalty of perjury.

_David W_

David Williamson

# EXHIBIT A

**MEMORANDUM OF AGREEMENT BETWEEN THE UNITED STATES DEPARTMENT OF JUSTICE AND THE STATE OF DELAWARE REGARDING THE DELORES J. BAYLOR WOMEN'S CORRECTIONAL INSTITUTION, THE DELAWARE CORRECTIONAL CENTER, THE HOWARD R. YOUNG CORRECTIONAL INSTITUTION, AND THE SUSSEX CORRECTIONAL INSTITUTION**

## **TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| II. | DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . | 4 |
| III. | MEDICAL AND MENTAL HEALTH CARE . . . . . . . . . . . . . . . . . . . . | 6 |
| IV. | SUICIDE PREVENTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 14 |
| V. | QUALITY ASSURANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 17 |
| VI. | IMPLEMENTATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 18 |
| VII. | MONITORING, ENFORCEMENT, AND TERMINATION . . . . . . . . . | 18 |

## I.    INTRODUCTION

A.    On March 7, 2006, the United States Department of Justice ("DOJ"), notified the State of Delaware ("the State") of DOJ's intent to investigate the adequacy of medical and mental health care services in five facilities operated by the State's Department of Correction pursuant to the Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. § 1997 to determine whether those services violated inmates' constitutional rights. The facilities investigated were:

1. Delores J. Baylor Women's Correctional Institution ("Baylor");

2. Howard R. Young Correctional Institution, ("Howard Young");

3. John L. Webb Correctional Facility ("Webb");

4. Delaware Correctional Center ("DCC"); and

5. Sussex Correctional Institution ("Sussex").

B.    DOJ staff toured the five facilities on June 22, 2006, July 17-19, 2006 and August 14-16, 2006. In addition, DOJ staff, accompanied by consultants in medical care, mental health care and suicide prevention, toured Howard Young on October 4-6, 2006, Baylor and Webb on October 23-25, 2006 and Baylor again on November 15-17, 2006.

C.    On December 29, 2006, the DOJ issued a findings letter pursuant to 42 U.S.C. § 1997b(a)(1) which alleged that certain conditions at Baylor, DCC, Howard Young, and Sussex violated the constitutional rights of Delaware inmates. It is the position of the DOJ that deficiencies in medical care, mental health care and suicide prevention at these four facilities [collectively referred to herein as "the Facilities"; see Definitions, paragraph A] were inconsistent with constitutional standards of care. The DOJ made no findings with respect to Webb.

D.    Before the investigation began, the State had initiated its own efforts to improve conditions at the Facilities. During the investigation, the State also commissioned an extensive internal review of the Facilities with the assistance of medical, mental health, and legal consultants, the detailed results of which they subsequently shared with DOJ and DOJ's consultants. Throughout the course of the investigation, the State of Delaware and the staff at each Facility cooperated thoroughly and indicated a willingness to proactively and voluntarily undertake measures to improve conditions throughout the system. Consequently, the Parties enter into this Memorandum of Agreement ("Agreement") for the purpose of utilizing their resources in support of improving medical and mental health care at the Facilities, rather than allocating such resources to the risks and burdens of litigation.

E.     The Parties to this Agreement do not intend to create in any non-party the status
       of third party beneficiary. This Agreement shall not be construed so as to create a
       private right of action to any non-party against the State or the United States. The
       rights, duties and obligations contained in this Agreement shall bind only the
       Parties to this Agreement.

F.     In entering into this Agreement, the State does not admit any violations of the
       constitutional rights of inmates confined at the Facilities nor does it admit any
       violation of state or federal law. This Agreement may not be used as evidence of
       liability in any other legal proceeding. However, the State remains firmly
       committed to improving medical and mental health care at the Facilities.

G.     The Parties acknowledge that Correctional Medical Services ("CMS") currently
       provides medical and mental health care to inmates at the Facilities and that such
       care is provided pursuant to a contract with CMS that sets forth the terms and
       conditions of the relationship between the State and CMS. The State shall be
       responsible for ensuring that CMS (or any successor contractor) complies with
       the terms of this Agreement. Nothing in this paragraph shall abrogate the State's
       responsibility to comply fully with the terms of this Agreement.

H.     It is expressly understood and acknowledged that, while this Agreement makes no
       distinctions between those issues concerning inmate medical and mental health
       care that were previously modified and improved prior to the issuance of the
       findings letter and those that shall be modified and/or improved by virtue of the
       terms of this Agreement, the Parties acknowledge that a number of the policies
       and/or procedures which this Agreement addresses were implemented or in the
       process of being implemented prior to the issuance of the findings letter.

## II. DEFINITIONS

In this Agreement, the following definitions apply:

A.     "The Facilities" means Baylor, DCC, Howard Young, and Sussex, collectively, as
       well as any facility that is built to replace or supplement any one of them.

B.     "Effective date" means the date the Agreement is executed by the Parties.

C.     "Generally accepted professional standards" means those industry standards
       accepted by a significant majority of professionals in the relevant field, and
       reflected in the standards of care such as those published by the National
       Commission on Correctional Health Care (NCCHC) . DOJ acknowledges that
       NCCHC has established different standards for jail and prison populations, and
       that the relevant standard that applies under this Agreement may differ for pre-
       trial and sentenced inmates. As used in this Agreement, the terms "adequate,"
       "appropriate," and "sufficient" refer to standards established by clinical

4

guidelines in the relevant field. The Parties shall consider clinical guidelines promulgated by professional organizations in assessing whether generally accepted professional standards have been met.

D.    "Include" or "including" means "include, but not be limited to" or "including, but not limited to."

E.    "Inmates" means individuals sentenced to, incarcerated in, detained at, or otherwise confined at any of the Facilities.

F.    "Inmates with special needs" means inmates who are identified as suicidal, mentally ill, developmentally disabled, seriously or chronically ill, who are physically disabled, who have trouble performing activities of daily living, or who are a danger to themselves.

G.    "Isolation" means the placement of an inmate alone in a locked room or cell, except that it does not refer to adults single celled in general population.

H.    "Juveniles" means individuals detained at a facility who are under the age of eighteen (18).

I.    "Medical staff" means medical professionals, nursing staff, and certified medical assistants.

J.    "Medical professional" means a licensed physician, licensed physician assistant, or a licensed nurse practitioner providing services at a facility and currently licensed to the extent required by the State of Delaware to deliver those health services he or she has undertaken to provide.

K.    "Mental health professional" means an individual with a minimum of masters-level education and training in psychiatry, psychology, counseling, psychiatric social work, activity therapy, recreational therapy or psychiatric nursing, currently licensed to the extent required by the State of Delaware to deliver those mental health services he or she has undertaken to provide.

L.    "Monitor" as used in this Agreement means the Monitor established by Section VII of this Agreement, and all persons or entities associated by the Monitor to assist in performing the monitoring tasks.

M.    "Nursing staff" means registered nurses, licensed practical nurses, and licensed vocational nurses providing services at a facility and currently licensed to the extent required by the State of Delaware to deliver those health services they have undertaken to provide.

5

N.    "The Parties" means the State and the DOJ.

O.    "Security staff" means all employees, irrespective of job title, whose regular duties include the supervision of inmates at the Facilities.

P.    "The State" means officials of the State of Delaware, including officials of the Department of Correction and its Bureau of Prisons, and their successors, contractors and agents.

Q.    "Train," when the term is used in remedial provisions of this Agreement, means to adequately instruct in the skills addressed, including assessment of mastery of instructional material.

## III.    MEDICAL AND MENTAL HEALTH CARE

### GENERAL PROVISIONS

(1)    Standard The State shall ensure that services to address the serious medical and mental health needs of all inmates meet generally accepted professional standards.

(2)    Policies and Procedures The State shall develop and revise its policies and procedures including those involving intake, communicable disease screening, sick call, chronic disease management, acute care, infection control, infirmary care, and dental care to ensure that staff provide adequate ongoing care to inmates determined to need such care. Medical and mental health policies and procedures shall be readily available to relevant staff.

(3)    Record keeping The State shall develop and implement a unitary record-keeping system to ensure adequate and timely documentation of assessments and treatment and adequate and timely access by medical and mental health care staff to documents that are relevant to the care and treatment of inmates. A unitary record-keeping system consists of a system in which all clinically appropriate documents for the inmate's treatment are readily available to each clinician. The State shall maintain a unified medical and mental health file for each inmate and all medical records, including laboratory reports, shall be timely filed in the medical file. The medical records unit shall be adequately staffed to prevent significant lags in filing records in an inmate's medical record. The State shall maintain the medical records such that persons providing medical or mental health treatment may gain access to the record as needed. The medical record should be complete, and should include information from prior incarcerations. The State shall implement an adequate system for medical records management.

(4)    Medication and Laboratory Orders The State shall develop and implement policies, procedures, and practices consistent with generally accepted professional standards to ensure timely responses to orders for medications and laboratory tests. Such policies,

6

procedures, and practices shall be periodically evaluated to ensure that delays in inmates' timely receipt of medications and laboratory tests are prevented.

## Staffing and Training

(5)    Job Descriptions and Licensure  The State shall ensure that all persons providing medical or mental health treatment meet applicable state licensure and/or certification requirements, and practice only within the scope of their training and licensure.  The State shall establish a credentialing program that meets generally accepted professional standards, such as those required for accreditation by the National Committee for Quality Assurance.

(6)    Staffing  The State shall maintain sufficient staffing levels of qualified medical staff and mental health professionals to provide care for inmates' serious medical and mental health needs that meets generally accepted professional standards.

(7)    Medical and Mental Health Staff Management  The State shall ensure that a full-time medical director is responsible for the management of the medical program.  The State shall also provide a director of nursing and adequate administrative medical and mental health management.  In addition, the State shall ensure that a designated clinical director shall supervise inmates' mental health treatment at the Facilities.   These positions may be filled either by State employees, by independent contractors retained by the State, or pursuant to the State's contract with a correctional health care vendor.

(8)    Medical and Mental Health Staff Training  The State shall continue to ensure that all medical staff and mental health professionals are adequately trained to meet the serious medical and mental health needs of inmates.  All such staff shall continue to receive documented orientation and in-service training in accordance with their job classifications, and training topics shall include suicide prevention and the identification and care of inmates with mental disorders.

(9)    Security Staff Training  The State shall ensure that security staff are adequately trained in the identification, timely referral, and proper supervision of inmates with serious medical or mental health needs.  The State shall ensure that security staff assigned to mental health units receive additional training related to the proper supervision of inmates suffering from mental illness.

## Screening and Treatment

(10)   Medical Screening  The State shall ensure that all inmates receive an appropriate and timely medical screening by a medical staff member upon arrival at a facility. The State shall ensure that such screening enables staff to identify individuals with serious medical or mental health conditions, including acute medical needs, infectious diseases, chronic conditions, physical disabilities, mental illness, suicide risk, and drug and/or alcohol

7

withdrawal.  Separate mental health screening shall be provided as described in Paragraph 34.

(11)  Privacy  The State shall make reasonable efforts to ensure inmate privacy when conducting medical and mental health screening, assessments, and treatment.  However, maintaining inmate privacy shall be subject to legitimate security concerns and emergency situations.

(12)  Health Assessments  The State shall ensure that all inmates receive timely medical and mental health assessments.  Upon intake, the State shall ensure that a medical professional identifies those persons who have chronic illness.  Those persons with chronic illness shall receive a full health assessment between one (1) and seven (7) days of intake, depending on their physical condition.  Persons without chronic illness should receive full health assessment within fourteen (14) days of intake.  The State will ensure that inmates with chronic illnesses will be tracked in a standardized fashion.  A re-admitted inmate or an inmate transferred from another facility who has received a documented full health assessment within the previous twelve (12) months, and whose receiving screening shows no change in health status, need not receive a new full medical and mental health assessment.  For such inmates, medical staff and mental health professionals shall review prior records and update tests and examinations as needed.

(13)  Referrals for Specialty Care  The State shall ensure that:  a) inmates whose serious medical or mental health needs exceed the services available at their facility shall be referred in a timely manner to appropriate medical or mental health care professionals; b) the findings and recommendations of such professionals are tracked and documented in inmates' medical files; and c) treatment recommendations are followed as clinically indicated.

(14)  Treatment or Accommodation Plans  Inmates with special needs shall have special needs plans.  For inmates with special needs who have been at the facility for thirty (30) days, this shall include appropriate discharge planning.  The DOJ acknowledges that for sentenced inmates with special needs, such discharge planning shall be developed in relation to the anticipated date of release.

(15)  Drug and Alcohol Withdrawal  The State shall develop and implement appropriate written policies, protocols, and practices, consistent with standards of appropriate medical care, to identify, monitor, and treat inmates at risk for, or who are experiencing, drug or alcohol withdrawal.  The State shall implement appropriate withdrawal and detoxification programs.  Methadone maintenance programs shall be offered for pregnant inmates who were addicted to opiates and/or participating in a legitimate methadone maintenance program when they entered the Facilities.

8

(16)  Pregnant Inmates  The State shall develop and implement appropriate written policies
      and protocols for the treatment of pregnant inmates, including appropriate screening,
      treatment, and management of high risk pregnancies.

(17)  Communicable and Infectious Disease Management  The State shall adequately maintain
      statistical information regarding contagious disease screening programs and other
      relevant statistical data necessary to adequately identify, treat, and control infectious
      diseases.

(18)  Clinic Space and Equipment  The State shall ensure that all face-to-face nursing and
      physician examinations occur in settings that provide appropriate privacy and permit a
      proper clinical evaluation including an adequately-sized examination room that contains
      an examination table, an operable sink for hand-washing, adequate lighting, and adequate
      equipment, including an adequate microscope for diagnostic evaluations.  The State shall
      submit a comprehensive action plan as described in Paragraph 65 of this Agreement
      identifying the specific measures the State intends to take in order to bring the Facilities
      into compliance with this paragraph.

## Access to Care

(19)  Access to Medical and Mental Health Services  The State shall ensure that all inmates
      have adequate opportunity to request and receive medical and mental health care.
      Appropriate medical staff shall screen all written requests for medical and/or mental
      health care within twenty-four (24) hours of submission, and see patients within the next
      72 hours, or sooner if medically appropriate.  The State shall maintain sufficient security
      staff to ensure that inmates requiring treatment are escorted in a timely manner to
      treatment areas.  The State shall develop and implement a sick call policy and procedure
      which includes an explanation of the order in which to schedule patients, a procedure for
      scheduling patients, where patients should be treated, the requirements for clinical
      evaluations, and the maintenance of a sick call log.  Treatment of inmates in response to a
      sick call slip should occur in a clinical setting.

(20)  Isolation Rounds  The State shall ensure that medical staff make daily sick call rounds in
      the isolation areas, and that nursing staff make rounds at least three times a week, to give
      inmates in isolation adequate opportunities to contact and discuss health and mental
      health concerns with medical staff and mental health professionals in a setting that
      affords as much privacy as security will allow.

(21)  Grievances  The State shall develop and implement a system to ensure that medical
      grievances are processed and addressed in a timely manner.  The State shall ensure that
      medical grievances and written responses thereto are included in inmates' files, and that
      grievances and their outcomes are logged, reviewed , and analyzed on a regular basis to
      identify systemic issues in need of redress.  The State shall develop and implement a

9

procedure for discovering and addressing all systemic problems raised through the grievance system.

## Chronic Disease Care

(22)   Chronic Disease Management Program  The State shall develop and implement a written chronic care disease management program, consistent with generally accepted professional standards, which provides inmates suffering from chronic illnesses with appropriate diagnosis, treatment, monitoring, and continuity of care.  As part of this program, the State shall maintain a registry of inmates with chronic diseases.

(23)   Immunizations  The State shall make reasonable efforts to obtain immunization records for all juveniles who are detained at the Facilities for more than one (1) month.  The State shall ensure that medical staff update immunizations for such juveniles in accordance with nationally recognized guidelines and state school admission requirements.  The physicians who determine that the vaccination of a juvenile or adult inmate is medically inappropriate shall properly record such determination in the inmate's medical record.  The State shall develop policies and procedures to ensure that inmates for whom influenza, pneumonia and Hepatitis A and B vaccines are medically indicated are offered these vaccines.

## Medication

(24)   Medication Administration  The State shall ensure that all medications, including psychotropic medications, are prescribed appropriately and administered in a timely manner to adequately address the serious medical and mental health needs of inmates.  The State shall ensure that inmates who are prescribed medications for chronic illnesses that are not used on a routine schedule, including inhalers for the treatment of asthma, have access to those medications as medically appropriate.  The State shall develop and implement adequate policies and procedures for medication administration and adherence.   The State shall ensure that the prescribing practitioner is notified if a patient misses a medication dose on three consecutive days, and shall document that notice.  The State's formulary shall not unduly restrict medications.  The State shall review its medication administration policies and procedures and make any appropriate revisions.  The State shall ensure that medication administration records ("MARs") are appropriately completed and maintained in each inmate's medical record.

(25)   Continuity of Medication  The State shall ensure that arriving inmates who report that they have been prescribed medications shall receive the same or comparable medication as soon as is reasonably possible, unless a medical professional determines such medication is inconsistent with generally accepted professional standards.  If the inmate's reported medication is ordered discontinued or changed by a medical professional, a medical professional shall conduct a face-to-face evaluation of the inmate as medically appropriate.

# EXHIBIT B

**DEPARTMENT OF CORRECTION**
**Bureau of Prisons**
**245 McKee Road**
**Dover, Delaware 19904**

*☒ D=INF, Ward 3*

March 12, 2007

Inmate WILLIAMSON DAVID W
SBI # 00183022
DCC  Delaware Correctional Center
SMYRNA DE, 19977

Dear DAVID WILLIAMSON:

We have reviewed your Grievance Case # 59170 dated 07/30/2006.

Based upon the documentation presented for our review, we uphold your appeal request.

Accordingly, there is no further issue to mediate nor Outside Review necessary as provided by
BOP Procedure 4.4 entitled "Inmate Grievance Procedure", Level III appeals.

Sincerely,

Richard Kearney
Bureau Chief

**DCC Delaware Correctional Center**
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

# GRIEVANCE REPORT

## OFFENDER GRIEVANCE INFORMATION

| | | | |
|---|---|---|---|
| **Offender Name** : WILLIAMSON, DAVID W | **SBI#** : 00183022 | **Institution** : DCC | |
| **Grievance #** : 59170 | **Grievance Date** : 07/30/2006 | **Category** : Individual | |
| **Status** : Resolved | **Resolution Status** : Level 3 | **Resol. Date** : 03/15/2007 | |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 07/30/2006 | **Incident Time :** | |
| **IGC** : Merson, Lise M | **Housing Location :** Bldg D/Infirmary, Ward, Cell 3, Single 1 | | |

## OFFENDER GRIEVANCE DETAILS

**Description of Complaint:** Inmate claims: Deliberate indifference to my known serious medical needs by CMS by employing / permitting a custom / policy of repeatedly  denying / delaying the distribution of chronic care meds for non medical reasons. Tenth consecutive interruption on 7/30/06.

**Remedy Requested** : 1. Provide all prescribed  120 doses, 4 cards, at beginning of cycle to limit interruptions. 2. provide emergency stock supply of chronic care meds within 24 hors of notice of any interruption; and provide damages.

## INDIVIDUALS INVOLVED

| Type | SBI # | Name |
|---|---|---|
| | | |

## ADDITIONAL GRIEVANCE INFORMATION

**Medical Grievance :** YES                    **Date Received by Medical Unit :** 08/08/2006

**Investigation Sent** : 08/08/2006      **Investigation Sent To** : Rodweller, Deborah

**Grievance Amount :**

DCC  Delaware Correctional Center
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

## INFORMAL RESOLUTION

### OFFENDER GRIEVANCE INFORMATION

| | | |
|---|---|---|
| **Offender Name :** WILLIAMSON, DAVID W | **SBI#** : 00183022 | **Institution** : DCC |
| **Grievance #** : 59170 | **Grievance Date** : 07/30/2006 | **Category** : Individual |
| **Status** : Resolved | **Resolution Status:** Level 3 | **Inmate Status :** |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 07/30/2006 | **Incident Time :** |
| **IGC** : Merson, Lise M | **Housing Location :**Bldg D/Infirmary, Ward, Cell 3, Single 1 | |

### INFORMAL RESOLUTION

**Investigator Name** : Rodweller, Deborah                    **Date of Report** 08/08/2006

**Investigation Report :** inmate states" my medications were 9 days late". next level

**Reason for Referring:**

**Offender's Signature:**_____

**Date**                 :_____

**Witness (Officer)**    :_____

DCC  Delaware Correctional Center
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

## GRIEVANCE INFORMATION - IGC

### OFFENDER GRIEVANCE INFORMATION

| | | |
|---|---|---|
| **Offender Name :** WILLIAMSON, DAVID W | **SBI#** : 00183022 | **Institution** : DCC |
| **Grievance #** : 59170 | **Grievance Date** : 07/30/2006 | **Category** : Individual |
| **Status** : Resolved | **Resolution Status** : Level 3 | **Inmate Status :** |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 07/30/2006 | **Incident Time :** |
| **IGC** : Merson, Lise M | **Housing Location :** Bldg D/Infirmary, Ward, Cell 3, Single 1 | |

### IGC

**Medical Provider:**                    **Date Assigned**

**Comments:**

[x] **Forward to MGC**          [ ]   **Forward to Medical Provider**   [ ]   **Warden Notified**

[ ]  **Forward to RGC**          **Date Forwarded to MGC :**      08/11/2006

[ ] **Offender Signature Captured**      **Date Offender Signed**    :

DCC Delaware Correctional Center
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

Date: 03/15/2007

## GRIEVANCE INFORMATION - Appeal

### OFFENDER GRIEVANCE INFORMATION

**Offender Name :** WILLIAMSON, DAVID W

**SBI#** : 00183022

**Institution** : DCC

**Grievance #** : 59170

**Grievance Date** : 07/30/2006

**Category** : Individual

**Status** : Resolved

**Resolution Status :** Level 3

**Inmate Status :**

**Grievance Type:** Health Issue (Medical)

**Incident Date** : 07/30/2006

**Incident Time :**

**IGC** : Merson, Lise M

**Housing Location :** Bldg D/Infirmary, Ward, Cell 3, Single 1

### APPEAL REQUEST

Appeal arrived 10/9/2006. Appeal accepted, Cpl Merson did not collect grievances/appeals due to being out on leave. Aopeal states: Grievant filed emergency medical grievance #59170 because the newest incident - an 8 day chronic care medication interruption was the 10th consecutive chronic care medication interruption between July 05 and July 06, and despite repeated assurances by CMS to correct the continuous yet unnecessary problem (which is documented in a prior completed medical grievance #15453) CMS has intentionally refused to correct the chronic care medication interruptions. In fact, CMS has flatly refused to implement any reasonable corrected measure - flatly refused to provide grievant with his doctors prescribed meds in a timely and appropriate. Moreover, CMS has intentionally falsified medical records in Grievant¿s medical file in a bad faith attempt to fabricate a semblance of corrective action and or to manufacture a defense to CMS's deliberate indifference to Grievant¿s known serious medical condition. The DOC is knowledgeable of these on-going and pervasive chronic care medication interruptions by virtue of medical grievance #15433 and the instant medical grievance 59170, and it is clear CMS refuses to correct the problem - and now CMS is engaged in falsifying Grievant¿s medical records. These acts demand immediate corrective action to preclude further suffering and further constitutional violations.

### REMEDY REQUEST

DCC **Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

## GRIEVANCE INFORMATION - BGO

### OFFENDER GRIEVANCE INFORMATION

| | | |
|---|---|---|
| **Offender Name :** WILLIAMSON, DAVID W | **SBI#** : 00183022 | **Institution** : DCC |
| **Grievance #** : 59170 | **Grievance Date** : 07/30/2006 | **Category** : Individual |
| **Status** : Resolved | **Resolution Status :** Level 3 | **Inmate Status :** |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 07/30/2006 | **Incident Time :** |
| **IGC** : Merson, Lise M | **Housing Location :** Bldg D/Infirmary, Ward, Cell 3, Single 1 | |

### REFERRED TO

**Due Date :** 10/18/2006          **Referred to:** Person          **Name:** Welch, James

**Type of Information Requested :**
Grievant reports meds supply issue.

**Response to Information Requested :**

### DECISION

**Date Received :** 10/10/2006

**Decision Date** : 12/07/2006          **Vote :** Uphold

**Comments** :

Ensure medications are provided as ordered. Ensure CCC occurs every 90 days. lab work needs to be reviewed by MD and followed up on.

DCC Delaware Correctional Center
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

## GRIEVANCE INFORMATION - Bureau Chief

### OFFENDER GRIEVANCE INFORMATION

| | | |
|---|---|---|
| **Offender Name :** WILLIAMSON, DAVID W | **SBI#** : 00183022 | **Institution** : DCC |
| **Grievance #** : 59170 | **Grievance Date** : 07/30/2006 | **Category** : Individual |
| **Status** : Resolved | **Resolution Status :** Level 3 | **Inmate Status :** |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 07/30/2006 | **Incident Time :** |
| **IGC** : Merson, Lise M | **Housing Location :** Bldg D/Infirmary, Ward, Cell 3, Single 1 | |

### DECISION

**Decision Date:** 03/12/2007          **Vote :** Uphold

**Comments :**

## GRIEVANCE INFORMATION - MGC

### OFFENDER GRIEVANCE INFORMATION

| | | |
|---|---|---|
| **Offender Name :** WILLIAMSON, DAVID W | **SBI#** : 00183022 | **Institution** : DCC |
| **Grievance #** : 59170 | **Grievance Date** : 07/30/2006 | **Category** : Individual |
| **Status** : Resolved | **Resolution Status :** Level 3 | **Inmate Status :** |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 07/30/2006 | **Incident Time :** |
| **IGC** : Merson, Lise M | **Housing Location :** Bldg D/Infirmary, Ward, Cell 3, Single 1 | |

### MGC

**Date Received :** 08/11/2006          **Date of Recommendation:** 09/29/2006

### GRIEVANCE COMMITTEE MEMBERS

| Person Type | SBI # | Name | Vote |
|---|---|---|---|
| Staff | | Eller, Gail | Uphold |
| Staff | | Heddinger, Brenda | Uphold |
| Staff | | Gordon, Oshenka | Uphold |
| Staff | | McCreanor, Michael | Abstain |

### VOTE COUNT

| Uphold : 3 | Deny : 0 | Abstain :1 |
|---|---|---|

### TIE BREAKER

| Person Type | SBI # | Name | Vote |
|---|---|---|---|

### RECOMMENDATION

Hearing Held 9/28/2006.
Uphold: Check with pharmacy about medications if need order get MD to write order & schedule to see MD.

Exhibit-C

David Williamson
SBI # 183022
W-1 . L-12
1181 Paddock Rd
Smyrna, DE 19977
April 4, 2007

CMS, Inc.
Attn. S. Altman, Ombudsman
Re: Medical Grievance # 59170: Chronic Care Medications

Mr. Altman:

Greetings. On 7-30-06 I filed MG # 59170, of which grieved the on-going and unnecessary interruptions in receiving my chronic care meds. Said meds are Self-meds (i.e. KOP) and as a resolution I requested that I be provided all four med cards (i.e. 120 doses ea.) at the beginning of the med cycle.

Consequently, on March 15, 2007 the D.O.C. - via the Bureau Chief, Mr. R. Kearney - upheld my Appeal request in MG # 59170. Therefore, I expect CMS to comply with the Department's holding and provide the two remaining med cards on the current cycle, and thereafter, provide all four med cards for subsequent med cycles.

Respectfully,

David W

C.C. District Court  CA. No. 06-379-SLR

# EXHIBIT D

DAVID WILLIAMSON
SBI # 183022, W-1, L-12
1181 Paddock Rd, DCC
SMYRNA, DE 19977

Cathleen Trainer Esq., U.S. DEPT. OF JUSTICE

Re: Non-compliance with DOJ/Delaware's Agreement: Medical-
"Medication Administration"

Dear Interested Parties:

Greetings. I am submitting this complaint for non-compliance of item (24 Medication Administration) of the Dec. 2006 Agreement. I realize third parties do not enjoy enforceable rights of the Agreement, however, the integrity of the "self reporting" component requires consideration and investigation of this non-compliance.

First. I am a chronic-care patient who receives "KOP" (i.e. Self-meds). On 4-7-07, I notified D.C.C.'s pharmacy that I was down to my last six doses of C.C. Meds ..."please provide next set of KOP med. cards." They were not provided and on 4-14-07 my prescribed meds were denied/interrupted. This is my thirteenth med interruption since July 2005. I notified the med nurse of same for the next four days. The prescribing doctor was not notified and I received no C.C. Meds in violation of the Agreement.

— 1 —

1-

Moreover, the med nurse was totally oblivious of any requirement to contact the prescribing physcian if chronic-care meds are interrupted for "three consecutive days." Thus. no efforts or training has been emploued whatsoever to ensure the implementation of item (24) Medication Administration of the Agreement. is actually realized. This is shocking!

These actions suggest a conscious disregard for the mandates of the Agreement by CMS and its personnel. Indeed. I had written CMS Ombudsman, Altman, - at cms's Regional De. Offices- on 4-4-07 concerning the same C.C. Meds, and that according to MG # 59170, the D.O.C. upheld my request that cms provide all 120 doses to me at the beginning of the KOP med. cycle. CMS failed to respond as of the date of this complaint.

In closing, I have been needlessly denied my doctor's prescribed cc meds now for four consecutive days, and there appears to be no end in sight to this on going and pervasive problem.

David W ———                                    4-17-07

— 2 —

c.c. C. Danberg ———, Bureau Chief-Re: MG 59170, CMS De. Offices

1