

David W. Williamson
SBI #183022, W-1, L-12
1181 Paddock Rd.
Smyrna, DE 19977



BO scanned

Megan T. Mantzavinos, Esq. (Counsel for CMS, et al)
Re: Notice of CMS's Noncompliance With Discovery in Williamson v. CMS, et al, 06-379-SLR

Mrs. Mantzavinos, Esq.:

Williamson comes now in good faith to resolve the dispute regarding CMS's answers (D.I. 103 & D.I. 102) to Plaintiff's second and third requests for admissions. CMS's answers do run afoul of discovery rules (e.g. 36 (a), 26 (b), 37(a) (3), etc). Indeed, CMS recited a familiar litany of objections, however, the vast majority of them are blatantly false, evasive, incomplete, and/or without merit.

For example, one of CMS's oft repeated erroneous objections is that "Defendant objects that the request calls for an expert opinion and after a reasonable inquiry, the information known to or readily obtainable by defendants is insufficient to enable it to admit or deny this request." (emphasis added) (CMS's objection 1). CMS employed this objection eleven times in response to Williamson's second set of admissions (second set) and some twenty-eight times in response to Williamson's third set of admissions (third set). On its face, CMS appears to satisfy discovery rules, rule 36 (a) by stating that it made a "reasonable inquiry," but discovery rules do not permit bad faith objections that are only supported by mere rhetorical statements and which lack factual foundation. Nor do they permit stonewalling with dubious claims of the need for an expert opinion. At best CMS's oft repeated objections are evasive, and at worst, they are outrageously false.

I. For example, the following admissions -in no way- require an expert opinion and/or CMS's claim that it made a "reasonable inquire" is false.

1. "Hypothyroidism requires medication... to be taken at about the same time daily and uninterrupted to effectively manage the disease's chronic symptoms...." (See Second set at 8). Here CMS's claim to have made a reasonable inquiry and that an expert opinion is required is without merit. First, had CMS merely reviewed Williamson's medical records –which are in the possession and control of CMS- it would have been alerted that several of its employee doctors had treated Williamson's Thyroid condition. (e.g. Burns, M.D., VanDusen, M.D., Durst, M.D., etc). These doctors are licensed physicians with much experience, and they are qualified to admit, deny, or elaborate on this admission. Moreover, hypothyroidism is a well known disease and any comparable physician's desk reference would contain this information. Clearly, CMS failed to make a reasonable inquiry. (Williamson's point equally applies t items 6, 9-14, of second set; and items 1, 9, 10, 12, 14, 15, 17-22, 24, 28-30, 34, & 49 of third set).

2. "Williamson's clinical depression was and is a direct and proximate result of the CCMI's [chronic-care med interruptions]...." (See second set at item 22). This time CMS's objection 1 is blatantly false. Had CMS reviewed Williamson's medical records it would have found that CMS psychiatrist, Anthony Cannuli, had specifically diagnosed Williamson with clinical depression due to secondary general medical condition. (i.e. Hypothyroidism that is aggravated by the CCMIs). Clearly, CMS failed to make a reasonable inquiry of the readily available records or of the resident expert. (Williamson's point equally applies to item 50 of second set).

3. "Because a CCMI causes Williamson to suffer a resurgence of chronic symptoms of which include creating a substantial and likely risk of future personal injury and/or psychological injury [See 2 above], any CCMI constitutes an emergency pursuant to IGP." [Inmate Grievance Procedure]. (See second set at item 67). Here CMS's objection 1 is both false and is in irreconcilable conflict with another admission.

For instance, CMS admitted the following:

1

"Emergency Grievance mandates the following: a) "Issues that concern substantial risk of personal, physical, or psychological inmate injury shall be addressed immediately by the Warden/Warden's Designee (W/WD)... b) ... [W/WD] shall respond within one calendar day..... (See D.I. 103 at 55).

Thus, CMS admitted emergency medical issues are issues that concern substantial risk of personal, physical, or psychological inmate injury. Furthermore, CMS admitted under IGP that this criteria required "immediate" response within one calendar day. The IGP is the governing standard. Moreover, it is a fact that Williamson was diagnosed and is being treated for clinical depression in direct relation to his thyroid condition. Fed. R. Civ. Proc., rule 36 (a) provides that request may be made to admit any matters... that relate to statements of opinions of fact or of the application of law to fact. See McSparren v. Hanigan, 225 F. Supp. 628 (E.D. Pa. 1963). CMS only needed to apply the readily known facts to the admitted IGP standard. Clearly no expert was required nor was any reasonable inquiry conducted. (Williamson's point equally applies to items 24, 50 of second set; and items 22, 30, 31, 34, 42, & 44 of third set).

    4. "An ACL injury in which the ligament is ruptured, the meniscus discs and deteriorating, and contusions to the upper and lower leg bones are occurring... is an objective serious medical condition." (See item 1 of third set). Again CMS's objection 1 is false and evasive. First, CMS's doctor, Durst, M.D., specifically diagnosed Williamson with these very symptoms and ordered an MRI and a referral to an orthopedic specialist in May/June of 2006. (e.g. DuShuttle, M.D.). Then DuShuttle's specialized finding was that Williamson's ruptured ACL would not heal on its own and it required reconstructive surgery, etc. Thus, had CMS actually made a reasonable inquiry of Williamson's records and applied the facts to the known legal standard – See 36 (a) above at item 3- then CMS would have been able to answer properly. Clearly, CMS did neither despite its rhetorical claims. (Williamson's point equally applies to items 9-12 of third set).

    II. Another of CMS's oft repeated, but erroneous objections is that "Denied. By way of further answer, this request for admission is a conclusion of law upon which the plaintiff bears the burden of proof at trial." (See D.I. 103 at item 26). (CMS objection 2). CMS dubiously employed this objection some forty-eight times regarding the second set and some ten times regarding the third set. It too is without merit. For example, the following admissions –in no way- require a conclusion of law or shield a defendant from having to answer truthfully.

    1. "Williamson fully and adequately exhausted the administrative remedies available relating to the (1) CCMI9s), (2) denial of Clinics, and or (3) retaliation or adverse acts relating to 1 and 2." (See item 26 of second set). Here CMS's reliance on objection 2 is wholly frivolous. First, the IGP 4.4 lists the available administrative steps available to any grievant. The process is exhausted once the Bureau Chief renders a final appeal decision. Thus, it is a simple factual matter of making a reasonable inquiry into whether Williamson's relevant medical grievances received a final appeal decision from the Bureau Chief –and nothing more than that is required. Also, CMS is confused as to who has the burden of proof. Consequently, Williamson need not prove exhaustion, because it is an affirmative defense and the burden begins with a defendant. Moreover, CMS's claim appears to be in conflict with its other admissions. For instance, CMS admitted that Williamson filed "no less than four medical grievances" (MG) relating to the CCMI(s). (See D.I. 103 at 70 and 63). CMS admitted that Williamson's MG #59170 related to denial of clinics (Id at 84-85), and admitted Williamson's grievances claiming reprisal. (Id at 81 and 93). Thus, CMS admitted Williamson filed grievances related to the CCMI(s), denial of Clinics, and reprisal; admitted to knowledge of their respective filing numbers, but failed to make a reasonable inquiry into any final decision of the Bureau Chief. This would unquestionably provide the necessary information to allow CMS to answer this admission. Also, the information is readily available by defendant because it is stored in the DDOC/DCC DACS data base and CMS has access to same. Discovery rules do not permit CMS to substitute its duty to provide complete and truthful responses with frivolous objections. (Williamson's point equally applies to items 13, 39, & 44 of third set).

2. "CMS processed EMG #15453 as normal, thus CMS's act is a constructive decision that no emergency existed." (See item 64 at second set). Here too CMS's objection 2 is false and incomplete. It is also in conflict with CMS's admission that emergency grievances "shall be addressed immediately" within one calendar day" and EMGs that do "not meet the emergency criteria" shall be returned... for ... normal IGP process steps." (See D.I. 103 at item 55). Consequently, there is no question of law in determining whether an EMG was addressed immediately within one calendar day or whether it was not. (i.e. processed pursuant to normal IGP steps). If an EMG was not addressed within one calendar day, than CMS clearly determined that it did not meet the emergency criteria. (i.e. constructive determination that no emergency existed). Based on the known and admitted standard, this is but a logical inference- and it is not dependant upon a conclusion of law as CMS falsely claims. (Williamson's point equally applies to items 65, 68, 69, 71, 82, 85-88, 90, 97-99 of second set; and item 44 of third set).

3. "Said Med Log enables CMS to easily calculate when the next Self Med card [(i.e. KOP)] would be due for disbursements." (See item 42 of second set). Here CMS's objection 2 is so egregiously false that it shocks the conscience that professional counsel would actually present it and sign off on it. It is a fact that CMS records the amount of and the date that KOP meds are distributed, this it is a simple matter of applying this knowledge to a calendar and easily calculate when a subsequent KOP med card would be due. Clearly, this is a factual matter that does not require a conclusion of law. (Williamson's point equally applies to items 16-18, 27-30, 40, 43, 45, 48, 58-60, 62, 65, 69, 71, 73, 75, 80, 82, 92, 95, 100-105 & 107-110 of second set; and items 42, 57-59 of third set). CMS could have easily determined the above factual questions with a reasonable inquiry, but chose instead to offer frivolous objections.

III. Another oft repeated but merit less objection is that "After a reasonable inquiry, the information known to or readily obtainable by defendant is insufficient to enable it to admit or deny this request." (See D.I. 103 at item 49). (CMS objection 3) CMS erroneously employed this objection some ten times regarding the second set and some fourteen times regarding the third set. Again, on its face, CMS provides the illusion of complying with discovery rules with the rote statement that it made a "reasonable inquiry." However, if one only considers the admissions relative to readily accessible knowledge and/or knowledge that are in CMS actual possession, then it becomes clear that CMS' objection is made in bad faith.

For example, CMS could have easily provided complete and accurate admissions/denials to the following because the relevant information was easily obtained or in possession of CMS.

1. "CMS possessed an alternative supply of Levothyroxine... in its Stock Supplies... and could have corrected several of Williamson's CCMI(s) but failed to do so until doctor Burns provided stock supplies to Williamson in January 2006." (See item 49 of second set). It is a fact that on 1-04-06 Williamson was not scheduled to pick up his thyroid KOP meds. Indeed, Williamson was experiencing a CCMI specifically because no prior Clinic had been conducted, nor was there an Order placed during the previous 90 days. Williamson was contacted at work, called in due to Deputy Warden Pierce's intervention, and an unscheduled clinic was conducted by Burns, M.D. Burns consequently produced Levothyroxine (0.088 MG) from stock. They were dated 03-19-05, thus they were present between late March 2005 and Jan. 2006. Therefore, these stock meds could have been utilized to correct prior CCMI(s). CMS maintains its own drug records (e.g. invoices, BOL, etc), and it is also knowledgeable of when any Clinics/med orders were last placed/conducted for Williamson. Thus, CMS falsely claimed to have made a reasonable inquiry.

2. "Chuks and Plante were scheduled and present at the DCC Hospital on 11-29-05." (See item 76 of second set). Here CMS proposes the absurd, because it is disingenuous to claim that after making a reasonable inquiry that CMS was unable to determine if CMS employees were scheduled for work at a CMS work-site. (Williamson's point equally applies to items 83, 86-87, 90, 94 & 96-98 of second set; and items 35-36, 40, 45, 46, 48, 50-56, & 61 of third set).

IV. Another oft repeated objection that CMS employed in its campaign of evasiveness and bad faith is that "Defendant objects that this request is vague and incapable of being admitted or denied." (See D.I. 103 at 78). Here CMS exhibits its shameless use of unsupported conclusory allegations that run afoul of common sense. CMS employed this (CMS objection4) some twelve times. For example, the following admissions are in no way vague simply because CMS declares them so. "Williamson was denied his needed Clinic on 11-29-05." (See item 78 of second set). Either a clinic was provided on 11-29-05 or it was not, there is nothing vague about this admission. Either the clinic was needed to reorder Williamson's chronic care meds or it was not. Indeed, said clinic was rescheduled for the second time and Williamson experienced a CCMI that exceeded twenty days. CMS objection 4 is preposterous and defies common sense. (Williamson's point equally applies to items 3, 4, 21, 31, 52, 57, 56, & 74 of second set; and items 16 of the third set).

V. An equally erroneous version of the vague objection is employed in bad faith by CMS too. Here CMS chooses a term or word to claim makes the admission too vague to answer. For instance, "Defendant objects that the use of the term "healthcare provider" renders this request vague…." (See D.I. 103 at item 3). However, CMS again is in clear conflict with prior admissions. For example, CMS admits the "CMS is a private for profit company in the business of providing healthcare in the institutional/correctional setting." (emphasis added) (See item 2 of D.I. 103). Thus, it is disingenuous to admit to being a company "providing healthcare," but then object to the term "healthcare provider." (Williamson's point equally applies to items 4, 21, 31, 52, 57, 74, 78 of second set.

VI. Lastly, CMS falsely claims an inability to answer due to "undefined" terms. (See D.I. 103 at item 5 and "Self Meds" and item 7 "chronic-care."). CMS blatantly misrepresents the facts because Williamson incorporated the definitions listed in his combined second set of interrogatories and production of documents….. (D.I. _____), which were directed to CMS previously and defined said terms.

## STIPULATIONS

Williamson stipulates to strike the following objectionable terms:

a) "normally" (item 32 of second set);
b) "is designed to" and replace with "is to" (item 33 Id.);
c) "also" and "designed" (item 34 Id.);
d) "normally" (item 38 and at 39 Id.);
e) "pharmacy and/or" (item 41 Id.); and
f) "refused" and replace with "failed" (item 74 Id.).

Consequently, Williamson stipulates to strike objectionable terms and thus CMS is expected to provide responses to these admissions.

In conclusion, the party who has requested admissions may move to determine the sufficiency of the answers or objections and if the court determines an objection is not justified, the matter may be deemed admitted or amended and other sanctions may be forthcoming. In the event that CMS fails its duty to complete the incomplete answers, or correct the false or evasive answers within ten days of receipt of this notice, then Williamson will move for a motion to compel and/or a sufficiency hearing pursuant to 36 (a), 37 and or 26 (e) (1), and any other applicable rules. Williamson is hopeful that CMS will correct its acutely deficient answers in D.I. 102 & 103.

Respectfully,

_Dave W_                    _7-8-07_
David Williamson              Date

4

## CERTIFICATE OF SERVICE

I, David Williamson, Plaintiff, do swear that I have caused to be delivered upon the defendants listed below the following true and correct documents:

1. CMS's Noncompliance with Discovery ....

2. N/A

By placing same in a U.S. Mail receptacle on the __9__ day of __July__ 200__7__.

Megan T. Matzavinos, Esq.
913 N. Market St., Suite 800
Wilmington, DE 19801
(Counsel for CMS. Et al)

McKenty, Daniel, Esq. BAR # 2689
1225 N. King St., Suite 1100
P.O. Box 397
Wilmington, DE 19899-0397
(Counsel for FCM, Inc.)

James E. Drnec, Esq
711 N. King St.
Wilmington, DE 19801
(Counsel for Dr. A. Zimble)

N/A

N/A

David Williamson, SBI #183022
1181 Paddock Rd., W-1, L-12
Smyrna, DE 19977

Signed as original

I/M Williamson
SBI# 183022  UNIT _____
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

WILMINGTON DE
10 JUL 2007

U.S.M.S.
X-RAY

U.S. District Court
844 N. King St.
Lock box 18
Wilm, DE 19801-3570