IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

DAVID W. WILLIAMSON, )
    Plaintiff, )
                                     )    C.A. 06-379-SLR
CORRECTIONAL MEDICAL SERVICES, Inc, et al, )
    Defendants.



PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT AND/OR MOTION FOR REARGUMENT

    Plaintiff, Williamson, pro se, comes now, pursuant to Fed. R. Civ. P., rule 60 (b) and any applicable Delaware Local Rule, and requests that the Court grant Williamson's Motion for Relief From Judgment and/or motion for reargument regarding the Court's September 10, 2007 Memorandum Order denying his motion for a TRO/PI. (See ~~~~ Order/Memor. D.I. ____ ). In support thereof, Williamson states the following:

### Introduction

Williamson believes the Court should reconsider its Order denying Williamson's TRO/PI request and its Order denying his motion to strike CMS's (i.e. Doctor Vandusen's affidavit relating to thyroid disease), because therein CMS presents impertinent and/or scandalous matter in an attempt to resurrect argument/defenses that CMS has long since waived, and, moreover, CMS's new argument/defense (i.e. Vandusen's affidavit) is insufficient, immaterial, untimely, and it is in irreconcilable conflict with the established record. Williamson offers the following: Williamson is pro se and seeks pleading leniency pursuant to Haines v. Kerner, 404 U.S. 519 (1972).

### NATURE AND STAGE OF THE TRO/PI

1. Williamson filed a TRO/PI on 1-12-07 of which sought medical care for Williamson's (1) thyroid condition, (2) torn ACL/Knee injury, (3) chronic periodontal disease, and (4) broken tooth. (D.I. 38, Memorandum D.I. 39, & Exhibits D.I. 40). (Williamson's TRO/PI). In short, Williamson sufficiently supported all four of the prongs the courts consider for a TRO/PI with evidence, affidavits, reports, CMS communications, and medical grievances (i.e. administrative records). CMS failed to dispute –let alone refute- a single claim by Williamson that any of these conditions were serious medical conditions, and CMS failed to dispute/refute Williamson's claims that he would likely experience serious injury absent the requested medical care. Alternatively, CMS hung its hat largely upon a bold statement that Williamson could not prove that CMS was deliberately indifferent to his medical needs, and that the medication lapses were alleged, but nevertheless corrected (i.e. mooted) (the ACL matter is indeed moot). CMS's position of allegedly correcting Williamson's claims appears to concede that Williamson suffers serious medical conditions that require appropriate medical care. In any event, CMS never disputed the serious nature(s) or the likelihood of serious injury whatsoever. CMS also failed to even address Williamson's periodontal disease. (See CMS's response D.I. 50-51).

2. CMS filed a response on 2-01-07 (D.I. 50-51) (CMS's response). In short, CMS claimed that Williamson's claims of Chronic-care medication interruptions (CCMI) were "alleged lapses" and that Williamson was "receiving his medications as prescribed." (See CMS's response at B). Also, CMS claimed –for the fourth time- that it has implemented "a new medication administration policy." (New policy). (Id). Again, CMS never challenged Williamson's consistent and never wavering claims of experiencing a resurgence of chronic symptoms as a result of the "alleged" CCMI(s) (e.g. *chronic fatigue* and *clinical depression that causes a significant impairment of Williamson's normal daily functions, emotional and mental distress, significant deterioration of his cardiovascular/pulmonary system and physical body, etc.*). CMS's only response was to

characterize Williamson's claims of eleven CCMI(s) –ten consecutive- as "alleged lapses." (Id) However, CMS had all the relevant KOP medication distribution/dosage records, but failed to produce them. Alternatively, Williamson produced an affidavit: medication distribution log, which outlined the eleven CCMI(s). Also, Williamson invoked the missing evidence rule that a party who has control of relevant evidence, but fails to produce it shall have an inference drawn that had the party actually produced said evidence, it would have been unfavorable to them. (See McCrary-El v. Shaw, 992 F.2d 809, 812-13 (8th Cir. 1993). Subsequently, the Court Ordered on 8-09-07, that CMS was to produce Williamson's medical records. Consequently, every one of the CCMI(s) Williamson outlined, turned out to be truthful. Indeed, Williamson only had one single med distribution date wrong –and that was only by one day- regarding one of the eleven CCMI(s). It did not alter the fact that he still experienced a CCMI in any event. (See Ex-A "medical records of KOP med distribution date/doses). Thus, Williamson has not nor did he receive his CC Meds as prescribed by the various doctors. And alternatively, CMS's unsupported claims (e.g. Williamson was receiving his medications as prescribed, and "alleged lapses"), turned out to be false.

3. On 2-21-07, Williamson filed an objection/motion to strike pertinent parts of CMS's response (e.g. new med admin policy and dentist Kionke's affidavit because it violated Fed. R. of Evidence). The med admin policy was wholly immaterial and presented to mislead the Court. Williamson also presented another affidavit "Notice Log" that outlined the multitudinous notices/communications Williamson presented to CMS regarding the CCMI and the resulting resurgence of symptoms, etc. (Williamson's objection D.I. 67). Kionke's affidavit was also immaterial and misleading, because *she did not examine Williamson for the matters he claimed, nor did she state that she even reviewed his dental records*. Also, CMS could have presented first person affidavits from the treating dentists, but chose not to. Williamson again invoked the missing evidence rule of drawing an inference against the controlling party. Note, that CMS still has not provided these relevant dental records to the Court, despite the Court's Order.

4. On 7-02-07, (D.I. ___), Williamson notified the Court that CMS provided an *admission* that effectively nullified its objection to providing Williamson all four KOP med cards (i.e. 120 doses of Levothyroxine and MVT) (i.e. the relief requested in his TRO/PI). CMS admitted that it "must adhere" to any grievance that is "upheld." (See D.I. 103 at item 51). Williamson's medical grievance (# 59170) was "upheld" at the highest level by the Bureau Chief of the D.D.O.C. on 3-15-07. Therein, Williamson –in part- *requested identical relief to that requested in his TRO/PI relating to the KOP self-meds*. Supporting documents were provided to the Court and CMS. CMS still refuses to provide the relief that it admitted CMS "must adhere" to.

5. On July 19, 07, the Court Ordered CMS "to file with the court... plaintiff's medical and dental records and any information regarding plaintiff's upcoming knee surgery...." (D.I. 119 at item 4).

ARGUMENT

1. Williamson presented his claims regarding the TRO/PI and CMS presented its response. The parties made their positions known to the Court and to each other. The Court subsequently sought additional information: specifically regarding Williamson's medical and dental records, and the status of said knee surgery. The Court did not request or allow the parties to add materially new pleadings, arguments, or defenses. Indeed, CMS impertinently inserts an affidavit from Vandusen into Williamson's medical records like a Trojan Horse. The analogy is appropriate because the result is the same: deception and confusion. First, CMS hung its hat –regarding Williamson's thyroid medication claims- on the assertion that he "is receiving his medications as prescribed." That Williamson claims are nothing more than "alleged lapses," and that because of these ostensible facts, he cannot prove CMS was deliberately indifferent to his medical needs. CMS never disputed, challenged, or

2

even attempted to refute Williamson's sufficiently plead and supported (1) claims of a serious medical condition (e.g. hypothyroidism) or (2) that his serious medical condition requires timely and consistent medication to manage the resurgence of acute, chronic-symptoms of this disease. Indeed, Williamson has repeatedly and consistently articulated the specific and debilitating resurgence of chronic-symptoms, of which he unnecessarily experiences due to the on going CCMI(s) for over two years. CMS staff, doctors, grievance hearing and administrative personnel have all been made aware and not once had CMS challenged or disputed the nature of Williamson's chronic-symptoms. Several CMS doctors specifically noted Williamson's chronic symptoms and Williamson was diagnosed with depression secondary to a general medical condition due to his thyroidism. Depression is a common symptom of hypothyroidism, and it is aggravated every time Williamson experiences a CCMI, because the meds act to replace essential hormones that are not otherwise being produced naturally in the body. All this was plead by Williamson. Williamson never altered his position, claims, or accounts. Williamson has been above board throughout this litigation.

2. The Court, however, accepted Vandusen's affidavit and this was clear error. First, Vandusen's affidavit is in irreconcilable conflict with Williamson's medical records (See Doctor Burns January 2006 Clinic statements, which highlight Williamson's chronic fatigue –which supports his claims of substantial impairment of his normal daily functions, etc.; and see Psychiatrist Cannuli, who specifically diagnosed Williamson with Clinical depression secondary to a general medical condition (i.e. aggravated thyroidism specifically due to the interruptions in Williamson's CC Meds). Clearly, chronic fatigue and clinical depression, which are directly caused by the CCMI to his thyroid meds and diagnosed by competent doctors (i.e. Burns and Cannuli), equate to a serious medical condition, and therefore Williamson enjoys a likelihood of success on the merits. VanDusen's affidavit is a self-serving, manufactured, fantasy that lacks merit and is in conflict with the established record. Moreover, Williamson presented Exhibits in his Motion for Appointment of Counsel (D.I. ____), which also evidenced how his depression and chronic fatigue significantly impaired his employment record and academic pursuits due to the resulting breakdown in mental acuity and confusion, etc. (See Ex. Therein). All this evidence belies Vandusen's untimely and frivolous affidavit. Moreover, CMS never took exception to Williamson's request for an independent expert opinion, and Williamson renewed his request in response to Vandusen's affidavit. The Court was warranted in consulting an independent expert relating to this highly disputed issue, which is also in irreconcilable conflict with the record. The Court has erred in relying of Vandusen's affidavit due to its clear conflict with the record. Williamson is suffering tangible and significant physical, mental, and emotional injuries that exceed the standard set to define a serious medical condition. Vandusen's affidavit is but another example of CMS's campaign of deception.     For example, CMS has demonstrated a clear pattern of deception, misstatements of fact, and manipulation. For instance,

- a) Williamson articulated eleven CCMI(s) that CMS termed alleged, but the medical records verify all eleven CCMI(s) (See D.I. 40 Aff'd of Medication Log & D.I. 147, Medical Records at Ex-A);
- b) CMS presented a med policy that failed to address the issue (i.e. KOP self-meds logistics)(See D.I. 51, Ex-A);
- c) CMS claimed on three prior occasions ostensible new corrective med administration policies, but they too proved false/failed. (See Williamson's objection at D.I. 66, 67 "Aff't of Log of Notices); and
- d) CMS conducted mock investigations only to be proved false and ultimately forced to concede and reverse its conclusions; fabricated alleged med. Pick-ups/contacts; and employed false statements regarding conducting Chronic-care Clinics that were never conducted. (See Williamson's Reargument dated 08-03-07, D.I.____). This is but a small part of the deception employed and said reargument outlines a clear pattern and supports same with his and CMS documentation.
- e) Also see the affidavit exhibit at Williamson's motion for reargument for his TRO/PI, which outlines a clear pattern of deception by CMS and its employees relating to Williamson's medical issues.

3

In addition, CMS's affidavit is scandalous, too, because of the following compelling reasons:

a) Vandusen's Aff't speaks generally about hypothyroidism, and does not consult the multitudinous accounts of Williamson's experiences of significant impairment, depression, emotional and mental distress, debilitation of cardiovascular/pulmonary and bodily systems, chronic fatigue, and mental confusion all of which conspire to impair his job and academic performance among other tangible things. (See D.I. 46 Sealed Exhibits).

b) Vandusen's Aff't soft-peddles and/or omits some of the common and readily known chronic-symptoms of hypothyroidism (e.g. chronic fatigue, painful edema, higher cholesterol, and increased body fat index), and he fails to outline the long-term residual effects of these chronic-symptoms (e.g. significant muscle mass loss, deterioration of the body, increased body fat index, which conspire to adversely effect the cardiovascular/pulmonary system, internal organs, and overall deterioration on the physical being);

c) Vandusen's Aff't is in irreconcilable conflict with the record and fails to apply Williamson's acute resurgence of chronic-symptoms (e.g. depression, chronic fatigue, etc.), to the standard;

   i. Williamson was diagnosed with depression secondary to a general medical condition (i.e. hypothyroidism) (See Ex-B, Psychological Medical Records),

   ii. Several CMS doctors diagnosed Williamson and or noted his chronic symptoms. (See Ex-C); and

   iii. Williamson has articulated these chronic-symptoms in countless communications and grievances and never has CMS challenged his assertions, but alternatively stated it would provide the meds (See MG #15453, #17197, # 21201, & # 59170 at Williamson's objection, D.I. 67 Exhibits "Aff't of Notices [to CMS] and Ex.: A-3 Letter 7-2205, D-1 11-09-05, D-4 12-30-05, E-1 02-09-06, F-1 3-13-06, F-3 3-21-06, F-5 4-19-06, I-1 7-01-06, I-4 7-30-06, I-5 8-07-06, J-3 10-04-06, J-8 1-16-06, & J-9 1-23-07. Id.).

d) Vandusen's aff'd fails to articulate the legal standard or any understanding of the legal standard as it regards a "serious medical" condition; fails to apply Williamson's known symptoms –neither the recurring or residual and deteriorating effects- to the standard; fails to consider the record and observations/diagnosis of peer physicians/professionals; and fails to provide the Court with a complete unbiased and truthful account of the likely, long-term effects of under treated hypothyroidism.

The Court must take the record into consideration, and not merely focus on a single, conflicting, affidavit by a interested party, who has also demonstrated a propensity to make misstatements of fact and attempt to manipulate these proceedings.

In summary, Williamson truthfully illustrated a systemic breakdown in the distribution of the KOP meds admin. System. This breakdown is identical to the finding of the Federal Justice Department, in which it too documented a systemic breakdown on 12-29-06. (See 12-29-06 Findings Letter at Ex-E pages 8-9, and 5-6).

Williamson's claims began in July 2005 and run throughout the Justice Department's investigation. CMS repeatedly asserted that it was implementing new corrective med. Admin. Policies, however, they proved false and/or failures. Clearly, CMS is aware of an obvious problem that requires immediate corrective action in order to mitigate constitutional violations. Williamson proposed a painless solution that would reduce the potential for twelve CCMI(s) down to no more than three per-year simply by providing Williamson all four KOP med cards at the beginning of the med cycle (e.g. 120 doses each). CMS is bound to dispense these meds anyway and thus cannot claim harm. Alternatively, Williamson is experiencing tangible injury due to the on going CCMI(s). Moreover, D.D.O.C. upheld Williamson's grievance that requested identical relief and CMS admitted that it must adhere to any grievance upheld. However, incredibly, CMS still

denies Williamson the relief. The irony is that CMS's continued refusal to provide Williamson his doctor's prescribed meds in a timely and consistent manner –despite the Justice Department's findings, despite CMS's admission that it must adhere to grievances upheld, and despite a clear and obvious problem that demands immediate corrective action, speaks volumes about CMS and suggests malfeasance as well as deliberate indifference to a known serious medical condition. Any reasonable juror could easily infer this just from CMS's continued refusals, let alone the voluminous records, etc.

Lastly, Williamson objects to the fact that not a single of the four dental visits regarding his acute emergency dental episode (e.g. broken tooth), was provided to the Court with Williamson's dental records. (i.e. three visits with Zimble and one visit with Bishop). (See D.I. 15 at 156-178 & D.I. 39, 40 at Ex-IV. A). And it is unclear that the Court permitted CMS to thwart its Order to provide the relevant records, and alternatively focused on a third person affidavit of Kionke despite Williamson's timely and valid objections. Also, Williamson has experienced the permanent loss of two teeth due to the inordinate delays and/or substandard periodontal treatments, and this clearly manifests a serious medical condition. The fact that CMS provided some care is irrelevant to the fact that it was grossly substandard and delayed to the point of causing Williamson permanent injury and the attendant acute pain and suffering. Clearly, the treatment was as Williamson plead, because otherwise he would not have experienced permanent injuries, etc. These too are reflected in Williamson's medical records. The Court is warranted in reconsidering the 10-10-07 denial of TRO/PI relief and alternatively granting said relief

## CONCLUSION

WHREFORE, Williamson requests the Court to reconsider its 10-10-07 denial of TRO/PI relief and alternatively grant the relief Williamson requested therein. Alternatively, if the Court is inclined to allow CMS to open the door to materially new argument/defenses, then Williamson moves the Court to appoint an independent expert to provide truthful and unbiased testimony regarding hypothyroidism and apply Williamson's personal experience of his chronic-symptoms to the standard.

Respectfully,

*David W*                                                      9-18-07

David Williamson, SBI 183022                                   Date
1181 Paddock Rd.
Smyrna, DE 19977

## CERTIFICATE OF SERVICE

I, David Williamson, Plaintiff, do swear that I have caused to be delivered upon the defendants listed below the following true and correct documents:

1. Plaintiff's Motion for Relief from Judgment and/or Motion for Reargument

2. N/A

By placing same in a U.S. Mail receptacle on the __18__ day of __Sept.__ 200_7_.

Daniel McKently, Esq.
(Counsel for FCM, Inc.)
1225 N. King St., Suite 1100
Wilmington, DE 19809-0397

James E. Drnec, Esq
711 N. King St.
Wilmington, DE 19801
(Counsel for Dr. A. Zimble)

Patrick Rock, Esq.
(Counsel for CMS, Inc.)
913 Market St., #800
Wilmington, DE 19801

N/A

David Williamson, SBI #183022
1181 Paddock Rd., W-1, L-12
Smyrna, DE 19977

Signed as Original