IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DAVID W. WILLIAMSON, ) | |
| Plaintiff, ) | |
| v. ) | C.A. 06-379-SLR |
| CORRECTIONAL MEDICAL SERVICES, Inc, et al, ) | |
| Defendants. | |

PLAINTIFF'S THIRD SET OF REQUESTS FOR ADMISSIONS DIRECTED TO CORRECTIONAL MEDICAL SERVICES, INC.

COMES NOW, plaintiff, Williamson pursuant to the appropriate Fed. R. Civ. P., Local Rule, and or case authority. Williamson attests that the instant discovery request is made in good faith, not meant to harass, inconvenience, or be overly burdensome to defendants or to delay these proceedings in any manner. Williamson requests defendant Correctional Medical Services, Inc. (CMS) to make the following admissions, where required under the applicable rules, under oath, within thirty-days of the date of service.

DEFIITIONS

1. If any of these discovery requests cannot be answered completely, answer the discovery request to the extent possible, and specify the reasons for your inability to completely answer.
2. This discovery request is a continuing one. If, after responding, you become aware of any further information responsive to these (interrogatories, admissions, and/or production of documents); you are required to supplement your answer.
3. "Complaint" shall mean and refer to the Complaint filed by plaintiff in the above captioned action, and action shall be employed interchangeably with complaint.
4. "You" and "Your" means the party to whom these Requests were propounded and includes anyone authorized to or purporting to act on its behalf, including but not limited to officers, directors, employees, successors, parent corporations, subsidiary corporations, attorney, agents, or other representative.
5. "Discovery Requests" means, collectively, Plaintiff's Interrogatories, Admissions, and Production of Documents Directed to defendant.
6. "FCMI" shall mean First Correctional Medical, Inc, and "FCM" shall mean First Correctional Medical-Delaware, LLC, and "CMS" shall mean Correctional Medical Services, Inc.
7. "DCC" shall mean Delaware Correctional Center, and "DDOC" shall mean Delaware Department of Corrections.
8. "Identify" when used with reference to a natural person means to state his or her full name, present or last known address, present of last known position or business position and address, and position of business affiliation at the time in question.
9. The term "all" includes the word "any" and the word "any" includes "all." The terms "all" and "each" shall be construed as each and all.
10. The terms "communication" or "communications" shall mean and refer to, without limitation, any document, statement, or expression which constitutes, embodies, evidences or relates to any transmission of a word, statement, fact, thing, idea, writing, instruction, demand or question, whether oral or written, including but not limited to letters, telecopys, telexes, e-mails, voicemails, meetings, discussions, conversations, telephone calls, memoranda, conferences or seminars.
11. The term "document" as used herein is employed in the broadest possible sense under Rule 34 to include any medium upon which information is recorded or preserved, by whomever generated or received, and means without limitation, any written, printed, typed, Photostatted, emailed, photographed, recorded, taped, or otherwise reproduced communication, compilations, or reproductions including computer generated or stored information or date, whether assertedly privileged or not and including all copies or drafts of any document which differs (by annotation or otherwise) in any respect from the original.
12. The term "including" shall be construed to mean "including without any limitation."

13. The terms "person" or "persons" shall mean and refer to the plural as well as the singular of any natural individual, or any firm, corporation, partnership, association, sole proprietorship, group, trust, estate, or any other organization or entity of nay type.

14. The terns "or" and "and" shall be construed conjunctively or disjunctively as necessary to make the request for documents or information inclusive rather than exclusive, i.e. to bring within the scope of the request all response that otherwise might be construed to be outside the scope of the request.

15. The terms "relate" or "relating to" as used herein shall mean concerning, involving, consisting of, alluding to, referring to, appertaining to, regarding, reflecting, evidencing, having any logical or factual connection with or tending to prove or disprove the matter discussed.

16. The terms "you" and "your" shall mean the party to which these requests are directed.

17. The terms "describe" or "description" when used in connection with any act, accounting, action, activity, audit, practice, process, occurrences, plan, communication, conference, discussion, development, service, transaction, test, negotiation, instance, incident, or event, mean to furnish a detailed account of the matters referred to, including the following information:

    a. Its general nature;
    b. The time and place thereof;
    c. A chronological account setting forth each element thereof, what such element consisted of and what transpired as a part thereof;
    d. The identity of each person who performed any function or who had any role in connection therewith (i.e. speaker, participant, contributor of information, witness, etc), or who has any knowledge thereof, together with a description of each such person's function, role or knowledge;
    e. The identity of each document which refers thereto or which was used, referred to or prepared in the course of or as a result thereof; and
    f. The identity of each communication, whether oral or written, which was a part thereof or which referred thereto.

18. The terms "describe" or description" when used in connection with any calculation, computation, amount or figure means to provide:

    a. A detailed explanation of its meaning;
    b. A detailed explanation of the manner in which it was derived, including an itemization of all subcategories included therein;
    c. The identity of each person who performed any function or had any role in connection therewith or who has any knowledge thereof, together with a description of each such person's function, role, or knowledge;
    d. The identity of each document which refers thereto or which was used referred to or prepared in the course of as a result thereof; and
    e. The identity of each oral communication which occurred in the course of the preparation thereof or which referred thereto.

19. When asked to provide or state a "factual basis" the term "factual basis" means to provide in detail all facts related to the matter, including the following;

    a. Each item of information upon which the allegation, contention, claim, or demand to which it pertains is based, including a full description thereof;
    b. With respect to each such item of information, the identity of each person having knowledge and each source thereof, including each document, communication, act, action, activity, accounting, negotiation, practice, process, occurrence, occasion, course of conduct, happening, relationship, scheme, conference, discussion, development, service, instance, incident, event, audit, calculation, and computation, upon which respondent relies with respect thereto.

20. The terms "identify," identification," or "identity" as applied to a person means to provide:

    a. When used in reference to a natural person: full name; present or last known address (both residence and business and telephone numbers), present or last known business affiliation; and present of last known business positions (including job title and description of job functions, duties, and responsibilities);
    b. When used in reverence to any entity other than a natural person: Its full name; the address and telephone number of its principal place of business; the jurisdiction under the laws of which it has been organized or incorporated; the identity of all persons who acted and/or who authorized another to act on its behalf in connection with the matters referred to; in the case of a corporation, the names of its directors and principal officers; and

    c. In the case of an entity other than a corporation, the identities of its partners or principals or all persons who acted or who authorized another to act on its behalf in connection with the matters referred to.
21. The term "identify," identification," or "identity" as applied to an oral communication means to provide the following information:
    a. By whom it was made and to whom it was directed;
    b. Its specific subject;
    c. The date upon which it was made;
    d. All persons who were present when it was made; and
    e. Whether it was recorded, described, or summarized in any writing of any type and, if so, the identity of each such writing in the manner indicated below.
22. The terms "identify," identification," or "identity" as applied to a written communication or document means to provide the following:
    a. Its nature (e.g. letter, memorandum, telegram, note, drawing, etc.);
    b. Its specific subject;
    c. By whom it was made and to whom it was directed;
    d. The date upon which it was made; and
    e. Who has possession of the original and all copies.
23.. "Generally accepted professional standards" means those industry standards accepted by a significant majority of professionals in the relevant field, and includes those reflected in the standards of care such as those published by the National Commission on Correctional Health Care (NCCHC) for sentenced inmates.
24. The terms "adequate," "appropriate," and "sufficient" refer to standards established by clinical guidelines promulgated by professional organizations in the relevant field.
25. "Medical staff" means medical professional, nursing, certified medical assistant, and or pharmacy staff.
26. "Serious medical condition" shall be construed to mean any condition that the stated facts, symptoms, injuries, diagnosis, and/or impairments, would equate to a serious medical condition under the following standard: Estelle v. Gamble, 429 U.S. 97, 106, ____ S. Ct. ____ (1976) and/or Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970 (1994).
27. "MG" shall be construed to mean Medical Grievance, and "EMG" shall mean Emergency Medical Grievance, and these terms are construed under the DDOC Inmate Grievance Procedures 4.4 during the relevant time of this action.
28. The terms "CC Meds" shall mean Williamson' thyroid medications (e.g. Synthroid or Levothyroxine), and the term CCMI" shall mean Chronic-care medication interruption(s) of said CC Meds.
29. Any term and/or words that are not defined herein shall be construed to mean its plain and ordinary usage as defined in a standard dictionary.
30. "IGP 4.4" and "IGP" shall mean the Inmate Grievance Procedure 4.4 authorized by the DDOC for use at DCC and effective during the relevant period.
31. "Chronic-care medication" shall mean Williamson's thyroid medications; "CC Meds" shall mean chronic-care medications; "CCMI" shall mean Chronic-care medication interruption"; and "Clinic" shall mean chronic-care clinic.

INSTRUCTIONS

1. As used herein, the past tense shall include the present tense and the present tense shall include the past tense. The singular shall include the plural and the plural shall include the singular.
2. If any Discovery Request is answered by reference to a group of documents, with respect to each such answer, identify the specific document or documents containing the respect to each such answer, identify the specific document or documents containing the requested information and, if such information is contained in any document exceeding one page in length, include in the identification of said document the number of the particular page or pages (or other descriptive aid) and of the particular line or lines thereof upon which the information referred to in said interrogatories appears in your answer thereto.
3. If you object to any of the Discovery Requests herein, whether in whole or in part, on the grounds that the information sought therein is privileged or confidential, state the following:
    a. Identify the privileged document or communication;
    b. Identify the persons who received or have received the privileged document and/or persons present during the privileged communication;
    c. Identify the person who made the privileged document or communications;

3

       d. Identify the general subject matter of the privileged document or communication; and
       e. State the basis for your claim of privilege with respect to each such document or communication.
4. If, for reasons other than a claim of privilege, you refuse to admit or deny any request for admission herein, please state the grounds upon which the refusal is based with sufficient specificity to permit a judicial determination of the propriety of such refusal.
5. Rules 33, 34, and 36, and any other applicable rules regarding discovery of the Federal Rules of Civil Procedure are hereby incorporated herein by reference.
6. Each Definition and Instruction above shall be fully applicable to each Discovery Request herein.
7. These Discovery Requests are considered to be continuing in character, and whenever additional information responsive to them, but not supplied in answer of them is obtained or becomes known to defendants, it shall be supplied in writing under oath.
8. With respect to each Discovery Request, keep a record of and report in the response to each the identity of each person who supplied information used in the preparation of the answer.
9. Unless otherwise stated or clearly implied form a particular Discovery Request, the relevant time frame for these Discovery Requests is from 01-01-2003 through and including the time when the answers to those Discovery Requests or any supplement thereto is served.
10. These Definitions and Instructions shall apply to all subsequent discovery requests directed to any defendant who is a party to this action and is incorporate therein as referenced.

## THRID SET OF ADMISSIONS DIRECTED TO CMS

1. Admitted that Williamson's CC Meds were interrupted on the following:
       a) From 07-15-05 to 7-27-05, b) From 08-27-05 to 09-05-05, c) From 10-04-05 to 10-06-05,
       d) From 11-05-05 to 11-08-05, e) From 12-07-05 to 1-11-06, f) From 02-11-06 to 02-13-06,
       g) From 03-13-06 to 03-28-06, h) From 04-27-06 to 05-09-06, i) From 06-08-06 to 06-30-06,
       j) From 07-30-06 to 08-08-06, and k) From 10-05-06 to 10-25-06.
2. Admitted that between 07-15-05 and 08-08-06, Williamson was deprived his CC Meds for at least 110 days.
3. Admitted that the CCMI(s) listed above at item #1 could have been corrected and/or mitigated by providing alternate Stock Supplies, and b) there was alternate stock available within DCC until as late as 01-04-06.
4. Admitted that Williamson communicated and/or provided notice of his suffering and/or significant impairment of his normal daily functions on the following dates:
       a) 07-11-05 to Dr. Alie via letter; b) 07-15-05 to CMS/Mr. Linton via MG #15453;
       c) 07-22-05 to Dr. Alie/CMS Delaware Offices (CMS), via Notice letter;
       d) 08-30-05 to CMS via MG# 17197; e) 10-03-05 Plante/Malaney via Notice letter;
       f) 11-09-05 to Dr. Alie/Plante via Notice letter; g) 11-14-05 CMS via MG # 21201;
       h) 11-30-05 to CMS/ Mrs. Mercer IGC via an Addendum to MG # 21201 (Chuks Retribution);
       i) 12-30-05 to CMS via complaint letter to Taylor; j) 02-09-06 to Malaney/Plante via notice letter;
       k) 03-13-06 to Plante via Notice letter; l) 03-21-06 to Plante via Notice letter;
       m) 07-30-06 to CMS/Altman via Complaint letter; n) 08-07-06 to CMS/Altman via Notice letter;
       o) 09-22-06 to CMS/Altman via Notice letter; p) 10-04-06 to CMS/Altman via Notice letter;
       q) 10-15-06 to CMS/Altman via Complaint to D W Pierce; r) 01-16-07 to CMS via Complaint; and
       s) 01-23-07 to CMS/Altman via Complaint. [1]
5. Admitted that hypothyroidism may cause (a) depression, (b) chronic fatigue, (c) either total or partial alopecia, (d) increased cholesterol, and/or (e) painful edema in patients who suffer the disease.

6. Admitted that Williamson was (a) diagnosed with depression secondary to the general medical condition (i.e. specifically hypothyroidism), and (b) of which is specifically related to and is a chronic symptom of his thyroidism.
7. Admitted that Williamson's diagnosed depression is aggravated by lapses in his CC Meds.
8. Admitted that Williamson has made known to medical staff –as reflected by his medical records -and/or been treated for painful edema (specifically to his hands, feet, and face areas).
9. Said painful edema at item 8. above is specifically related to and/or is a symptom of his hypothyroidism.
10. Admitted that Williamson suffers alopecia (i.e. significant hair loss about face and/or body), and (b) which is specifically related to and is a chronic symptom of his thyroidism.
11. Admitted that Williamson's medical records reflect significant alopecia: specifically about Williamson's face (e.g. complete loss of mustache and eye brows), partial loss of his beard, and near total loss of his body hair.
12. Admitted that Williamson is still currently suffering said alopecia listed at item 11 above.
10. Admitted that Williamson's medical records reflect repeated references to chronic fatigue related to his hypothyroidism.
11. Admitted that Doctor Burns (a) diagnosed Williamson as suffering chronic fatigue relating to his hypothyroidism and/or (b) increased his Levothyroxine dose from .05 mgs to .1 mgs, which is a 100 percent increase.
12. Admitted that chronic fatigue significantly impairs one's normal daily functions and/or enjoyment of life.
13. Admitted that depression significantly impairs one's normal daily functions and/or enjoyment of life.
14. Admitted that alopecia that results in a total loss of eye brows, mustache, and/or near total loss of body hair, and the partial loss of beard equates to disfigurement.
15. Admitted that Williamson's total cholesterol remained in the high 230-240 area between July 2005 and July 2006.
16. Admitted that Levothyroxine (and/or Synthroid), medication treatments are "maintenance" treatments, which are to be administered daily and/or uninterrupted.
17. Admitted that Levothyroxine (and/or Synthroid), dosage *must* –in all cases- be determined by a combination of individual clinical reaction and supported by laboratory results (i.e. TSH blood levels).
18. Admitted that the permanent loss of two teeth is a permanent injury.
19. Admitted that Williamson had two teeth extracted by Kionke, and (b) that this loss was a direct result of Williamson's periodontal disease –during the relevant period.
20. Admitted that, on all three occasions that Williamson met with Zimble relating to his broken tooth, doctor Zimble failed to administer any dental treatment whatsoever, and/or (b) Williamson's dental records reflect same for the relevant period.
21. Admitted that the three dental visits with Zimble –above at item 20- covered at least forty days.
22. Admitted that generally accepted professional standards for recommended teeth cleanings –in an otherwise healthy dental environment- is at least every six months.
23. Admitted that appropriate teeth cleanings for one who suffers periodontal disease will likely require (a) teeth cleanings more than the standard semi-annual recommended cleanings.

5

24. Admitted that the DCC on-sight pharmacy (i.e. medication distribution unit), possessed Williamson's CC Meds as early as the following dates, but failed to dispense them to Williamson and/or - * failed to notify Williamson via the Medication Pick-Up listing/notice- until the latter dates:

    a) As early as 07-22-05, but dispensed on 07-27-05;

    b) On 10-06-05, but failed to Notify Williamson;

    c) As early as 11-05-05, but dispensed on 11-08-05;

    d) As early as 02-10-06, but dispensed on 02-28-06;

    e) As early as 03-22-06, but dispensed on 03-28-06;

    f) On 05-09-06, but failed to Notify Williamson;

    g) As early as 06-21-06, but dispensed on 06-29-06; and

    h) As early as 10-21-06, but dispensed on 10-25-06.

25. Admitted that Bailey (Aka Love) did not dispense to Williamson the "single dose" of his CC Meds or any other thyroid meds on 08-31-05.

26. Admitted that Williamson provided notice and/or a request for his CC Meds prior to the CCMI(s) listed at item # 4 a) thru s) above.

---

[1] Note that Williamson has attached any above referenced letters, notices, complaints, and/or grievances as exhibits to either his TRO/PI and/or filings related to the TRO/PI (e.g. Objection and/or motion to strike CMS's response, Reargument, etc.)

Note that IGP 4.4 have also been attached to filings in this court under "Revised [discovery requests] directed to Zimble, which has been provided to Counsel.

*David W——*           9-19-07
David Williamson, SBI #183022       Date
1181 Paddock Rd.
Smyrna, DE 19977

CERTIFICATE OF SERVICE

I, David Williamson, Plaintiff, do swear that I have caused to be delivered upon the defendants listed below the following true and correct documents:

1. Plaintiff's third set of requests for admissions directed to Correctional Medical Services, Inc.

2. Plaintiff's fourth set of request for production of documents directed to Correctional Medical Services

By placing same in a U.S. Mail receptacle on the 21 day of Sept. 2007.

~~Daniel McKently, Esq.
(Counsel for FCM, Inc.)
1225 N. King St., Suite 1100
Wilmington, DE 19809-0397~~

James E. Drnec, Esq
711 N. King St.
Wilmington, DE 19801
(Counsel for Dr. A. Zimble)

Patrick Rock, Esq.
(Counsel for CMS, Inc.)
913 Market St., #800
Wilmington, DE 19801

N/A

David W.
David Williamson, SBI #183022
1181 Paddock Rd., W-1, L-12
Smyrna, DE 19977

David W.
Signed as Original