IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

DAVID W. WILLIAMSON, )
   Plaintiff, )
v. ) C.A. 06-379-SLR
CORRECTIONAL MEDICAL SERVICES, Inc, et al, )
   Defendants.

PLAINTIFF'S COMBINED FIRST SET OF REQUESTS FOR INTERROGATORIES AND PRODUCTION OF DOCUMENTS DIRECTED TO DEFENDANTS MALANEY, PLANTE, AND LOVE

    COMES NOW, plaintiff, Williamson pursuant to the appropriate Fed. R. Civ. P., Local Rule, and or case authority. Williamson attests that the instant discovery request is made in good faith, not meant to harass, inconvenience, or be overly burdensome to defendants or to delay these proceedings in any manner. Williamson requests defendants Malaney and Plante to make the responses to the following discovery requests, where required under the applicable rules, under oath, within thirty-days of the date of service.

## DEFIITIONS

1. If any of these discovery requests cannot be answered completely, answer the discovery request to the extent possible, and specify the reasons for your inability to completely answer.
2. This discovery request is a continuing one. If, after responding, you become aware of any further information responsive to these (interrogatories, admissions, and/or production of documents); you are required to supplement your answer.
3. "Complaint" shall mean and refer to the Complaint filed by plaintiff in the above captioned action, and action shall be employed interchangeably with complaint.
4. "You" and "Your" means the party to whom these Requests were propounded and includes anyone authorized to or purporting to act on its behalf, including but not limited to officers, directors, employees, successors, parent corporations, subsidiary corporations, attorney, agents, or other representative.
5. "Discovery Requests" means, collectively, Plaintiff's Interrogatories, Admissions, and Production of Documents Directed to defendant.
6. "FCMI" shall mean First Correctional Medical, Inc, and "FCM" shall mean First Correctional Medical-Delaware, LLC, and "CMS" shall mean Correctional Medical Services, Inc.
7. "DCC" shall mean Delaware Correctional Center, and "DDOC" shall mean Delaware Department of Corrections.
8. "Identify" when used with reference to a natural person means to state his or her full name, present or last known address, present of last known position or business position and address, and position of business affiliation at the time in question.
9. The term "all" includes the word "any" and the word "any" includes "all." The terms "all" and "each" shall be construed as each and all.
10. The terms "communication" or "communications" shall mean and refer to, without limitation, any document, statement, or expression which constitutes, embodies, evidences or relates to any transmission of a word, statement, fact, thing, idea, writing, instruction, demand or question, whether oral or written, including but not limited to letters, telecopys, telexes, e-mails, voicemails, meetings, discussions, conversations, telephone calls, memoranda, conferences or seminars.
11. The term "document" as used herein is employed in the broadest possible sense under Rule 34 to include any medium upon which information is recorded or preserved, by whomever generated or received, and means without limitation, any written, printed, typed, Photostatted, emailed, photographed, recorded, taped, or otherwise reproduced communication, compilations, or reproductions including computer generated or stored information or date, whether assertedly privileged or not and including all copies or drafts of any document which differs (by annotation or otherwise) in any respect from the original.
12. The term "including" shall be construed to mean "including without any limitation."

13. The terms "person" or "persons" shall mean and refer to the plural as well as the singular of any natural individual, or any firm, corporation, partnership, association, sole proprietorship, group, trust, estate, or any other organization or entity of nay type.

14. The terns "or" and "and" shall be construed conjunctively or disjunctively as necessary to make the request for documents or information inclusive rather than exclusive, i.e. to bring within the scope of the request all response that otherwise might be construed to be outside the scope of the request.

15. The terms "relate" or "relating to" as used herein shall mean concerning, involving, consisting of, alluding to, referring to, appertaining to, regarding, reflecting, evidencing, having any logical or factual connection with or tending to prove or disprove the matter discussed.

16. The terms "you" and "your" shall mean the party to which these requests are directed.

17. The terms "describe" or "description" when used in connection with any act, accounting, action, activity, audit, practice, process, occurrences, plan, communication, conference, discussion, development, service, transaction, test, negotiation, instance, incident, or event, mean to furnish a detailed account of the matters referred to, including the following information:

    a. Its general nature;
    b. The time and place thereof;
    c. A chronological account setting forth each element thereof, what such element consisted of and what transpired as a part thereof;
    d. The identity of each person who performed any function or who had any role in connection therewith (i.e. speaker, participant, contributor of information, witness, etc), or who has any knowledge thereof, together with a description of each such person's function, role or knowledge;
    e. The identity of each document which refers thereto or which was used, referred to or prepared in the course of or as a result thereof; and
    f. The identity of each communication, whether oral or written, which was a part thereof or which referred thereto.

18. The terms "describe" or description" when used in connection with any calculation, computation, amount or figure means to provide:

    a. A detailed explanation of its meaning;
    b. A detailed explanation of the manner in which it was derived, including an itemization of all subcategories included therein;
    c. The identity of each person who performed any function or had any role in connection therewith or who has any knowledge thereof, together with a description of each such person's function, role, or knowledge;
    d. The identity of each document which refers thereto or which was used referred to or prepared in the course of as a result thereof; and
    e. The identity of each oral communication which occurred in the course of the preparation thereof or which referred thereto.

19. When asked to provide or state a "factual basis" the term "factual basis" means to provide in detail all facts related to the matter, including the following;

    a. Each item of information upon which the allegation, contention, claim, or demand to which it pertains is based, including a full description thereof;
    b. With respect to each such item of information, the identity of each person having knowledge and each source thereof, including each document, communication, act, action, activity, accounting, negotiation, practice, process, occurrence, occasion, course of conduct, happening, relationship, scheme, conference, discussion, development, service, instance, incident, event, audit, calculation, and computation, upon which respondent relies with respect thereto.

20. The terms "identify," identification," or "identity" as applied to a person means to provide:

    a. When used in reference to a natural person: full name; present or last known address (both residence and business and telephone numbers), present or last known business affiliation; and present of last known business positions (including job title and description of job functions, duties, and responsibilities);
    b. When used in reverence to any entity other than a natural person: Its full name; the address and telephone number of its principal place of business; the jurisdiction under the laws of which it has been organized or incorporated; the identity of all persons who acted and/or who authorized another to act on its behalf in connection with the matters referred to; in the case of a corporation, the names of its directors and principal officers; and

  c. In the case of an entity other than a corporation, the identities of its partners or principals or all persons who acted or who authorized another to act on its behalf in connection with the matters referred to.
21. The term "identify," identification," or "identity" as applied to an oral communication means to provide the following information:
  a. By whom it was made and to whom it was directed;
  b. Its specific subject;
  c. The date upon which it was made;
  d. All persons who were present when it was made; and
  e. Whether it was recorded, described, or summarized in any writing of any type and, if so, the identity of each such writing in the manner indicated below.
22. The terms "identify," identification," or "identity" as applied to a written communication or document means to provide the following:
  a. Its nature (e.g. letter, memorandum, telegram, note, drawing, etc.);
  b. Its specific subject;
  c. By whom it was made and to whom it was directed;
  d. The date upon which it was made; and
  e. Who has possession of the original and all copies.
23.. "Generally accepted professional standards" means those industry standards accepted by a significant majority of professionals in the relevant field, and includes those reflected in the standards of care such as those published by the National Commission on Correctional Health Care (NCCHC) for sentenced inmates.
24. The terms "adequate," "appropriate," and "sufficient" refer to standards established by clinical guidelines promulgated by professional organizations in the relevant field.
25. "Medical staff" means medical professional, nursing, certified medical assistant, and or pharmacy staff.
26. "Serious medical condition" shall be construed to mean any condition that the stated facts, symptoms, injuries, diagnosis, and/or impairments, would equate to a serious medical condition under the following standard: Estelle v. Gamble, 429 U.S. 97, 106, _____ S. Ct. _____ (1976) and/or Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970 (1994).
27. "MG" shall be construed to mean Medical Grievance, and "EMG" shall mean Emergency Medical Grievance, and these terms are construed under the DDOC Inmate Grievance Procedures 4.4 during the relevant time of this action.
28. The terms "CC Meds" shall mean Williamson' thyroid medications (e.g. Synthroid or Levothyroxine), and the term CCMI" shall mean Chronic-care medication interruption(s) of said CC Meds.
29. Any term and/or words that are not defined herein shall be construed to mean its plain and ordinary usage as defined in a standard dictionary.
30. "IGP 4.4" and "IGP" shall mean the Inmate Grievance Procedure 4.4 authorized by the DDOC for use at DCC and effective during the relevant period.
31. "Chronic-care medication" shall mean Williamson's thyroid medications; "CC Meds" shall mean chronic-care medications; "CCMI" shall mean Chronic-care medication interruption"; and "Clinic" shall mean chronic-care clinic.

## INSTRUCTIONS

1. As used herein, the past tense shall include the present tense and the present tense shall include the past tense. The singular shall include the plural and the plural shall include the singular.
2. If any Discovery Request is answered by reference to a group of documents, with respect to each such answer, identify the specific document or documents containing the respect to each such answer, identify the specific document or documents containing the requested information and, if such information is contained in any document exceeding one page in length, include in the identification of said document the number of the particular page or pages (or other descriptive aid) and of the particular line or lines thereof upon which the information referred to in said interrogatories appears in your answer thereto.
3. If you object to any of the Discovery Requests herein, whether in whole or in part, on the grounds that the information sought therein is privileged or confidential, state the following:
  a. Identify the privileged document or communication;
  b. Identify the persons who received or have received the privileged document and/or persons present during the privileged communication;
  c. Identify the person who made the privileged document or communications;

      d. Identify the general subject matter of the privileged document or communication; and
      e. State the basis for your claim of privilege with respect to each such document or communication.

4. If, for reasons other than a claim of privilege, you refuse to admit or deny any request for admission herein, please state the grounds upon which the refusal is based with sufficient specificity to permit a judicial determination of the propriety of such refusal.

5. Rules 33, 34, and 36, and any other applicable rules regarding discovery of the Federal Rules of Civil Procedure are hereby incorporated herein by reference.

6. Each Definition and Instruction above shall be fully applicable to each Discovery Request herein.

7. These Discovery Requests are considered to be continuing in character, and whenever additional information responsive to them, but not supplied in answer of them is obtained or becomes known to defendants, it shall be supplied in writing under oath.

8. With respect to each Discovery Request, keep a record of and report in the response to each the identity of each person who supplied information used in the preparation of the answer.

9. Unless otherwise stated or clearly implied form a particular Discovery Request, the relevant time frame for these Discovery Requests is from 01-01-2003 through and including the time when the answers to those Discovery Requests or any supplement thereto is served.

10. These Definitions and Instructions shall apply to all subsequent discovery requests directed to any defendant who is a party to this action and is incorporate therein as referenced.

## FISRT SET OF INTERROGATORIES AND PRODUCTION OF DOCUMENTS DIRECTED TO MALANEY

1. Identify and describe Malaney –including her professional qualifications- while she was employed with CMS during the relevant period, and including her assignment to DCC.

2. Identify and produce any and all documents and/or communications relating to and/or in response to the following letters, notices, and/or medical grievances provided by Williamson on the following dates:
a) 10-03-05;  b) 11-09-05,   c) 03-13-06,   d) 03-21-06,   and    e) 02-09-06 [1].

3. Identify and produce any and all documents and/or communications relating to and/or in response to Williamson's medical grievances –including any notes of investigation and/or findings- :
a) 15453,    b) 21201,    c) Addendum to 20201 (Reprisal of Chuks),    and 17197 [1].

4. Identify and produce any and all documents and/or communications relating to and/or in response to CMS's Medication Distribution Administration ("MDA"), which may have or was disseminated to Malaney –including any specific to DCC and/or modifications to the MDA- during the relevant period.

5. Identify and describe Malaney's relationship and/or responsibilities relating to MG and EMG.

6. Identify and describe the persons or entity responsible for evaluating and/or screening EMG(s) for any determination of whether the medical complaint constitutes an emergency under the IGP 4.4 [2].

7. Identify and describe the any criteria that CMS employs to evaluate and/or screen EMG(s) for valid medical emergencies.

8. Identify and describe the any and all acts, actions, or efforts that Malaney employed to address and/or correct the issues referenced in Williamson's notices, letters, and medical grievances listed above at items 2. and 3.

9. Produce and describe any and all documents and communications relating to item 8 above.

---

[1] Note that Williamson has attached any above referenced letters, notices, complaints, and/or grievances as exhibits to either his TRO/PI and/or filings related to the TRO/PI (e.g. Objection and/or motion to strike CMS's response, Reargument, etc.)

[2] Note that IGP 4.4 have also been attached to filings in this court under "Revised [discovery requests] directed to Zimble, which has been provided to Counsel.

4

10. Identify and produce any and all documents and/or communications relating to and/or in response to communications with the DDOC and/or DCC administration relating to the Don Joy Knee brace for Williamson.
11. Identify the following persons and verify whether they were the medical staff assigned to and/or working at DCC on 10-04-05 (and/or who met with or attended Williamson on said date): a) Katherine Fearon (Caucasian female with blond hair and eye glasses); b) Crystal Aston (African American female, short and heavy); Debbie Rodweller.
12. Identify the following medical staff: a) x-ray technician who performed Williamson's knee X-ray on 08-03-04; b) Doctor who conducted Williamson's Clinic on 08-30-04 and who had ordered an MRI for his right knee.
13. Identify the following person and verify whether they were the medical staff assigned to and/or working at DCC on 11-11-05 and/or 11-29-05: a) Tinnikka Miller.

### FISRT SET OF INTERROGATORIES AND PRODUCTION OF DOCUMENTS DIRECTED TO PLANTE

1. Identify and describe Plante –including her professional qualifications- while she was employed with CMS during the relevant period, and including her assignment to DCC.
2. Identify the following persons and verify whether they were the staff who attended Williamson's medical grievance hearing on 10-06-05 for MG # 15453: a) Lee Anne Dunn, b) Matthalina Wright, and c) Michael McCreanor.
3. Identify and produce any and all documents and/or communications relating to and/or in response to the following letters, notices, and/or medical grievances provided by Williamson on the following dates:
    a) 10-03-05;   b) 11-09-05,   c) 03-13-06,   d) 03-21-06,   e) 02-09-06, and f) 04-19-06. [1]
4. Identify and produce any and all documents and/or communications relating to and/or in response to CMS's Medication Distribution Administration ("MDA"), which may have or was disseminated to Plante –including any specific to DCC and/or modifications to the MDA- during the relevant period.
5. Identify and describe Plante's relationship and/or responsibilities relating to MG and EMG. [2]
6. Identify and describe the persons or entity responsible for evaluating and/or screening EMG(s) far any determination of whether the medical complaint constitutes an emergency under the IGP 4.4.
7. Identify and describe the any criteria that CMS employs to evaluate and/or screen EMG(s) for valid medical emergencies.
8. Identify and describe the any and all acts, actions, or efforts that Plante employed to address and/or correct the issues referenced in Williamson's notices, letters, and medical grievances listed above at items 2 and 3.
9. Produce and describe any and all documents and communications relating to item 8 above.
10. Identify and verify whether Plante and/or Tinnikka Miller were assigned to and/or working at DCC on 11-11-05 and/or 11-29-05.
11. Identify and produce any and all documents and/or communications relating to and/or in response to communications with the DDOC and/or DCC administration relating to the Don Joy Knee brace for Williamson.
(Foot Notes [1 & 2] from the above section are incorporated herein also.)

5

**FISRT SET OF INTERROGATORIES AND PRODUCTION OF DOCUMENTS DIRECTED TO LOVE**

1. Identify and describe Love's –including her professional qualifications- while she was employed with CMS during the relevant period, and including her assignment to DCC.
2. Identify and produce any and all documents and/or communications relating to and/or in response to CMS's Medication Distribution Administration ("MDA"), which may have or was disseminated to Love –including any specific to DCC and/or modifications to the MDA- during the relevant period.
3. Identify and describe Love's relationship and/or responsibilities relating to MG and EMG. [1]
4. Identify and describe the persons or entity responsible for evaluating and/or screening EMG(s) far any determination of whether the medical complaint constitutes an emergency under the IGP 4.4.
5. Identify and describe the any criteria that CMS employs to evaluate and/or screen EMG(s) for valid medical emergencies.
6. Identify and describe Love's Clinic with Williamson on 08/31/05.
7. Identify and describe the any and all acts, actions, or efforts that Love employed to address and/or correct the CCMI that Williamson experienced between 08-27-05 to 09-05-05.
8. Identify and produce any and all documents and/or communications relating to and/or in response to Williamson's medical grievances –including any notes of investigation and/or findings-: a) 15453.
9. Produce and describe any and all documents and communications relating to Love's Clinic with Williamson on 08-31-05 of the "single dose" that Love allegedly dispensed to Williamson –including any and all documentation of said dose not limited to the Lot number, card number, distribution card and date, B.O.L., shipping and product invoice, and/or pharmacy invoice or log which depicts the alleged dose and where it was produced from.
10. Describe what factual basis Love made in determining that Williamson's CCMI between 08-27-05 and 09-05-05 only required "one" alleged dose of Levothyroxine from stock?
11. Identify and describe what the manufacture's recommended medication distribution and/or maintenance of Levothyroxine and/or any generic or similar product (e.g. Synthroid) is.

---

( [1] Foot Notes [1 & 2] from the above section are incorporated herein also.)

*David W_____*
David Williamson, 183022
W-1, L-12, 1181 Paddock Rd.
Smyrna, DE 19977

9-19-07
Date

6

CERTIFICATE OF SERVICE

I, David Williamson, Plaintiff, do swear that I have caused to be delivered upon the defendants listed below the following true and correct documents:

1. Plaintiff's combined first set of requests for interrogatories and production of documents directed to defendants Malaney, Plante, and Love

2. N/A

By placing same in a U.S. Mail receptacle on the __21__ day of __Sept.__ 200__7__.

~~Daniel McKently, Esq.~~
~~(Counsel for FCM, Inc.)~~
~~1225 N. King St., Suite 1100~~
~~Wilmington, DE 19809-0397~~

James E. Drnec, Esq
711 N. King St.
Wilmington, DE 19801
(Counsel for Dr. A. Zimble)

Patrick Rock, Esq.
(Counsel for CMS, Inc.)
913 Market St., #800
Wilmington, DE 19801

N/A

David W——
Signed as Original

David W——
David Williamson, SBI #183022
1181 Paddock Rd., W-1, L-12
Smyrna, DE 19977