David Williamson
SBI 3 183022
1181 Paddock Rd.
Smyrna, DE 1977

Mr. Alan Zimbal, D.M.D
RE: Revised Discovery Requests Directed to Zimbal: <u>Williamson v. CMS, et al</u> CA. No. 06-379-SLR

James E. Drnec, Esq:

On 7/12/07 and 7/16/07, Williamson propounded discovery requests upon Zimbal (e.g. First Set of Combined Interrogatories and Production of Documents and Admissions respectively). In response, Zimbal produced multiple objections on or about 8/13/07 (D.I. _____ & D.I. _____). Therein, Zimbal claimed –in part- that he was unable to respond because Williamson had not defined several terms and or provided adequate instructions, etc. Thus, Williamson's discovery requests were inadequate.

Consequently, Williamson intends herein to correct any deficiencies with his discovery requests to allow Zimbal the ability to respond adequately. Therefore, Williamson **voluntarily withdraws both prior discovery requests** (e.g. <u>D.I 131</u> & <u>D.I. 132</u>), and alternatively propounds newly "Revised" discovery requests directed to Zimbal herein. The "Revised" discovery requests contain definitions and instructions, which should accommodate Zimbal's objections and correct Williamson's deficiencies.

Williamson believes that his "Revised" discovery requests will both satisfy Zimbal's objections and/or ultimately save judicial resources and avoid any non-compliance with discovery and the necessity to file a motion to compel, etc. If you have any further questions or concerns, please contact me at the above address.

Thank you.

Respectfully,

_David W_____                              9-10-07

David Williamson                             Date


C.c. Clerk of the Court (<u>Williamson v. CMS, et al</u>, 06-379-SLR)



IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DAVID W. WILLIAMSON,<br>    Plaintiff,<br>v.<br>CORRECTIONAL MEDICAL SERVICES, Inc, et al,<br>    Defendants. | )<br>)<br>) C.A. 06-379-SLR<br>)<br>) |

PLAINTIFF'S REVISED FIRST SET OF REQUESTS FOR ADMISSIONS DIRECTED TO DEFENDANT ZIMBAL

COMES NOW, plaintiff, Williamson pursuant to the appropriate Fed. R. Civ. P., Local Rule, and or case authority. Williamson attests that the instant discovery request is made in good faith, not meant to harass, inconvenience, or be overly burdensome to defendants or to delay these proceedings in any manner. Williamson requests defendant Alan Zimbal (Zimbal) to make the following admissions, where required under the applicable rules, under oath, within thirty-days of the date of service. (All definitions and directions employed in Zimbal's first set of requests for interrogatories directed to plaintiff Williamson are incorporated herein). Added to Zimbal's definitions and directions are the following:

### DEFIITIONS

1. If any of these discovery requests cannot be answered completely, answer the discovery request to the extent possible, and specify the reasons for your inability to completely answer.
2. This discovery request is a continuing one. If, after responding, you become aware of nay further information responsive to these (interrogatories, admissions, and/or production of documents); you are required to supplement your answer.
3. "Complaint" shall mean and refer to the Complaint filed by plaintiff in the above captioned action, and action shall be employed interchangeably with complaint.
4. "You" and "Your" means the party to whom these Requests were propounded and includes anyone authorized to or purporting to act on its behalf, including but not limited to officers, directors, employees, successors, parent corporations, subsidiary corporations, attorney, agents, or other representative.
5. "Discovery Requests" means, collectively,     First Set of Interrogatories, Admissions, and Production of Documents Directed to defendant First Correctional Medical, Inc.
6. "FCMI" shall mean First Correctional Medical, Inc, and "FCM" shall mean First Correctional Medical-Delaware, LLC, and "CMS" shall mean Correctional Medical Services, Inc.
7. "DCC" shall mean Delaware Correctional Center, and "DDOC" shall mean Delaware Department of Corrections.
8. "Identify" when used with reference to a natural person means to state his or her full name, present or last known address, present of last known position or business position and address, and position of business affiliation at the time in question.
9. The term "all" includes the word "any" and the word "any" includes "all." The terms "all" and "each" shall be construed as each and all.
10. The terms "communication" or "communications" shall mean and refer to, without limitation, any document, statement, or expression which constitutes, embodies, evidences or relates to any transmission of a word, statement, fact, thing, idea, writing, instruction, demand or question, whether oral or written, including but not limited to letters, telecopys, telexes, e-mails, voicemails, meetings, discussions, conversations, telephone calls, memoranda, conferences or seminars.
11. The term "document" as used herein is employed in the broadest possible sense under Rule 34 to include any medium upon which information is recorded or preserved, by whomever generated or received, and means without limitation, any written, printed, typed, Photostatted, emailed, photographed, recorded, taped, or otherwise reproduced communication, compilations, or reproductions including computer generated or stored information or date, whether

assertedly privileged or not and including all copies or drafts of any document which differs (by annotation or otherwise) in any respect from the original.
12. The term "including" shall be construed to mean "including without any limitation."
13. The terms "person" or "persons" shall mean and refer to the plural as well as the singular of any natural individual, or any firm, corporation, partnership, association, sole proprietorship, group, trust, estate, or any other organization or entity of nay type.
14. The terms "or" and "and" shall be construed conjunctively or disjunctively as necessary to make the request for documents or information inclusive rather than exclusive, i.e. to bring within the scope of the request all response that otherwise might be construed to be outside the scope of the request.
15. The terms "relate" or "relating to" as used herein shall mean concerning, involving, consisting of, alluding to, referring to, appertaining to, regarding, reflecting, evidencing, having any logical or factual connection with or tending to prove or disprove the matter discussed.
16. The terms "you" and "your" shall mean the party to which these requests are directed.
17. The terms "describe" or "description" when used in connection with any act, accounting, action, activity, audit, practice, process, occurrences, plan, communication, conference, discussion, development, service, transaction, test, negotiation, instance, incident, or event, mean to furnish a detailed account of the matters referred to, including the following information:
    a. Its general nature;
    b. The time and place thereof;
    c. A chronological account setting forth each element thereof, what such element consisted of and what transpired as a part thereof;
    d. The identity of each person who performed any function or who had any role in connection therewith (i.e. speaker, participant, contributor of information, witness, etc), or who has any knowledge thereof, together with a description of each such person's function, role or knowledge;
    e. The identity of each document which refers thereto or which was used, referred to or prepared in the course of or as a result thereof; and
    f. The identity of each communication, whether oral or written, which was a part thereof or which referred thereto.
18. The terms "describe" or description" when used in connection with any calculation, computation, amount or figure means to provide:
    a. A detailed explanation of its meaning;
    b. A detailed explanation of the manner in which it was derived, including an itemization of all subcategories included therein;
    c. The identity of each person who performed any function or had any role in connection therewith or who has any knowledge thereof, together with a description of each such person's function, role, or knowledge;
    d. The identity of each document which refers thereto or which was used referred to or prepared in the course of as a result thereof; and
    e. The identity of each oral communication which occurred in the course of the preparation thereof or which referred thereto.
19. When asked to provide or state a "factual basis" the term "factual basis" means to provide in detail all facts related to the matter, including the following;
    a. Each item of information upon which the allegation, contention, claim, or demand to which it pertains is based, including a full description thereof;
    b. With respect to each such item of information, the identity of each person having knowledge and each source thereof, including each document, communication, act, action, activity, accounting, negotiation, practice, process, occurrence, occasion, course of conduct, happening, relationship, scheme, conference, discussion, development, service, instance, incident, event, audit, calculation, and computation, upon which respondent relies with respect thereto.
20. The terms "identify," identification," or "identity" as applied to a person means to provide:
    a. When used in reference to a natural person: full name; present or last known address (both residence and business and telephone numbers), present or last known business affiliation; and present of last known business positions (including job title and description of job functions, duties, and responsibilities);
    b. When used in reverence to any entity other than a natural person: Its full name; the address and telephone number of its principal place of business; the jurisdiction under the laws of which it has been organized or

2

incorporated; the identity of all persons who acted and/or who authorized another to act on its behalf in connection with the matters referred to; in the case of a corporation, the names of its directors and principal officers; and

c. In the case of an entity other than a corporation, the identities of its partners or principals or all persons who acted or who authorized another to act on its behalf in connection with the matters referred to.

21. The term "identify," identification," or "identity" as applied to an oral communication means to provide the following information:
    a. By whom it was made and to whom it was directed;
    b. Its specific subject;
    c. The date upon which it was made;
    d. All persons who were present when it was made; and
    e. Whether it was recorded, described, or summarized in any writing of any type and, if so, the identity of each such writing in the manner indicated below.

22. The terms "identify," identification," or "identity" as applied to a written communication or document means to provide the following:
    a. Its nature (e.g. letter, memorandum, telegram, note, drawing, etc.);
    b. Its specific subject;
    c. By whom it was made and to whom it was directed;
    d. The date upon which it was made; and
    e. Who has possession of the original and all copies.

23.. "Generally accepted professional standards" means those industry standards accepted by a significant majority of professionals in the relevant field, and includes those reflected in the standards of care such as those published by the National Commission on Correctional Health Care (NCCHC) for sentenced inmates.

24. The terms "adequate," "appropriate," and "sufficient" refer to standards established by clinical guidelines promulgated by professional organizations in the relevant field.

25. "Medical staff" means medical professional, nursing, certified medical assistant, and or pharmacy staff.

26. "Serious medical condition" shall be construed to mean any condition that the stated facts, symptoms, injuries, diagnosis, and/or impairments, would equate to a serious medical condition under the following standard: Estelle v. Gamble, 429 U.S. 97, 106, _____ S. Ct. _____ (1976) and/or Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970 (1994).

27. "MG" shall be construed to mean Medical Grievance, and "EMG" shall mean Emergency Medical Grievance, and these terms are construed under the DDOC Inmate Grievance Procedures 4.4 during the relevant time of this action.

28. Any term and/or words that are not defined herein shall be construed to mean its plain and ordinary usage as defined in a standard dictionary.

29. "IGP 4.4" and "IGP" shall mean the Inmate Grievance Procedure 4.4 authorized by the DDOC for use at DCC and effective during the relevant period.

## INSTRUCTIONS

1. As used herein, the past tense shall include the present tense and the present tense shall include the past tense. The singular shall include the plural and the plural shall include the singular.

2. If any Discovery Request is answered by reference to a group of documents, with respect to each such answer, identify the specific document or documents containing the respect to each such answer, identify the specific document or documents containing the requested information and, if such information is contained in any document exceeding one page in length, include in the identification of said document the number of the particular page or pages (or other descriptive aid) and of the particular line or lines thereof upon which the information referred to in said interrogatories appears in your answer thereto.

3. If you object to any of the Discovery Requests herein, whether in whole or in part, on the grounds that the information sought therein is privileged or confidential, state the following:
a. Identify the privileged document or communication;
b. Identify the persons who received or have received the privileged document and/or persons present during the privileged communication;
c. Identify the person who made the privileged document or communications;
d. Identify the general subject matter of the privileged document or communication; and
e. State the basis for your claim of privilege with respect to each such document or communication.

3

4. If, for reasons other than a claim of privilege, you refuse to admit or deny any request for admission herein, please state the grounds upon which the refusal is based with sufficient specificity to permit a judicial determination of the propriety of such refusal.

5. Rules 33, 34, and 36, and any other applicable rules regarding discovery of the Federal Rules of Civil Procedure are hereby incorporated herein by reference.

6. Each Definition and Instruction above shall be fully applicable to each Discovery Request herein.

7. These Discovery Requests are considered to be continuing in character, and whenever additional information responsive to them, but not supplied in answer of them is obtained or becomes known to defendants, it shall be supplied in writing under oath.

8. With respect to each Discovery Request, keep a record of and report in the response to each the identity of each person who supplied information used in the preparation of the answer.

9. Unless otherwise stated or clearly implied form a particular Discovery Request, the relevant time frame for these Discovery Requests is from 01-01-2003 through and including the time when the answers to those Discovery Requests or any supplement thereto is served.

10. These Definitions and Instructions shall apply to all subsequent discovery requests directed to any defendant who is a party to this action and is incorporate therein as referenced.

## REVISED FISRT SET OF ADMISSIONS

1. On 12-07-05 Zimbal reviewed Williamson's dental records and acknowledged Williamson's periodontal disease.

2. As of 12-7-05 Williamson had not been provided any prior periodontal teeth/gum cleaning in over eighteen months.

3. Generally accepted professional standards for periodontal disease include the following:

    a. Below gum-line teeth/gum cleaning;

    b. Antibiotics for active infections;

    c. Semi-annual teeth/gum cleaning;

    d. Antibacterial mouthwash; and/or

    e. Root canal.

4. On 12-7-05, despite acknowledging Williamson's periodontal disease, Zimbal failed to provide items b-e above.

5. On 12-7-05, Zimbal administered a teeth/gum cleaning for Williamson that failed to provide any picking, scraping, polishing, or flossing.

6. On 12-7-05, Zimbal's teeth cleaning at item 5 above lasted no longer than five minutes.

7. On 12-7-05, Zimbal's teeth cleaning at item 5 above was not recognized under the generally accepted professional standards expected for a patient in which the periodontal disease has resulted in the loss of four teeth to date.

8. Periodontal disease that results in permanent tooth loss is a serious medical condition.

9. Periodontal infections, in which the tooth or teeth become abscessed, are known to be painful.

10. Periodontal infections –that result in tooth or teeth loss- are believed to involve the following health risks:

    a. Heart or coronary infections;

    b. Heart attacks or strokes;

    c. Tooth or teeth and or bone loss; and/or

    d. Cardiovascular disease.

11. Periodontal infections are known to cause and/or associated with significant residual health risks –such as those listed above at #10- if untreated and or under treated.

12. Williamson filed a dental sick-call slip on 1-08-06 due to his tooth shearing in half down to the gum-line and exposing a raw nerve. (Emergency dental episode).

13. On 1-11-06, Zimbal examined Williamson's emergency dental episode and readily diagnosed it as requiring a crown.

14. On 1-11-06, Zimbal explained to Williamson that he was not permitted to provide the crown, due to policy/custom, but could extract the tooth instead.

15. Generally accepted professional standards for the type of emergency dental episode described above at item 12 includes (a) repair with a crown, and or (b) perform a root canal.

16. Zimbal failed to perform any dental care whatsoever for Williamson's emergency dental episode on 1-11-06.

17. Zimbal's failure to provide any care for Williamson's emergency dental episode on 1-11-06 was contrary to legitimate medical factors and or contrary to the obvious need for care.

18. Failure to provide the generally accepted professional care for the type of emergency dental episode describe above at item12 will result in permanent injury (i.e. tooth loss).

19. Zimbal inquired of Williamson on 1-11-06 whether his broken tooth was painful and Williamson explicitly affirmed that it was acutely painful to him.

20. Williamson also pointed out to Zimbal that because Williamson suffered the loss of three of his grinding/chewing teeth on the right lower jaw, the current broken tooth on the left side of the jaw precluded him from chewing solid food.

21. The fact above at item 20. was obvious.

22. Zimbal claimed that "They won't let us" provide crowns on 1-11-06 and 2-14-06.

23. Zimbal continued on 2-14-06 after Williamson questioned him that: "They won't let us do them – not in the budget."

24. On 2-21-06 Zimbal met with Williamson again in response to the EMG (filed on 1-12-06), and again failed to provide any care whatsoever despite the obvious need to.

25. Applicable Inmate Grievance Procedure (IGP) (as of 2-14-06), mandates that all medical emergencies "shall be addressed immediately by the Warden/Warden's Designee [(W/WD]} ... The [W/WD] shall respond within one calendar day. However, if the [W/WD] should determine that the grievance does not meet the emergency criteria, the grievance shall be returned... through normal IGP procedures." [1]

26. Williamson's EMG was filed on 1-12-06 and no action was taken until 2-14-06, thus a constructive determination was made that no emergency existed under the IGP criteria.

27. Mutually applicable IGP (as of 2-14-06) the following:

> All medical grievances must be submitted to the [IGC]... [who then forwards] it to the Medical services contractual staff [(e.g. CMS medical staff)] for action. The appropriate medical staff will review the grievance and demote actions taken...." [1]

28. Considering the applicable IGP requisites, Williamson's EMG regarding his emergency medical episode was forwarded to CMS medical staff (i.e. Zimbal), and Zimbal on 2-14-06 failed to any treatment whatsoever for the emergency dental episode.

29. Applicable IGP for EMG defines (2-14-06) an emergency as: "Issues that concern substantial risk to personal, physical, or psychological inmate injury...."[1]

30. Under the broad IGP definition of an emergency, Williamson's painful and permanently broken tooth would be an obvious emergency (i.e. substantial risk of personal, physical, or psychological inmate injury.).

31. Admitted that the Exhibit (at A-1), attached is an authentic -true and correct copy- of the relevant Inmate Grievance Procedure 4.4 as established by DDOC for and disseminated to DCC.

32. Defendant CMS filed a supplemental response to plaintiff's motion for injunctive relief (D.I. 147), of which presented a dental policy at exhibit D "Dental Records" that was derived from the "Inmate Reference Manual" (effective 2-01-2004), and which stated the following:

"As a rule, caps, *crowns*, bridges, *root canals*, teeth cleaning, *will not be provided*." (Emphasis added). There were no exceptions listed, nor were there any directions regarding medical emergency or necessity regarding these per se prohibited dental procedures. Admitted that said policy was in effect during the relevant period.

33. Admitted that the policy listed at #32 is or was the driving force behind Zimbal's decision not to provide a crown to Williamson for his broken tooth.

34. Admitted that Zimbal actively realized the policy listed at #32 in regards to Williamson's broken tooth incident.

35. Admitted that Zimbal failed to consider medical necessity and/or failed to exercise professional medical judgment regarding Williamson's broken tooth during the three dental visits on 01-11-06, 02-14-06, and 02-21-06.

---

[1] Attached as an Exhibit (at A-1), is the applicable and relevant Inmate Grievance Procedure 4.4 as established by DDOC and disseminated to DCC. It is provided to accommodate Zimbal's objection/inability to respond to discovery requests that involve IGP 4.4 issues/facts.

*David W——*   9-10-07

David Williamson, SBI #183022   Date
1181 Paddock Rd.
Smyrna, DE 19977

6

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| | 4.4 | 1 OF 7 |
| BUREAU OF PRISONS | RELATED ACA STANDARDS: | |
| | 36 | |
| PROCEDURE MANUAL | | |
| CHAPTER: 4 DECISION-MAKING RELATING TO INMATES | SUBJECT: INMATE GRIEVANCE PROCEDURE | |
| APPROVED BY THE CHIEF, BUREAU OF PRISONS: *Paul W. Howard* | | |
| EFFECTIVE DATE: Revised 5/15/98 | | |

I.  **AUTHORITY:** DOC Policy 4.4

II. **PURPOSE:**

   To establish an Inmate Grievance Procedure designed to reduce tension in correctional facilities and to effectively resolve the vast majority of cases within our system. Every inmate will be provided a timely, effective means of having issues brought to the attention of those who can offer administrative remedies before court petitions can be filed. NOTE: Inmates are encouraged to seek their counselors' advice on how to best pursue a response to concerns before prematurely filing a grievance under the guidelines that follow.

III. **APPLICABILITY:**

   All BOP employees, volunteers, persons or organizations conducting business with the BOP: all inmates under BOP custody or supervision.

IV. **DEFINITIONS:**

   A. Bureau Grievance Officer (BGO): A BOP employee who reviews and mediates appeal of the Warden's/Warden's Designee decision.

   B. Emergency Grievance: An issue that concerns matters which under regular time limits would subject the inmate to a substantial risk of personal, physical or psychological harm.

   C. Grievance: A written complaint concerning the substance or application of a policy or practice; any action toward an inmate by staff or other inmates; any condition or incident within the institution that affects an inmate.

A-1

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: 2 OF 7 |
|---|---|---|
| SUBJECT: INMATE GRIEVANCE PROCEDURE | | |

    D.    Inmate Grievance Chair (IGC): An institutional employee designated to handle inmate grievances.

    E.    Inmate Grievance Procedure (IGP): The formal process provided to inmates to resolve disputes.

    F.    Outside Reviewer: An individual not associated with DOC who hears inmate grievance appeals referred by the BGO and Bureau Chief of Prisons.

    H.    Resident Grievance Committee (RGC): A committee comprised of institutional staff and inmates that hears inmate grievances and makes a recommendation to the Warden/Warden's Designee.

    I.    Reprisal: Any action or threat of action against inmates or staff based solely on their participation or use of the IGP.

    J.    Medical Grievance Committee (MGC): An institution's specific medical review authority comprised of a minimum of three medical services contractual staff from the following list:

        Health Services Administrator
        Director of Nursing
        Charge Nurse
        Chief Medical Officer
        Medical Records Clerk
        Mental Health Counselor
        Chief Dental Officer
        Dental Assistant

V.    PROCEDURE:

    1.    Copies of the IGP shall be available in each institutional housing unit, in each library, in each counselor's office, and in each IGC office.

    2.    All inmates, regardless of physical condition/security status/administrative status, shall be entitled to use the IGP. Inmate complaints regarding policies and conditions must be within DOC jurisdiction. This includes actions by employees, inmates, and incidents occurring within the institution that affect them personally. NOTE: Policies that have their own formal appeal mechanisms are not grievable through the IGP. Specifically excluded from the IGP are issues concerning Disciplinary, Classification, and Parole

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: 3 OF 7 |
|---|---|---|
| SUBJECT: INMATE GRIEVANCE PROCEDURE | | |

    Board decisions.

3. The IGP shall afford the grievant a meaningful remedy. Relief may include an agreement by the Warden/Warden's Designee to remedy an objectionable condition within a reasonable, specified time period; change in institutional policy or practice; or restitution.

4. The IGP prohibits reprisals against staff or inmates for their use or participation in the process. If either participant experiences adverse reactions, they may appeal directly to the Warden/Warden's Designee. The Warden/Warden's Designee shall offer a written response within 10 calendar days upon receipt of the appeal. This decision is appealable to the Bureau Chief of Prisons for final disposition.

5. No staff or inmate named as a party to the grievance shall participate in any capacity in the resolution decision. This instruction includes contact for purposes of information gathering not merely decision making. Grievances filed against the IGC or appealing authority shall be referred to the next higher authority.

6. All grievances shall be kept separate from the inmate's master file. Neither staff or inmates shall have access to these records except to the extent necessary for clerical processing, resolution, or decision compliance.

7. The maximum period between initial grievance receipt and final appeal response shall not exceed 180 calendar days. If a full RGC cannot be convened as scheduled, another hearing shall be rescheduled within 7 calendar days.

8. Inmates are prohibited from submitting more than one grievance arising from a single incident.

9. If more than one inmate files a grievance on the same incident, the IGC will consolidate the staff investigations and RGC hearings into a single "group grievance". All individuals involved will be notified by the IGC.

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: 4 OF 7 |
|---|---|---|
| SUBJECT: INMATE GRIEVANCE PROCEDURE | | |

10. The IGC shall provide a copy of the response to each IGP step to the grievant within 7 calendar days of IGC receipt.

11. The RGC shall be comprised of two inmates who are elected by a majority vote from their own housing unit and two staff designated by the Warden/Warden's Designee. Designated staff should include custody and treatment staff, as well as, those who have frequent contact with the grievant's housing unit. Each RGC member has one vote; the IGC shall only vote to break a tie.

12. Inmate RGC members and two inmate alternates shall serve for a term of six months. Staff RGC members serve at the discretion of the Warden/Warden's Designee. One staff member shall be from Treatment and one from Security.

13. The RGC shall deliberate on its findings and forward its recommendation to the Warden/Warden's Designee.

14. All investigative work must be completed and documented prior to the RGC hearing.

15. Inmates are allowed to retract a grievance at any time during the process by written notice to the IGC.

16. The IGC shall submit a monthly IGP status report to the BGO and the Bureau Chief of Prisons.

17. The BGO and the Bureau Chief of Prisons share responsibility for IGP revisions/amendments. Distribution to all points of inquiry listed in #01 above shall be the responsibility of the Warden/Warden's Designee.

18. Remedies which are dependent on departments or agencies outside of the DOC may require more time for coordination of implementation steps. The IGC shall notify the grievant of the implementation plan and schedule upon receipt of written notification of concurrence by the outside entity.

19. The specific duties of the IGC and BGO are listed in the "Inmate Grievance Procedure Training Manual". Analysis of their performance is the sole responsibility of their immediate supervisors.

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.4 | 5 OF 7 |
| SUBJECT:  INMATE GRIEVANCE PROCEDURE | | |

## IGP RESOLUTION LEVELS

**Level I (Informal Resolution):**

The IGP process begins when an inmate files Form #584. The grievant must complete this form within 7 calendar days following the incident and forward to the IGC. The IGC shall forward the grievance to the inmates' housing unit supervisors within two days of their receipt. Housing unit supervisors shall investigate, document all findings on Form #175, attempt resolution and report results to the IGC within 3 calendar days of their receipt of the grievance. Resolution ends the IGP process; the IGC closes the file and monitors issues of compliance. Unresolved grievances are referred to Level II administration.

**Level II (RGC Recommendation/Warden's Decision):**

The RGC will convene within 30 calendar days of IGC receipt of the grievance to examine the issue and documented investigative data from Form #175, hear testimony, and make a recommendation. The Grievant will be offered the opportunity to participate in the RGC hearing through examination of all information presented and discussion with all participants. The RGC shall ask any question it feels relevant to the issue. If the RGC determines that further investigation is required it may grant an additional five days, by majority RGC member vote and grievant consent, to complete its work. All RGC work is to be documented and forwarded to the IGC on Form #584 RGC Recommendation. The IGC forwards the RGC recommendation to the Warden/Warden's Designee. The Warden/Warden's Designee responds on Form #584 within 10 calendar days and forwards that response to the IGC for distribution. If the Warden/Warden's Designee and grievant concur with the RGC recommendation the grievance is deemed resolved; the IGC closes the file and monitors issues of compliance. If there is no concurrence, the case is referred to Level III administration.

**Level III (The Final Decision):**

The BGO will review the grievance file upon receipt. Concurrence with the Warden/Warden's Designee decision and signature by the BGO and Bureau Chief of Prisons ends the IGP process; the IGC closes the file and monitors issues of compliance. At the BGO's discretion, mediation between grievant and the Warden/Warden's Designee may be attempted or Outside Review recommended. The BGO shall recommend Outside Review in only those instances where interpretation of law or expansion of policy are necessary. The Bureau Chief of Prisons may accept or reject the BGO's written

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: 6 OF 7 |
|---|---|---|
| SUBJECT: INMATE GRIEVANCE PROCEDURE | | |

recommendation. Decisions by the Bureau Chief of Prisons are final and not open to grievant interpretation. The Bureau Chief of Prisons will return his final decision and the grievance file to the IGC for closure and monitoring for issues of compliance.

**Emergency Grievance:**

Issues that concern substantial risk of personal, physical or psychological inmate injury shall be addressed immediately by the Warden/Warden's Designee. A copy of the grievance shall be sent to the IGC upon receipt by the Warden/Warden's Designee. And the Warden/Warden's Designee shall respond within one calendar day. Grievant appeals of the Warden/Warden's Designee decision will be decided by the Bureau Chief of Prisons within one calendar day upon receipt of the emergency appeal. NOTE: If the Warden/Warden's Designee should determine that the grievance does not meet the emergency criteria, the grievance shall be returned to the inmate for processing through the normal IGP process steps.

**Medical Grievance:**

All medical grievances must be submitted to the Inmate Grievance Chairperson (IGC) at the respective institution on Form #585. If, by chance, an inmate sends a grievance directly to the medical services contractual staff, they are to forward it first to the IGC who will log it in the institution's grievance log and then return it to the medical services contractual staff for action.

The appropriate medical staff will review the grievance and denote actions taken on the Medical Log Form #586

The medical services contractual staff will attempt an informal resolution with the inmate, upon discussion over the treatment defined on the Medical Log Form. If the Medical Grievance is resolved the inmate acknowledges this by his signature on Form #585 Informal Resolution. This signed form is forwarded to the IGC who will close out the case.

Failure to resolve the grievance informally, results in a Medical Grievance Committee hearing which will not include any medical services contractual staff previously involved in the informal resolution process. The IGC and the inmate must be present at this hearing.

Resolution closes the case; failure to resolve the case results in the inmate completing the MGC Appeal Statement section of Form #585. Upon receipt, the IGC forwards the file to the Bureau

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.4 | 7 OF 7 |
| SUBJECT: INMATE GRIEVANCE PROCEDURE | | |

Grievance Officer (BGO). The BGO recommends a course of action to the Bureau Chief of Prisons, who renders a final decision.

**Universal Grievance:**

Issues that concern the entire system and not just one inmate, a group of inmates, or one institution shall be presented by the BGO to the Bureau Chief of Prisons.

**Institutional Transfer:**

When possible, transfers shall be delayed for any inmate who has filed a grievance and been notified of an RGC hearing date until the hearing has concluded. If circumstance requires immediate transfer, the IGC at the institution where the grievant filed will proceed in the grievant's absence utilizing the normal IGP process steps through Level II. The Warden/Warden's Designee decision will be forwarded to the IGC at the grievant's new location for review. If the grievant appeals to Level III, the IGC at the grievant's new location shall forward the file to the IGC at the original location for BGO review. Grievances filed against the sending institution after an inmate's transfer, but inside the standard seven day window following an incident, shall be forwarded by the IGC at the new location to the IGC at the original location for processing.

**Appeals:**

Grievant appeals must be signed, dated and state the specific reasons on Form #584 Grievance Appeal. This form must be given to the IGC who is responsible for tracking the status of each grievance. The IGC will forward the appeal and grievance file to the BGO. Grievants shall have 3 calendar days upon receipt of their copy of the Warden/Warden's Designee decision to appeal, as well as, to include any additional information for review at the next level. NOTE: The Bureau Chief of Prisons decisions are final and not appealable.

Attachments

# INMATE GRIEVANCE PROCEDURE

# FORMS APPENDIX

April '98 Revision

## Inmate Grievance Procedure Appendix

| Exhibit | | DESCRIPTION |
|---|---|---|
| A | Form #175 | Housing Unit Investigation Report |
| B | Form #175 | Page Two |
| C | Form #584 | Grievance Form |
| D | Form #584 | Informal Resolution |
| E | Form #584 | RGC Recommendation |
| F | Form #584 | Warden's/Warden's Designee Response |
| G | Form #584 | Grievance Appeal |
| H | Form #585 | Medical Grievance |
| I | Form #585 | Informal Resolution |
| J | Form #585 | MGC Recommendation/Appeal |
| K | Form #586 | Medical Log |

April '98 Revision