IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

DAVID W. WILLIAMSON,                          )
    Plaintiff,                              )
    v.                                      )          C.A. 06-379-SLR
CORRECTIONAL MEDICAL SERVICES, Inc, et al,    )
    Defendants.

## WILLIAMSON SEEEKS LEAVE TO CORRECT ANY DEFICIENCIES AND/OR REPLY TO DEFENDANTS' RESPONSE TO WILLIAMSON'S MOTION FOR RELIEF FROM JUDGMENT AND/OR MOTIION FOR REARGUMENT

Williamson, seeks leave to correct any deficiencies noted by defendants and/or Reply to "Defendants' response to plaintiff's motion for relief from judgment and/or motion for reargument" (D.I. 194). Williamson is a pro se plaintiff –and a friend of the Court- and he seeks pleading leniency under *Haines v. Kerner*, 404 U.S. 519 (1972).

### NATURE AND STAGE OF PROCEDINGS

1. On or about 08-09-07, CMS filed Williamson's medical records (CMS's Supplemental Response), (D.I. 147), in response to the Court's Order directing CMS to provide Williamson's medical records. However, CMS inserted an affidavit by doctor Vandusen ("Vandusen's Aff't") , in which CMS explicitly abandoned its prior defense, that it had provided to Williamson and this Court in CMS's Response (e.g. Alleged lapses & Williamson is receiving his medications as prescribed), for a materially different and surprisingly new argument: CMS now – for the first time and without notice- disputes whether hypothyroidism is a serious medical condition, and CMS now disputes the need for uninterrupted daily medication. CMS still avoided Williamson's personal medical and clinical experiences with the on going CCMI(s) (i.e. the acute resurgence of acute and chronic symptoms), but merely spoke in general terms –albeit highly dubious because it was in conflict with Williamson's medical records- relating to hypothyroidism.

2. On or about 08-16-07, Williamson filed an objection to Vandusen's Aff't and requested the Court to strike CMS's new, surprising, and materially different argument/defense because of the following:

- New defense was absent proper notice,
- New defense was untimely and unfair (surprise and prejudicial),
- New defense was highly dubious and in irreconcilable conflict with W's medical records, and
- New defense was immaterial because it failed to consider W's personal and clinical experience relating to the CC Meds interruptions. (See Plaintiff's objection and/or motion to strike CMS's supplemental response D.I. 153). Therefore, Williamson properly raised and preserved objections that support a violation of Fed. R. Civ. P., rule 403.



1

3. On 9-10-07, the Court issued an Order (D.I. 164) that denied Williamson's TRO/PI request (D.I. 38…), and denied Williamson's motion to strike CMS's Supplemental Response (D.I. 153). It is unclear whether the Court ruled on Plaintiff's prior motion to strike Kionke's Aff't, though Williamson also preserved said objection.

4. On or about 9-18-07, Williamson filed for Relief from Judgment (D.I._____) ("Williamson's Reargument"), of the Court's 9-10-07 Order denying his request for TRO/PI and his motion to strike Vandusen's Aff't.

5. On 9-30-07, Williamson received "Defendant's Response…." (D.I. 194) to Williamson's Reargument. Therein, CMS raised two objections in opposition to Williamson's Reargument:

   i. That Vandusen's Affidavit ("Vandusen's Aff't), was properly under Court rules and that CMS had sought leave to file it, (In short, had Vandusen's Aff't merely been an affidavit that supported a positon CMS had already filed, then CMS would be correct, but CMS employed Vandusen's Aff't as a means to materially alter its position and bring into issue for the first time a position CMS did not dispute);and

   ii. That Williamson's failed to assert any standard of why the motion for reargument should be granted and Williamson "does not indicate which facts or law the Plaintiff alleges the Court misapprehended." ( D.I. 194). Both positions are without merit. Indeed, CMS appears to take issue with the form of Williamson's motion over its substance, because Williamson did raise therein both factual and legal errors that he respectfully submits the Court misapprehended. Granted, though Williamson is unlettered and in-artful, his assertions of fact and law are sufficient to support his request for reconsideration. To the extent that defendants object to Williamson's pro se deficiencies, Williamson seeks leave to correct the record now so that it will develop properly. Williamson also seeks to avoid further permanent injuries and needless suffering, and this matter is of great importance to him; however, Williamson also seeks to give far notice and opportunity for defendants to respond to Williamson's claims as is appropriate. Thus, the Court is warranted in allowing Williamson to correct deficiencies and/or reply to defendant's opposition and Williamson states herein that he does not oppose defendants filing a final response to the instant correction. Williamson offers the following:

## MISAPREHENSIONS OF LAW AND FACT:

1. The Court misapprehended both relevant facts and misapplied the relevant legal standard when it accepted Kionke's Affidavit (D.I. 51), ("Kionke's Aff't"), and alternatively denied Williamson's objection and/or motion to strike same, because Kionke's Aff't violated F.R.E. 602 and 1002 & 1003.

First, Williamson was seen three times by defendant Zimble, CMS dentist, and once by CMS dentist Bishop – over a forty-day period- regarding his emergency broken tooth episode. Both attending dentists stated that Williamson's condition required a crown, but that they were prohibited (e.g. CMS custom/policy to deny needed medical care for non-medical factors), from providing Williamson same. Williamson provided claims and real-time affidavits to support his claims in his TRO/PI filings. CMS never directly challenged Williamson's claims, but alternatively offered a third person affidavit (i.e. Kionke's Aff't), that utterly failed to establish any of the required foundation for her personal knowledge relating to Williamson's emergency dental episode. Indeed, CMS

2

could have provided first person affidavits from the attending dentists (e.g. Zimble & Bishop), and/or provided the dental records but choose not to when it filed CMS's Response that included Kionke's Aff't. Williamson raised the missing evidence rule, in which it is proper to draw an inference that had CMS provided evidence in its control or possession, it would have been unfavorable. (See McCrary-El v. Shaw, 992 F.2d 809, 812-13 (8th Cir. 1993).And also raised F.R.E. 602, and 1002-1003 objections.

Moreover, when CMS did eventually provided Williamson's dental records, it actually proved Williamson's claim (i.e. that CMS employed a custom/policy to deny dental care, absent valid medical factors), by introducing a policy and other records that stated the per se prohibition policy that denied certain dental procedures without any consideration of the medical needs of the patient. For instance, CMS inserted a policy that explicitly prohibits Crowns, root canals, teeth cleanings..... (See CMS's Supplemental Response D.I. 147 at Sealed Ex-D at page 1 of 1 "**Dental Services**")(e.g. Specifically, "**As a rule, caps, crowns, bridges, root canals, teeth cleaning ... will not be provided.**" There were no exceptions listed for medical needs of the patient). Also, both defendants Robinson and Clark stated -in their own hand- that crowns and periodontal surgery was not an option here (i.e. that it was prohibited), so Williamson best consider extraction! (See D.I. 147 Sealed Ex-D Dental Records: Clark's Letter of 1-08-02 to IGC Mercer & Robinson's 1-16-02 Consult Request). Thus, it appears that the quotes Williamson offered via affidavit from the attending dentists (Zimble and Bishop) concerning his need for a crown and that they could not provide the needed crown, appears to have substantial credence. Perhaps, that is why CMS chose not to offer their testimony, but instead offered Kionke's third person affidavit.

Also, revealed by the dental records were the following compelling points:

a). That Bishop eventually provided Williamson dental care for the broken tooth some forty days after being seen three times by defendant Zimble, thus dental care was obviously needed;

b). That Zimble first saw Williamson for the broken tooth, however, on three occasions and provided no treatment whatsoever; and

c). That Kionke was not involved in any way, shape, or form to said broken tooth, nor did she even state that she reviewed Williamson's dental records.

Consequently, it is indisputable that Williamson suffered an obvious serious medical incident when his tooth sheared in half; it is indisputable that Williamson experienced needless pain and suffering or that a broken tooth is a tangible permanent injury; it is indisputable that Zimble diagnosed said emergency when he examined Williamson the first, second, and third time, but failed to actually provide any treatment; it is indisputable that Bishop eventually provided some forty days later a composite repair; and it is indisputable that Kionke neither attended to Williamson's broken tooth or even claimed to have reviewed Williamson's relevant dental records. Kionke's improper Aff't should have been struck by the Court. Williamson's claim that both Zimble and Bishop admitted that the needed treatment was a crown, but that they were prohibited is also supported by substantial circumstantial evidence. Moreover, Kionke's affidavit is improper and in violation of F.R.E., and it is unclear how or where the Court has derived credible, fair, and unbiased medical opinion regarding the appropriate dental

treatment for Williamson's particular emergency dental episode, but it is clear that Kionke's Aff't in is conflict with the facts.

Second, Williamson sufficiently claimed a permanent injury, significant pain and suffering from the forty day delay in any care whatsoever, significant impairment of his normal daily functions, that CMS intentionally provided substandard care, and that he was denied needed dental procedures not based on valid medical factors, but on a policy/custom to deny needed procedures sufficient to be successful on the merits. (See *Martin v. Tyson*, 845 F.2d 1451, 1457 (7th Cir. 1998)(lengthy delay in providing dental care or one that results in serious pain or permanent damage violates Constitution) and *Fields v. Gander*, 734 F.2d 1313, 1315 (8th Cir. 1984)( three week delay accompanied by swelling and pain states a cause of action) and (*Dean v. Coughlin*, 623 F.Supp 392, 403-04 (S.D.N.Y. 1985)(denial of and delays in filling cavities, performing root canals, providing crowns…. Violates the Eighth Amendment); and *Tillery v. Owens*, 719 F.Supp. 1256, 1286 (W.D. Pa. 1989), aff'd 907 F.2d 418 (3rd Cir. 1990)( Citing *Durmer v. O'Carroll*, 911 F.2d 64 (3rd Cir. 1993) (…the fact that plaintiff's were provided with treatment is not by itself, enough to preclude an Eighth Amendment claim); *West v. Keve*, 571 F.2d 158 (3rd Cir. 1978) (easier less efficacious treatment actionable); and *Jackson v. F.C.M.S.*, 380 F. Supp. 2d 387, _____, (D. Del 2005) (policy existed that resulted in officials being deliberate indifference to his serious medical needs). If proven, and assuming the proper standard is applied, Williamson will clearly be successful on the merits. There can be no doubt of this conclusion.

Third, the Court committed error of law and/or abused its discretion when it failed to conduct a Rule 65 (a) hearing and denied Williamson's uncontested renewal for the appointment of an independent expert to assist the trier of fact.

The Court denied Williamson's objection to Kionke's third person Aff't and alternatively gave it great weight. Kionke claimed that the forty-day belated composite repair was a permanent repair; that the nerve was healthy, and that there was no need for a root canal. The Court therefore concluded: "denial of the [TRO/PI], as it relates to the broken tooth/repair issue, will not result in irreparable harm. Nor does it appear that, based upon the facts before the Court at this time as the issue, plaintiff will succeed on the merits." (D.I. 164 Order at item 7). Kionke's affidavit is improper and in violation of F.R.E. and this issue is highly disputed. However, it is unclear how or where the trier of fact has derived credible, fair, and unbiased expert medical opinion regarding the appropriate dental treatment for Williamson's particular emergency dental episode. For example, Williamson's dental records contain the statements of two dentists (e.g. Clark and Robinson) that acknowledges a custom/policy to deny dental care (e.g. root canals are not an options here (See supra) and periodontal surgery is not an option here (See Supra), and CMS also inserted a policy that acknowledges a custom/policy to deny crowns, root canals, etc, and Williamson quoted both attending dentists (Zimble and Bishop) stating that they were prohibited from providing Williamson the needed crown; however, these facts were disregarded as were Williamson's supported claims. Alternatively, Kionke's highly dubious third person Aff't, which claimed the nerve, was healthy and no crown was needed, was accepted absent any support or independent medical opinion. There is ample direct and circumstantial evidence to support Williamson's claims: that two dentists specifically

4

told him that his emergency dental episode required a crown but that they were prohibited from providing same. Moreover, the attending physicians' testimony was conveniently omitted –best evidence- by CMS and substituted by Kionke's third person Aff't. Had CMS provided Bishop's testimony, it would have been unfavorable to defendant. If proven, Williamson's claims will undoubtedly be successful.

Finally, in view of Williamson's claims, the direct and circumstantial evidence supporting a custom/policy to deny needed dental care, the omission of testimony of the attending dentists, the highly dubious third person Aff't by Kionke, and in view of the highly contested issue and lack of credible unbiased expert medical opinion, it was error for the Court to deny any hearing and/or the appointment of an independent expert opinion to determine this intensive and complicated medical question. Granted, it is in the Court's discretion to hold a hearing under Fed. R. Civ. P., rule 65 before granting or refusing a TRO/PI, it was nevertheless warranted in this instance to reconcile highly disputed material facts. (See *McDonalds Corp. v. Robertson*, 147 F.3d 1301, 1311-13 (11th Cir. 1998) ("Rule 65 does not [always] require an evidentiary hearing; "undisputed material facts require no hearing, but "bitterly disputed facts do…."). Williamson filed for the appointment of an independent expert opinion (D.I. 41), and CMS did not oppose it (D.I. 57), but the request was denied (D.I. 120). Following CMS's surprise supplemental response (D.I. 147), Williamson renewed the request for an independent expert (D.I. _____). Rule 702 provides, in pertinent part,, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert… may testify thereto…." (See *Helling v. McKinney*, 509 U.S. 25, 113 S.Ct. 2475 (1993)( Suggesting appointment of expert witness on the health risks of environmental tobacco smoke). Our Sister Circuit advised that complex medical diagnosis makes expert witnesses necessary.( See *Ledford v. Sullivan*, 105 F.3d 354, 358-59 (7th Cir. 1997). And the Third Circuit has stated that that when defendants utilize expert to prove their case, the denial to a plaintiff is manifest injustice. (See *Parham v. Johnson*, 126 F.3d 454, 460 (3rd Cir 1997). Consequently, defendant CMS utilized Kionke's third person Aff't to make medical claims of which she professed no personal knowledge of, thus she testified as defendant's expert medical witness as to general medical knowledge, and to deny plaintiff's uncontested motion for an independent expert is manifest injustice. Rule 706 provides for that independent expert medical opinion, and the Court should have given great weight to considering the appointment to shed light upon this disputed medical fact issue. Indeed, our Sister Circuit also opined on the matter in *Spann v. Roper*, 453 F.3d 1007, 1008-09 (8th Cir. 2006) (found "it was incongruous of the district court to have denied Spann's motion for expert witness and than grant summary judgment, in part, based on Spann's failure to provide verifying medical evidence that the delay had detrimental effects.) Granted, this Court did not grant a summary judgment against Williamson, but it did nevertheless make a final determination as to his request for a TRO/PI under significantly similar circumstances and reconsideration and/or rehearing is warranted to right a manifest injustice.

2.  The Court committed error of law and/or abused its discretion when it failed to
    apply the correct legal standard and/or failed to apply the facts to the correct legal
    standard relating to Williamson's periodontal claim.

First, defendant CMS failed to challenge, dispute, or refute any of Williamson's claims regarding his periodontal condition or the need for periodontal care. Though, CMS remained silent as to this matter, the Court denied Williamson's reasonable requests for the recommended perio-care and stated:

> While plaintiff may not like the type of care he receives, it cannot be said that there
> is a deliberate indifference to his serious dental need; and plaintiff therefore, has not
> demonstrated a likelihood of success on the merits as to this issue. (See Order D.I. 164 at item 6).

Williamson respectfully submits; however, that the Court's conclusion is in error for the following:

- It is in irreconcilable conflict with Williamson's dental records;
- It is in irreconcilable conflict with the legal standard;
- It is in clear error in that a determination was made of what Williamson's serious medical condition required medically, but conflicts with the specialized recommendation of the periodontist, and it also fails to consult any alternate expert medical opinion for support;
- It mistakes Williamson's claim as a simple disagreement over the type of care he wants, and not as Williamson actually claims: that CMS employed a custom/policy of outright denial of needed medical care and/or that CMS created such an inordinate delay in providing care that it rendered that care useless and caused Williamson permanent injury; and/or that CMS employed a continuous pattern of care it knew was ineffective or caused Williamson to suffer needlessly; and
- It fails to consider the repeat incidence of permanent injury (four teeth to date) and the tangible threat of future permanent injury and threat to health (See Ex-A Williamson's Aff't of 9-26-07, in which Williamson discovered the imminent loss of another two teeth –for a total of six).

The Court's Order noted that periodontal treatment was recommended by doctor Kazmareyk ('Kaz') a periodontist, as early as March 1999, and the periodontal care he specifically stated was "needed to save Williamson's dentitions" [though the Court omitted Dr. Kaz' specific recommendations of periodontal surgery and routine access to hygiene visits 1 or 2 per year (i.e. perio-cleanings)] Also, on 2002, Williamson was recommended for perio-surgery, but notified –point blank—by defendant Robinson that perio-surgery "was not an option" at the prison. Also, that Williamson was "seen" December 2004 and "scheduled" for a FMX, TRX, and cavitron cleaning –though the needed cavitron cleaning was withheld until December 2005. Finally, that Williamson had two teeth extracted in March 2005, and was again "seen" in January and February of 2006.

The Court is commended for its painstaking review of Williamson's medical records, but Williamson respectfully submits that fundamental errors were made due to a fragmented context. A compelling picture develops in Williamson's favor when we view a complete chronological review of his dental records.

6

Williamson's dental records revealed the following:

> ➤ On 6-29-99, Dr. Kaz explicitly recommended the standard of care required for Williamson's chronic perio-disease: 1. Periodontal treatment is needed to save his dentitions; 2. This care should be handled by a periodontist; 3. Williamson needs "access to regular hygiene visits 1 or 2 per year" [i.e. periodontal cleanings]; and 4. "needs periodontal surgery at this time."

[The legal standard articulated in *Monmouth County Corr' Inst. V. Lanzaro*, 834 F.2d 326, 347 (3rd Cir. 1987) states (serious medical need is one diagnosed by a doctor as mandating treatment). Williamson has never received regular access of perio-cleanings at a rate of 1 to 2 per year, nor has Williamson received even timely perio=cleanings in response to the majority of his active infections, and he has never been provided the twice recommended perio-surgery despite losing four teeth to date. See *Young v. Harris*, 509 F.Supp 1111, 1113-14 (S.D.N.Y. 1981)( Allegation states Eighth Amendment claim on theory that defendants have failed to provide Young with prescribed treatment or that they have unreasonably delayed his access to such treatment); *Johnson v. Lockhart*, 941 F.2d 705, 706-07 (8th Cir. 1991)( 10 month delay in surgery that doctor recommended be done within days is a failure to act on medical recommendation and is actionable); *Hamilton v. Endel*, 981 F.2d 1063, 1066-67 (9th Cir. 1992)( Holding that officials' disregarding a surgeon's recommendation on non-medical grounds could state claim)].

Williamson's dental records revealed the following:

> ➤ On 8-17-99 Williamson experienced permanent injury (e.g. two teeth extracted #8 & #30), as a direct result of his perio-disease;
>
> ➤ On 3-26-01, 9-11-01, 10-16-01, 11-10-01, & 12-04-04, Williamson experienced five acute perio-infections ("infections"), about teeth #10, #21, & #29;
>
> ➤ On 4-12-01 defendant Robinson performed a rushed teeth cleaning that was so grossly substandard that the infections continued and Robinson had to conduct a second cleaning on 5-08-01 due to the ineffectiveness of the 4-12-01 scraping (i.e. non-cavitron cleaning);
>
> ➤ On 12-28-01, 5-08-02, 8-05-02, & 08-08-02, Williamson again experienced four more infections, which was a total of nine infections in seventeen months period;
>
> ➤ On 1-09-02 defendant Robinson noted significant bone loss in teeth #22 & #27, and she merely ordered medicated mouthwash to treat the 12-28-01 infection;
>
> ➤ On 1-08-02 defendant Clark documented –in her own hand- CMS's custom/policy to deny needed care: "also told [Williamson] since we do not do *root canals* here [,] his tooth need[s] to be extracted. *This problem Can not be treated indefinitely with medication.*..."

> ➤ On 1-16-02, defendant Robinson also documented –in her own hand- CMS's custom/policy to deny Williamson needed, as recommended by Dr. Kaz, care that even she acknowledged too in a "Consult Request" she filed: "... *periodontal surgery is not an option here* –ext[raction] should be considered...." But Robinson admits that perio-surgery is what is needed for Williamson's chronic perio-disease in her Consult Request of 5-16-02;

7

[Thus Clark acknowledges the futility of their continuing course of treatment via med-mouthwash, and admits to employing the custom/policy of denying root canals Note that root canals are mandated for chronic recurring perio-infections. (See *Swan v. Daniels*, 923 F. Supp 626, 633 (D. Del. 1995) ( CMS will be liable only if its policies or procedures are unconstitutional or **are the moving force** "behind the constitutional violation); and *Moody v. Kearney*, 380 F. Supp. 2d 393, ____, (D. Del. 2005) (…must be a **"policy" or "custom"** that resulted in the alleged deliberate indifference to plaintiff's serious medical need). Consequently, a custom/policy has been admitted by both defendants (i.e. Clark and Robinson), and it caused Williamson a permanent injury and needless suffering. These are the key facts and they are part of Williamson's dental records. Moreover, we know what Williamson's condition required because Dr. Kaz documented it; and because the continuing course of care was clearly ineffective as it exposed Williamson to multiple recurring infections and permanent loss. Also, defendants admitted same! Thus, Williamson has a substantial likelihood of success on the merits under the correct legal standard. (See *Todaro v. Ward*, 565 F.2d 48, 52 (2d Cir. 1977)( "acts that appear negligent in isolation may constitute deliberat4 indifference if repeated); *Williams v. O'Leary*, 805 F. Supp 634, 638 (N.D. Ill 1992)( Deliberate indifference could be inferred from negligent treatment of long duration); *Robert E. v. Lane*, 530 F. Supp 930, 940 (N.D. Ill 19____)( "A pattern of similar instances presumptively indicates that officials have, through their programs and procedures, created an environment in which negligence is unacceptably likely); *Bishop v. Stoneman*, 508 F.2d 1224, 1225 (2d Cir. 1974)( A series of incidents closely related in time may disclose a pattern of conduct by officials amounting to deliberate indifference….); and *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990)( "…**sheer number of specific instances the doctor allegedly insisted on continuing course of treatment that doctor knew were painful, ineffective, or entailed substantial risk of serious harm…stated cause of action**.)]. [ But Clark and Robinson cannot even claim negligence because the record discloses their knowledge of the needed treatment and failure to provide it. Williamson experienced some nine infections on Clark and Robinson's watch and they both articulated the custom/policy to deny needed treatment, which was in conflict with Dr. Kaz's recommendation and devoid of any semblance or exercise of professional opinion. Consequently, Williamson discovered permanent tooth loss on 03-04-05 (two teeth extracted on 3-11-05) directly due to the grossly under treated and inordinately delayed perio-care.]

Williamson's dental records revealed the following:

➢ On 5-16-02, Williamson was "seen" by Clark, but she failed to provide any perio-care;

➢ On 6-06-02 and 6-13-02, Williamson was "seen" by Robinson, but she failed to provide any perio-care. She did reorder the known ineffective mouthwash, though;

➢ On 8-08-02, Williamson was "seen" by Robinson, but she failed to provide any perio-care, and she had to reorder the mouthwash because it had not been provided as yet;

➢ On 8-20-02, Williamson was "seen" by Clark, but she failed to provide any perio-care;

➢ On 9-20-02 Williamson finally received a too late and too little area specific tooth scraping around #9 tooth by Robinson (i.e. non-cavitron cleaning);

➤ On 4-14-03, Williamson experienced an acute infection and on 4-16-03 Robinson merely performed a medical mouth rinse with her favored ineffective mouthwash;

➤ On 5-08-03 [three weeks of suffering an active infection], Robinson belatedly performed the first cavitron cleaning;

➤ On 5-22-03 a post op exam was performed and a note appears in the dental records that seems to order "4 more cavitron' cleanings, but they were not provided;

[Williamson submits that there is a significant difference between merely being "seen" and/or receiving belated and substandard care known to be ineffective than in one actually being provided the minimally adequate prescribed care his serious medical needs call for. (See *Jackson v. Fauver*, 334 F. Supp 2.d 697, ____, (D.N.J.2004)( citing *Durmer v. O'Carroll*, 991 F.2d 64 (3d Cir. 1993)( ...the fact that plaintiffs were provided with treatment is not, by itself, enough to preclude an Eighth Amendment claim): *Greeno v. Daley*, 414 F.3d 645, 58-59 (7th Cir. 2005)(... defendants argue since he received on-going medical care, his claim is nothing more than a disagreement with a prescribed course of treatment...[but] a prisoner is not required to show that he was literally ignored...Likewise the **some treatment argument misses the possibility that the treatment Greeno did receive was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate"** his condition....). It appears the Court mistakenly adopted the some treatment approach; however, Williamson's case facts distinguish this line of cases. Indeed, the some treatment line presupposes that an exercise of sound professional judgment was employed, but the record here reflects (a) the employment of a custom/policy that precluded any exercise of sound professional judgment, (b) the denial of prescribed course of treatment, and (c) the continuous employment of a course of conduct that resulted in permanent injuries. The some treatment line of cases is clearly distinguished here. (See *Inmates of Allegheny County Jail v. Pierce*, 612 F. 2d 754, 762 (3d Cir. 1979)( On remand district court held:...(2) lack of care...amounted to deliberate indifference, 487 F. Supp 638 (1980)( The original court had dismissed plaintiff's claims based on the some care application, but it was inappropriate in Pierce, as it is inappropriate here.

Williamson's dental records revealed the following:

➤ On 12-09-04, Williamson experienced an acute infection surrounding teeth # 14 & #15.

➤ On 12-20-04, defendant Kionke acknowledged Williamson's active infection, reviewed his dental charts (i.e. history of chronic perio-disease), but failed to provide timely perio-care as warranted by the active infection. Alternatively, Kionke scheduled Williamson for a FMX, TRX, and a Cavitron cleaning. [The scheduled cavitron cleaning was not provided until December 2005- two days shy of one year];

[ On 03-04-05, Williamson was "seen" by Kionke for an active infection, but she failed to record the dental visit. She did note that Williamson had two irreparably damaged teeth that needed immediate extraction, and she schedule Williamson for the extraction. (See Ex-B Affidavit of 3-04-05 visit at item 6-9 and Williamson's Employee Absence Report, which depicts an absence on 3-04 & 3-11-05 for dental visits)].

➤ On 3-11-05, Kionke extracted two additional teeth and performed the belated TRX and FMX, but failed to perform the scheduled cavitron cleaning, which was needed to treat the active infection of 12-20-04 for

9

teeth #14 & #15. [Note that Williamson discovered on 09-26-07 that teeth #14 & #15 were also irreparably damaged and would have to be extracted. See Ex-A)];

[Also, the two teeth Kionke spotted for extraction on 03-04-05, were two that had been repeatedly exposed to infections under Clark and Robinson's watch, and thus was that date of discovery of the permanent injuries that resulted from defendants' continuing course of conduct and violations.]

Williamson's dental records revealed the following:

➤ On 11-28-05 –nearly one year and two infections after Kionke's scheduled cavitron cleaning, (that had never been performed), Williamson filed a dental grievance due to the continuing violation of defendants refusing to provide the needed care in a timely and adequate manner. (See Ex-C Grievance).

➤ On 12-07-05, defendant Zimble provided the cavitron cleaning that was scheduled on 12-20-04 for Williamson's acute infection of 12-09-04. [Moreover, Zimble's cavitron cleaning lasted no more than five minutes and was substandard. When Williamson challenged Zimble's substandard cleaning, all he could say was that there was a lot of people to see that day];

➤ On 1-09-06, Williamson experienced a dental emergency due to his # 19 tooth shearing in half down to the gum line and exposing a raw nerve, he also had the beginnings of another infection;

➤ On 1-11-06, 02-14-06, & 02-17-06, Williamson was "seen" by Zimble for his emergency dental episode, but Zimble failed to provide any care what-so-ever; [ and alternatively Zimble made preposterous and clearly incongruous entries into Williamson's dental records –he did note #19 had broken- but he also stated that essentially all was well. We know; however, Williamson's dental emergency required treatment, because Bishop ultimately provided care for it some forty days later];

[Consequently, of these last five visits that Williamson was "seen" he received no care at all on three of five visits –which the Court noted as continued monitoring of Williamson's medical needs. Also, Williamson has experienced no less than eleven infections since March 2001, but he only received three cavitron cleanings, a mere two teeth scraping, and a medicated mouth rinse. The result was not surprising: extraction of two teeth on 03-11-05 --which to date is a total of four teeth- and more recently Williamson discovered on 09-26-07, that he again experienced irreparable damage to two more teeth (e.g. #14 & #15) (See Ex-A). It is no surprise that numbers #14 & #15 were permanently damaged because Williamson suffered an acute infection on 12-09-04 and 03-04-05 in that very area. Kionke subsequently diagnosed the infections and had "seen" and/or "monitored" Williamson's acute condition on 12-20-04, 03-04-05, 03-11-05, and 9-21-05, but she never once performed the needed and scheduled cavitron cleaning, and never attempted to perform the needed perio-surgery or request a perio-Consultation. Kionke was content –like her peer defendants Clark and Robinson-- to realize CMS's custom/policy of denying the known needed care at the expense of Williamson's health and well being. The only available course of treatment for these defendants, as far as they were concerned, was to extract Williamson's problematic teeth. Such was the result of being "seen' and "monitored" by these defendants.

Indulge me for a moment, in a hypothetical. Imagine that Williamson suffered a severe laceration to his artery and his life's blood was freely flowing out, yet Williamson was subsequently "seen" by a doctor and his

10

condition simply "monitored" as defendants largely did here –but though being "seen" the needed tourniquet and surgery was denied. Williamson would have suffered another type of permanent injury: death. It is a preposterous scenario, of course, but it accurately highlights the experience Williamson has had of being "seen' and his condition being "monitored" but needed surgery, etc, being intentionally denied by defendants and it repeatedly resulted in permanent injuries!

In short, Williamson did not claim a mere dislike of the type of treatment he has received, but that he has not received the known and prescribed type of treatment that his chronic condition calls for; that he has not received the adequate care (e.g. cavitron cleaning, and root canals, etc), which is known to be needed to address active infections in a timely and consistent fashion. The "some treatment" standard was misapplied to Williamson's case facts, but under the correct legal standard, Williamson enjoys a substantial likelihood of success on the merits. (Williamson incorporates herein his arguments regarding the appointment of expert witness and that the denial caused a manifest injustice, Spann, supra, etc). Additionally, the contemporary standards and opinions of the medical profession are highly relevant in determine what constitutes deliberate indifference. (See *Howell v. Evens,* 922 F.2d 712, 719 (11th Cir. 1991). However, the only medical opinion who has specifically commented on Williamson's perio-condition was Dr. Kaz, It is unclear what periodontal medical opinion the Court considered to make its determination, but it appears that this matter required expert testimony. Appointment of an independent expert witness was warranted, and reconsideration is warranted and a rehearing en banc along with relevant expert testimony is warranted to resolve this issue.

3. The Court misapprehended relevant facts of Williamson's medical records as they related to his hypothyroidism disease, and misapplied the relevant legal standard and abused its discretion n accepting Vandusen's Affidavit ("Vandusen's Aff't"), and in denying Williamson's request for appointment of an independent medical expert.

First, Williamson filed a TRO/PI (D.I. 38-40), in which he sought reasonable medical case, inter alia, his chronic disease of hypothyroidism. (Williamson incorporates the TRO/PI and all related filings herein). Therein, Williamson specifically claimed that Williamson's chronic hypothyroidism is a **serious medical condition,** of which requires **daily maintenance** (i.e. chronic care medications "CC Meds"), to replace the essential hormones; and that any CC Med interruptions ("CCMI"), caused Williamson to needlessly suffer an acute resurgence of chronic symptoms. Said symptoms included the following: i. pain and suffering, ii. significant impairment of Williamson's normal daily functions, iii. significant emotional and mental suffering (e.g. actually diagnosed with depression directly due to CCMI's), iv. and a tangible threat to Williamson's future health and well being.

11

CMS responded; however, therein CMS:

      I.      Never once questioned or disputed whether Williamson suffered the hypothyroidism;

      II.     Never once questioned or disputed whether it was a serious medical condition that mandated
             adequate, timely, consistent medical care; and

      III.    Never once questioned or disputed whether Williamson's personal experience with this chronic
             disease caused him significant pain and suffering, emotional and mental distress, impairment of
             normal daily functions, permanent injuries, and/or significant tangible threat to his future health.
      (See CMS's Response at D.I. 50-51).

      Also, on 7-02-07 Williamson provided the Court with a recent admission made by CMS (D.I. _____), in which CMS explicitly stated that it "must adhere" to any grievance that is "upheld." (See D.I. 103 at item 51), and that consequently the grievance which had been "upheld" on 03-15-07 had requested identical relief of that of Williamson's request in his TRO/PI relating to receiving his CC Meds. Thus, CMS had waived their objection.

      On 7-19-07 the Court Ordered CMS "to file with the Court...plaintiffs medical and dental records and any information regarding plaintiff's upcoming knee surgery...." (D.I. 119 at item 4). The Court also held Williamson's TRO/PI request in abeyance (Id.) and Williamson inadvertently filed on 07-17-07 –what he styled as a motion for reargument/relief from judgment, (D.I. _____), but there was no final Order to request relief from, so Williamson, who is a pro se plaintiff unlettered in the law- mislabeled his motion. It should have been considered as an addendum to the TRO/PI.

      On or about 08-09-07, CMS filed Williamson's medical records (CMS's Supplemental Response), (D.I. 147). However, CMS inserted an affidavit by doctor Vandusen ("Vandusen's Aff't") that had the effect of explicitly abandoning CMS's prior defense it articulated **"with particularity"** in CMS's Response (e.g. Alleged lapses & Williamson is receiving his medications as prescribed), for a materially different and surprisingly new argument, in which CMS now –for the first time and without notice- disputes whether hypothyroidism is a serious medical condition, and CMS now disputes the need for uninterrupted daily medication. CMS still avoided Williamson's personal medical and clinical experiences with the on going CCMI(s) (i.e. the acute resurgence of acute and chronic symptoms), but merely spoke in general terms –albeit highly dubious because it was in conflict with Williamson's medical records- relating to his experience with the hypothyroidism.

      On or about 08-16-07, Williamson filed an objection to Vandusen's Aff't and requested the Court to strike CMS's new, surprising, and materially different argument/defense because of the following:

- New defense was absent proper notice,
- New defense was untimely and unfair (surprise and prejudicial),
- New defense was highly dubious and in irreconcilable conflict with W's medical records, and
- New defense was immaterial because it failed to consider W's personal and clinical experience relating to the CC Meds interruptions. (See Plaintiff's objection and/or motion to strike CMS's supplemental

12

response D.I. 153). Therefore, Williamson properly raised and preserved –however in-artful- objections
that support a violation of Fed. R. Civ. P., rule 403.

For example, Williamson presented his claims in relation to his TRO/PI (i.e. hypothyroidism/thyroid meds),
and CMS presented its response. Therefore, the parties made their respective positions known to each other
and to the Court. The Court Ordered Williamson's medical records, but ✹ certainly did not invite CMS to
abandon its prior position/strategy (i.e. defense), and alternatively add a materially new and different
argument/defense made in the guise of an affidavit. (i.e. Vandusen's Aff't). Such an act would clearly violate
the proper notice and "particularity" requirements for written motions. (See Fed. R. Civ. R., rule 7 (b)).
Moreover, it is fundamentally unfair for CMS to choose a position/ strategy, but then adandon it after the
facts completely destroy CMS's failed defense, and alternatively permit CMS to change its position/strategy.

For example, CMS did not dispute any of Williamson's claims (See above), except to assert the lapses
were "alleged" and that the record demonstrates CMS's efforts to provide said meds and that Williamson
was receiving his medications "as prescribed." However, Williamson's medication records –once and for all-
definitively proved every single "alleged" lapse for which Williamson claimed as factually accurate. (Eleven
according to the available meds records, but it was actually thirteen total while the TRO/PI was pending).
Thus, Williamson proved a systemic breakdown and a clear pattern of CMS's failure to provide
Williamson's meds as prescribed (i.e. daily). So CMS quickly abandoned its folly and back-tracked via
Vandusen's Aff't to bring into issue for the first and only time: whether hypothyroidism is a serious medical
condition and whether chronic-care medication interruptions ("CCMI"), create a problem and thus impair
Williamson's normal daily functions and/or create a risk of injury. CMS's employment of Vandusen's Aff't
violated rule 7 (b) because written motions must set forth "with particularity" the grounds for relief. CMS
did just that in its response and CMS must live with the decision it chose. The applicable Court Rule does
not permit CMS to completely change a material defense via affidavit after CMS stated its defense with
particularity in its written motion. CMS's assertion that the rules permit the Court to accept an affidavit is
correct, but Vandusen's Aff't is no mere affidavit that supports CMS's already stated position, it is a
materially different and new defense/challenge, and Williamson's objection/motion to strike it was with
substantial factual and legal merit under 7 (b) and principles of fundamental fairness.

In addition, Vandusen did not testify to Williamson's specific clinical, laboratory, or personal patient's
response to his hypothyroidism and the chronic symptoms associated with the CCMIs at all. Alternatively,
Vandusen testified to general medical knowledge relating to the disease. Thus, Vandusen entered the fray as
a general medical expert for CMS, who is VanDusen's master and a defendant to this action. Williamson had
renewed his un-opposed request for the appointment of an independent medical expert opinion as an
alternative to the Court striking Vandusen's Aff't. It also went unopposed and besides, CMS opened the door
for the appointment. This Circuit, our Sister Circuit, and the United States Supreme Court all commented on
this very issue: it is manifest injustice to permit defendants to use expert medical opinion but deny plaintiff.
(See *Parham, supra* at 460; *Ledford, supra* at 358-59; *Spann, supra* at 509; and *Helling, supra* at 509 U.S.

25; and Fed. R. Civ. P, rules 702 and 706). This matter was undisputed until CMS abandoned its failed defense and alternatively filed a surprise affidavit that effectively altered CMS's prior defense and did bring the issue into heavy dispute. This Court was warranted in appointing an independent expert to assist the trier of fact in understanding an unbiased and accurate portrayal of medical information relating to hypothyroidism, etc, and in considering the validity of Williamson's personal experience with the disease.

Moreover, Vandusen's general medical opinion is dubious at best: It is in conflict with both Williamson's medical records (e.g. Aloepecia, (equates to disfigurement), chronic fatigue (equates to a substantial impairment of his normal daily functions), and clinical depression (equates to significant mental/emotional distress)). Also, Williamson filed with this Court documentation of significant impairment to his academic and employment activities. (See argument and exhibits of D.I. 43-45 ) If Williamson's medical records and objective documentation had failed to definitively demonstrate (a) a significant impairment of his normal daily functions and (b) significant mental and emotional distress, then Vandusen's Aff't would trump, but it cannot because the records refute Vandusen's general medical accounts.

Granted, Williamson is not an expert, but he offers the following information relating to the replacement of essential hormones with daily medications, which is offered by various pharmaceutical companies regarding their products in the "Physician's Desk Reference: PDR 45 Edition 1991 (Pub. Edward R. Barnhart)(P.O. Box 824, Mahwah, N.J.07430):

> [T]hey [ i.e. thyroid stimulating hormones "TSH", T-3, and T-4]
> [i.e. essential hormones] have a profound influence on every organ
> system in the body and are of particular importance in the development
> of the nervous system. (p. 690); … Dosage and Administration- …
> is determined by the indication and **must in every case be individualized
> according to patient response** and laboratory findings… Adequate t
> Therepy usually results in normal TSH & T-4 levels in **2 to 3 weeks of
> the maintenance dose**. [i.e. maintenance dose is synonymous with
> daily meds] (p. 691) …**Therapy must be maintained continuously to
> control the symptoms of hypothyroidism.** (p. 691)….The **age and
> general condition of the patient and the severity and duration of
> hypothyroid symptoms** determine the starting dosage and the rate
> of incremental dosage….leading to a final **maintenance dosage**. (emphasis added).

Consequently, four pharmaceutical companies –who listed as providing some version of "Levothyroxine Sodium Tabs all said basically the same thing relating to the administration of their product (e.g. thyroid stimulating hormone): (a) That daily "maintenance" is required; (b) That clinical, laboratory, and patient response to the thyroid symptoms "must" be individually evaluated in determining the dosage; and (c) That therapy "must" be maintained "continuously" to control said symptoms.

14

This is exactly counter to what Vandusen stated in his affidavit. Williamson wrote all four of the pharmaceutical companies (e.g. Lederle Labs, Daniels Pharm.' Inc., Boots Labs' and Rhone-Poulenc Rorer Pharm.' Inc); however, he has not received a response to his queries as yet. In any event Vandusen's Aff't is in conflict with Williamson's medical records and with the manufactures suggested use for medication administration of this particular drug.

Lastly, though Williamson's medical records contain objective evidence of his significant impairment and emotional/mental distress, he is not required under the standard to show objective evidence of the chronic symptoms. Our Sister Circuit held: that "self reporting is often the only indicator a doctor has of a patient's condition. (See Greeno v. Daley, 414 F.3d 645 (7th Circuit 2005)( citing Cooper v. Casey, 97 F.3d 914, 916-17 (7th Cir. 1996)( "the fact that a condition does not produce "objective' symptoms does not entitle the medical staff to ignore it..., subjective, non-verifiable complaints are in some cases the only symptoms of a serious medical condition."). And Williamson provided this Court with multiple grievances, complaints, and notices filed to CMS —spanning some two years- specifically articulating Williamson's significant impairment of his normal daily functions, etc. in his Reargument. CMS never disputed Williamson's account or ever questioned Williamson's complaint of suffering chronic symptoms, but alternatively prescribed "daily" medications for his chronic illness.

Consequently, the key facts here are:

(a) That a physician prescribed a daily medication for the treatment of Williamson's chronic disease, which thus equates as a serious medical condition under the standard;

(b) That defendants have failed to adhere to the physician's prescribed treatment regiment;

(c) That Williamson established a systemic breakdown and/or continuous pattern in their creating interruptions in said prescribed treatment; and

(d) That these interruptions have objectively caused Williamson to needlessly suffer significant impairment to his normal daily functions and emotional and mental distress.

Under the appropriate legal standard, Williamson enjoys a significant likelihood of success on the merits and injunction is warranted to ensure that defendants do not continue to cause Williamson unnecessary suffering and a tangible threat to his future health and well being.

WHEREFORE, Williamson submits that a rehearing is warranted and that both Kionke's and Vandusen's affidavits should have been struck and/or that the Court should have alternatively appointed an independent medical expert to assist in resolving these highly disputed medical issues and avoid a miscarriage of justice.

David Williamson, 183022
1181 Paddock Rd.
Smyrna, DE 19977

10-1-07
Date

# EXHIBIT A

## AFFIDAVIT OF DAVID WILLIAMSON

1. I, David Williamson, am the Affiant listed above and do depose and state the following in support of Williamson v. CMS, et al, 06-379-SLR:

2. On 9-23-07, Affiant filed an Emergency Dental Sick Call request in response to an outbreak of an acutely painful periodontal infection ("infection").

3. The infection occurred in the top palette (right-inside rear) beside **teeth #14 & #15**.

4. It was at least the third incidence of an infection in this area (i.e. #14 & #15) since December 2004.

5. Indeed, Affiant suffers recurring chronic perio-infections on a regular basis, and infections require adequate specialized periodontal dental care **-on an emergency basis for active infections-** and/or timely and consistent maintenance to manage the resurgence of infections and to limit permanent bone/tooth loss.

6. The 9-23-07 infection was so acute that Affiant suffered the following:

      a. Affiant's left jaw and cheek swelled up and throbbed in severe pain;

      b. Affiant's left eye watered continuously;

      c. Affiant was unable to eat any solid food for over two days (9-22 thru to 9-25-07);

      d. Affiant was unable to sleep at all on 9-23-07, which was the peak of the infection;

      e. Affiant was unable to make his weekly visit with his mother scheduled for 9-24-07; and

      f. Affiant was unable to mitigate the extreme pain and suffering with over-the-counter aspirin.

7. In fact, on 6-29-1999, Dr. Kazmareyk, ("Kaz') Periodontist (i.e. specialist), specifically recommended "... **access to regular hygiene visits** [i.e. periodontal cleanings] **1 or 2 per year**...[and he] **needs periodontal surgery at this time."**

8. Affiant has been a prisoner continuously since October 1996 and is not due to be released until 2015.

9. Dr. Kaz's specialized recommendations have never been carried out despite the same appearing in Affiant's dental records.

10. On 5-06-02, Dr. Robinson, CMS dentist, filed another "Consult Request" for the outside periodontal surgery and she stated: **"Recurring periodontal abcesses... chronic long-standing problem."**

11. Again the periodontal care Affiant needed was denied despite the long-term problem.

12. On 12-09-04 Affiant experienced an acute infection between teeth #14 & #15, and he subsequently filed a Dental Sick-Call Request for emergency periodontal care to treat the active infection and limit any permanent injuries to the bone/teeth.

13. On **12-20-04** Affiant met Dr. Kionke, CMS dentist, who examined and performed an X-ray of the area; she noted the periodontal infection, but she refused to perform the needed periodontal care (e.g. cavitron teeth cleaning, scraping, etc. antibiotics, and/or root canal or perio-surgery, which consists of shaving the gum).

14. Alternatively, Kionke merely stated the Affiant would be placed on **"the list"** to receive a cleaning. (e.g. cavitron cleaning).

15. On **03-04-05**, Affiant again experienced an infection in the –still as yet untreated area- of #14 & #15, and Affiant again met with Kionke who again refused to provide the needed emergency treatment, and again stated that Affiant would have to be patient, that he was on **"the list."**

16. Kionke did note that Affiant had two other –periodontal damaged- teeth, and that they required immediate extraction. She scheduled Affiant for the immediate extraction of those teeth.

1

17. On 03-11-05 Affiant met Kionke again and she extracted the other two teeth, but again refused to provide any periodontal care, despite witnessing the second recent infection in the area of #14 & #15 as late as 03-04-05, and despite extracting two teeth as a direct result of under-treated perio-infections. (* Kionke also falsified Affiant's dental records failed to record the 03-04-05 visit and falsified that Affiant's gums were in good shape).

18. On 11-29-05 Affiant filed a dental grievance due to the continuing denial of and/or inordinate delay in providing Affiant the cavitron periodontal care needs, which was ostensibly scheduled back in Dec. 2004.

19. On 12-07-05 Affiant finally received the much belated cavitron periodontal cleaning by Dr. Zimble, CMS dentist, but it lasted a mere five minutes and was substandard and incomplete.

20. Zimble's substandard cavitron cleaning occurred just two days shy of a full year from Kionke's denial of emergency and/or timely periodontal care for Affiant's active infections in the area of #14 & #15 teeth.

21. The 09-23-07 infection occurred in the same area as witnessed twice before by Kionke; and after Zimble's much belated and substandard cavitron cleaning (i.e. #14 & #15 teeth).

22. On 9-26-07 Affiant was seen by dentist _____, and the dentist noted the active infection in the area of #14 & #15, and she performed an X-ray.

23. The dentist informed Affiant that he had experienced **"major bone loss,"** that the X-ray showed **"deep periodontal pockets,"** and that Affiant would have to have the teeth (i.e. #14 & #15) **extracted.**

24. Consequently, on 09-26-07 Affiant discovered that teeth #14 & #15 were permanently damaged.

25. Affiant noted to the dentist that he had not received a **cavitron cleaning since December 2005**, and that it was substandard in any event. Also, that Affiant has never received the **periodontal surgery** that was recommended for his chronic-periodontal disease, nor has he received a **root canal** for the recurring infections.

26. She replied: "Well, this problem requires at least an annual cleaning and I'm going to order you one now."

27. Affiant specifically requested semi-annual teeth cleanings to manage his chronic periodontal disease in his 11-29-05 dental grievance, **but it was denied and no alternate treatment plan was offered**.

28. The dentist then conceded and alternatively performed an area specific cavitron cleaning, but unlike Zimble's substandard five minute procedure, the new dentist spent some twenty minutes working the area of #14 & #15, and it was clear to Affiant that her cavitron cleaning was immediate and thorough.

29. She explained; however, that if the infection persisted, or if it returned in the near future (i.e. quickly), that Affiant would have to have the two teeth extracted immediately; that these recurring infections were dangerous and also jeopardized surrounding teeth with their bacteria.

30. To date Affiant has permanently lost four teeth as a direct result of his under treated periodontal disease, and Affiant faces the imminent lost of an additional two teeth in the area of #14 & #15. (total of six perman't injuries).

31. It appears that the failure of Kionke to address the two prior active infections (e.g. untreated for nearly a year) in a timely manner consistent with the required minimum care for chronic periodontal infections, has again resulted in significant bone/teeth lose, and will again result in permanent injury.

32. The above is True and Correct and it is the product of Affiant's personal experience and supported by his dental records.

Signed and Subscribed before me this 26 of September of 2007.

David Williamson

Notary Public

2

# EXHIBIT B

## Affidavit of David Williamson

1) I David Williamson am the Affiant listed above and do depose and say the following:

2) November 28, 05 Affiant filed a grievance against health care provider (CMS hereafter) for their ongoing and continuing deliberate indifference to Affiant's known serious medical/dental needs.

3) Despite CMS's knowledge of Affiant's diagnosed periodontal disease (gum infection hereafter) that results in frequent and unnecessary, acutely painful gum infections, CMS has intentionally engaged in a custom/policy of refusing the standard treatments (e.g. regular teeth/gum cleanings & providing timely responsive cleanings for active gum infections); however, in contrast knowingly provides substandard and belated treatment, which is the actual and proximate cause of Affiant's unnecessary and irreparable injury.

4) CMS's actions at #3 maliciously causes Affiant to unnecessarily endure acute pain and suffering that does significantly impair his normal daily functions, such as ability to eat, talk, and sleep. Moreover, these acts resulted in permanent injury through the loss of two teeth, which were ultimately extracted on March 11, 05.

5) Items at #3 & #4 evidence a custom/policy employed by CMS to limit the treatment provided to teeth extractions. Specifically, CMS refuses known standard and commonly accepted forms of treatment, however, refuses or unnecessarily delays adequate treatment causing any damage to exacerbate and become irreversible until there is no other option but to extract the affected teeth.

6) March 4, 05 Affiant suffered a recurring gum infection and despite suffering this active and acutely painful gum infection, CMS dental staff refused to provide the standard treatment (teeth & gum cleaning to reduce the bacteria causing the infection) and instead reiterated that Affiant was on "the list" for a cleaning – that the list was "very long" and that Affiant would have to be "patient." Jane Doe ___Kionke___ dentist then stated that "those two teeth must be extracted."

7) The March 4, 05 active gum infection was a subsequent infection, and in fact, Affiant suffered the preceding gum infection (witness by the same Jane Doe dentist) about a year earlier. It was this earlier gum infection for which Affiant was placed on "the list," however, Affiant was intentionally and maliciously refused the standard treatment then, a year passed by, another gum infection later, and Affiant is still refused the standard treatment despite experiencing an active gum infection.

8) This ongoing and recurring refusal is the same exact behavior that CMS exposed Affiant to that caused the degradation and irreparable injury to his two teeth that were extracted March 11, 05, of which Affiant grieved repeatedly.

9) Affiant argued at the March 2005 visit, due to his active gum infection, that he had been placed on "the list" a year earlier despite having an active gum infection then, but that it was never realized. "You'll have to be patient, you are not the only one here – besides we don't usually provide cosmetic or routine maintenance work and we are doing you a favor," Jane Doe stated. Affiant retorted, "This is not routine or cosmetic, but a necessary and standard response to my diagnosed and active gum infections. It's no wonder that it is back now

because I was never treated for the earlier infection." Her response to this was, "When you are released then you can get it taken care of." "I have fifteen years left on my sentence," Affiant replied. "You'll just have to be patient," she finished.

10) Some 18 months after Affiant was allegedly placed on "the list," of which during this period Affiant unnecessarily experienced two acutely painful and damaging gum infections that were witnessed by CMS dental employees but ignored; and Affiant incurred the permanent loss of two teeth, which was the natural result of CMS's custom/policy of refusing standard treatment, Affiant filed another grievance on 11/28/05.

11) December 7, 05 Affiant was seen by dental in response to Affiant's grievance, however, a new male dentist John Doe _Dr. Zimbull_ attended to Affiant. He inquired as to what the problem was and Affiant explained about his continuing and recurring gum infections, and the denial of standard treatment. John Doe consulted Affiant's x-rays and dental charts. He stated: "You have periodontal disease – which is essentially a bacterial disease – so the key is to keep the bacterial count down and from overcoming your body's ability to fight it off. Because we have to get below the gum line, it will be uncomfortable." Consequently, he affected a sub-gum line cleaning that lasted no more than four minutes and began to clean-up. Affiant was surprised about the brief and perfunctory cleaning, which did not include the standard picking, scraping, flossing, or polishing, and Affiant inquired about the rest of it? John Doe replied: "There are a lot of people to be seen here today, but I want to impress upon you to brush in circles." Affiant stated: "I brush in circles no less than four times a day with peroxide toothpaste." "Brush in smaller circles, because you are just not going to be able to get that kind of attention here," was all he replied.

12) CMS has and is knowingly employed a cost-cutting and time saving custom/policy that is deliberately indifferent to Affiant's known serious medical/dental needs, which does naturally result in acute pain and suffering, degrades health and ultimately causes irreparable injury., though for nonmed-ical reasons.

13) Affiant has prevailed in his earlier filed grievances, therefore he has exhausted administrative procedures.

14) The above is True and Correct as Affiant believes it to be.

Signed and Sworn before me on this _12th_ day of December of 2005.

Notary Public

David Williamson

# Employee Attendance

| Card # | Worker Name | Date | Reason | Comments |
|--------|-------------|------|--------|----------|
| 36 | Martinez, Roberto | 02/03/06 | Scheduled/Volunt | |
| | | 02/22/06 | Scheduled/Volunt | |
| | | 02/23/06 | Scheduled/Volunt | |
| | | 03/03/06 | Scheduled/Volunt | |
| | | 03/27/06 | Medical | |
| | | 04/24/06 | Scheduled/Volunt | |
| | | 07/06/06 | Unexcused | per Jon Barber |
| | | 07/14/06 | Medical | Dr. Appt. |
| | | 07/19/06 | Medical | Dr. Appt. |
| | | 08/07/06 | Scheduled/Volunt | |
| | | 09/27/06 | Medical | Dr. Appt |
| | | 10/04/06 | Other | Shop Closed |
| | | 10/05/06 | Other | Shop Closed |
| | | 10/10/06 | Visit | |
| | | 10/13/06 | Medical | Dr. Appt |
| | | 10/18/06 | Medical | Dr. Appt |
| | | 11/17/06 | Classification | |
| | | 12/22/06 | Scheduled/Volunt | |
| | | 12/26/06 | Scheduled/Volunt | |
| | | 12/28/06 | Scheduled/Volunt | |
| | | 03/19/07 | Medical | Dr. Appt |
| | | 03/21/07 | Medical | Dr. Appt |
| | | 05/07/07 | Medical | Dr. Appt |
| | | 07/03/07 | Scheduled/Volunt | |
| | | 07/05/07 | Scheduled/Volunt | |
| | | 08/22/07 | Medical | Dr. Appt |
| | | 08/30/07 | Medical | Dr. Appt.. |
| | | 09/24/07 | Medical | Dr. Appt. |
| 37 | Williamson, David | 04/12/04 | Visit | |
| | | 05/17/04 | Other | |
| | | 05/18/04 | Other | |
| | | 05/21/04 | Other | |
| | | 06/03/04 | Medical | |
| | | 06/14/04 | Unexcused | overslept |
| | | 08/06/04 | Other | |
| | | 09/17/04 | Other | EDUCATION |
| | | 09/22/04 | Medical | |
| | | 11/04/04 | Other | |
| | | 11/19/04 | Other | |
| | | 11/29/04 | Medical | |
| | | 12/20/04 | Medical | Dental |
| | | 12/23/04 | Other | Education |
| | | 01/06/05 | Other | Education |
| | | 03/04/05 | Other | Dental |
| | | 03/11/05 | Medical | Dental |
| | | 03/18/05 | Medical | |
| | | 03/31/05 | Medical | |
| | | 05/02/05 | Other | Education |

# Employee Attendance

| Card # | Worker Name | Date | Reason | Comments |
|--------|-------------|------|--------|----------|
| 37 | Williamson, David | 05/27/05 | Visit | |
| | | 08/12/05 | Other | Education |
| | | 08/31/05 | Medical | |
| | | 09/16/05 | Other | Education |
| | | 10/04/05 | Medical | |
| | | 10/06/05 | Medical | |
| | | 11/07/05 | Other | Education |
| | | 11/10/05 | Other | |
| | | 11/29/05 | Medical | |
| | | 01/06/06 | Other | Education |
| | | 01/11/06 | Medical | Dental |
| | | 02/02/06 | Medical | Dr. Appt. |
| | | 02/14/06 | Medical | Dental Appt. |
| | | 02/21/06 | Medical | Dental Appt. |
| | | 02/24/06 | Medical | Dental Appt. |
| | | 03/10/06 | Scheduled/Volunt | |
| | | 03/28/06 | Medical | Dr. Appt. |
| | | 05/08/06 | Medical | Outside Hosp. |
| | | 05/09/06 | Medical | Outside Hosp. |
| | | 06/16/06 | Other | Education |
| | | 08/01/06 | Medical | grievance hearing |
| | | 08/10/06 | Medical | grievance hearing |
| | | 08/24/06 | Other | education testing |
| | | 09/01/06 | Other | education testing |
| | | 09/27/06 | Medical | grievance hearing |
| | | 10/18/06 | Medical | grievance hearing |
| | | 10/25/06 | Medical | grievance hearing |
| | | 11/08/06 | Medical | grievance hearing |
| | | 11/14/06 | Medical | grievance hearing |
| | | 11/27/06 | Medical | Dr.Appt. |
| | | 12/08/06 | Medical | Dr. Appt. |
| | | 12/20/06 | Medical | grievance hearing |
| | | 12/22/06 | Scheduled/Volunt | |
| | | 12/26/06 | Scheduled/Volunt | |
| | | 01/22/07 | Medical | Dental Appt |
| | | 02/21/07 | Medical | Dental Appt |
| | | 03/02/07 | Medical | Dental Appt |
| | | 03/06/07 | Medical | Dental Appt |
| | | 03/14/07 | Medical | outside hosp. |
| | | 03/15/07 | Medical | outside hosp. |
| | | 03/16/07 | Medical | outside hosp. |
| | | 03/19/07 | Medical | outside hosp. |
| | | 03/20/07 | Medical | outside hosp |
| | | 03/21/07 | Medical | outside hosp. |
| | | 03/22/07 | Medical | outside hosp. |
| | | 03/23/07 | Medical | outside hosp. |
| | | 03/26/07 | Medical | outside hosp. |
| | | 03/27/07 | Medical | outside hosp. |
| | | 03/28/07 | Medical | outside hosp. |

# Employee Attendance

| Card # | Worker Name | Date | Reason | Comments |
|--------|-------------|------|--------|----------|
| 37 | Williamson, David | 03/29/07 | Medical | outside hosp. |
| | | 03/30/07 | Medical | outside hosp. |
| | | 04/02/07 | Medical | outside hosp. |
| | | 04/03/07 | Medical | outside hosp. |
| | | 04/04/07 | Medical | outside hosp. |
| | | 04/05/07 | Medical | outside hosp. |
| | | 04/09/07 | Medical | outside hosp. |
| | | 04/10/07 | Medical | outside hosp. |
| | | 04/11/07 | Medical | outside hosp. |
| | | 04/12/07 | Medical | outside hosp. |
| | | 04/13/07 | Medical | outside hosp. |
| | | 04/16/07 | Medical | outside hosp. |
| | | 04/17/07 | Medical | outside hosp. |
| | | 04/18/07 | Medical | outside hosp. |
| | | 04/24/07 | Medical | Grievance |
| | | 05/11/07 | Other | Religious Function |
| | | 06/01/07 | Medical | Sick Call |
| | | 06/04/07 | Visit | |
| | | 06/11/07 | Visit | |
| | | 06/18/07 | Medical | Dr.Appt. |
| | | 07/02/07 | Scheduled/Volunt | |
| | | 07/03/07 | Scheduled/Volunt | |
| | | 07/17/07 | Medical | Dr.Appt. |
| | | 08/14/07 | Medical | outside hosp. P.T. |
| | | 08/21/07 | Medical | outside hosp. |
| | | 08/22/07 | Medical | chronic care |
| | | 08/23/07 | Medical | mental health |
| | | 08/28/07 | Medical | outside hosp. |
| | | 09/04/07 | Medical | outside hosp. |
| | | 09/07/07 | Medical | |
| | | 09/26/07 | Medical | Dental Appt. |
| 38 | Marshall, Bobby | 05/20/03 | Medical | |
| | | 06/19/03 | Medical | |
| | | 07/21/03 | Medical | |
| | | 08/14/03 | Medical | |
| | | 10/16/03 | Unexcused | DIDN'T MAKE WORKERS |
| | | 12/11/03 | Court | |
| | | 02/17/04 | Medical | |
| | | 02/24/04 | Medical | |
| | | 03/15/04 | Medical | |
| | | 03/18/04 | Medical | |
| | | 04/14/04 | Medical | |
| | | 04/21/04 | Medical | |
| | | 05/17/04 | Other | |
| | | 07/09/04 | Medical | |
| | | 07/14/04 | Court | |
| | | 07/28/04 | Other | |
| | | 08/03/04 | Other | |

EXHIBIT C

FORM #585

## MEDICAL GRIEVANCE

FACILITY: D.C.C.

DATE SUBMITTED: 11.29.05

INMATE'S NAME: David Williamson

SBI#: 183022

HOUSING UNIT: W-1, L-12

CASE #:

////////////////////////////////////////////////////////////////////////////////////////////////////////////////////

SECTION #1

DATE & TIME OF MEDICAL INCIDENT: On-going

TYPE OF MEDICAL PROBLEM:

On or about March 2005, grievant incurred a permanent
injury via the extraction of two teeth (#28 & #29). This permanent
injury was the final and culminating result of multiple and re-
occurring periodontal gum infections of which knowingly went
untreated and grossly undertreated by dental staff. Specifically,
for example, an infection would occur, however, grievant was
routinely denied the standard teeth cleaning, which is one of
the first responses to such gum infections and told that I
would have to lose those teeth in the infected area.
(Cont. p. 2)

GRIEVANT'S SIGNATURE: see p 2                          DATE:

ACTION REQUESTED BY GRIEVANT:

DATE RECEIVED BY MEDICAL UNIT:

(C-1)

RECEIVED
DEC 13 2005

NOTE: EMERGENCY MEDICAL CONDITIONS WILL TAKE PRIORITY. OTHERWISE, MEDICAL
GRIEVANCES WILL BE ADDRESSED AT THE WEE'LY MEDICAL COMMITTEE MEETING.

FORM #585

MEDICAL GRIEVANCE

FACILITY: O.C.C.

DATE SUBMITTED: 11-29-05

INMATE'S NAME: David Williamson

SBI#: 183022

HOUSING UNIT: W-1, L-12

CASE #: _____

(Cont. p. 2)

//////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////

SECTION #1

DATE & TIME OF MEDICAL INCIDENT: On-going

TYPE OF MEDICAL PROBLEM:

Grievant was also told that the dental facilities could not do cosmetic teeth scrapings for the large O.C.C. population, however, grievant pointed out that treatment for active and recurring periodontal gum infections is not cosmetic but necessary and standard treatment for my known serious medical condition. Finally, after grievant threatened litigation, I was told that I would be placed on a "waiting list," and that I should not expect a cleaning very soon due to the lengthy line. Nearly 18 months has passed since grievant was allegedly placed on said list. Instead of timely & adequate treatment a custom is employed to result in

GRIEVANT'S SIGNATURE: David W.          DATE: 11-29-05          extractions.

ACTION REQUESTED BY GRIEVANT: Immediate teeth cleaning, and grievant needs to be placed on a semi-annual teeth cleaning schedule to treat and combat the on-going and recurring periodontal gum infections. Also provide monetary damages for the deliberate indifference.

DATE RECEIVED BY MEDICAL UNIT: _____

RECEIVED
DEC 1 3 2005
Inmate Grievance Office

NOTE: EMERGENCY MEDICAL CONDITIONS WILL TAKE PRIORITY. OTHERWISE, MEDICAL
GRIEVANCES WILL BE ADDRESSED AT THE WEEKLY MEDICAL COMMITTEE MEETING.

## Instructions for Submitting a Regular Grievance

Inmates are required, per DOC Procedure 4.4 (Inmate Grievance Procedure) to attempt to resolve complaints prior to filing a regular grievance. Grievances are to be submitted within seven (7) days from the date of the occurrence or incident or within seven days after the inmate became aware of the incident. The grievance is to be placed in the grievance box located in each housing unit.

Only one issue per grievance form will be addressed. If the grievance is submitted on a weekend or a holiday, it will be received during the next working day.

### Return of Unprocessed Grievance

Intake Action: This Grievance Form is being returned to the inmate under the provisions outlined in DOV Procedure 4.4 "Inmate Grievance Procedure" for the following reason(s) :

_____ Vulgar/Abusive or Threatening Language. The Language that is unacceptable has been highlighted. The grievance may be resubmitted omitting this language.

_____ Non-Grievable. This issue has been defined as non-grievable in accordance with DOC Policy 4.4. These procedures have their own appeal process that must be followed.

_____ Disciplinary Action        _____ Parole Decision        _____ Classification Action

_____ Request. Requests are not processed through the grievance procedure. Please correspond with the appropriate Office to secure the information that is requested.

_____ Duplicate Grievance(s). This issue has been addressed previously in Grievance # _____ .

_____ Original Grievances must be submitted to the Inmate Grievance Chairperson. Photocopies are not accepted.

_____ Inquiry on behalf of other inmates. Inmates cannot submit grievances for other inmates.

_____ Expired Filing period. Grievance exceeds seven (7) days from date of occurrence.

*You NEED To COMPLETE ACTION REQUESTED SECTION OF GRIEVANCE FORM.*

Inmate Grievance Chairperson

12-22-05
Date

*GRIEVANT REC.'ED*
*12-27-05 VIA*
*IN House Mail*

## CERTIFICATE OF SERVICE

I, David Williamson, Plaintiff, do swear that I have caused to be delivered upon the defendants listed

below the following true and correct documents:

1. _Williamson Seeks Leave to Correct any Deficiencies and/or Reply to Defendant's Response to Williamson's Motion for Relief From Judgment and/or Motion for Reargument._

By placing same in a U.S. Mail receptacle on the ___3___ day of _Oct._ 200 _7_.

Daniel McKently, Esq.
(Counsel for FCM, Inc.)
1225 N. King St., Suite 1100
Wilmington, DE 19809-0397

James E. Drnec, Esq
711 N. King St.
Wilmington, DE 19801
(Counsel for Dr. A. Zimble)

Patrick Rock, Esq.
(Counsel for CMS, Inc.)
913 Market St., #800
Wilmington, DE 19801

_N/A_

_David W_____

David Williamson, SBI #183022
1181 Paddock Rd., W-1, L-12
Smyrna, DE 19977