IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DAVID W. WILLIAMSON, | ) |
|     Plaintiff, | ) |
|     v. | )     C.A. 06-379-SLR |
| CORRECTIONAL MEDICAL SERVICES, Inc, et al, | ) |
|     Defendants. | |

## PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSTION TO DEFENDANT ZIMBLE'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Williamson, comes now pursuant to Fed. R. Civ. P., rule 56 and applicable Delaware Local Rules, and moves the Court on cross-motion to grant partial summary judgment in Williamson's favor and against pertinent defendants. Williamson also opposes defendant Zimble's motion for summary judgment –filed on or about 10-15-07 (D.I. _____ ) (Zimble's Sum Judgment), herein. Williamson is a pro se plaintiff and he seeks pleading leniency under *Haines v. Kerner*, 404 U.S. 519 (1972).

### UNDISPUTED AND/OR UNDISPUTABLE FACTS:

Williamson first verifies under penalty of perjury and Fed. R. Civ. P., rule 56 (e) that he is over 18 years of age, competent, and that the following facts are the product of Williamson's experience and personal knowledge. (Also, see Ex-A "Verification of Exhibits).

1. Williamson was diagnosed with periodontal disease ("perio-disease"), in 1998. (Order at item 5, D.I. 164).
2. March 1998, Williamson was referred to a periodontal specialist, Dr. Kazmareyk ("Dr. Kaz"). and he recommended the immediate extraction of two of Williamson's teeth due to his perio-disease. (Id).
3. Dr. Kaz also noted that "periodontal treatment is needed to save plaintiff's [Williamson] dentition, but *staff where plaintiff was housed was not able to handle that type of treatment*," and Williamson has recurring perio abscesses and was advised in 2002 that periodontal surgery was not an option at the prison. (Id) (emphasis added)
4. Dr. Kaz specifically recommended the standard of dental care that Williamson's perio-disease required: periodontal surgery and routine access to hygiene visits 1 or 2 per year [(i.e. perio-cleanings)] (D.I. 146 Ex-D).
5. Williamson's dental records ("records"), show that on 8-17-99, Williamson suffered the permanent loss of the two teeth noted by Dr. Kaz (e.g. #8 & #30), and this was a direct result of Williamson 's recurring perio-disease.
6. On 11-26-01, this Court found Williamson's recurring perio-disease was a serious medical condition: "Plaintiff's abscessed tooth, recurring gum infections, pain, suffering and resulting permanent loss of two teeth constitute 'serious' medical needs.... (Ex-B, Order at part IV. Discussion, p. 7 ) (*Williamson v. Carr*, et al, 97-710-SLR).
7. Williamson has never received Dr. Kaz's recommendations for perio-treatment to save his dentitions by a qualified perio-specialist/personnel, perio-surgery, or the routine access to perio-cleanings of 1 or 2 per year.

1

8. Williamson's perio-disease abscesses continued and he experienced additional permanent injuries not surprisingly.

9. Williamson's records clearly documented the specialized perio-treatment required for Williamson's chronic, recurring perio-disease and needed to avoid needless suffering and permanent injuries.

10. Despite Williamson's records and despite recurring abscesses that continued unabated, defendants Robinson, Clark, Kionke, and Zimble still failed to provide Dr. Kaz's recommendations and still doggedly pursued an ineffective and belated alternative type of dental care, and Williamson suffered repeat painful abscesses and permanent tooth loss.

11. For example, Williamson's records reveal the following:

> On 8-17-99 Williamson experienced permanent injury (e.g. two teeth extracted #8 & #30), as a direct result of his perio-disease;

> On 3-26-01, 9-11-01, 10-16-01, 11-10-01, & 12-04-04, Williamson experienced five acute perio-infections ("infections"), about teeth #10, #21, & #29;

> On 4-12-01 defendant Robinson performed a rushed teeth cleaning that was so grossly substandard that the infections continued and Robinson had to conduct a second cleaning on 5-08-01 due to the ineffectiveness of the 4-12-01 non-cavitron cleaning;

> On 12-28-01, 5-08-02, 8-05-02, & 08-08-02, Williamson again experienced four more infections, which was a total of nine infections in seventeen months period;

> On 1-09-02 defendant Robinson noted significant bone loss in teeth #22 & #27, and she merely ordered medicated mouthwash to treat the 12-28-01 infection;

> On 1-08-02 defendant Clark documented –in her own hand- CMS's custom/policy to deny needed care: "also told [Williamson] since we do not do *root canals* here [,] his tooth need[s] to be extracted. *This problem Can not be treated indefinitely with medication*...."

> On 1-16-02, defendant Robinson also documented –in her own hand- CMS's custom/policy to deny Williamson needed, as recommended by Dr. Kaz, care that even she acknowledged too in a "Consult Request" she filed: "... *periodontal surgery is not an option here* –ext[raction] should be considered...." But Robinson admits that perio-surgery is what is needed for Williamson's chronic perio-disease in her Consult Request of 5-16-02; [Williamson discovered permanent tooth loss on 03-04-05 (two teeth extracted on 3-11-05) directly due to the under treated and inordinately delayed perio-care.]

> On 5-16-02, Williamson was "seen" by Clark, but she failed to provide any perio-care;

> On 6-06-02 and 6-13-02, Williamson was "seen" by Robinson, but she failed to provide any perio-care. She did reorder the known ineffective mouthwash, however;

> On 8-08-02, Williamson was "seen" by Robinson, but she failed to provide any perio-care, and she had to reorder the mouthwash because it had not been provided as yet;

> On 8-20-02, Williamson was "seen" by Clark, but she failed to provide any perio-care;

2

- ➤ On 9-20-02 Williamson finally received a too late and too little area specific tooth scraping around #9 tooth by Robinson (i.e. non-cavitron cleaning);
- ➤ On 4-14-03, Williamson experienced an acute infection and on 4-16-03 Robinson merely performed a medical mouth rinse with the, admitted by Clark, ineffective medicated mouthwash;
- ➤ On 5-08-03 [three weeks of suffering an active infection], Robinson belatedly performed the first cavitron cleaning;
- ➤ On 5-22-03 a post op exam was performed and a note appears in the dental records that seems to order "4 more cavitron' cleanings, but they were not provided;
- ➤ On 12-09-04, Williamson experienced an acute infection surrounding teeth # 14 & #15.
- ➤ On 12-20-04, defendant Kionke acknowledged Williamson's active infection, reviewed his dental charts (i.e. history of chronic perio-disease), but failed to provide timely perio-care as warranted by the active infection. Alternatively, Kionke scheduled Williamson for a FMX, TRX, and a Cavitron cleaning. [The scheduled cavitron cleaning was not provided until December 2005- two days shy of one year];

  [On 03-04-05, Williamson was "seen" by Kionke for an active infection, but she failed to record the dental visit. She did note that Williamson had two irreparably damaged teeth that needed immediate extraction, and she schedule Williamson for the extraction. (See Williamson's Leave to Correct Deficiencies dated 10-01-07 (D.I. _____) at Ex-B Affidavit of 3-04-05 visit at item 6-9 and Williamson's Employee Absence Report, which depicts an absence on 3-04 & 3-11-05 for dental visits)].

- ➤ On 3-11-05, Kionke extracted two additional teeth and performed the belated TRX and FMX, but failed to perform the scheduled cavitron cleaning, which was needed to treat the active infection of 12-20-04 for teeth #14 & #15. [Note that Williamson discovered on 09-26-07 that teeth #14 & #15 were also irreparably damaged and would have to be extracted. (See Williamson's Leave to Correct Deficiencies dated 10-01-07 (D.I. _____) at See Ex-A)];

  [Also, the two teeth Kionke spotted for extraction on 03-04-05, were the two that had been repeatedly exposed to infections under Clark and Robinson's watch, and thus was that date of discovery of the permanent injuries that resulted from defendants' continuing course of conduct];

- ➤ On 11-28-05 –nearly one year and two infections after Kionke's scheduled cavitron cleaning, which had never been performed, Williamson filed a dental grievance due to defendants refusing to provide the needed care in a timely and adequate manner;
- ➤ On 12-07-05, defendant Zimble provided the cavitron cleaning that was scheduled on 12-20-04 for Williamson's acute infection of 12-09-04. (D.I. 147, Ex-D)

Under Rule 56, defendants cannot now dispute dental records (i.e. evidence) that they themselves had placed into the record; however, not previously objected to.

3

12. To date Williamson has lost four teeth and he was notified that two more teeth were permanently damaged (e.g. #14 & #15).

13. Williamson's recurring perio-disease has caused repeated painful abscesses and permanent tooth loss was found to be a serious medical need back on 11-26-01 and since then the same problem persists unabated –no less than an additional seven active perio-infections (e.g. 12-28-01, 05-08-02, 08-05-02, 08-08-02, 04-14-03, 12-09-04 & 01-09-06), since the Court's 11-26-01 Order/findings. Moreover, the results are identical: two lost teeth on 03-11-05 and subsequent notice of two more permanently injured teeth on 09-26-07, and naturally Williamson needlessly experienced all the attendant pain and suffering associated with perio-abscesses.

14. Defendant Clark admitted on 01-08-02 CMS's custom/policy to deny Williamson needed treatment (e.g. "…told [that] since we do not do root canals here his tooth need[s] to be extracted. This problem can not be treated indefinitely with medication [i.e. medicated mouthwash] ….) in response to Williamson's dental request on 12-28-01 for an active perio-abscess. (See Ex-C) (D.I. 147, Ex-D).

15. Defendant Robinson also admitted on 01-16-02 CMS's custom/policy to deny Williamson needed perio-care (e.g. "Explained that since periodontal surgery is not an option here –ext[raction] should be considered.") (See Ex-D) (D.I. 147, Ex-D).

16. CMS also admitted the same custom/policy to deny a patient's dental needs (e.g. "As a rule, caps, crowns, bridges, root canals, teeth cleaning…will not be provided.") (See Ex-E) (D.I. 147, Ex-D).

17. Defendant Kionke referenced the same custom/policy (above at 17), on 10-31-06 (e.g. "We don't have the authority or the facilities here to provide a crown, have you seen the Inmate Handbook?" ) (See Ex-F, Affidavit).

18. Defendant Kionke specifically responded to Williamson's 1-12-06 dental medical grievance (MG #23193), in which Williamson correctly claimed that defendant Zimble had admitted that Williamson's #19 broken tooth required "a crown" but that "we don't do that here." (See Ex-G, p. 1-2).

19. On 1-09-06 Williamson filed a dental sick-call request because Williamson's tooth #19 sheared in half down to the gum line facing in towards the tongue. ("emergency dental episode"). This tooth is situated in the rear bottom palette and is used for grinding/chewing food. Williamson also noted the he was suffering the beginnings stages of another perio-infection. (See Ex-H) (D.I. 147, Ex-D).

20. Williamson cannot chew/grind solid food on the right side of his jaw because he has lost numbers #28, #29, & #32 teeth. (See Ex-I) (D.I. 147, Ex-D).

21. Williamson's emergency dental episode was a permanent fracture (i.e. permanent injury), and Williamson notified defendant Zimble on 01-11-06 that the broken tooth was "painful" and that it significantly impaired Williamson's ability to "chew" solid food or to "brush" his teeth. (See Ex-J at item #7).

22. Defendant Zimble did not provide any pain meds, antibiotics, or medicated toothpaste for Williamson's broken tooth; Zimble also dismissed Williamson's perio-infection as Herpes, but did not treat that either nor order any prescription for either the perio-infection or the ostensible Herpes. Zimble did not articulate any treatment plan or any intention to monitor or follow up on Williamson's emergency dental episode/Herpes; and Zimble did not enter any plan to reschedule Williamson back for said problems. (See Ex-I, Ex-J) & (D.I. 147, Ex-D).

4

DISPUTED FACTS RELATING TO DEFENDANT ZIMBLE'S SUMMARY JUDGMENT:

1. Stipulate that Zimble provided a Cavitron cleaning on 12-07-05 -that had been Ordered by Kionke in December 2004- but it is disputed that Zimble rendered adequate perio-treatment, because of the following:

   a. Because Cavitron was inordinately delayed in contrast to legitimate medical factors;

   b. Because on 12-07-05, Zimble reviewed Williamson's records and acknowledged Williamson's long history of perio-infections. (See Ex-J at item 3);

   c. Because Williamson's records contained Dr. Kaz's explicit recommendations for the appropriate perio-treatment that Williamson's perio-disease required, but which was never provided;

   d. Because Williamson's records also listed multiple subsequent perio-infections, in which Williamson lost four teeth, and it listed for Zimble's review the utter failure of their alternative course of care, which had been doggedly employed by defendants Clark, Robinson, and Kionke;

   e. Because said alternate care was in conflict with Dr. Kaz's informed recommendations;

   f. Because Zimble's Cavitron cleaning on 12-07-05 was less efficacious in that it was not provided in timely manner in response to Williamson's known and diagnosed perio-infection of December 2004, but nearly one year later and it lasted no more than five minutes; however, the industry standard for a thorough Cavitron requires some fifteen to twenty minutes depending on the severity of the perio-disease;

   g. Because Williamson experienced another subsequent perio-infection on 01-09-06 (See Ex- H), which was just over one month after Zimble's Cavitron cleaning,; and

   h. Because Williamson was notified on 09-26-07 that teeth #14 and #15 were permanently damaged; would have to be extracted, and it was these very teeth/area that suffered a perio-infection in December 2004, which was not actually treated until December 2005.

2. Stipulated that Zimble saw Williamson on 1-11-06, but Williamson disputes Zimble's entry on 1-11-06 that Williamson's tooth was merely "sensitive", because Williamson specifically informed Zimble that his broken tooth was "painful" and significantly impaired his ability to "eat" and "brush" his teeth. (Ex-J at item 7). Also, disputed is that Williamson should brush with "thermodent and allow the pulp to retreat and deposit dentin," because (a) Zimble did not prescribe Williamson any Thermodent and (b) Williamson's nerve was exposed along with the broken tooth's pulp, and according to Dr. Bishop Williamson now required –the prohibited- a root canal because his nerve had been damaged from the inordinate delay. (See Ex-K at item 2, 5-7).

3. Stipulate that Zimble saw Williamson on 02-14-06, but Williamson's disputes Zimble's entry: "Patient's #19 feeling okay. Asymptomatic," because Williamson specifically replied to Zimble's query: "Of course it causes pain! It hurts every time I chew something of substance –like cereal for instance. In fact, you [ ] asked me the same ludicrous question the last time I was here in January, but refused to give me any pain medication!" (See Ex-L). Also, Zimble's 01-11-06 entry did not list any treatment plan or intention to follow up or reschedule

5

Williamson on the subsequent 02-14-06 or 02-21-06 dental visits (See D.I. 147-Ex-D); though Zimble now draws an inference that he was monitoring Williamson's condition in a self serving revisionist's characterization.

4. Williamson was placed on the 02-14-06 dental list for a perfunctory dental exam –along with the majority of other scheduled visits that day because it was needed for an" upcoming audit [ ] according to M[s]. Seacord," who had announced same and who assisted Zimble on 02-14-06. (See Ex-L at item 2-3).

5. Stipulated that Williamson's final visit with Zimble occurred on 02-21-06, but Williamson disputes Zimble's entry "All okay; let Dr.'s Kionke or Bishop determine if they can restore # 19 with very large composite, " because Zimble acknowledged that Williamson needed a crown on the prior visits, but stated CMS's custom/policy prohibited him from providing same on 01-11-06 (Ex-K), on 02-14-06 (Ex-L), and again on 02-21-06 (Ex-O items 2-4), and explicitly stated that he [Zimble] could not help Williamson. Note this is the same custom/policy admitted by Clark, Kionke, and CMS. (D.I. 147, Ex-D).

6. Moreover, it appears that Williamson's 02-21-06 scheduling was in response to his MG #23193 dated on 01-12-06 (Ex-G), and not because Zimble intended to monitor or follow up on Williamson's emergency dental episode.

7. Stipulated that Bishop provided a composite repair of #19 tooth on 02-24-06, but Williamson disputes Zimble's and Kinoke's claims that the composite was a "permanent" restoration and the Williamson's "nerve of that tooth was *deemed healthy and root canal therapy unnecessary*," on that same day, because Williamson's records of 02-24-06 –as entered by Bishop- contain no such entries. (D.I. 147, Ex-D) and (Ex-I at 2-24-06). Also, Bishop specifically acknowledged to Williamson that a crown was needed, a root canal was needed because the nerve had been damaged, and that the composite would not last and Bishop acknowledged CMS's custom/policy to deny said crowns. (Ex-K and P).

8. Williamson has and still disputes Kionke's entire affidavit because of the following facts:

　　a. Kionke never examined or worked on Williamson's emergency dental episode whatsoever;

　　b) Kionke never examined Williamson's broken tooth or the composite repair at any time thereafter until the date of this filing;

　　c) Kionke never acquired first hand personal knowledge of these matters;

　　d) Kionke never acquired second hand knowledge or stated that she even reviewed Williamson's records either;

　　e) Kionke's statements (e.g. "nerve deemed healthy and root canal therapy unnecessary") on 02-24-06 and/or that the composite was a permanent restoration are false and do not appear anywhere in Williamson's records. Indeed, Kionke's affidavit exceeds the requisites under 56 as a Bad faith affidavit. The Court is warranted in Striking it and in imposing sanctions.

8. Kionke had no knowledge whatsoever relating to Williamson's broken tooth and composite repair with the exception of seeing Williamson for a MG #23193, and there she merely recited CMS's custom/policy and never examined Williamson. (See Ex-P).

6

ARGUMENT

The Standard for Cross-motion for Summary Judgment:

A court shall grant summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P., 56 (c). Plaintiff, Williamson, moves on cross-motion for partial summary judgment for the following issues and against the following defendants:

a) That Williamson's periodontal disease is a serious medical need;

b) That Williamson's broken tooth (# 19) ("emergency dental episode"), is a serious medical need;

c) That defendant Correctional Medical Services, Inc. ("CMS"), employed a custom/policy –absent legitimate medical factors- to deny Williamson perio-treatments that were either recommended and/or known to be needed, and which did cause Williamson needless suffering, pain, and/or permanent injury, and therefore defendant's acts/omissions to act did constitute deliberate indifference to Williamson's serious medical needs;

d) That defendant Kionke ("Kionke"), admitted and/or realized corporate defendant's custom/policy – absent legitimate medical factors- to deny Williamson perio-treatments that were either recommended and/or known to be needed, and which did cause Williamson needless suffering, pain, and/or permanent injury, and therefore defendant's acts/omissions to act did constitute deliberate indifference to Williamson's serious medical needs;

e) That defendant Clark ("Clark"), admitted and/or realized corporate defendant's custom/policy –absent legitimate medical factors- to deny Williamson perio-treatments that were either recommended and/or known to be needed, and which did cause Williamson needless suffering, pain, and/or permanent injury, and therefore defendant's acts/omissions to act did constitute deliberate indifference to Williamson's serious medical needs;

f) That defendant Robinson ("Robinson"), admitted and/or realized corporate defendant's custom/policy – absent legitimate medical factors- to deny Williamson perio-treatments that were either recommended and/or known to be needed, and which did cause Williamson needless suffering, pain, and/or permanent injury, and therefore defendant's acts/omissions to act did constitute deliberate indifference to Williamson's serious medical needs;

g) That defendant Zimble ("Zimble"), realized corporate defendant's custom/policy –absent legitimate medical factors- to deny Williamson perio-treatments that were either recommended and/or known to be needed, and which did cause Williamson needless suffering, pain, and/or permanent injury, and therefore defendant's acts/omissions to act did constitute deliberate indifference to Williamson's serious medical needs;

h) That CMS failed to follow the informed and reasonable recommendations of perio-specialist Dr. Kaz (i.e. prescribing doctor) absent legitimate medical factors, and which did cause Williamson needless suffering, pain, and/or permanent injury, and therefore defendant's acts/omissions to act did constitute deliberate indifference to Williamson's serious medical needs;

i) That Kionke failed to follow the informed and reasonable recommendations of perio-specialist Dr. Kaz

7

(i.e. prescribing doctor) absent legitimate medical factors, and which did cause Williamson needless suffering, pain, and/or permanent injury, and therefore defendant's acts/omissions to act did constitute deliberate indifference to Williamson's serious medical needs;

j) That Clark failed to follow the informed and reasonable recommendations of perio-specialist Dr. Kaz (i.e. prescribing doctor) absent legitimate medical factors, and which did cause Williamson needless suffering, pain, and/or permanent injury, and therefore defendant's acts/omissions to act did constitute deliberate indifference to Williamson's serious medical needs;

k) That Robinson failed to follow the informed and reasonable recommendations of perio-specialist Dr. Kaz (i.e. prescribing doctor) absent legitimate medical factors, and which did cause Williamson needless suffering, pain, and/or permanent injury, and therefore defendant's acts/omissions to act did constitute deliberate indifference to Williamson's serious medical needs;

l) That Zimble failed to follow the informed and reasonable recommendations of perio-specialist Dr. Kaz (i.e. prescribing doctor) absent legitimate medical factors, and which did cause Williamson needless suffering, pain, and/or permanent injury, and therefore defendant's acts/omissions to act did constitute deliberate indifference to Williamson's serious medical needs; and/or

m) That CMS, Kionke, Clark, Robinson, and/or Zimble continued to doggedly employ –in response to Williamson's chronic recurring perio-disease- a course of action that defendants knew were painful, ineffective, or entailed substantial risk of serious harm to Williamson.

As the moving party, Williamson bears the burden of proving that no genuine issue of material fact exists. (See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10 (1986). Once Williamson demonstrates an absence of material fact, the burden shifts to defendants to provide "specific facts showing that there is a genuine issue for trial." (Fed. R. Civ. P., 56 (e)). Thus, the Court should view the underlying facts and all reasonable inferences there from in light most favorable to defendants. (*Pennsylvania Coal Ass'n. v. Bobbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

The mere existence of some evidence in support of defendants, however, will not be sufficient for denial of summary judgment; there must be enough evidence to enable a jury reasonably to find for defendants on the issue. (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Herein, the exhibits, and undisputable facts sufficiently establish the elements of Williamson's partial claims (i.e. that his perio-disease and/or emergency tooth episode are serious medical needs, and/or that CMS, Clark, Kionke, Robinson, and/or Zimble were, through their culpable acts or omissions to act, deliberately indifferent to Williamson's recurring perio-abscesses). There is no genuine issue as to these material facts for the jury to consider. Thus, the defendants must come forward with specific evidence that a genuine issue of material fact exists and if they fail Williamson is entitled to judgment as a matter of law. (*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

8

Thus, Williamson must show: (1) that his perio-disease and/or emergency dental episode was a serious medical need; and (ii) defendants' acts or omissions to act constitute deliberate indifference to those needs. (*Estelle, v. Gamble*, 429 U.S. 97, 104 (1976)).

Accordingly, as stated above in the undisputed facts, this very Court on 11-26-01 found that Williamson's recurring perio-disease was a serious medical need because "Plaintiff 's abscessed tooth, recurring gum infections, pain, suffering, and resulting permanent loss of two teeth [on 08-17-99] constitute 'serious' medical needs...." (Ex-B Order, supra). Moreover, Williamson plead and his records explicitly show that Williamson's perio-disease continued unabated causing identical abscesses, pain, suffering, and permanent injuries (loss of two more teeth on 03-11-05 and Williamson received notice on 09-27-07 that his teeth #14 and #15 were also permanently damaged and would have to be extracted) (supra). Also, Williamson plead and the records explicitly show that these recurring perio-infections significantly impaired Williamson's normal daily functions (e.g. eating, sleeping, enjoyment of life, and ability to recreate and exercise) due to the attendant acute pain of said infections. Thus, Williamson experienced identical pain, suffering, and permanent injuries from the very same continuing perio-disease that this Court has already found to be a serious medical need. There is no genuine issue of material fact for the jury to consider regarding this matter and Williamson is entitled to a judgment as a matter of law on this partial issue. (See *Patterson v. Pearson*, 19 F. 3d 439, 440 (8th Cir. 1994) (Unless cavity is treated...the tooth will degenerate and cause severe pain and eventually require extraction and perhaps further invasive treatment); (*Martin v. Tyson*, 845 F.2d 1451, 1457 (7th Cir. 1988) (lengthy delay in providing dental care or one that results in serious pain or permanent damage violates the Constitution).

Also Williamson's pleadings, records, and exhibits establish another serious dental need, in which his tooth #19 sheared in half down to the gum line. This too is a permanent injury. Moreover, Williamson's records and exhibits show that between 01-09-06 (date of the emergency dental episode) and 02-23-06 (over forty days) Williamson was forced to needlessly endure pain, suffering, and a significant impairment to his normal daily functions (i.e. eating and brushing his teeth). And despite a dentist (Zimble) seeing Williamson for this emergency dental episode on 01-11-06, 02-14-06, and 02-21-06, Zimble refused to actually provide any dental care whatsoever: for example refused pain meds, refused antibiotics, refused medicated toothpaste despite noting the need for same in Williamson's records on 01-11-06. Also Zimble stated a crown was needed but that "they" CMS had prohibited same. Indeed, CMS, Clark, and Kionke all have articulated a custom/policy to deny crowns absent legitimate medical factors, and Robinson also admitted a custom/policy to deny periodontal surgery. Williamson's dental records explicitly show that Zimble failed to actually provide any treatment at all, however, Dr. Bishop on 02-24-06 did provide an alternative restoration composite, which he admitted was temporary, some forty days later. This demonstrates that a doctor diagnosed Williamson's condition as requiring medical treatment, but Zimble never provided any treatment at all. Williamson's records repeatedly show admissions by defendants Clark, Kionke, CMS, and Robinson of CMS's custom/policy to deny needed dental procedures absent any consideration for the needs of the patient (i.e. Williamson), and they clearly show that said policy was indeed realized repeatedly. Again, Williamson experienced a permanent injury and under this undisputable fact set said

9

injury was a serious medical need. Also, under the equally undisputable fact set that Williamson experienced pain, suffering, and a significant impairment of his normal daily functions for over forty days establishes a serious medical need that required timely and adequate dental care. (*Kiney v. Kalfus*, 25 F. 3d 633, 635 (8th Cir. 1994); (*Fields v. Gander*, 734 F. 2d 1313, 1315 (8th Cir. 1984) (three-week delay accompanied by swelling and pain states cause of action); and (*Martin v. Tyson*, 845 F.2d 1451, 1457 (7th Cir. 1988) (lengthy delay in providing dental care or one that results in serious pain or permanent damage violates the Constitution).

The purpose of summary judgment is to flush out legitimate issues and narrow the issues required for trial. There is no genuine issue of material fact for the jury to consider on the issue of whether Williamson's emergency dental episode (i.e. permanent injury of forty days that required restoration procedure) was a serious medical need and Williamson is entitled to a judgment as a matter of law. This will also save judicial resources and economy by limiting triable issue to only genuine issues in controversy.

Wherefore, in light of the above, Williamson requests this Court to grant his Cross-motion for partial summary judgment for items listed above at (A) thru (M).

Alternatively, assuming the Court is not persuaded to grant Williamson's cross-motion for summary judgment against Zimble for his deliberate indifference to Williamson's periodontal disease and thus deny Zimble's summary judgment, Williamson has nevertheless established sufficient specific evidence that a genuine issue of material fact exists for a jury to consider on the issue of deliberate indifference to Williamson's perio-disease by Zimble below. Williamson avers that the only legitimate dispute before the Court involves whether Zimble was deliberately indifferent to Williamson's emergency dental episode. But Zimble claims he cannot be found of deliberate indifference to either claim and this is the substance of Zimble's motion for summary judgment. Thus, as to this matter, Zimble is the moving party and he bears the burden of proving that no genuine issue of material fact exists. Zimble fails, however, and he is not entitled to a judgment as a matter of law.

II. Williamson's Opposition to Zimble's Motion for Summary Judgment:

1. Zimble has failed to sufficiently demonstrate that no genuine issue of material fact exists, and/or the facts above sufficiently demonstrate that there are substantial genuine issues of material fact for the jury to consider and Zimble's summary judgment must be dismissed.

First, Zimble states that he examined and provided treatment for Williamson's "alleged periodontal disease in the form of Cavitron treatment." (Zimble's Sum Judgment at p. 4). Zimble creates a dispute where none exits and belies his own claims to the contrary when he mistaking characterizes Williamson's repeatedly diagnosed periodontal disease as "alleged periodontal disease." Williamson was diagnosed with periodontal disease by a periodontal specialist, Dr. Kaz, in 1999, and again diagnosed with "recurring periodontal disease" by subsequent dentists (e.g. Robinson), and this very Court found Williamson's painful and damaging disease (i.e. permanent injuries), to be a "serious medical need" in 2001. These facts are undisputable, and Zimble's disingenuous allegations cannot alter them. (See Undisputed Facts, supra).

10

Second, Zimble partially relates Williamson's claims in the following manner:

> "Plaintiff claims that Dr. Zimble failed to adequately address Plaintiff's
> periodontal disease by 'knowingly render(ing) a less efficacious and
> inordinately delayed [,] an 18 month belated cleaning, -in response to a
> diagnosed and recurring perio infection- not based on valid medical factors,
> but based on non-medical factors... and flatly stated that Williamson was
> not going to receive the 'attention' he required. (Zimble's Sum Judgment at
> p. 4).

Zimble's characterization of Williamson's claim conveniently omits material issue, but for this portion, Williamson will wait to fully elaborate his actual claims.

In response to Williamson's claims, Zimble alleges that Williamson "provides no expert medical opinion to support his claim...." (Id, at p. 5). Also, Zimble attempts to draw an inference that because he provided a Cavitron cleaning on 12-07-05, that a jury cannot find that Zimble was deliberately indifferent to Williamson's serious medical need. Finally, Zimble characterizes Williamson as simply dissatisfied with the type of care he received, but that Williamson is not entitled to "direct the type of care he receives." (Id at p. 5).

It is true that a prisoner patient cannot direct the type of medical care he receives, but this presupposes the following:

a) That the care Williamson did receive was adequate for his particular serious medical need; or

b) That adequate care was not alternatively denied, delayed, or based on non-medical factors; or

c) That knowingly less efficacious or ineffective care was rendered; or

d) That doctors/defendants followed the informed professional medical opinion/recommendations of the prescribing specialist (i.e. Dr. Kaz); or

e) That doctors/defendants did not otherwise fail to follow specialist recommendation absent legitimate medical factors.

Williamson claimed all of the above and the evidence presented on the record specifically demonstrates the existence of same, and/or that a reasonable juror could draw the inference based on the evidence. Alternatively, items (a) thru (e) are genuine issues of material fact

For example, Zimble misstates that no expert medical opinion is offered in this case regarding what standard of care Williamson's specific perio-disease requires. This is incorrect. Equally incorrect is Zimble's allegation that Williamson is a disgruntled prisoner patient who wishes to dictate the type of care he receives. First, Williamson's records explicitly establish that Dr. Kaz –a periodontal specialist- examined Williamson's chronic condition in 1999, and based on Kaz's informed and specialized medical opinion, he specifically outlined the standard of care Williamson's recurring perio-disease required:

1. Periodontal treatment is needed to save Williamson's dentitions (i.e. teeth), but staff ...was not able to handle this type of treatment;

2. *Periodontal surgery* and *routine access to hygiene visits 1 or 2 per year* (perio-cleanings/Cavitron).

11

Thus a medical expert has weighed in on the matter and Zimble misstated. There is no dispute as to the expert and as to the standard of care Williamson's specific perio-disease requires.

Moreover, Williamson has been incarcerated continuously from 1996 until the present and despite Dr. Kaz's specialized recommendations, Williamson has never been provided the periodontal surgery, nor has Williamson received timely perio-cleanings in response to active recurring perio-infections, let alone Kaz's explicit recommendation for "routine access hygiene visits of 1 to 2 per year." Not surprisingly, this failure to provide Williamson the dental care his perio-disease required has caused him to needlessly experience the following:

a) Multiple recurring painful and damaging perio-abscesses;

b) Multiple permanent injuries (e.g. two teeth on 3-11-05 & notice of two more permanently damaged on 09-27-07); and

c) A significant and likely tangible threat to Williamson's future health and well being.

These recurring perio-abscesses have continued unabated and the alternative "type of care" that defendants have chose to provide Williamson –in conflict with the specialist's recommendations- has proved wholly ineffective, yet they doggedly continue to expose Williamson to a known risk. Thus, the care Williamson did receive was contrary to Dr. Kaz's specialized recommendations –not as Zimble claims- contrary to Williamson's demands. Clearly there is a genuine issue of material fact for a juror to consider here.

In addition, Williamson's records definitively show that corporate defendant, CMS, employed a custom/policy to deny said needed perio-care –absent any legitimate medical factors- and that defendants Clark and Robinson both admitted same in their own hand. ( e.g. periodontal surgery is not an option and no root canals) (Id, surpa) Moreover, they both realized CMS's custom/policy repeatedly. The records are clear on this matter. Thus, CMS's custom/policy was the moving force behind both Clark's and Robinson's admissions and denials, and this is an undisputable fact. *(Swan v. Daniels*, 923 F. Supp. 626, 633 (D. Del. 1995) (corporate "custom" or "policy" that is the moving force in denying needed medical care state Eighth Amendment claim.); *Jackson v. FCMS*, 380 F. Supp. 2d. 387 (D. Del. 2005); (*Moody v. Kearney*, 380 F. Supp. 2d 393 (D. Del 2005). Consequently, Williamson plead and the record supports that a genuine issue of material fact exists as to whether Zimble's treatment was (a) adequate, and (b) not also preordained and/or dictated by Zimble's corporate master via their undisputable custom/policy; and/or (c) that a knowingly less efficacious or inordinately delayed treatment was rendered. There is ample evidence of CMS's custom/policy, ample evidence of CMS's dentists doggedly continuing a course of care that they admitted was ineffective (See Robinson and Clark's entries above), ample evidence of CMS's dentists consequently realizing same, and Zimble was a CMS dentist at the time, also. Zimble has not even addressed these claims or these damming facts, and clearly Zimble has thus failed his burden to demonstrate that no genuine issue of material fact exists. Moreover, all reasonable inferences must be drawn in favor of the non-moving party, Williamson, and it is reasonable for a juror to conclude that a CMS dentist, Zimble, also realized a well documented corporate custom/policy and denied the known specialized recommendations in conflict with legitimate medical factors. (*Liscio v. Warren*, 901 F.2d 274 (2d Cir. 1990)

12

(genuine issue of material fact existed as to whether physicians conduct was deliberate indifference and not mere negligence…); *Taylor v. Plousis*, 101 F. Supp. 2d 255 (D N.J. 2000) (defendants moved for summary judgment… (3) issue of fact existed as to whether [defendant] deliberately delayed [care]).

Third, Zimble admits to the following: "On [12-07-05], Dr. Zimble saw Plaintiff…[and] examined the Plaintiff, *reviewed his dental records and x-rays*, and provided a Cavitron treatment, …." (Zimble's Sum. Judgment at p. 6) (emphasis added). Thus, Zimble must have "reviewed" Williamson's unabated perio-abscesses that persisted unabated under the very same and continuing course of care previously administered by defendants Clark, Robinson, and Kionke; must have "reviewed" Dr. Kaz's recommendations; and must have "reviewed" that Williamson's unabated perio-infections had recently caused Williamson to loss two teeth on 03-11-05. A genuine issue leaps out to a reasonable juror, because this continued course of care has already proven to be ineffective and it did result in further permanent injuries, and it was in conflict with Dr. Kaz's recommendations. Why did Zimble doggedly continue a course of care he must have known was ineffective and would result in further permanent injuries? Indeed, Williamson was notified on 09-27-07 that the very teeth affected by the December 2004 perio-abscess were permanently damaged and would have to be extracted. Zimble's Cavitron was nearly a year later. It was too little and too late. (i.e. inordinately belated). Again another genuine issue of material fact arises, because the record indicates that Zimble did not exercise any semblance of professional judgment in view of the well documented facts of Williamson's case. Zimble's uses the Cavitron in a vacuum without context as if it is automatically adequate care for Williamson's perio-disease, and even if it could have been, it was rendered useless by the inordinate delay of nearly a year. Indeed, Zimble's 12-07-05 Cavitron was   ordered in December 2004 by Kionke in response to Williamson experiencing an active perio-abscess in the area of his #14 and #15 teeth. Williamson did not receive timely treatment, and Williamson had not received any Cavitron or perio-cleanings since Robinson's 5-08-03 Cavitron prior to that. Williamson lost two teeth   on 03-11-05 behind Robinson's belated Cavitron and Williamson was notified that teeth #14 and #15 were also permanently damaged, which of course is due to Zimble's one year late Cavitron.

Clearly, failure to provide a timely Cavitron for Williamson's dental emergency of December 2004, but alternatively providing it days shy of one year later had rendered it useless at arresting the permanent damage to the bone and roots of #14 and #15 teeth. (*Martin v. Tyson*, 845 F.2d 1451, 1457 (7th Cir. 1988) (Lengthy delay in providing dental care or one that results in serious pain or permanent damage violates the Constitution); (*Tillery v. Owens*, 719 F. Supp. 1256, 1301 (W.D. Pa 1989) (State must provide a prisoner health services reasonably *designed to meet routine and emergency medical, dental,… care*) cert. denied 450 U.S. 1041, 101 S. Ct. 1759, 68 LED. 239 (1989). It is undisputable that Williamson was denied both "routine" and "emergency" dental care repeatedly by defendants, and Zimble is a defendant who also realized this course of action. (*White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990) ("…sheer number of specific instances the doctor insisted on continuing course of treatment that doctor knew were painful, ineffective, ….stated cause of action.). Zimble had before him an undeniable road map that the course of care thus provided was ineffective, etc. but he doggedly continued it

nevertheless. Moreover, Clark and Robinson documented its ineffectiveness and it also deviated from Dr. Kaz's recommendations. Zimble's request for judgment as a matter of law must fail.

2. Zimble fails his burden to demonstrate that no genuine issue of material fact exists regarding Williamson's claim that Zimble failed to adequately treat Williamson's broken tooth.

First, Zimble claims he "examined and *treated*" Williamson on 1-11-06 for a broken tooth #19. Zimble now claims that Williamson's nerve was not exposed, and he claims to have made a determination that Williamson was not in any medical danger; that it was *best to wait to observe Williamson's condition*. Zimble now state the "purpose for waiting was to see whether the dentin (the layer between the enamel and nerve) would retreat in to the tooth and become insensitive" such that it would be more suitable for a composite repair." (Zimble's Sum. Judgment at Ex-C Aff't). Next, Zimble states that he examined Williamson again on 02-14-06 and "*by this time tooth #19 was asymptomatic*." Lastly, Zimble states he saw Williamson on 02-21-06 and determined to allow Kionke or Bishop to try to perform a composite restoration. (Id). Zimble claims "at all times" his treatment was "proper and appropriate under the circumstances." (Id).

Zimble painstakingly employs a self-serving, ad hoc revisionist's recreation of events in his affidavit in which he repaints a picture that he exercised professional prudence in treating Williamson's emergency dental episode, but it is false and belied by the record. The rules do not preclude self-serving affidavits or reasonable inferences drawn from the ostensible facts stated therein, but stated facts must be supported and not mere flights of fancy or conclusory allegations. (*Payne v. Pauley*, 337 F.3d 767, 777 (7th Cir. 2003) and Fed. R. Civ P. 56 (e). On its face, Zimble's affidavit makes multiple incongruous claims and it is in conflict with the record such that Zimble fails his initial burden to demonstrate that there is no genuine issue of material fact.

For example, he claims he treated Williamson's broken tooth on 01-11-06, but no entry appears in Williamson's records of any such "treatment", only that Zimble acknowledged the broken tooth. Zimble also notes that he "determined" it was best to wait to allow the dentin (i.e. pulp between the enamel and nerve) to *retreat,* but that the nerve was not exposed. This is incongruous. Zimble admits that the interior pulp was exposed such that it needed to retreat, but incredibly the nerve was somehow not exposed even though the tooth was sheared completely in half down to the gum line and the nerve is also embedded in the exposed dentin. Moreover, Zimble then states that on 02-14-06, "[b]y this time the tooth was asymptomatic." Consequently, on 01-11-06 this clearly was not the case, but Zimble did not provide any actual treatment to keep infection at bay and/or to treat Williamson's acute pain and impairment of normal daily functions (e.g. eating and brushing his teeth). Nor did Zimble prescribe or provide any medicated toothpaste, despite noting the need for it in Williamson's records. Zimble soft peddles Williamson's pain and suffering during this month long ordeal of non-treatment by claiming he waited for the tooth to become "insensitive." Zimble acknowledges Williamson's pain and suffering but fails to mention the fact that Williamson has no grinding/chewing teeth on the right side of his jaw and that the broken tooth was on the opposite side of the jaw in an area of grinding and chewing. Thus, Williamson's claim of

14

significant impairment of his ability to eat and brush his teeth enjoys direct substantial evidence. (See Disputed Facts, supra at 2-3). Williamson explicitly alerted Zimble on 01-11-06, 02-14-06, and 02-21-06 of his acute pain and significant impairment, but Zimble did nothing. (Id. at 2-5). Unlike Zimble's ad hoc affidavit, Williamson has provided real-time affidavits sufficient to meet the burden of the non-moving party. (See Ex- J, K, L, I, and P). Therein, Williamson relates specific facts based on his personal knowledge and Zimble's summary judgment is defeated. (*Moore v. J.B. Hunt Transport, Inc.*, 221 F.3d 944 (7th Cir. 2000) and 56 (e).

Also, Zimble attempts to support his incongruous claim that he determined to wait and observe Williamson's serious medical condition –and not merely ignored it- by exploiting a subsequent unscheduled 02-14-06 dental visit. It fails, however, and it is inconsistent because Zimble did not enter any reschedule or note any dental plan on the preceding 01-11-06 visit at all. The fact is that Zimble had no intention of seeing Williamson again, but Williamson was scheduled on 02-14-06 along with a throng of others for a routine exam so that CMS could comply with audit requisites. Ms. Seacord announced same. (See Ex-L at 2-3). A genuine issue of material fact exists as to whether Zimble actually sought to treat Williamson's broken tooth or deliberately delayed treatment for non-medical reasons. (*Taylor, Supra* at holding). And Williamson needlessly suffered pain and significant impairment for some 40 days –this could rise to a Constitutional violation- (*West v. Keve, supra*, at 161-162); (*Martin v. Tyson, supra* at 1457) and (*Fields v. Gander, supra* at 13150) (week delay accompanied by pain states cause of action).

Lastly, Williamson renews his objection to and motion to strike Kionke's affidavit, which Zimble included as an exhibit. It appears to have been made in bad faith and it violates the personal knowledge requirements of 56 (e) and Fed. R. E. 602, and 1002, because Kionke had absolutely no personal involvement with Williamson's broken tooth. Kionke also relates false facts (i.e. nerve deemed healthy on 02-24-06 and no need for root canal), because no such entry exists for Williamson's records on 02-24-06. (See Disputed Facts at #8) (See *Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) and rule 56 (e).

In conclusion, in the event the Court is not persuaded that sufficient evidence exists to support a genuine issue of material fact for a jury to consider, Williamson avers that the Court should postpone its ruling on Zimble's request under 56 (f) because it is premature: Williamson has pending discovery propounded on Zimble and Williamson seeks information on non-party witnesses for the purpose of depositions. (Williamson incorporates Ex-A at items 4-7 herein). (See Trask v. Franco, 446 F.3d 1036, 1042 (10th Cir. 2006) and Valez v. Awning Windows, Inc., 375 F.3d 35, 40 (1st Cir. 2004). This rule is normally construed generally and granted liberally. (See Beattie v. Madison County Sch. Dist., 254 F.3d 595, 606 (5th Cir. 2001).

WHEREFORE, for the reasons stated above, Williamson requests that Zimble's motion for judgment as a matter of law be denied; or alternatively postponed until Williamson can complete his discovery.

*David W*

David Williamson, SBI #183022, 1181 Paddock Rd., Smyrna, DE 19977

*10-26-07*

Date

## CERTIFICATE OF SERVICE

I, David Williamson, Plaintiff, do swear that I have caused to be delivered upon the defendants listed

below the following true and correct documents:

1. *Plaintiff's Cross-Motion for Partial Summary Judgment and Opposition to Defendant Zimble's Motion for Summary Judgment* ,

2. *N/A*

By placing same in a U.S. Mail receptacle on the ___28___ day of ___Oct___ 200 _7_.

Megan T. Matzavinos, Esq.
(Counsel for Chuks, Clark, et al)
913 N. Market St. Suite 800
Wilmington, DE 19801

James E. Drnec, Esq
711 N. King St.
Wilmington, DE 19801
(Counsel for Dr. A. Zimble)

Daniel McKently, Esq.
(Counsel for ECM, Inc.)
1225 N. King St., Suite 1100
Wilmington, DE 19809-0397

Patrick Rock, Esq.
(Counsel for CMS, Inc.)
913 Market St., #800
Wilmington, DE 19801

*N/A*

David Williamson, SBI #183022
1181 Paddock Rd., W-1, L-12
Smyrna, DE 19977

# APPENDIX

# EXHIBIT A

## AFFIDAIVT OF DAVID WILLIAMSON

1. I, David Williamson, am the Affiant listed above and do depose and state to the following in support of Williamson v. CMS, et al, 06-379-SLR:

2. Affiant is over eighteen years of age and is competent to make this declaration.

### Verification of Exhibits

3. Affiant verifies under penalty of perjury that the exhibits offered in support of Williamson's Cross-motion for Partial Summary Judgment and his response in opposition to defendant Zimble's Summary Judgment are authentic and/or true and correct copies of the following:

    a. Affiant's medical records, which were filed by defendants in their supplemental response  (D.I. 147, Ex-D) to TRO/PI and/or Affiant's TRO/PI and related filings;

    b) Relevant administrative records that were also filed with the Court in related TRO/PI filings;

    c) Affiant's notices/complaints to defendants and/or defendants' responses to same;

    d) Affiant's affidavits that were created at or about the time of the event/incident describe therein;

    e) DOC agency records that were created in the normal course of business and/or in response to relevant incidents; and

    f) Official Court Orders and/or filings that bear on the issues.

### Verification of Discovery Claims and the Need to Depose Non-party Witnesses

4. Affiant is in the process of acquiring essential discovery that would preclude defendant Zimble's summary judgment, but Zimble has failed to provide Affiant's discovery requests absent legitimate grounds.

5. Also, Affiant intends to depose nonparty witnesses: Ms. _____ Seacord, Georgiana _____, Dr. _____ Bishop for the following:

    a) Ms. Seacord was Zimble's assistant on 02-14-06, and she announced that the day's dental schedulings were for an upcoming audit, and thus not as Zimble avers: to have prescheduled and/or monitored Affiant's emergency dental episode. Thus, this testimony would refute Zimble's averment that he cannot be found deliberately indifferent because he had intended to monitor, and by inference, follow up on said emergency dental episode. Zimble did not reschedule Affiant, and he did not intend to monitor or follow up on the issue. (See Ex-L of Appendix of Williamson's Cross-motion for Summary Judgment at items 2-3); and

    b) Georgiana was Zimble's assistant on 1-11-06 in which Zimble stated that Affiant's broken tooth required a Crown and also announced CMS's custom/policy prohibiting same (Id at Ex-J items 2-6). Georgiana was also Kionke's assistant on 10-31-06 and Bishop's on 02-24-06. Kionke had announced CMS's custom/policy to deny crowns. (Id at Ex-F items 2-9).

Bishop announced that Affiant's broken tooth required a crown and a root canal because the nerve had been damage from waiting so long, and he announced the same CMS's custom/policy of denial of said Crown. (Id at Ex-K at items 2-10). Thus, this evidence refutes both Zimble's and Kionke's affidavits in which they claim Affiant's broken tooth #19 did not require a crown or a root canal, and that the nerve was healthy;

6. Zimble claims in his summary judgment that dismissal is warranted as a matter of law, because there is no genuine issue of material fact of whether Affiant received timely and adequate dental care for his broken tooth and/or perio-disease, but clearly these non-party depositions raise a genuine issue of material fact and do preclude summary judgment. Thus, permitting Affiant to complete necessary discovery is warranted under 56 (f).

7. Affiant has exercised due diligence in moving his case forward and conducting discovery. Affiant is not at fault for not yet deposing these non-party witnesses due to the following:

a) Affiant filed for appointment of counsel (D.I. 43-46) and specifically cited therein that he required professional counsel to assist with meaningful discovery and in conducting depositions of non-party witnesses, or that he would face prejudice. The Court denied Affiant's unopposed motion. (D.I. 120);

b) Affiant propounded discovery requests upon Zimble (D.I. 131, 132), which specifically sough the identities of these non-party witnesses, but Zimble objected and/or only provided Georgiana's first name and Bishop's last name and no addresses or any other information Affiant sought. (D.I. 148, 149).

c) Affiant voluntarily withdrew the objectionable discovery requests (D.I. _____) and filed "Revised" discovery requests on or about 09-25-07 (D.I. _____), which are due on or about 10-26-07. Zimble has not responded as of ___10-28-07___. (See Ex-M, N of Appendix of Williamson's Cross-motion for Summary Judgment);

d) Zimble is responsible for withholding the identities of said non-party witnesses not Affiant, and thus Affiant cannot be found lacking for failing to depose same prior to Zimble filing his summary judgment.

8. The above is True and Correct and it is a product of Affiant's first hand experience and/or knowledge.

Sworn and Subscribed before me this 22 day of October 2007.

David Williamson
SBI 183022, S-1
1181 Paddock Rd.
Smyrna, DE 19977

Notary Public

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

**RECEIVED**

**NOV 2 8 2001**

**S.D.B.11**

DAVID W. WILLIAMSON,              )
                                  )
          Plaintiff,              )
                                  )
     v.                           )  Civil Action No. 97-710-SLR
                                  )
SHARESE BREWINGTON-CARR, et. al., )
                                  )
          Defendants.             )

## MEMORANDUM ORDER

### I.   INTRODUCTION

On December 30, 1997, plaintiff David W. Williamson filed a pro se complaint[1] against defendants Sharese Brewington-Carr, Raphael Williams, Mary Cooper, Officer Wilkes and Officer Swan for alleged violations of plaintiff's rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution. (D.I. 2)  On July 16, 1999, plaintiff amended the complaint to include similar claims against Prison Health Services ("PHS") and additional state employees:  Michelle Salter, Roderick Johnson and Pamela Falkner-Minor.  (D.I. 59)  Specifically, plaintiff alleges that from February 1996 through July 16, 1999, he was treated with deliberate indifference to serious medical needs when PHS failed to treat plaintiff's abscessed tooth and periodontal disease.[2]  (Id.

---

[1]Plaintiff is now represented by counsel.

[2]According to plaintiff's complaint, PHS is responsible for providing inmates with adequate and reasonable health, mental, medical and dental services.  This includes providing preventative, diagnostic, and therapeutic measures on an outpatient and hospital basis.  (D.I. 59 at ¶2)

at ¶¶10-22)  Currently before the court is PHS's motion to dismiss
plaintiff's complaint for failure to state an Eighth Amendment
claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  For
the reasons discussed below, defendant's motion to dismiss is
denied.

## II.  BACKGROUND

The following recitation of events is based upon the
allegations set forth in plaintiff's complaint.  At all times
relevant to the complaint, plaintiff was an inmate at Delaware's
Multi-Purpose Criminal Justice Facility ("MPCJF").  In late 1996,
plaintiff visited MPCJF's dental offices for treatment of a cavity
that was causing him pain.  Plaintiff was "x-rayed and told to be
rescheduled for extraction of his lower right rear tooth #29."
(D.I. 59 at ¶11)  The extraction of tooth #29 never occurred.
Plaintiff alleges that the tooth subsequently became infected,
caused him pain and suffering, and has affected his ability to eat,
sleep, and otherwise function normally.  (Id.)

In May of 1998, plaintiff began experiencing reoccurring oral
gum infections causing swelling, pain, loss of sleep, and loss of
appetite.  (Id. at ¶14)  Upon returning to MPCJF's dental offices,
plaintiff was told by Grace,[3] a dental assistant, that there was
"nothing she could do."  (Id.)  In response, plaintiff then filed a
medical grievance and was again examined on October 22, 1998.

---

[3]Grace's full name is not apparent from the record.

2

(<u>Id.</u>)  Dental x-rays revealed a "pocket" in the infected area caused by periodontal disease.  Plaintiff was told by the dental staff, "we can't help you with that problem, you're going to lose that tooth."  (<u>Id.</u>)  Plaintiff alleges that this infection is the same one that has gone untreated since 1996 and which has caused "many subsequent oral gum infections," all diagnosed by MPCJF's dental staff.[4]  (<u>Id.</u>)

Plaintiff further alleges that his permanently damaged front tooth was treated with an epoxy compound to temporarily hold it in place, despite plaintiff explaining that he was serving a twenty-three year sentence.  (<u>Id.</u> at ¶13)  According to plaintiff, MPCJF's dentist told him, "you will have to get it taken care of when you get out," and prescribed antibiotics.  (<u>Id.</u>)

On May 11, 1999, three months after submitting emergency medical grievance number 1034, plaintiff received an allegedly substandard cleaning at the MPCJF dental office.  Plaintiff was told by the dentist that, "at this point this cleaning is not going to solve the underlying problems, it will help with the gum infection symptoms but you need to see a specialist."  (<u>Id.</u> at ¶20-21)

On June 23, 1999, plaintiff filed his fifth emergency grievance report concerning his ongoing oral infections in tooth

---

[4]Plaintiff claims that the dental staff has told him, "we don't clean teeth here, it's not in our budget, there are 1700 inmates here, you have to be patient."  (D.I. 59 at ¶14)

3

#29. (Id. at 14)  In the meantime, on June 28, 1999, tooth #8
(which had been secured with "tooth spit compound" by the dental
staff) had broken free and had cracked tooth #9, causing severe
pain and bleeding.  (Id. at ¶15)  On May 29, 1999, Dr. Kaz, an
MPCJF dentist, told plaintiff that tooth #8 and #29 must be
immediately extracted due to level 10 periodontal disease.  (Id. at
¶14)  Dr. Kaz recommended that plaintiff receive a semiannual
cleaning and antibacterial mouthwash, but told plaintiff that
"that's not likely going to happen . . . there are just too many
people [in this facility] to do that."  (Id. at ¶16)  Dr. Kaz
offered to insert a partial plate to replace the front tooth that
was to be extracted, provided that plaintiff obtain a written
authorization for the procedure from PHS.  (Id. at 18)  As of July
14, 1999, plaintiff was still waiting for authorization from PHS
and his teeth were not extracted, causing further pain and
suffering.

## III. STANDARD OF REVIEW

In analyzing a motion to dismiss pursuant to Fed. R. Civ. P.
12(b)(6), the court must accept as true all material allegations of
the complaint and it must construe the complaint in favor of the
plaintiff.  See Trump Hotels & Casino Resorts, Inc. v. Mirage
Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998).  "A complaint
should be dismissed only if, after accepting as true all of the
facts alleged in the complaint, and drawing all reasonable

4

inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." Id. Claims may be dismissed pursuant to a Rule 12(b)(6) motion only if the plaintiff cannot demonstrate any set of facts that would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The moving party has the burden of persuasion. See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991). Following this standard, the court turns to an examination of the sufficiency of plaintiff's complaint.

## IV. DISCUSSION

Plaintiff alleges that PHS failed to provide him with adequate health care in violation of the Eighth Amendment. To state a violation of the Eighth Amendment's right to adequate health care, plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976); accord White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990). Plaintiff must demonstrate: (1) that he had a serious medical need, and (2) that the defendant was aware of this need and was deliberately indifferent to it. See West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978); see also Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir. 1987).

5

The seriousness of a medical need may be demonstrated by showing that the need is "'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (quoting Pace v. Fauver, 479 F. Supp. 456, 458 (D.N.J. 1979)). Moreover, "where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." Id.

As to the second requirement, an official's denial of an inmate's reasonable requests for medical treatment constitutes deliberate indifference if such denial subjects the inmate to undue suffering or a threat of tangible residual injury. See id. at 346. Deliberate indifference may also be present if necessary medical treatment is delayed for non-medical reasons, or if an official bars access to a physician capable of evaluating a prisoner's need for medical treatment. See id. at 347. However, an official's conduct does not constitute deliberate indifference unless it is accompanied by the requisite mental state. Specifically, "the official [must] know . . . of and disregard . . . an excessive risk to inmate health and safety; the official must be both aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). While a plaintiff

6

must allege that the official was subjectively aware of the requisite risk, he may demonstrate that the official had knowledge of the risk through circumstantial evidence and "a fact finder may conclude that a[n] . . . official knew of a substantial risk from the very fact that the risk was obvious." Id. at 842.

Accepting plaintiff's allegations as true, the complaint sufficiently alleges that PHS violated plaintiff's Eighth Amendment right to adequate health care by denying plaintiff proper dental treatment. Plaintiff's abscessed tooth, recurring gum infections, pain, suffering and resulting "permanent loss" of two teeth constitute "serious" medical needs. Furthermore, plaintiff has sufficiently alleged that PHS was aware of plaintiff's dental problems and the health risks associated with them.

**V.  CONCLUSION**

Therefore, at Wilmington, this 26th day of November, 2001;

IT IS ORDERED that:

1.    Defendant PHS's motion to dismiss (D.I. 80) is denied.

2.    Plaintiff's motion for oral argument (D.I. 82) is denied as moot.

United States District Judge

7

# EXHIBIT C

To: Officer L. M. Merson, Inmate Grievance Chairperson

From: Juanita Clark, SA

Date: 1/8/02

RE: Williamson, David

David Williamson was housed in SHU, this mouthwash Chlorhexidine Gluconate Oral rinse can no longer be given to inmates housed in SHU or MHU. Since David Williamson is now on the compound he will be given this mouthwash on 1/9/02. When David was seen in dental by Dr. Robinson she explained to him that this abcess would keep reoccurring he was also told since we do not do root canals here his tooth need to be extracted. This problem can not be treated indefinatley with medication. David was scheduled in dental on 1/3/02 at the time of his sick call visit he stated he would think about having his to extracted, if so he would contact dental for an appointment.

If you have anymore questions, please call me at ext. 2226.

# DELAWARE DEPARTMENT OF CORRECTIONS
# REQUEST FOR MEDICAL/DENTAL SICK CALL SERVICES
## FACILITY: DELAWARE CORRECTIONAL CENTER
This request is for (circle one):  MEDICAL (DENTAL) MENTAL HEALTH

Williamson, David
Name (Print)

D-EAST - E.22
Housing Location

5-12-66
Date of Birth

00183022
SBI Number

12-28-01
Date Submitted

Complaint (What type of problem are you having)?  Periodontal gum infection
causing an absessed tooth (upper front) recurring cronic.
condition, which is interfering with sleep, eating and
normal dail activities. (During interim please prescribe
antibiotics and reorder self administering motrin) Thank you.

David Williamson
Inmate Signature

12-28-01
Date

**The below area is for medical use only.  Please do not write any further.**

S:

O:   Temp:_____   Pulse: _____   Resp: _____   B/P: _____   WT: _____

A:

P:

E:

_____
Provider Signature & Title

_____
Date & Time

3/1/99 DE01
FORM#:
MED
263

# EXHIBIT D

| DATE | TIME | NOTES | SIGNATU... |
|------|------|-------|-----------|
| 1/3/02 | | DCC Seen in dental sick call I/m stated he was having alot of swelling in gum around #10. No swelling at discomfort at this time. I/m stated he would think on getting the tooth ext. he would resubmit a sick call. Include c OFA | |
| 1-9-02 | | Clinical exam tissue generally looks good much improved. bone loss 5-8 mm area #22, 27. +1-+2 mobility. Will order doxycycline | |
| 1/16/02 | | doxycycline in strength need for tx of perio is non formulary awaiting approval to order. This med. inmate presents w/ c/o of perio abuss 2wk Ago. today area is much improved pt states. SC/RP #7, probe readings 5-7mm - mobility +2. Again discussed recurring perio abcess. Explained that since periodontal surgery is not an option here - ext should be considered. Inmate refuses EXT. Inmate request pain medicin gave 30 tylenol 325mg Outside referral written for perio-surgery w/outside periodontist | |
| | | | |
| | | | |
| | | | |
| | | | |

EXHIBIT E

| INMATE REFERENCE MANUAL | CHAPTER:    N1 | PAGE: 1    of    1 |
|---|---|---|
| DEPARTMENT OF CORRECTION | | |
| EFFECTIVE DATE: February 1, 2004 | SUBJECT: DENTAL SERVICES | |
| CHAPTER: MEDICAL SERVICES | | |

The dentist or dental assistant will examine each new inmate within 30 days of commitment for general condition of teeth, cavities, and absence of teeth. The results will be recorded in the inmate medical file.

Dentures and partial plates will not be provided or repaired unless the following prerequisites are met and approved:

1.  The inmate must be missing six (6) teeth in a row.
2.  The inmate must suffer some documented medical need for replacement – for example, weight loss due to lack of dentition, malnutrition due to lack of dentition.
3.  The inmate must be confined for no less than eight (8) months.

As a rule, caps, crowns, bridges, root canals, teeth cleaning, and impacted third molar extraction (wisdom teeth) will not be provided.

There is a $4.00 co-pay for each visit to the dentist.

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.
REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

# EXHIBIT F

## AFFIDAVIT OF DAVID WILLIAMSON

1. I, David Williamson, am the Affiant listed above and do depose and state the following in support of CA 3 06-379-SLR:

2. On 10/31/06 Affiant was called in for Dental; however, no dental services were performed because the visit acted as a first "Informal Hearing" for a belated dental medical grievance that Affiant had filed some nine months earlier (MG #  23193  ).

3. Affiant had filed the MG after his tooth had sheared in half and CMS dentist Zimbull refused to provide the medically needed treatment (e.g. a crown) and refused to provide any pain medications despite acknowledging that a crown was what was needed.

4. Dentist Bishop also agreed that a crown was the appropriate and needed medical treatment; however, provided a known and acknowledged substandard treatment.

5. Dr. Bishop and Dr. Zimbull both stated the known substandard treatment would likely fail, but they provided it any way due to CMS's custom/policy of cost-avoidance that prohibited needed medical procedures that intentionally refuses to consider medical needs and is devoid of any legitimate medical factors.

6. Affiant subsequently met dental assistant Georgiana and dentist Kionke (spelling ?) Mrs. Kionke was named Jane Doe Defendant in the above listed action.

7. Georgina announced the purpose of the scheduling was to address said MG, and she asked Affiant what the problem was. Affiant explained what the MG clearly stated to them.

8. Dentist Kionke then stated: "We don't have the authority or the facilities here to provide a crown, and have you seen the Inmate Handbook? ...It says right here that we don't perform those services." (She had pulled a single sheet of paper from the office wall of an unknown origin of which listed certain prohibited procedures. Presumably, it listed a crown and root canal as prohibited, but it was merely flashed and Affiant was unable to verify the statement or the inference).

9. Kionke attempted to convince Affiant to "sign-off" on his MG based on her dubious claim that because someone made or wrote a directive that prohibits certain treatments, then CMS had no duty to provide a medically needed treatment.

10. Affiant refused to sign-off on the MG and stated: "I thought that CMS was the health care provider contracted by the state to provide medical care? And if a treatment is medically necessary, then it should be considered unless a viable substitute treatment will suffice. That so-called policy fails to consider my or anyone else's medical needs. It is a blanket prohibition that had no basis in valid medical factors."

11. Kionke replied: "So, you're not going to sing-off?" Affiant continued: "I will not sign off and I will take the issue up at the next level if you are not going to schedule me in for a crown and root canal." (e.g. Formal RGC Hearing)

12. Affiant was not scheduled for the needed treatment and was told that the MG would be forwarded to the next level.

13. The above is true and correct according to Affiant's personal observation, experience, and beliefs based on same.

Sworn and Subscribed before me this ___8___ day of November 2006.

_____W̄avǝN̄_____
David Williamson

_Timothy J. Maits_
Notary Public

my Commission expires: June 14, 2008

# EXHIBIT G

**FORM #585**

**MEDICAL GRIEVANCE**

FACILITY: _____DCC_____

INMATE'S NAME: ___David Williamson___

HOUSING UNIT: ___W-1, L-12_____

DATE SUBMITTED: ___1-12-06___

SBI#: ___00183022___

CASE #: ___23193___

///////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////

**SECTION #1**

DATE & TIME OF MEDICAL INCIDENT: ___1-11-06 (on-going)___

TYPE OF MEDICAL PROBLEM:

Grievant was seen on 1-11-06 by Dr. Zimbull (spelling ?); the same CMS

dentist that saw Grievant on 12-07-05 for his recurring periodontal disea

-se (i.e. gum infections). This visit was in response to Grievant's

broken tooth and the emergence of yet another periodontal gum infection.

Dr. Z. acknowledged the broken tooth and stated: "a crown" was needed, but

that "we don't do that here." Dr. Z. refused the standard and needed treat-

ment based on non-medical criteria. Also, he intentionally misdiagnosed

Grievant's gum infection despite the existence of classic symptoms. He

refused to provide any pain meds or antibiotics, and only offered to extra-

ct the broken tooth. CMS/Dr. Z. evince deliberate indifference to my known
serious medical needs & exposes me to needless pain, suffering, & injury (permanent)
GRIEVANT'S SIGNATURE: _Dave W_____   DATE: ___1-12-06___

ACTION REQUESTED BY GRIEVANT: ___1) Crown or replace the broken tooth; 2) provide___

replacements for thr four other teeth that Grievant unnecessarily lost; 3)

schedule routine gum/teeth cleanings at six-month intervals to treat perio-

dontal disease; and 4) provide monetary damages for the unnecessary pain,

suffering, and permanent injury that Grievant is experiencing.

DATE RECEIVED BY MEDICAL UNIT: _____

**NOTE: EMERGENCY MEDICAL CONDITIONS WILL TAKE PRIORITY. OTHERWISE, MEDICAL
GRIEVANCES WILL BE ADDRESSED AT THE WEEKLY MEDICAL COMMITTEE MEETING.**

David W. Williamson
SBI #183022, W-1, L-12
1181 Paddock Rd.
Smyrna, De 19977
March *16* 2006

Inmate Grievance Chairperson (IGC)

Re: Medical Grievance Monitoring/Status

Dear Sir/Madam:

Greetings, Grievant filed a medical grievance for a broken tooth (in part) dated 1/12/06 for an incident (e.g. refusal to treat my painful, broken tooth despite acknowledging the needed standard treatment in deliberate indifference to my serious medical needs); however, I have not received any follow up.

It has been two months since I suffered the medical incident and filed the medical grievance, and grievant would appreciate some appropriate follow up regarding this matter. (i.e. treatment, informal hearing, status, etc.). It is inappropriate for the health care provider to ignore medical grievances and or fail to address medical concerns in a timely fashion, and grievant addresses this correspondence to the IGC, pursuant to IGP 4.4, due to the fact that the IGC is responsible to forward medical grievances directly to the contract health care provider and subsequently monitor for progress.

Thank you in advance for your assistance with this urgent medical matter.

David W

David Williamson

c.c. D. Plante, RN

**EXHIBITS H & I**

**<u>PLACED UNDER SEAL BY CLERK</u>**

EXHIBIT J

Affidavit of David Williamson

1). I David Williamson am the Affiant listed above and do depose and say the following:

2) On 1-09-06 Affiant submitted a Dental Sick-call Slip (Slip) to address his serious medical/dental needs. Specifically, the Slip outlined that Affiant's tooth (# 19  bottom jaw, rear left side, used for grinding & che--wing) had broken. It actually sheared in half -facing the inside of the m mouth- down to the gum line. Affiant also stated that he was experiencing the beginning stages of a gum infection common with his periodontal disease

3) On 1-11-06 Affiant was seen by Dr. Zimbull (spelling ?) who was the same dentist Affiant saw on 12-07-05 for Affiant's continuing periodontal disea-se (Perio) (i.e. gum infections). Dr. Z had reviewed Affiant's dental reco-rd at that time and acknowledged said Perio.

4) Upon examining Affiant's broken tooth, Dr. Z stated "Yeah, you will need a crown there, but We don't do that. Of course, you could have it removed."

5) Affiant inquired, "What is the standard treatment for this type of pro-blem?" And Dr. Z replied "A crown and if you were on the street that is what you would get, but we don't do that here."

6) Affiant replied "If a crown is the standard treatment and you have ackn-owledged that that is what I need, I don't understand why you won't provide it?" "Budgetary, It simply is not in Our budget," was Dr. Z's unequivical and matter-of-fact answer. This is clearly evidence of CMS's cost-avoidance policy/custom based on non-medical criteria.

7) Dr, Z continued "You can have it removed if it is too painfull. Is it too much for you?" "Yes it's painfull -my tooth is sheared in half and it hurts to chew and brush my teeth in that area," Affiant incredulously repl-ied. "Besides, avoiding the standard and needed treatment and only offering to extract the tooth is no real option. It is unacceptable," Affiant con-tinued. Dr Z replied "I don't know what else to tell you."

8) Affiant explained to Dr. Z that because Affiant previously lost three of his grinding teeth on the right lower jaw due to his recurring perio-dontal disease (Perio), which was exacerbated by CMS's failure to treat (i.e. cost-avoidance policy/custom), that Affiant could not chew solid food on that side of his mouth. Consequently, the obvious pain and discomfort of Affiant's broken tooth has rendered Affiant unable to now chew solids on the other side of his mouth (i.e. at all).

9) Dr. Z replied "That is why I am encouraging you to keep that tooth." "The discomfort will go away after time, in fact use Sensodine (spelling?) toothpaste to deaden the tooth." he continued.

10) Dr. Z also stated " You can get it taken care of when you get out."

Affiant replied " I won't be released until 2015." #Well, maybe you can make parole and get out earlier," said Dr. Z. "I'm sentensed under TIS and not eligable for parole," replied Affiant.

11) Dr. Z dismissed Affiant's active gum infection as a Herpies type virus and stated that it would go away in seven to ten days, despite acknowledging Affiant's Perio (that causes painfull gum infections and ultimately permanent tooth lose) and despite the obvious symptoms. Dr. Z's account of Affiant's current gum infection is contrary to the elemental and classic symptoms for periodontal disease (gum infections).

12) Dr. Z refused to provide any pain meds for either the broken tooth or the gum infection. Dr. Z treated Affiant instead as a nusiance - not as a patient - and merely dismissed Affiant's pleas with a cavalier attitude.

13) Affiant has been diagnosed with recurring Perio for over nine years, has experienced well over a dozen related gum infections and is intimately familiar with the classic symptoms. Moreover, Affiant has Never experienced any prior Herpie viral type ailment in or around his mouth - not ever.

14) Affiant needlessly suffers pain and discomfort, and a substantial likelihood of future tooth lose (i.e. permanent injury) due to CMS instituting a policy/custom of cost-avoidance by and through denying known standard treatment and or offering belated and substandard treatment based on non-medical criteria (i.e. budetary reasons).

15) Affiant has needlessly experienced permanent injury as a direct result of CMS's "cost-avoidance policy/custom" and there is no legitimate penological objective therein.

16) Affiant's Perio has been greatly aggrivated/exacerbated due to CMS's cost-avoidance policy/custom that flies in the face of any real and tangible medical criteria. CmS's cost-avoidance policy creates a pervasive pattern of denying treatment and or providing less effectatacious treatment.

17) The above is True and Correct as Affiant believes it to be and as he witnessed it first-hand.

Signed and Subscribed before me this //4th day of January 2006.

_Dave Wm_____

David Williamson, 00183022
1181 Paddock Rd. DCC
Smyrna, DE 19977

_____
Notary

EXHIBIT K

Affidavit of David Williamson

1.   I David Williamson am the Affiant listed above and do depose and state the following:

2.   On 2/24/06 Affiant was seen by dentist Bishop (Bishop) for a temporary "composite" repair to Affiant's broken tooth (#19).

3.   This was Affiant's fourth dental visit since his tooth broke in half on 1/08/06. On all three prior dental visits Dr. Zimbull (Zimbull) refused to provide the needed treatment (e.g. Crown) despite acknowledging a "crown" as the only appropriate treatment to repair the broken tooth, and Zimbull refused to dispense any pain medications despite Affiant's obvious and professed pain and suffering.

4.   Zimbull subsequently scheduled Affiant with another dentist (Bishop) to perform a knowingly substandard and less efficacious treatment (composite) in lieu of the needed crown.

5.   Bishop examined Affiant and stated: "Well, I can build it up with composite material, but you will definitely need to get a crown and a root canal when you get out."

6.   Affiant inquired: "Why a root canal?" "The nerve has been damaged because of being exposed for so long, and you'll need a crown for a more permanent repair – composite material is only temporary repair," replied Bishop.

7.   Thirty-eight days had elapsed since Affiant's first of three dental visits with Zimbull. In fact, Zimbull had properly diagnosed the broken tooth and acknowledged the needed treatment as a crown at the first dental visit, but because Zimbull created an inordinate and unnecessary delay in even ordering a temporary composite treatment, Affiant incurred nerve damage that now requires a root canal, and Affiant needlessly suffered the inherent pain and discomfort during this inordinate delay that impaired Affiant's ability to eat, talk, sleep, and other normal daily functions such as work and exercise.

8.   Affiant asked Bishop: "I have over ten years left to serve, will it last that long?" Bishop unequivocally replied: "No, I'm afraid not – no guarantees there."

9.   Bishop is the second dentist that has acknowledged a crown as the appropriate treatment as well as acknowledging the composite as a known substandard temporary treatment that is an inadequate substitute for Affiant's serious medical/dental needs.

10.   Affiant will likely experience another broken-tooth episode when the known temporary and less efficacious composite fails, and again experience the resulting pain and suffering. This substantial and likely repeat episode is unnecessary and known to occur.

11.   Moreover, the likelihood of future irreparable injury is all but assured, because the filling and remaining tooth was drilled and filed out to accommodate the temporary composite material, and along with the already damaged nerve the once repairable tooth will be lost when the composite finally fails.

12.   The above is true and correct to the best of Affiant's knowledge.

SWORN AND SUBSCRIBED before me this _____13th_____ day of March 2006.

_David W_____

David Williamson

_Brian Myers_

Notary Public

# EXHIBIT L

5

### Affidavit of David Williamson

1.  I David Williamson am the Affiant listed above and do depose and state the following:

2.  On 2/14/06 Affiant was seen for a perfunctory dental exam, of which was scheduled due to an upcoming audit (according to Dental Assistant Mrs. Seacord).

3.  Affaint went before Dr. Zimbull (Zimbull), but explained to the dentist that Affaint had filed an Emergency Medical/Dental Grievance (EMG) because of his refusal to repair a painful-broken tooth. The EMG was dated 1/12/06.

4.  Zimbull Briefly looked at the broken tooth and verified that it was sheared in half down to the gum-line with only the cheek half left.

5.  Zimbull stated: "I wish *they* would let us do steel crowns, but *they* won't." Affiant replied: "Well, currently my tooth is repairable with a crown, and you acknowledged that but refuse to provide this needed treatment and when my tooth further disintegrates, I will experience a permanent injury."

6.  Zimbull replied "Really it's the only thing that could be done, but I *can't* do it, *they* won't let us." Affiant inquired "What do you mean you *can't* do it? I don't understand if you know that a crown will save the tooth, then why can't you do it?" Zimbull replied, "*They* won't let us do them – not in the budget."

7.  It was clear to Affiant that Zimbull was referring to CMS when using the pronoun "they," and CMS's cost avoidance policy/custom that perfunctorily denies necessary treatment , however, based on non-medical criteria (e.g. Budget).

8.  Affiant probed further: "Not in the budget...?" Zimbull became noticeably uncomfortable and stated: "Too expensive – lab costs alone are about $300.00 and the total runs about $1000.00 dollars. That's not in the budget – They won't let me do it."

9.  Zimbull continued: "How much time do you have lift?" "Ten years," was Affiant's answer, and Zimbull made a gesture to indicate it was a lost cause.

10. Then Zimbull incredibly asked if it caused Affiant any pain. Affiant stated: "Of course it causes pain! It hurts every time I chew something of substance – like cereal for instance. In fact, you [Zimbull] asked me the same ludicrous question the last time I was here in January, but refused to give me any pain medication!"

11. Zimbull ignored Affiant's accusation and stated: "You have partial use of it at least, and if I were you, I would try to keep it as long as possible." No pain medication was dispensed to Affiant again.

12. Zimbull again acknowledged the only available treatment to repair the broken tooth – a crown – but refused to provide the needed standard treatment based on non-medical factors and intentionally exposed Affiant to undue pain and suffering and a likely substantial risk to future health (e.g. permanent injury).

13. The above is True and Correct to the best of Affiant's knowledge.

Signed and Subscribed before me this day _____22ᵈ_____ of February 2006.

*David Williamson*                                         *Brian Engram*

David Williamson                                             Notary Public

# EXHIBIT M

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

DAVID WILLIAMSON,                                )
    Plaintiff,                                  )
        v.                                       )    C.A. 06-379-SLR
CORRECTIONAL MEDICAL SERVICES, Inc, et al,       )
    Defendants.

## PLAINTIFF'S REVISED FIRST SET OF COMBINED INTERROGATORIES AND PRODUCTION OF DOCUMENTS DIRECTED TO DEFENDANT ZIMBAL

COMES NOW, plaintiff, Williamson pursuant to the appropriate Fed. R. Civ. P., Local Rule, and or case authority. Williamson attests that the instant discovery request is made in good faith, not meant to harass, inconvenience, or be overly burdensome to defendants or to delay these proceedings in any manner. Williamson requests defendant Alan Zimbal (Zimbal) to respond to the following interrogatories and produce the following production of documents, where required under the applicable rules, under oath, within thirty-days of the date of service.

### DEFIITIONS

1. If any of these discovery requests cannot be answered completely, answer the discovery request to the extent possible, and specify the reasons for your inability to completely answer.

2. This discovery request is a continuing one. If, after responding, you become aware of nay further information responsive to these (interrogatories, admissions, and/or production of documents); you are required to supplement your answer.

3. "Complaint" shall mean and refer to the Complaint filed by plaintiff in the above captioned action, and action shall be employed interchangeably with complaint.

4. "You" and "Your" means the party to whom these Requests were propounded and includes anyone authorized to or purporting to act on its behalf, including but not limited to officers, directors, employees, successors, parent corporations, subsidiary corporations, attorney, agents, or other representative.

5. "Discovery Requests" means, collectively,           First Set of Interrogatories, Admissions, and Production of Documents Directed to defendant First Correctional Medical, Inc.

6. "FCMI" shall mean First Correctional Medical, Inc, and "FCM" shall mean First Correctional Medical-Delaware, LLC, and "CMS" shall mean Correctional Medical Services, Inc.

7. "DCC" shall mean Delaware Correctional Center, and "DDOC" shall mean Delaware Department of Corrections.

8. "Identify" when used with reference to a natural person means to state his or her full name, present or last known address, present of last known position or business position and address, and position of business affiliation at the time in question.

9. The term "all" includes the word "any" and the word "any" includes "all." The terms "all" and "each" shall be construed as each and all.

10. The terms "communication" or "communications" shall mean and refer to, without limitation, any document, statement, or expression which constitutes, embodies, evidences or relates to any transmission of a word, statement, fact, thing, idea, writing, instruction, demand or question, whether oral or written, including but not limited to letters,

telecopys, telexes, e-mails, voicemails, meetings, discussions, conversations, telephone calls, memoranda, conferences or seminars.

11. The term "document" as used herein is employed in the broadest possible sense under Rule 34 to include any medium upon which information is recorded or preserved, by whomever generated or received, and means without limitation, any written, printed, typed, Photostatted, emailed, photographed, recorded, taped, or otherwise reproduced communication, compilations, or reproductions including computer generated or stored information or date, whether assertedly privileged or not and including all copies or drafts of any document which differs (by annotation or otherwise) in any respect from the original.

12. The term "including" shall be construed to mean "including without any limitation."

13. The terms "person" or "persons" shall mean and refer to the plural as well as the singular of any natural individual, or any firm, corporation, partnership, association, sole proprietorship, group, trust, estate, or any other organization or entity of nay type.

14. The terns "or" and "and" shall be construed conjunctively or disjunctively as necessary to make the request for documents or information inclusive rather than exclusive, i.e. to bring within the scope of the request all response that otherwise might be construed to be outside the scope of the request.

15. The terms "relate" or "relating to" as used herein shall mean concerning, involving, consisting of, alluding to, referring to, appertaining to, regarding, reflecting, evidencing, having any logical or factual connection with or tending to prove or disprove the matter discussed.

16. The terms "you" and "your" shall mean the party to which these requests are directed.

17. The terms "describe" or "description" when used in connection with any act, accounting, action, activity, audit, practice, process, occurrences, plan, communication, conference, discussion, development, service, transaction, test, negotiation, instance, incident, or event, mean to furnish a detailed account of the matters referred to, including the following information:

    a. Its general nature;

    b. The time and place thereof;

    c. A chronological account setting forth each element thereof, what such element consisted of and what transpired as a part thereof;

    d. The identity of each person who performed any function or who had any role in connection therewith (i.e. speaker, participant, contributor of information, witness, etc), or who has any knowledge thereof, together with a description of each such person's function, role or knowledge;

    e. The identity of each document which refers thereto or which was used, referred to or prepared in the course of or as a result thereof; and

    f. The identity of each communication, whether oral or written, which was a part thereof or which referred thereto.

18. The terms "describe" or description" when used in connection with any calculation, computation, amount or figure means to provide:

    a. A detailed explanation of its meaning;

    b. A detailed explanation of the manner in which it was derived, including an itemization of all subcategories included therein;

    c. The identity of each person who performed any function or had any role in connection therewith or who has any knowledge thereof, together with a description of each such person's function, role, or knowledge;

    d. The identity of each document which refers thereto or which was used referred to or prepared in the course of as a result thereof; and

    e. The identity of each oral communication which occurred in the course of the preparation thereof or which referred thereto.

19. When asked to provide or state a "factual basis" the term "factual basis" means to provide in detail all facts related to the matter, including the following;

    a. Each item of information upon which the allegation, contention, claim, or demand to which it pertains is based, including a full description thereof;

    b. With respect to each such item of information, the identity of each person having knowledge and each source thereof, including each document, communication, act, action, activity, accounting, negotiation, practice, process, occurrence, occasion, course of conduct, happening, relationship, scheme, conference, discussion, development, service, instance, incident, event, audit, calculation, and computation, upon which respondent relies with respect thereto.

20. The terms "identify," identification," or "identity" as applied to a person means to provide:

    a. When used in reference to a natural person: full name; present or last known address (both residence and business and telephone numbers), present or last known business affiliation; and present of last known business positions (including job title and description of job functions, duties, and responsibilities);

    b. When used in reverence to any entity other than a natural person: Its full name; the address and telephone number of its principal place of business; the jurisdiction under the laws of which it has been organized or incorporated; the identity of all persons who acted and/or who authorized another to act on its behalf in connection with the matters referred to; in the case of a corporation, the names of its directors and principal officers; and

    c. In the case of an entity other than a corporation, the identities of its partners or principals or all persons who acted or who authorized another to act on its behalf in connection with the matters referred to.

21. The term "identify," identification," or "identity" as applied to an oral communication means to provide the following information:

    a. By whom it was made and to whom it was directed;

    b. Its specific subject;

    c. The date upon which it was made;

    d. All persons who were present when it was made; and

    e. Whether it was recorded, described, or summarized in any writing of any type and, if so, the identity of each such writing in the manner indicated below.

22. The terms "identify," identification," or "identity" as applied to a written communication or document means to provide the following:

    a. Its nature (e.g. letter, memorandum, telegram, note, drawing, etc.);

    b. Its specific subject;

    c. By whom it was made and to whom it was directed;

    d. The date upon which it was made; and

    e. Who has possession of the original and all copies.

23.. "Generally accepted professional standards" means those industry standards accepted by a significant majority of professionals in the relevant field, and includes those reflected in the standards of care such as those published by the National Commission on Correctional Health Care (NCCHC) for sentenced inmates.

24. The terms "adequate," "appropriate," and "sufficient" refer to standards established by clinical guidelines promulgated by professional organizations in the relevant field.

25. "Medical staff" means medical professional, nursing, certified medical assistant, and or pharmacy staff.

10. These Definitions and Instructions shall apply to all subsequent discovery requests directed to any defendant who is a party to this action and is incorporate therein as referenced.

### COMBINED INTERROGATORIES / PRODUCTION OF DOCUMENTS

1. Identify and describe any dental treatment that Zimbal provided and/or administered to Williamson on the following dates:

        a.  12/07/05,

        b.  1-11-06,

        c.  2-14-06, and

        d.  2-21-06.

2. Identify and describe the medical/dental factors that Zimbal relied upon regarding the treatments provided and/or administered to Williamson on the following dates:

        e.  12/07/05,

        f.  1-11-06,

        g.  2-14-06, and

        h.  2-21-06.

3. Identify and produce any and all documents relating to the generally accepted professional standards for treating the following –including any recommendations made by the National Commission on Correctional Health Care (NCCHC):

        a.  Periodontal infection;

        b.  An abscessed tooth;

        c.  Periodontal disease;

        d.  A broken tooth, which is sheared down to the gum line.

4. Identify and produce any and all documents of generally accepted professional standards regarding any health risks relating to periodontal disease and periodontal infections.

5. Identify and produce any and all documents, writings upon which you/or your attorney intends to rely in any way at trial.

6. Identify and describe Zimbal's current relationship with CMS.

Respectfully,

*David W——*

David Williamson, SBI #183022

1181 Paddock Rd.

Smyrna, DE 19977

*9-10-07*

Date

# Exhibit N

# EXHIBIT O

## Affidavit of David Williamson

1. I David Williamson am the Affiant listed above and do depose and state the following:

2. Affiant was scheduled on 2-21-06 for a dental visit with Dr. Zimbull (Zimbull).

3. Zimbull said: "I just saw you and told you that you need a crown." "Yes," replied Affiant. Zimbull continued: "And I told you we couldn't do that here for you." "That is correct," Affiant replied. "Well, I can't do anything for you then," replied Zimbull.

4. Zimbull denied the necessary treatment, which he acknowledged was needed, and any pain medication on 1-11-06, and on another visit 2-14-06, and more recently again on 2-21-06 for Affiant's broken #19 tooth. In fact, Zimbull had diagnosed the broken tooth and unequivocally stated that only a "crown" could repair it.

5. Every time Affiant is scheduled on the "Sick Call" list, he cannot work and consequently loses a day's pay and a prorata share of earned good time. Because of this Affiant challenged Zimbull as to why Affiant is repeatedly placed on the Sick Call "dental" schedule – when you [Zimbull] made it clear that Affiant was not going to receive the needed treatment and forcing Affiant to needlessly lose pay and good time?

6. Moreover, it is an incredible waste of resources to continuously schedule a person in for a dental slot knowing full well that they will not be treated.

7. Zimbull did not respond to Affiant's pointed question, but instead directed his Assistant Georgina to reschedule (forth time) Affiant in with another dentist to see if an "oversized composite" could be fashioned, however, stated: "But I don't think that will hold because it is a temporary fix, and you said you had ten years left to serve?"

8. Affiant believes Zimbull is intentionally rescheduling dental visits, however, refusing treatment in order to frustrate and punish Affiant for his pursuit of needed treatment (i.e. for Affiant's grievance activity).

9. Nevertheless, Zimbull acknowledged the proper and necessary treatment (e.g. Crown), but refused to repair the broken (still repairable) tooth with the necessary crown, and instead, rescheduled Affiant for a known inadequate and substandard –jury-rigged- treatment with an alternate dentist.

10. Affiant had filed an Emergency Medical Grievance (EMG) for his dental emergency and Zimbull's subsequent denial of needed treatment on 1-13-06, and Affiant filed a complaint letter to the Inmate Grievance Chairperson (IGC) (c.c. D. Plante) on 2-16-06 requesting appropriate follow up (e.g. Grievance Hearing etc).

11. The morning of 2-21-06 the hospital/medical personnel were holding Medical Grievance Hearings; however, Affiant was not called for his EMG in contravention of IGP 4.4 for EMGs.

12. The above is true and correct to best of Affiant's knowledge.

Sworn and Subscribed before me this ⟋3ᵗʰ day of March 2006.

David W————

David Williamson

Brian D...

Notary Public

# EXHIBIT P

## AFFIDAVIT OF DAVID WILLIAMSON

1. I, David Williamson, am the Affiant listed above and do depose and state the following in support of <u>Williamson v. Correctional Medical Services, Inc., et al,</u> 06-379-SLR:

2. On 01-12-06, Affiant filed an Emergency Medical Grievance # 23193 (EMG) due to a dental emergency (e.g. tooth # 19 sheared in half to the gum-line and exposed a painful raw nerve, and in addition, Affiant was experiencing an active periodontal infection (infection).

3. Affiant has experienced permanent injury (e.g. loss of four teeth) as a direct result of recurring perio-infections, because they were; however, not treated in any adequate and or timely manner by the health care providers.

4. CMS refused to process the EMG as an emergency and refused to provide any dental treatment for some forty days despite the permanent injury that a broken tooth clearly represents.

5. Dentist Zimble eventually examined Affiant and confirmed the broken tooth; however, he intentionally disregarded the active infection. He stated that the broken tooth required a "crown", but that CMS perfunctorily prohibited the procedure due to high cost.

6. Zimble ignored Affiant's active infection and consequently refused to provide the minimum standard dental care for it (e.g. sub-gum line teeth cleaning, antibiotics, and antibacterial mouthwash), (standard care), and Zimble refused to provide any pain meds for the acutely painful broken tooth.

7. Said EMG ensued and Affiant was seen twice more by Zimble, but he continued to deny any needed and or standard dental care.

8. Subsequently, Affiant was seen by dentist Bishop who also admitted that a "crown" was needed and that, because the nerve had been damaged due to the delay in receiving any care, a "root canal" was also required.

9. Bishop also admitted to CMS's perfunctory prohibition against crowns; however, alternatively provided a temporary composite procedure. (Composite).

10. Bishop admitted that it may not work, and that if it did at all, it would not last.

11. Affiant's EMG requested the needed crown, needed semi-annual teeth cleanings, and requested replacement teeth (e.g. partial dentures) to repair the four permanently lost teeth.

12. On 04-24-07, Affiant was finally provided a belated Formal Grievance Hearing for the EMG, before CMS representative Gail Eller. Fifteen months had elapsed since the time of filing the EMG.

13. Eller read the EMG and stated: "You have to realize you are in prison –there are three-thousand men here- and I can't guarantee you teeth cleanings." This was the second such instance that Eller had invoked the realize you are in prison speech, and Affiant's present sense impression is that such callous and indifferent statements evidence a conscious disregard for Affiant's known serious medical conditions.

14. Affiant explained that it had been nearly two years since he received any teeth cleaning, and that though this was the first line of defense in treating periodontal infections (standard care), Zimble refused same when Affiant had an active infection, and this was the very same type of denials that resulted in Affiant losing four teeth.

15. Also, Zimble and Bishop both stated that a crown was required for the broken tooth, but refused to provide the needed care due to CMS's blanket prohibition. Evidently, Affiant charged, "CMS's policy is not based on medical need, but rather based on cost-avoidance."

16. Eller's callous statement about prison and the three thousand inmates is an illegitimate justification for the gross denials of needed dental care, and at the least, it appears to suggest that CMS is knowledgeable of its failure to respond adequately to the prison's population and Affiant's emergency dental episode.

17. Eller then erroneously stated that Affiant must place a Sick-Call request (SCR) for a teeth cleaning for his periodontal disease.

18. Affiant was shocked and stated that he had filed many SCRs regarding several active perio-infections –that he was denied adequate and or timely care- and that he lost four teeth as a result. Affiant pleaded to avoid further permanent injuries.

19. Eller then read from Affiant's dental records and outlined some five or six SCRs regarding active perio-infections.

20. Eller incredibly stated again that Affiant must nevertheless file another SCR for any teeth cleaning.

21. Affiant believes this is an act of stonewalling that is designed to create an inordinate delay and or outright denial of known needed care.

22. Indeed, Affiant offered the following analogy to the Board: When one breaks an arm, he does not need to file a SCR to be seen for the broken arm- then receive outright denials- and subsequently file an EMG only to be told at the belated hearing that he must now file a SCR to have the arm set and cast!

23. Eller herself read off some five or six such SCRs regarding several active infections and the minimum standard care is well known, so why should Affiant again file a SCR when the care was denied the first time?

24. Eller simply stated that that was her finding.

25. Eller's callous direction is wholly erroneous and continues CMS's denials/inordinate delays, which clearly represent a gross reckless disregard for Affiant's known serious medical condition that has been consciously made and it is devoid of any legitimate medical factors or exercise of professional medical judgment.

26. Eller also denied the request for the needed crown, despite two dentists admitting that: (1) A crown was medically needed, and (2) that the composite was temporary and would fail.

27. The above is true and correct to the best of Affiant's beliefs.


Sworn and subscribed before me this 25, April 2007.

David Williamson

Notary Public





U.S. District Court
844 King St.
Lockbox 18
Wilmington, DE 19801-3570

I/M: David Williamson
SBI# 193022
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

